**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

|  |  |
|---|---|
| Jonathan Clarke,<br><br>              Plaintiff,<br><br>    v.<br><br>3M Company, et al.,<br><br>              Defendants. | Civil Action No. 3:25cv738<br><br>**NOTICE OF REMOVAL** |

Defendant 3M Company ("3M"), by undersigned counsel, hereby gives notice of the removal of this action, pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, from the Circuit Court for the City of Richmond to the United States District Court for the Eastern District of Virginia, Richmond Division. As grounds for removal, 3M alleges as follows.

## PRELIMINARY STATEMENT

1.      Plaintiff is a firefighter who seeks to hold 3M and other Defendants liable for their alleged conduct in designing, manufacturing, or selling per- and polyfluoroalkyl substances ("PFAS") and PFAS-containing products. Plaintiff alleges that Defendants manufactured, designed, marketed, sold, and distributed chemicals and/or products containing PFAS, including in protective turnout gear worn by firefighters. Plaintiff alleges that he was exposed to PFAS by wearing his turnout gear while working as firefighter and that his exposure to PFAS caused the medical condition for which he seeks to hold Defendants liable.[1]

---

[1] A true and correct copy of Plaintiff's operative, first amended complaint is attached as Exhibit A ("Amended Complaint" or "FAC").

2.    However, one plausible source of at least some of Plaintiff's alleged PFAS exposure giving rise to his claims is PFAS-containing aqueous film-forming foam ("AFFF") that was manufactured for and sold to the U.S. military and other users by a select group of suppliers (including 3M) in accordance with the military's rigorous specifications ("MilSpec"). Over time, 3M's MilSpec AFFF products have been used by firefighters across the United States, including in and around Virginia.

3.    At the pleading stage, 3M maintains that Plaintiff has plausibly been exposed to MilSpec AFFF. As the Court overseeing the multidistrict litigation concerning PFAS exposure from AFFF—*In re: Aqueous Film-Forming Foams (AFFF) Products Liability Litigation*, No. 2:18-mn-2873-RMG (D.S.C.) ("MDL")—has recognized, a plaintiff cannot "avoid the MDL and/or federal jurisdiction by denying, disclaiming, or omitting allegations concerning exposure to AFFF," regardless of the alleged source of their exposure. *See* Case Management Order No. 36, No. 2:18-mn-02873-RMG, ECF No. 7891 at 1 (D.S.C. August 22, 2025) ("CMO 36."), attached hereto as Exhibit B. Plaintiff "may have lived in many locales over [his] lifetime[], consumed water daily," and alleges a variety of exposure pathways for PFAS. *Id.* at 1. Plaintiff therefore cannot "isolate" injuries caused by non-AFFF PFAS, and thus, "there exists, at the very least, a plausible basis for alleging federal jurisdiction sufficient to satisfy [a defendant's] initial burden on a notice of removal." *See id.* at 1–2. And in this case, Plaintiff in fact acknowledges that firefighters have been exposed to PFAS from AFFF. *See* FAC pp. 28. With this backdrop, the MDL Court, where thousands of firefighter turnout gear cases already are proceeding, also made a "suggestion and request to the JPML that all such cases, including turnout gear cases, be transferred to this Court to enable it to efficient oversee and manage these cases."  CMO 36 at 2.

2

4.      Under the federal government contractor defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), 3M is not subject to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product. Under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), 3M is entitled to remove this action in its entirety to have its federal defense adjudicated in a federal forum. *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810–15 (3d Cir. 2016) (explaining that the "central aim" of the federal officer removal statute "is protecting officers of the federal government from interference by litigation in state court while those officers are trying to carry out their duties"); *In re Asbestos Prod. Liab. Litig. (No. VI)*, 770 F. Supp. 2d 736, 741 (E.D. Pa. 2011) ("The presumption in favor of removal [28 U.S.C. § 1442] is necessary to ensure that a federal officer does not have to win his case before he can have it removed and provides for a federal forum to adjudicate the merits of the defense.") (internal quotations omitted); *see also Albritton v. A Clemente, Inc.*, 2023 WL 2447422, at *3–8 (D.N.J. Mar. 10, 2023) (holding that defendant properly removed PFAS case based on federal officer jurisdiction because products at issue were made for the federal government). Removal is appropriate here.

## **BACKGROUND**

5.      Plaintiff filed his original complaint in this action on July 2, 2024, in the Circuit Court for the City of Richmond, Virginia, bearing civil action number CL24002853-00.  Plaintiff filed his first amended complaint on March 24, 2025. 3M was served with the Amended Complaint on June 26, 2025. A copy the Amended Complaint is attached hereto as Exhibit A.

6.      Plaintiff alleges that he has served as a firefighter for the City of Richmond since February 9, 2004. FAC ¶ 12.

3

7.     Plaintiff further alleges that 3M "developed, manufactured, marketed, distributed, released, sold and/or used PFAS, PFAS materials, and products containing PFAS in turnouts, including in Virginia and in the City of Richmond." *Id.* ¶ 13.

8.     Plaintiff alleges that he was exposed to PFAS in connection with his duties as a firefighter and, more specifically, by wearing turnouts containing PFAS "in the usual and normal course of performing his firefighting duties and training." *See, e.g.*, *Id.* ¶¶ 8, 10–12, 39–51. In Section F of his Amended Complaint, Plaintiff also acknowledges that "research indicates that firefighters are at a significant risk of harm from exposure to PFAS in turnouts *and AFFF*." *Id.* pp. 28 (cleaned up) (emphasis added).

9.     Plaintiff asserts damages claims against 3M and the other Defendants for breach of implied warranties (*Id.* ¶¶ 106–127); breach of express warranties (*Id.* ¶¶ 128–150); negligence, gross negligence, recklessness and willful and wanton misconduct (*Id.* ¶¶ 151–169); and violations of the Virginia Consumer Protection Act (*Id.* ¶¶ 170–182).

## THE PROCEDURAL REQUIREMENTS FOR REMOVAL UNDER 28 U.S.C. §§ 1442(a)(1) AND 1446 ARE MET

10.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 127 and 1442(a) because the Circuit Court for the City of Richmond is located within the Richmond Division of the United States District Court for the Eastern District of Virginia.

11.     3M is not required to notify or obtain the consent of any other defendant to remove this action under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187, 195 (D. Mass. 2008).

12.     Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the operative complaint is attached as Exhibit A, and true and correct copies of all other documents on file in the state-

court proceedings (including all process, pleadings, and orders served upon 3M) are attached as Exhibit C.

13.    Removal is timely under 28 U.S.C. § 1446(b). A defendant removing a case is required to file a notice of removal within thirty days of service on it by the plaintiff of an initial pleading (28 U.S.C. § 1446(b)(1)) or other paper (*id.*, § 1446(b)(3)) providing notice of the grounds for removal that are "apparent within the four corners of the initial pleading or subsequent paper." *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997). Although neither Plaintiff's complaint nor any subsequent paper in this case provided the information necessary to inform 3M that all of the elements of federal jurisdiction are present, 3M has determined from its own investigation that this case is removable on the grounds presented in this notice.

14.    Pursuant to 28 U.S.C. § 1446(d), 3M is serving a copy of this Notice of Removal upon all other parties to this case and is also filing a copy with the Clerk of the Circuit Court for the City of Richmond, a copy of which is attached as Exhibit D.

15.    By filing a Notice of Removal in this matter, 3M does not waive the rights of any Defendant to object to service of process, the sufficiency of process, and/or jurisdiction over the person, or venue, and 3M specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

16.    3M reserves the right to amend or supplement this Notice of Removal.

17.    If any question arises as to the propriety of the removal of this action, 3M requests the opportunity to present a brief and oral argument in support of removal.

## REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442(a)(1)

18.    Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at

the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) the plaintiff's claims are based on the defendant's conduct "acting under" the United States, its agencies, or officers; (c) the plaintiff's claims are "for or relating to" the defendant's acts under color of federal office; and (d) the defendant raises a colorable federal defense. *See Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Papp*, 842 F.3d at 812; *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008); *see also* 28 U.S.C. § 1442(a)(1) (providing for removal of cases against United States officers that are "for or relating to any act under color of such office").

19.     Removal rights under the federal officer removal statute are broader than under the general removal statute. Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999). This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BJS), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted). This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252. To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal. *Papp*, 842 F.3d at 812 (alterations in original) (internal quotation marks omitted); *accord In re Asbestos*, 770 F. Supp.2d at 741.

20.     All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's injuries are caused at least in part by MilSpec AFFF. *See, e.g.*, *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan.

6, 2021) (denying motion to remand in AFFF case against manufacturers of MilSpec AFFF); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (same). The court overseeing the MDL has found on multiple occasions that removal under § 1442(a)(1) is proper where the notice of removal alleges that plaintiff's injuries are caused, at least in part, by MilSpec AFFF. *See In re AFFF Prods. Liab. Litig.* ("*AFFF I*"), No. 2:18-mn-2873, 2019 WL 2807266, at *2–3 (D.S.C. May 24, 2019); Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("*AFFF II*"), at 3–5; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("*AFFF III*"), at 3–6.

21.    The MDL Court's holdings demonstrate that this case, too, is properly removed to federal court.[2] Moreover, in entering CMO 36, the MDL Court recognized that efforts to "avoid the MDL and/or federal jurisdiction by denying, disclaiming, or omitting allegations concerning exposure to AFFF" are "contrary to law," including where a plaintiff alleges exposure from "firefighter turnout gear." CMO 36 at 1 (citing *State of Maryland v. 3M et al.*, 130 F.4th 380 (4th Cir. 2025)). The MDL Court concluded that there is "at the very least a plausible basis for alleging federal jurisdiction sufficient to satisfy its initial burden on a notice of removal" given the various potential AFFF and non-AFFF sources of PFAS and the inability of a plaintiff to isolate personal injuries caused by one or the other, which is sufficient to "substantiate federal officer removal." *See id.* at 1–2.

A.    **MilSpec AFFF**

22.    Since the late 1960s/early 1970s, the United States military has used MilSpec AFFF on military bases, airfields, and Navy ships—settings where fuel fires are inevitable and potentially

---

[2] Following removal, 3M intends to designate this action for transfer to the MDL.

devastating—to train its personnel, put out fires, save lives, and protect property. In fact, the United States Naval Research Laboratory developed AFFF—its researchers were granted the first AFFF patent in 1966.[3] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[4]

23.    The design and manufacture of MilSpec AFFF are governed by rigorous military specifications created and administered by Naval Sea Systems Command, part of the Department of Defense ("DoD"). The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised several times since.[5] All MilSpec AFFF products must be "qualified for listing on the applicable Qualified Products List" prior to military procurement.[6] Prior to such listing, a "manufacturer's . . . products are examined, tested, and approved to be in conformance with specification requirements."[7] The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.[8] After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the

---

[3] U.S. Patent No. 3,258,423 (filed Sept. 4, 1963; published June 28, 1966).

[4] U.S. Navy, NRL/MR/1001-06-8951, U.S. Naval Research Lab., *The U.S. Naval Research Laboratory (1923-2005): Fulfilling the Roosevelts' Vision for American Naval Power*, at 37 (June 30, 2006) ("*Fulfilling the Roosevelts' Vision*"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[5] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

[6] MIL-PRF-24385F(4) § 3.1 (2020).

[7] DoD SD-6, Provisions Governing Qualification at 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[8] *See, e.g.*, MIL-PRF-24385F(4) at 18 (2020). The cited MilSpec designates Naval Sea Systems Command as the "Preparing Activity." The "Preparing Activity" is responsible for qualification. (*See* DoD SD-6, *supra* n.7, at 3.)

8

qualification status."[9] Naval Sea Systems Command "reserves the right to perform any of the [quality assurance] inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements."[10]

24.    From its inception until 2019, the MilSpec for AFFF included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants." All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their precursors—among the compounds expressly alleged to be at issue in the Amended Complaint here.[11] *See, e.g.*, *Id.* ¶¶ 54, 56, 76, 95–96. The current MilSpec expressly contemplates the presence of PFOA and PFOS (subject to recently imposed limits) in AFFF formulations.[12] Indeed, the current MilSpec recognizes that it is not yet technically feasible for manufacturers to completely eliminate PFOA and PFOS "while still meeting all other military specification requirements."[13]

25.    3M manufactured and sold PFAS-containing MilSpec AFFF to the U.S. military for over three decades pursuant to contracts with the United States. One or more of 3M's AFFF products were on the Navy's Qualified Products List for AFFF from 1970 until 2010 (even though

---

[9] DoD SD-6, *supra* n.7, at 1.

[10] *See, e.g.*, MIL-PRF-24385F(4) § 4.1 (2020).

[11] *See* Mil-F-24385 § 3.2 (1969); MIL-PRF-24385F(2) § 3.2 (2017). In May 2019, the MilSpec was revised to drop the explicit requirement that the surfactants in the product be "fluorocarbon." *See* MIL-PRF-24385F(3) § 3.2 (2019). But under current technology, the only AFFF products capable of meeting the MilSpec's stringent performance requirements—and the only ones listed on the military's Qualified Product List—are those containing fluorocarbon surfactants. Thus, as a practical matter, the MilSpec still requires fluorocarbon surfactants.

[12] *See* MIL-PRF-24385F(4) § 6.6 & Tables 1, 3 (2020).

[13] MIL-PRF-24385F(4) § 6.6.

3M had phased out production of AFFF beginning in 2000).[14] Over time, the U.S. military used MilSpec AFFF manufactured by 3M throughout the United States, including in Virginia.

26.    3M also historically manufactured and sold PFAS-containing MilSpec AFFF to certain non-military users, including in Virginia. One notable example relates to so-called "Part 139" airports, i.e., certain large civilian airports. *See* 14 C.F.R. § 139.1 (2019). Part 139 airports historically have used MilSpec AFFF, including 3M's MilSpec AFFF products. In fact, by 2006, the U.S. government was requiring Part 139 airports to use AFFF meeting MilSpec standards.[15]

**B.    MilSpec AFFF Plausibly Contributed to Plaintiff's Alleged PFAS Exposures.**

27.    In addition to his plausible exposure to MilSpec AFFF through his service as a firefighter, which Plaintiff recognizes (*see* FAC pp. 28), Plaintiff was plausibly exposed to MilSpec AFFF through a variety of other means, including his regular consumption of water in many locales over his lifetime.

28.    Notably, the MDL Court entered CMO 36 to address plaintiffs who "have sought to avoid the MDL and/or federal jurisdiction by denying, disclaiming, or omitting allegations concerning exposure to AFFF." CMO 36 at 1. The MDL Court, citing binding Fourth Circuit precedent, affirmed that "such efforts were contrary to law," explaining that "[t]he record in the MDL and its related discovery has demonstrated that plaintiffs cannot, at the pleading stage, easily isolate personal injuries caused by AFFF as opposed to personal injures allegedly caused by non-AFFF PFAS." *Id.* (*citing State of Maryland v. 3M Co*., 130 F.4th 380 (4th Cir. 2025)).

---

[14] *See* MIL-F-24385 QPL/QPD History for Type 3 AFFF (Oct. 24, 2014) & MIL-F-24385 QPL/QPD History for Type 6 AFFF (Oct. 24, 2014) (available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1969-24 (D.S.C.)).

[15] *See* FAA Part 139 CertAlert 06-02, Aqueous Film Forming Foam (AFFF) meeting MIL-F-24385 (Feb. 8, 2006) (available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873, ECF No. 1971-14 (D.S.C.)).

29.     As recognized by the MDL Court in entering CMO 36, PFAS personal injury plaintiffs "may have lived in many locales over their lifetimes, consumed water daily, and, in many of the cases before this Court, allege that any type of AFFF has the potential to, and do spread through groundwater, surface water, and other media well beyond the locations where they were initially used." CMO 36 at 1.  Plaintiff here makes broad allegations about the various alleged pathways of exposure to PFAS and the many products containing PFAS, including allegations about some of the same chemicals that are (or were) contained in MilSpec AFFF (PFOS and PFOA). These allegations are precisely the sort of exposures the MDL Court noted in finding that plaintiffs, at the pleading stage, could not "easily isolate personal injuries alleged caused by AFFF as opposed to personal injuries allegedly caused by non-AFFF PFAS." *Id.*

30.     For example, Plaintiff alleges that PFAS are "highly transportable" and "PFAS exposure to humans can occur through inhalation, ingestion and dermal contact" (FAC ¶ 53), that "Defendants knowingly and willfully manufactured, designed, marketed, sold and distributed chemicals and/or products containing PFAS for use within the State of Virginia when they knew or reasonably should have known that Plaintiff repeatedly inhale, ingest, and/or have dermal contact with these harmful compounds during the ordinary course of his profession including during firefighting training exercises and in firefighting emergencies" (*Id.* ¶ 18), and that "Defendants continued to manufacture, develop, market, promote, distribute and sell PFAS chemicals and PFAS-containing products, including specifically PFAS-containing turnouts" (*Id.* ¶ 68). These are exactly the kind of routine exposures that the MDL Court has suggested provide a plausible basis for federal jurisdiction.

31.     Because Plaintiff cannot at the pleading stage distinguish injuries allegedly caused by non-AFFF PFAS from any type of AFFF, which includes MilSpec AFFF, a "plausible basis for

alleging federal jurisdiction sufficient to satisfy [a defendant's] initial burden on a notice of removal" exists where a defendant alleges potential MilSpec AFFF exposure, a theory that a federal court "must credit." *See* CMO 36 at 2 (internal quotations omitted). In other words, Plaintiff's omission of AFFF-related allegations in this case cannot deprive 3M of its right to a federal forum, regardless of whether Plaintiff alleges his exposure came from "drinking water, direct exposure to AFFF, firefighter turnout gear or other products allegedly containing PFAS, or some combination." *Id.* at 1.

### C.    All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied.

#### 1.    The "Person" Requirement Is Satisfied.

32.    The first requirement for removal under the federal officer removal statute is satisfied here because 3M (a corporation) meets the definition of "person" under the statute. For purposes of § 1442(a)(1), the term "person" includes "corporations." *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *Johnson v. Sunoco, Inc. (R&M)*, No. 16-05512, 2017 WL 783773, at *3 (E.D. Pa. Feb. 28, 2017) (same).

#### 2.    The "Acting Under" Requirement Is Satisfied.

33.    The second requirement ("acting under" a federal officer) is satisfied when an entity assists, or helps carry out, the duties or tasks of a federal officer. *Papp*, 842 F.3d at 812. "The words 'acting under' are to be interpreted broadly . . . ." *Isaacson*, 517 F.3d at 136 (citation omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813. "[C]ourts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017); *accord Johnson*, 2017 WL 783773, at *3 ("Where . . . 'the federal

government uses a private corporation to achieve an end it would otherwise use its own ends to complete,' the corporation is deemed to be acting under the authority of the federal officer.") (quoting *Papp*, 842 F.3d at 812).

34.    The requirement of "acting under" a federal officer is met here because the alleged PFAS exposure that is the focus of Plaintiff's claims plausibly stems in part from MilSpec AFFF, a vital product provided by 3M that otherwise "the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members) (internal quotation marks omitted). The Naval Research Laboratory stated that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[16] Accordingly, the military has long depended on outside contractors like 3M to develop and supply AFFF. If 3M and other manufacturers did not provide MilSpec AFFF, the government would have to manufacture and supply the product itself.

35.    In designing and manufacturing the MilSpec AFFF at issue, 3M acted under the direction and control of one or more federal officers. Specifically, 3M acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling. Further, the AFFF products in question were subject to various tests by the U.S. Navy before and after being approved

---

[16] Fulfilling the Roosevelts' Vision, *supra* n.4, at 37.

for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[17] 3M has satisfied the "acting under" requirement. *See Nessel*, 2021 WL 744683, at *3 (holding that AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *AFFF I*, 2019 WL 2807266, at *2 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); *AFFF II*, at 3–5 (holding likewise in case involving MilSpec AFFF used at Part 139 airport); *AFFF III*, at 3–6 (same).

### 3.    The "Under Color of Federal Office" Requirement Is Satisfied.

36.    The third requirement, that the defendant's actions were taken "under color of federal office," requires a "nexus" between a plaintiff's claims and the defendant's acts undertaken at the direction of a federal officer. As with the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Isaacson*, 517 F.3d at 137. It is sufficient for a defendant to establish a connection or association between the lawsuit and the federal office. *See Sawyer*, 860 F.3d at 258 (explaining that 28 U.S.C. § 1442 permits removal of actions "for *or relating to* any act under color of [federal] office"); *Isaacson*, 517 F.3d at 137–38 (explaining that it is sufficient if the act that allegedly caused or contributed to the plaintiff's injuries occurred while the defendant was performing its official duties); *Johsnson*, 2017 WL 783773, at *5 (explaining that under Third Circuit precedent, "'in order to meet the for or relating to requirement, it is sufficient for there to be a connection or association between the act in question and the federal office.'") (quoting *Papp*, 842 F.3d at 813); *see also Albritton*, 2023 WL 2447422, at *5 ("Congress revised the Officer Removal Statute in 2011 to 'broaden the universe of acts that enable Federal officers to remove [suits] to Federal Court,'" and accordingly it is "'sufficient for there to be a "connection" or

---

[17] *See* DoD SD-6, *supra* n.7, at 1.

14

"association" between the act in question and the federal office'") (quoting *Papp*, 842 F.3d at 813).[18]

37.     Here, Plaintiff's claims against 3M arise at least in part from alleged PFAS exposure attributable to MilSpec AFFF. The military specifications have expressly or implicitly required the use of PFAS in the product. As a result, Plaintiff's claims against 3M are connected to its acts taken under color of federal office. *See Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'casual connection' between the use of PFCs [perfluorinated compounds, *i.e.* PFAS] in AFFF and the design and manufacture of AFFF for the government."); *AFFF I*, 2019 WL 2807266, at *3 (element satisfied where "[Plaintiff]'s claims arise out of use of AFFF products . . . for which the U.S. military imposes MilSpec standards."); *AFFF II*, at 5 (element satisfied where AFFF products, "for which the military imposes MilSpec standards," were the alleged cause of plaintiff's injuries); *AFFF III*, at 5–6 (same).

38.     It is immaterial that Plaintiff does not specifically assert exposure from AFFF. Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists." *Isaacson*, 517 F.3d at 137; *see also Maryland v. 3M Co.*, 130 F.4th 380, 389 (4th Cir. 2025); *Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 192 (1st Cir. 2024); *Nessel*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present"); *In Re Asbestos*, 770 F. Supp. 2d at 743 (finding removal proper and rejecting the plaintiff's disclaimer because recognizing it "would deprive the federal officer of the right to have the adequacy of the threshold determination, whether there is federal subject matter jurisdiction under the federal officer removal statute, made by a federal court"). As averred in this Notice of

---

[18] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

Removal, the alleged injuries arise at least in part from alleged exposure to MilSpec AFFF. Accordingly, Plaintiff's claims are "for or relating to" 3M's actions under color of federal office (28 U.S.C. § 1442(a)(1)), and 3M is entitled to remove this case as a whole pursuant to § 1442(a)(1). *See, e.g.*, *Bennett v. MIS Corp.*, 607 F.3d 1076, 1084 n.6 (6th Cir. 2010) ("[S]ection 1442(a)(1) authorizes removal of the entire case even if only one of the controversies it raises involves a federal officer or agency.").

### 4.   *The "Colorable Federal Defense" Requirement Is Satisfied.*

39.   The fourth requirement ("colorable federal defense") is satisfied by 3M's assertion of the government contractor defense.

40.   At the removal stage, a defendant need only show that its government contractor defense is colorable; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'" *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted); *see also In Re Asbestos*, 770 F. Supp. 2d at 742 (defendant had a colorable federal defense where plaintiffs injuries stemmed directly from exposure to asbestos "on U.S. Naval Ships at U.S. Naval shipyards"); *Albritton*, 2023 WL 2447422, at *7–8 (defendant had "raised a colorable government contractor defense" because defendant "pointed to government contracts and specifications for chemicals alleged" in the complaint). "A defendant 'need not win his case before he can have it removed.'" *Papp*, 842 F.3d at 815 (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,' the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court.") (citation omitted). At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014); *see also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088,

16

at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage. Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense.") (internal citation omitted). Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010). "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

41.    Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512. 3M has satisfied these elements for purposes of removal.

42.    The requirement of "reasonably precise specifications" can be met by evidence showing either (a) that the government's participation in the design of the product "amount[ed] to more than a rubber stamping," or (b) that the government continued to purchase or use a product after the government became aware that the product contained the alleged defect. *Ramey v. Martin-Baker Aircraft Co. Ltd.*, 874 F.2d 946, 950 (4th Cir. 1989). Naval Sea Systems Command participated in the design of MilSpec AFFF, and its role was not merely "rubber stamping." It created (and has updated) detailed specifications governing the product's formulation, performance, testing, storage, inspection, packaging, and labeling.[19] Those specifications are

_____

[19] *See* Mil-F-24385 (1969) and subsequent revisions and amendments, cited in note 5, *supra*.

17

"reasonably precise," including in requiring the use of PFAS.[20] In addition, in the past and continuing to the present, the DoD has purchased and used MilSpec AFFF with awareness of the product's PFAS content and of the alleged risks associated with PFAS in the product. *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design.").

43.    With respect to the second requirement, 3M's products have appeared on the DoD Qualified Products List,[21] which could have happened only if Naval Sea Systems Command first determined that they conformed to the MilSpec. *See Ayo*, 2018 WL 4781145, at *13 ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); *AFFF I*, 2019 WL 2807266, at *3 (finding that defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications").

44.    Regarding the third requirement, the U.S. government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF. The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand. Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the

---

[20] As noted earlier, until 2019 the specification expressly required that MilSpec AFFF contain "fluorocarbon surfactants," all of which are members of the PFAS family. Even since that express requirement was removed from the specification, the use of PFAS has been implicitly mandated because PFAS-containing surfactants are the only kind that allow AFFF to meet the performance requirements of the specification.

[21] *See* QPL/QPD Histories, *supra* n.14.

soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[22] For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from firefighting exercises are considered to have adverse effects environmentally."[23] In June 1991, the Air Force stated that past Air Force fire training activities resulted in "adverse environmental impact," including "soil contamination" and the "potential" for "groundwater contamination."[24] By no later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."[25] In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer.[26] More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA. Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-

---

[22] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1-6 (Nov. 4, 2002).

[23] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

[24] USAF, Engineering Technical Letter ETL 91-4: Site Selection Criteria for Fire Protection Training Areas 2 (June 14, 1991).

[25] EPA Presentation on Activities/Issues on Fluorosurfactants, March 16, 2001 (available at *In re AFFF Prods. Liab. Litig.*, No. 2:18-mn-02873 (D.S.C.), ECF No. 1971-2).

[26] *See* EPA, Revised Draft Hazard Assessment, *supra* n.22.

based fires."[27] Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants,"[28] and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[29] *See Ayo*, 2018 WL 4781145, at \*12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); *AFFF I*, 2019 WL 2807266, at \*3 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

45.    At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged risks. *See In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at \*5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'") (citation omitted). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at \*13.

---

[27] DoD, *Aqueous Film Forming Foam Report to Congress* 1-2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[28] MIL-PRF-24385F(4) § 3.2 (2020).

[29] MIL-PRF-24385F(4) § 6.6 & Tables I, III; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

46.     3M's use of PFAS in MilSpec AFFF was required by military specifications. By seeking to impose tort liability on 3M for alleged injuries that were caused in whole or in part by 3M's compliance with military specifications, Plaintiff is attempting to use state tort law to attack design choices dictated by the military. The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

47.     In the MDL, the MDL court has found based on an extensive factual record that the government contractor defense asserted by 3M and other MilSpec AFFF manufacturers presents genuine issues of fact for trial. *See In re AFFF Prods. Liab. Litig.*, 2:18-mn-02873, 2022 WL 4291357, at *12, 15 (D.S.C. Sept. 16, 2022). A defense that presents triable issues is "colorable."

WHEREFORE, Defendant 3M Company hereby removes this action from Circuit Court for the City of Richmond to the United States District Court for the Eastern District of Virginia, Richmond Division.

DATED:  September 12, 2025              DEFENDANT 3M COMPANY


                                        ___/s/ Matthew J. Hundley_____
                                        Matthew J. Hundley (VSB No. 76865)
                                        Diana M. Miller (VSB No. 82430)
                                        BUTLER SNOW LLP
                                        919 E. Main Street, Suite 600
                                        Richmond, Virginia 23219
                                        Tel. 804.762.6030
                                        Fax. 804.762.6031
                                        Matthew.Hundley@butlersnow.com
                                        Diana.Miller@butlersnow.com

                                        *Counsel for Defendant 3M Company*

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2025, I filed the foregoing with the Clerk of the

Court by the CM/ECF system, and I also caused a true and correct copy of the foregoing to be

served on the following parties by electronic mail and/or first class mail as follows:

Kevin Biniazan, Esq.
Lauren A. Martin
BREIT BINIAZAN, P.C.
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, VA 23451-4088
Tel.: (757) 622-6000
Fax: (757) 299-8028
kevin@bbtrial.com
lmartin@bbtrial.com
*Counsel for Plaintiff Jonathan Clarke*

Andrew Bosse
Allison Melton
BAUGHMAN KROUP BOSSE PLLC
500 East Main Street, Suite 1400
Norfolk, Virginia 23510
Tel.: (757) 916-5771
Fax: (757) 266-5585
abosse@bkbfirm.com
amelton@bkbfirm.com

Gregory L. Skidmore
Amanda P. Nitto
Demi L. Bostian
ROBINSON, BRADSHAW & HINSON, P.A.
600 South Tryon Street, Suite 2300
Charlotte, NC 28202
Telephone: 704.377.2536
Facsimile: 704.378.4000
gskidmore@rbh.com
anitto@rbh.com
dbostian@rbh.com
*Counsel for Defendants Honeywell*
*International, Inc. and*
*Honeywell Safety Products USA, Inc.*

Andrew D. Kaplan
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel.: (202) 624.2500
akaplan@crowell.com
*Counsel for Defendant AGC Chemicals*
*Americas, Inc.*

Michael F. Williams, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, D.C. 20004
Tel.: (202) 389-5000
Fax: (202) 389-5200
mwilliams@kirkland.com
*Counsel for Defendant Archroma U.S., Inc.*

C. Thea Pitzen, Esq.
Goodman Allen Donnelly, PLLC
Town Point Center
150 Boush Street, Suite 900
Norfolk, Virginia 23510
Tel.: (757) 625-1400
Fax: (757) 625-7701
tpitzen@goodmanallen.com
*Counsel for Defendant Arkema, Inc.*

John R. Owen
Julie S. Palmer
John P. Dunnigan
Imani E. Sowell
Yevgeniy K. Klinovskiy
HARMAN, CLAYTOR, CORRIGAN &
WELLMAN
P.O. Box 70280
Richmond, Virginia 23255
Tel.: (804) 747-5200
Fax: (804) 747-6085
jowen@hccw.com
jpalmer@hccw.com
jdunnigan@hccw.com
isowell@hccw.com
yklinovskiy@hccw.com
*Counsel for Defendant Blue Ridge Rescue*

23

*Suppliers, Inc. improperly named as Bradsden Solutions, Inc.*
William G. Laxton, Jr.
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: (202) 879-3939
Fax: (202) 626-1700
wglaxton@jonesday.com

Theodore M. Grossman
JONES DAY
250 Vesey Street
New York, NY 10281
Tel.: (212) 326-3939
Fax: (212) 755-7306
tgrossman@jonesday.com

Louis A. Chaiten
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44144
Tel.: (216) 586-7244
Fax: (216) 579-0212
lchaiten@jonesday.com
*Counsel for Defendant Daikin America, Inc.*

Caitlin R. Convery
SHOOK, HARDY & BACON LLP
1800 K Street, N.W., Suite 1000
Washington, D.C. 20006
Tel: (202) 639-5603
Fax: (202) 783-4211
cconvery@shb.com

Amy Crouch
Brent Dwerlkotte
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108
Tel.: (816) 474-6550
Fax: (816) 421-5547
amcrouch@shb.com
dbdwerlkotte@shb.com
*Counsel for Defendants EIDP, Inc., f/k/a E.*
*I. du Pont de Nemours and Company and*
*The Chemours Company, LLC*

Paul C. Kuhnel
Lewis Brisbois Bisgaard & Smith LLP
10 S. Jefferson St., Suite 1100
Roanoke, VA 24011
Tel.: (540) 283-0130
Fax: (540) 283-0044
Paul.Kuhnel@lewisbrisbois.com
*Counsel for Defendant Lion Group, Inc.*

Jeffrey Golimowski
WOMBLE BOND DICKINSON-US, LLP
8350 Broad Street, Suite 1500
Tysons, VA 22120
Tel.: (703) 394-2275
Jeff.Golimowski@wbd-us.com
*Counsel for Defendant Municipal
Emergency Services, Inc.*

Michael A. Montgomery
Eckert Seamans Cherin & Mellott, LLC
919 East Main Street, Suite 1300
Richmond, Virginia 23219
Tel: (804) 788-7740
Fax: (804) 698-2950
mmontgomery@eckertseamans.com

Edward J. Longosz, II
Eckert Seamans Cherin & Mellott, LLC
1717 Pennsylvania Avenue, NW Suite 1200
Washington, D.C. 20006
Tel: (202) 659-6619
Fax: (202) 659-6699
elongosz@eckertseamans.com
*Counsel for Defendant PBI Performance
Products, Inc.*

John A. Nader, Esq.
Hinshaw & Culbertson LLP
700 12th Street, N.W., Suite 700
Washington, D.C. 20005
Tel: (202) 979-5280
Fax: (212) 935-1166
jnader@hinshawlaw.com
*Counsel for Defendant Stedfast USA, Inc.*

25

John T. Bergin
KILPATRICK STOCKTON TOWNSEND LLP
701 Pennsylvania Avenue, NW, Suite 200
Washington, DC USA 20004
Tel. (202) 481-9942
jbergin@ktslaw.com
*Counsel for Defendant Tencate Protective Fabrics USA*
*d/b/a Southern Mills Inc.*

Martin A. Conn, Esq.
Stewart R. Pollock, Esq.
Ashley A. Davoli, Esq.
MORAN REEVES & CONN, PC
1211 E. Cary Street
Richmond, Virginia 23219
Tel.: (804) 421-6250
Fax: (804) 421-6251
mconn@moranreevesconn.com
spollock@moranreevesconn.com
adavoli@moranreevesconn.com
*Counsel for Defendant W. L. Gore &*
*Associates, Inc.*

Lynn K. Brugh, IV
**WILLIAMS MULLEN**
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6461
Facsimile: (804) 420-6507
lbrugh@williamsmullen.com

*Counsel for Defendant MSA Safety Sales, LLC and*
*Defendant Globe Manufacturing Company, LLC*

James L. Stengel
Paige Pavone
ORRICK, HERRINGTON
& SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
jstengel@orrick.com
ppavone@orrick.com

Hillary Dang (VSB No. 92188)
**ORRICK, HERRINGTON
& SUTCLIFFE LLP**
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
hdang@orrick.com
*Counsel for Defendant MSA Safety Sales, LLC and
Defendant Globe Manufacturing Company, LLC*

Gordon S. Woodward (VSB 42449)
GORDON REES SCULLY MANSUKHANI, LLC
277 S. Washington Street, Suite 550
Alexandria, VA 22314
Tel: 301-512-9218
Fax: 202-800-2999
Email: gwoodward@grsm.com
*Counsel for Defendant Mallory Safety and Supply LLC*

        /s/ Matthew J. Hundley
Matthew J. Hundley (VSB No. 76865)
Diana M. Miller (VSB No. 82430)
BUTLER SNOW LLP
919 E. Main Street, Suite 600
Richmond, Virginia 23219
Tel. 804.762.6030
Fax. 804.762.6031
Matthew.Hundley@butlersnow.com
Diana.Miller@butlersnow.com

*Counsel for Defendant 3M Company*