allegations and calls for strict proof thereof. Blue Ridge expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Blue Ridge may be held liable.

55.     Blue Ridge avers that Paragraph 54 of Plaintiff's Amended Complaint seeks expert opinion, thereby requiring no response. To the extent that a response is required, Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 54 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof. Blue Ridge expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Blue Ridge may be held liable.

56.     Blue Ridge avers that Paragraph 55 of Plaintiff's Amended Complaint seeks expert opinion, thereby requiring no response. To the extent that a response is required, Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 55 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof. Blue Ridge expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Blue Ridge may be held liable.

57.     Blue Ridge avers that Paragraph 56 of Plaintiff's Amended Complaint seeks expert opinion, thereby requiring no response. To the extent that a response is required, Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 56 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof. Blue Ridge expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Blue Ridge may be held liable.

58.     Blue Ridge avers that Paragraph 57 of Plaintiff's Amended Complaint seeks expert opinion, thereby requiring no response. To the extent that a response is required, Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations

contained in Paragraph 57 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof. Blue Ridge expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Blue Ridge may be held liable.

59. In response to Paragraph 58 of Plaintiff's Amended Complaint, Blue Ridge avers that it has sold turnouts designed for firefighters and that it has sold some turnouts to fire departments in Virginia. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 58 that pertain to it; therefore, it denies those allegations. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

60. Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 59 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

61. Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 60 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

62. In response to Paragraph 61 of Plaintiff's Amended Complaint, Blue Ridge admits, upon information and belief, that Globe manufactures turnouts. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 61 of Plaintiff's Amended Complaint and calls for strict proof thereof.

63. Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 62 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

64.     In response to Paragraph 63 of Plaintiff's Amended Complaint, Blue Ridge admits, upon information and belief, that Honeywell manufactures turnouts. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 63 of Plaintiff's Amended Complaint and calls for strict proof thereof.

65.     Blue Ridge denies the allegations contained in Paragraph 64 of Plaintiff's Amended Complaint that pertain to it, including sub-paragraphs (a) through (j). Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 64 of Plaintiff's Amended Complaint that pertain to other defendants, including sub-paragraphs (a) through (j); therefore, it denies those allegations and calls for strict proof thereof.

66.     Blue Ridge denies the allegations contained in Paragraph 65 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 65 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

67.     Blue Ridge denies the allegations contained in Paragraph 66 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 66 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

68.     Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 67 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

69.     As phrased, Blue Ridge denies the allegations contained in Paragraph 68 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 68 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

70.     Blue Ridge denies the allegations contained in Paragraph 69 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 69 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

71.     Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 70 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

72.     Blue Ridge denies the allegations contained in Paragraph 71 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 71 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

73.     Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 72 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

74.     Blue Ridge denies the allegations contained in Paragraph 73 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 73 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

75.    Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 74 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

76.    Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 75 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

77.    Blue Ridge denies the allegations contained in Paragraph 76 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 76 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

78.    Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 77 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

79.    Blue Ridge denies the allegations contained in Paragraph 78 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 78 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

80.    Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 79 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

81.   Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 80 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

82.   Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 81 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

83.   Blue Ridge denies the allegations contained in Paragraph 82 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 82 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

84.   As phrased, Blue Ridge denies the allegations contained in Paragraph 83 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 83 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

85.   Blue Ridge denies the allegations contained in Paragraph 84 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 84 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

86.   Blue Ridge denies the allegations contained in Paragraph 85 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as

to the truth or falsity of the allegations contained in Paragraph 85 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

87. In response to the allegations contained in Paragraph 86 of Plaintiff's Amended Complaint, Blue Ridge avers that the labels on the turnouts worn by Plaintiff, if any, speak for themselves. Blue Ridge denies any characterization of such labels that are inconsistent with their terms.

88. Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 87 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

89. Blue Ridge denies the allegations contained in Paragraph 88 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 88 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

90. Blue Ridge denies the allegations contained in Paragraph 89 of Plaintiff's Amended Complaint that pertain to it, including sub-paragraphs (a) through (c). Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 89 of Plaintiff's Amended Complaint that pertain to other defendants including sub-paragraphs (a) through (c); therefore, it denies those allegations and calls for strict proof thereof.

91. Blue Ridge denies the allegations contained in Paragraph 90 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 90 of Plaintiff's Amended

Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

92.    Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 91 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

93.    Blue Ridge denies the allegations contained in Paragraph 92 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 92 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

94.    Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 93 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

95.    Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 94 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

96.    Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 95 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

97.    Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 96 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

98. Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 97 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

99. Blue Ridge denies the allegations contained in Paragraph 98 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 98 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

100. Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 99 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

101. Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 100 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

102. Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 101 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

103. Blue Ridge lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 102 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

104. Blue Ridge denies the allegations contained in Paragraph 103 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 103 of Plaintiff's Amended

20

Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

105.     Blue Ridge denies the allegations contained in Paragraph 104 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 104 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

106.     In response to Paragraph 105 of Plaintiff's Amended Complaint, Blue Ridge admits that firefighters provide a valuable and laudable service to the community. Blue Ridge avers that the remaining statements in Paragraph 105 of Plaintiff's Amended Complaint do not state the proper legal standard applicable to the allegations and claims made, and otherwise require no response. Blue Ridge expressly denies that the Plaintiff was exposed to harmful levels of PFAS from any product for which Blue Ridge may be held liable.

107.     Blue Ridge avers that Paragraph 106 of Plaintiff's Amended Complaint requires no response. To the extent a response is required, Blue Ridge expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Blue Ridge may be held liable.

108.     In responses to Paragraph 107 of Plaintiff's Amended Complaint, Blue Ridge restates and incorporates its responses to all allegations asserted in the Amended Complaint.

109.     In response to Paragraph 108 of Plaintiff's Amended Complaint, Blue Ridge avers that it has sold turnouts designed for firefighters and that it has sold some turnouts to fire departments in Virginia. Blue Ridge denies the allegations contained in paragraph 108 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 108

21

of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

110.    In response to Paragraph 109 of Plaintiff's Amended Complaint, Blue Ridge avers that it has sold turnouts designed for firefighters and that it has sold some turnouts to fire departments in Virginia. Blue Ridge denies the allegations contained in paragraph 109 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 109 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

111.    Blue Ridge denies the allegations contained in Paragraph 110 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 110 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

112.    Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 111 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

113.    Blue Ridge denies the allegations contained in Paragraph 112 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 112 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

114.    Blue Ridge denies the allegations contained in Paragraph 113 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 113 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

115.    Blue Ridge denies the allegations contained in Paragraph 114 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 114 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

116.    Blue Ridge denies the allegations contained in Paragraph 115 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 115 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

117.    Blue Ridge denies the allegations contained in Paragraph 116 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 116 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

a. Blue Ridge denies the allegations contained in sub-paragraph (a) of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in sub-paragraph (a) of Plaintiff's

Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

b. Blue Ridge denies the allegations contained in sub-paragraph (b) of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in sub-paragraph (b) of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

c. Blue Ridge denies the allegations contained in sub-paragraph (c) of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in sub-paragraph (c) of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

d. Blue Ridge denies the allegations contained in Paragraph subparagraph (d) of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in sub-paragraph (d) of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

e. Blue Ridge denies the allegations contained in sub-paragraph (e) of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in sub-paragraph (e) of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

24

  f. Blue Ridge avers that the allegations contained in sub-paragraph (f) of Plaintiff's

    Amended Complaint seek expert opinion, thereby requiring no response. To the extent

    a response is required, Blue Ridge denies the allegations contained in sub-paragraph (f)

    of Plaintiff's Amended Complaint and calls for strict proof thereof.

  118. Blue Ridge denies the allegations contained in Paragraph 117 of Plaintiff's
Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as
to the truth or falsity of the allegations contained in Paragraph 117 of Plaintiff's Amended
Complaint that pertain to other defendants; therefore, it denies those allegations and calls for
strict proof thereof.

  119. Blue Ridge denies the allegations contained in Paragraph 118 of Plaintiff's
Amended Complaint.

  120. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of
the allegations contained in Paragraph 119 of Plaintiff's Amended Complaint; therefore, it denies
those allegations and calls for strict proof thereof.

  121. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of
the allegations contained in Paragraph 120 of Plaintiff's Amended Complaint; therefore, it denies
those allegations and calls for strict proof thereof.

  122. Blue Ridge denies the allegations contained in Paragraph 121 of Plaintiff's
Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as
to the truth or falsity of the allegations contained in Paragraph 121 of Plaintiff's Amended
Complaint that pertain to other defendants; therefore, it denies those allegations and calls for
strict proof thereof.

123. Blue Ridge denies the allegations contained in Paragraph 122 of Plaintiff's' Amended Complaint.

124. Blue Ridge denies the allegations contained in Paragraph 123 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 123 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

125. Blue Ridge denies the allegations contained in Paragraph 124 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 124 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

126. Blue Ridge denies the allegations contained in Paragraph 125 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 125 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

127. Blue Ridge denies the allegations contained in Paragraph 126 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 126 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

128.    Blue Ridge denies the allegations contained in Paragraph 127 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 127 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

129.    Blue Ridge avers that Paragraph 128 of Plaintiff's Amended Complaint requires no response. To the extent a response is required, Blue Ridge expressly denies that the Plaintiff was exposed to harmful levels of PFAS from any product for which Blue Ridge may be held liable.

130.    In response to Paragraph 129 of Plaintiff's Amended Complaint, Blue Ridge restates and incorporates its responses to all allegations asserted in the Amended Complaint.

131.    Blue Ridge denies the allegations contained in Paragraph 130 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 130 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

132.    Blue Ridge denies the allegations contained in Paragraph 131 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 131 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

133.    In response to Paragraph 132 of Plaintiff's Amended Complaint, Blue Ridge admits that it has sold turnouts designed for firefighters and that it has sold some turnouts to fire

27

departments in Virginia. As phrased, Blue Ridge denies the allegations contained in Paragraph 132 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 132 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

134.    Blue Ridge denies the allegations contained in Paragraph 133 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 133 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

135.    Blue Ridge denies the allegations contained in Paragraph 134 of Plaintiff's Amended Complaint.

136.    Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 135 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

137.    Blue Ridge denies the allegations contained in Paragraph 136 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 136 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

138.    Blue Ridge denies the allegations contained in Paragraph 137 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 137 of Plaintiff's Amended

Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

139.    Blue Ridge denies the allegations contained in Paragraph 138 of Plaintiff's Amended Complaint that pertain to it, including sub-paragraphs (a) through (d). Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 138 of Plaintiff's Amended Complaint, including sub-paragraphs (a) through (d) that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

140.    Blue Ridge denies the allegations contained in Paragraph 139 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 139 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

141.    Blue Ridge denies the allegations contained in Paragraph 140 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 140 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

142.    Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 141 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

143.    Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 142 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

144.    Blue Ridge denies the allegations contained in Paragraph 143 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 143 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

145.    Blue Ridge denies the allegations contained in Paragraph 144 of Plaintiff's Amended Complaint.

146.    Blue Ridge denies the allegations contained in Paragraph 145 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 145 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

147.    Blue Ridge denies the allegations contained in Paragraph 146 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 146 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

148.    Blue Ridge denies the allegations contained in Paragraph 147 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 147 of Plaintiff's Amended

30

Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

149.    Blue Ridge denies the allegations contained in Paragraph 148 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 148 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

150.    Blue Ridge denies the allegations contained in Paragraph 149 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 149 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

151.    Blue Ridge denies the allegations contained in Paragraph 150 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 150 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

152.    Blue Ridge avers that Paragraph 151 of Plaintiff's Amended Complaint requires no response. To the extent a response is required, Blue Ridge expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Blue Ridge may be held liable.

153.    In response to Paragraph 152 of Plaintiff's Amended Complaint, Blue Ridge restates and incorporates its responses to all allegations asserted in the Amended Complaint.

154.    Blue Ridge avers that Paragraph 153 of Plaintiff's Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Blue Ridge denies the allegations contained in Paragraph 153 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 153 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

155.    Blue Ridge avers that Paragraph 154 of Plaintiff's Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Blue Ridge denies the allegations contained in Paragraph 154 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 154 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

156.    Blue Ridge avers that Paragraph 155 of Plaintiff's Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Blue Ridge denies the allegations contained in Paragraph 155 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 155 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

157.    Blue Ridge avers that Paragraph 156 of Plaintiff's Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Blue Ridge denies the allegations contained in Paragraph 156 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of

32

the allegations contained in Paragraph 156 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

158.    Blue Ridge denies the allegations contained in Paragraph 157 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 157 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

159.    Blue Ridge denies the allegations contained in Paragraph 158 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 158 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

160.    Blue Ridge denies the allegations contained in Paragraph 159 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 159 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

161.    Blue Ridge denies the allegations contained in Paragraph 160 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 160 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

162.    Blue Ridge denies the allegations contained in Paragraph 161 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 161 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

163.    Blue Ridge denies the allegations contained in Paragraph 162 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 162 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

164.    Blue Ridge denies the allegations contained in Paragraph 163 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 163 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

165.    Blue Ridge denies the allegations contained in Paragraph 164 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 164 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

166.    Blue Ridge denies the allegations contained in Paragraph 165 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 165 of Plaintiff's Amended

Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

167. Blue Ridge denies the allegations contained in Paragraph 166 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 166 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

168. Blue Ridge denies the allegations contained in Paragraph 167 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 167 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

169. Blue Ridge denies the allegations contained in Paragraph 168 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 168 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

170. Blue Ridge denies the allegations contained in Paragraph 169 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 169 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

171.    Blue Ridge avers that Paragraph 170 of Plaintiff's Amended Complaint requires no response. To the extent a response is required, Blue Ridge expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Blue Ridge may be held liable.

172.    In response to Paragraph 171 of Plaintiff's Amended Complaint, Blue Ridge restates and incorporates its responses to all allegations asserted in Plaintiff's Amended Complaint.

173.    Blue Ridge avers that Paragraph 172 of Plaintiff's Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Blue Ridge denies the allegations contained in Paragraph 172 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 172 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

174.    Blue Ridge avers that Paragraph 173 of Plaintiff's Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Blue Ridge denies the allegations contained in Paragraph 173 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 173 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

175.    Blue Ridge avers that Paragraph 174 of Plaintiff's Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Blue Ridge denies the allegations contained in Paragraph 174 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of

the allegations contained in Paragraph 174 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

176. Blue Ridge avers that Paragraph 175 of Plaintiff's Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Blue Ridge denies the allegations contained in Paragraph 175 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 175 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

177. Blue Ridge denies the allegations contained in Paragraph 176 of Plaintiff's Amended Complaint that pertain to it, including sub-paragraphs (a) through (c). Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 176 of Plaintiff's Amended Complaint that pertain to other defendants, including sub-paragraphs (a) through (c) ; therefore, it denies those allegations and calls for strict proof thereof.

178. Blue Ridge denies the allegations contained in Paragraph 177 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 177 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

179. Blue Ridge denies the allegations contained in Paragraph 178 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 178 of Plaintiff's Amended

Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

180.    Blue Ridge denies the allegations contained in Paragraph 179 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 179 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

181.    Blue Ridge denies the allegations contained in Paragraph 180 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 180 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

182.    Blue Ridge avers that Paragraph 181 of Plaintiff's Complain contains legal conclusions to which no response is required. To the extent a response is required, Blue Ridge denies the allegations contained in Paragraph 181 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 181 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

183.    Blue Ridge avers that Paragraph 182 of Plaintiff's Complain contains legal conclusions to which no response is required. To the extent a response is required, Blue Ridge denies the allegations contained in Paragraph 182 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the

allegations contained in Paragraph 182 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

184.    In response to Paragraph 183 of Plaintiff's Amended Complaint, Blue Ridge restates and incorporates its responses to all allegations asserted in the Amended Complaint.

185.    Blue Ridge denies the allegations contained in Paragraph 184 of Plaintiff's Amended Complaint that pertain to it. Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 184 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

186.    Blue Ridge denies the allegations contained in Paragraph 185 of Plaintiff's Amended Complaint that pertains to it, including sub-paragraphs (a) through (g). Blue Ridge lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 185 of Plaintiff's Amended Complaint that pertain to other Defendants, including sub-paragraphs (a) through (g); therefore, it denies those allegations and calls for strict proof thereof.

187.    Blue Ridge denies the allegations contained in the WHEREFORE Paragraphs of Plaintiff's Amended Complaint.

188.    Blue Ridge denies that Plaintiff is entitled to the relief sought in the WHEREFORE Paragraphs of Plaintiff's Amended Complaint.

189.    Blue Ridge denies all allegations not expressly admitted herein.

190.    Blue Ridge denies that it is indebted to Plaintiff in the amount claimed, or any amount, for the reasons stated or for any other reason.

191. Blue Ridge denies that it committed any act of negligence that was a proximate cause of Plaintiff's alleged injuries.

192. Blue Ridge avers that the exposures in question, if any, and Plaintiff's damages, if any, were caused by the acts and/or omissions of third parties over whom Blue Ridge has no control and for whom Blue Ridge is not responsible at law.

193. Blue Ridge avers that Plaintiff's alleged damages were directly and proximately caused by the superseding, intervening acts and conduct of others, thereby precluding Plaintiff from recovery from Blue Ridge.

194. Blue Ridge avers that it is entitled to a set-off from any sums recovered by or on behalf of Plaintiff by way of any settlement, judgment, or otherwise, which were, or are, entered into or received by Plaintiff from any party or non-party to this action.

195. Blue Ridge avers that it acted in conformity with the existing state-of-the-art at all times relevant to this litigation.

196. Blue Ridge avers that Plaintiff has failed to demonstrate that the alleged exposure to products supplied by Blue Ridge alone would have been sufficient to cause the injury/death at issue, as required under *Ford Motor Co. v. Boomer*, 285 Va. 141 (2013).

197. To the extent they are supported by the evidence, Blue Ridge will rely upon the defenses of contributory negligence, assumption of the risk, the sophisticated user doctrine, lack of privity, limitation or disclaimer of warranties, and/or product misuse or abuse.

198. Blue Ridge incorporates the defenses asserted by other defendants as such are applicable to Blue Ridge.

199.    Blue Ridge reserves the right to assert additional defenses or to supplement or amend this Answer, and to assert crossclaims, counterclaims, or third-party claims, upon ascertaining more definite facts during and upon completion of discovery and investigation.

200.    Blue Ridge expressly reserves the right to assert the defense of Statute of Limitations.

WHEREFORE, Defendant Blue Ridge Rescue Suppliers, Inc., by counsel, respectfully requests that this Court dismiss this action and award its costs incurred herein.

TRIAL BY JURY IS DEMANDED.

**BLUE RIDGE RESCUE SUPPLIERS, INC.**

By Counsel

John R. Owen (VSB No. 39560)
Julie S. Palmer (VSB No. 65800)
John P. Dunnigan (VSB No. 93483)
Imani E. Sowell (VSB No. 95982)
Yevgeniy K. Klinovskiy (VSB No. 98264)
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
jowen@hccw.com
jpalmer@hccw.com
jdunnigan@hccw.com
isowell@hccw.com
yklinovskiy@hccw.com

# CERTIFICATE

I hereby certify that a true copy of the foregoing was sent via U.S. Mail and email this 21st day of April, 2025 to:

> Kevin Biniazan, Esq.(VSB No. 92109)
> Jeffrey A. Breit, Esq. (VSB No. 18876)
> Don Scott, Esq. (VSB No. 88725)
> Scott M. Perry, Esq. (VSB No. 67417)
> Lauren A. Martin, Esq. (VSB No. 93653)
> Alexis Bale Esq. (VSB No. 100318)
> Breit Biniazan, P.C.
> Towne Pavillion Center II
> 600 22nd Street, Suite 402
> Virginia Beach, VA 23451-4088
> 757-622-6000 - Phone
> 757-299-8028 - Fax
> Kevin@bbtrial.com
> Jeffrey@bbtrial.com
> don@bbtrial.com
> scott@bbtrial.com
> lmartin@bbtrial.com
> abale@bbtrial.com

Julie S. Palmer

VIRGINIA:

### IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

JONATHAN CLARKE,

    Plaintiff,

v.                               Case No. CL24002853-00

3M COMPANY (F/K/A MINNESOTA
MINING AND MANUFACTURING
COMPANY), et al.,

    Defendants.

### ANSWER OF BRADSDEN SOLUTIONS, INC.

Bradsden Solutions, Inc. ("Bradsden"), by and through undersigned counsel, states as follows for its Answer to Plaintiff's Amended Complaint:

1.    In responses to Plaintiff's first unnumbered paragraph of the Amended Complaint, Bradsden denies that Plaintiff is entitled to any recovery under any theory against it.

2.    Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 1 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

3.    Bradsden denies the allegations contained in Paragraph 2 of Plaintiff's Amended Complaint.

4.    Bradsden avers that Paragraph 3 of Plaintiff's Amended Complaint seeks expert opinion thereby requiring no response. To the extent a response is required, Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 3 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

5.      Bradsden avers that Paragraph 4 of Plaintiff's Amended Complaint seeks expert opinion thereby requiring no response. To the extent a response is required, Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 4 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

6.      Bradsden avers that Paragraph 5 of Plaintiff's Amended Complaint seeks expert opinion thereby requiring no response. To the extent a response is required, Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 5 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

7.      Bradsden denies the allegations contained in Paragraph 6 of Plaintiff's Amended Complaint  that pertain to it. Bradsden expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Bradsden may be held liable. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 6 of Plaintiff's Amended Complaint that pertain to the other defendants; therefore, it denies those allegations and calls for strict proof thereof.

8.      In response to Paragraph 7 of Plaintiff's Amended Complaint, Bradsden avers that the allegations contained in Paragraph 7 of Plaintiff's Amended Complaint concerning the alleged nature and impact of PFAS seek expert opinion, thereby requiring no response. Bradsden further avers that it has never sold turnouts to any individual or entity. Bradsden denies the remaining allegations contained in Paragraph 8 of Plaintiff's Amended Complaint that pertain to it. Bradsden expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Bradsden may be held liable. Bradsden lacks information sufficient to form a

2

belief as to the truth or falsity of the remaining allegations contained in Paragraph 7 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

9.    Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 8 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof. Bradsden expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Bradsden may be held liable.

10.    In response to Paragraph 9 of Plaintiff's Amended Complaint, Bradsden denies that the Plaintiff was exposed to harmful levels of PFAS for which Bradsden may be held liable. Bradsden avers that the allegations contained in Paragraph 9 of Plaintiff's Amended Complaint, as phrased, state legal conclusions, thereby requiring no response.

11.    Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 10 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof. Bradsden expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Bradsden may be held liable.

12.    Bradsden denies the allegations contained in Paragraph 11 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 11 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

13.    Bradsden lacks information to form a belief as to the truth or falsity of the allegations contained in Paragraph 12 of Plaintiff's Amended Complaint; therefore it denies those allegations and calls for strict proof thereof. Bradsden expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Bradsden may be held liable.

3

14.    The allegations contained in Paragraph 13 of Plaintiff's Amended Complaint are not directed at Bradsden; therefore, no response is required. To the extent a response is required, Bradsden lacks information sufficient to admit or deny the allegations; therefore, the allegations are denied.

15.    The allegations contained in Paragraph 14 of Plaintiff's Amended Complaint are not directed at Bradsden; therefore, no response is required. To the extent a response is required, Bradsden lacks information sufficient to admit or deny the allegations; therefore, the allegations are denied.

16.    The allegations contained in Paragraph 15 of Plaintiff's Amended Complaint are not directed at Bradsden; therefore, no response is required. To the extent a response is required, Bradsden lacks information sufficient to admit or deny the allegations; therefore, the allegations are denied.

17.    The allegations contained in Paragraph 16 of Plaintiff's Amended Complaint are not directed at Bradsden; therefore, no response is required. To the extent a response is required, Bradsden lacks information sufficient to admit or deny the allegations; therefore, the allegations are denied.

18.    The allegations contained in Paragraph 17 of Plaintiff's Amended Complaint are not directed at Bradsden; therefore, no response is required. To the extent a response is required, Bradsden lacks information sufficient to admit or deny the allegations; therefore, the allegations are denied.

19.    In response to the allegations contained in Paragraph 18 of Plaintiff's Amended Complaint, Bradsden avers that Bradsden Solutions, Inc. is a Virginia Stock corporation which does not, and has not ever, sold turnouts to any individual or entity.

4

20.    The allegations contained in Paragraph 19 of Plaintiff's Amended Complaint are not directed at Bradsden; therefore, no response is required. To the extent a response is required, Bradsden lacks information sufficient to admit or deny the allegations; therefore, the allegations are denied.

21.    The allegations contained in Paragraph 20 of Plaintiff's Amended Complaint are not directed at Bradsden; therefore, no response is required. To the extent a response is required, Bradsden lacks information sufficient to admit or deny the allegations; therefore, the allegations are denied.

22.    The allegations contained in Paragraph 21 of Plaintiff's Amended Complaint are not directed at Bradsden; therefore, no response is required. To the extent a response is required, Bradsden lacks information sufficient to admit or deny the allegations; therefore, the allegations are denied.

23.    The allegations contained in Paragraph 22 of Plaintiff's Amended Complaint are not directed at Bradsden; therefore, no response is required. To the extent a response is required, Bradsden lacks information sufficient to admit or deny the allegations; therefore, the allegations are denied.

24.    The allegations contained in Paragraph 23 of Plaintiff's Amended Complaint are not directed at Bradsden; therefore, no response is required. To the extent a response is required, Bradsden lacks information sufficient to admit or deny the allegations; therefore, the allegations are denied.

25.    The allegations contained in Paragraph 24 of Plaintiff's Amended Complaint are not directed at Bradsden; therefore, no response is required. To the extent a response is required,

Bradsden lacks information sufficient to admit or deny the allegations; therefore, the allegations are denied.

26.    The allegations contained in Paragraph 25 of Plaintiff's Amended Complaint are not directed at Bradsden; therefore, no response is required. To the extent a response is required, Bradsden lacks information sufficient to admit or deny the allegations; therefore, the allegations are denied.

27.    The allegations contained in Paragraph 26 of Plaintiff's Amended Complaint are not directed at Bradsden; therefore, no response is required. To the extent a response is required, Bradsden lacks information sufficient to admit or deny the allegations; therefore, the allegations are denied.

28.    The allegations contained in Paragraph 27 of Plaintiff's Amended Complaint are not directed at Bradsden; therefore, no response is required. To the extent a response is required, Bradsden lacks information sufficient to admit or deny the allegations; therefore, the allegations are denied.

29.    The allegations contained in Paragraph 28 of Plaintiff's Amended Complaint are not directed at Bradsden; therefore, no response is required. To the extent a response is required, Bradsden lacks information sufficient to admit or deny the allegations; therefore, the allegations are denied.

30.    The allegations contained in Paragraph 29 of Plaintiff's Amended Complaint are not directed at Bradsden; therefore, no response is required. To the extent a response is required, Bradsden lacks information sufficient to admit or deny the allegations; therefore, the allegations are denied.

31.    The allegations contained in Paragraph 30 of Plaintiff's Amended Complaint are not directed at Bradsden; therefore, no response is required. To the extent a response is required, Bradsden lacks information sufficient to admit or deny the allegations; therefore, the allegations are denied.

32.    The allegations contained in Paragraph 31 of Plaintiff's Amended Complaint are not directed at Bradsden; therefore, no response is required. To the extent a response is required, Bradsden lacks information sufficient to admit or deny the allegations; therefore, the allegations are denied.

33.    The allegations contained in Paragraph 32 of Plaintiff's Amended Complaint are not directed at Bradsden; therefore, no response is required. To the extent a response is required, Bradsden lacks information sufficient to admit or deny the allegations; therefore, the allegations are denied.

34.    The allegations contained in Paragraph 33 of Plaintiff's Amended Complaint are not directed at Bradsden; therefore, no response is required. To the extent a response is required, Bradsden lacks information sufficient to admit or deny the allegations; therefore, the allegations are denied.

**JURISDICTION AND VENUE**

35.    Bradsden avers that Paragraph 34 of Plaintiff's Amended Complaint contains legal conclusions, thereby requiring no response. To the extent a response is required, Bradsden avers that it is not challenging the Court's exercise of personal jurisdiction over it in this case. Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 34 of Plaintiff's Amended Complaint as they pertain to the other defendants; therefore, it denies those allegations.

7

36.     Bradsden avers that Paragraph 35 of Plaintiff's Amended Complaint contains legal conclusions, thereby requiring no response. To the extent a response is required, Bradsden avers that it is not challenging the Court's exercise of personal jurisdiction over it in this case. Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 35 of Plaintiff's Amended Complaint as they pertain to the other defendants; therefore, it denies those allegations.

37.     Bradsden avers that Paragraph 36 of Plaintiff's Amended Complaint contains legal conclusions, thereby requiring no response. To the extent a response is required, Bradsden avers that it is not challenging the Court's exercise of personal jurisdiction over it in this case. Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 36 of Plaintiff's Amended Complaint as they pertain to the other defendants; therefore, it denies those allegations.

38.     Bradsden denies the allegations contained in Paragraph 37 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 37 of Plaintiff's Amended Complaint as they pertain to the other defendants; therefore, it denies those allegations.

39.     Bradsden avers that Paragraph 38 of Plaintiff's Amended Complaint contains legal conclusions; thereby requiring no response. To the extent a response is required, Bradsden avers that it is not challenging venue in this case. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 38 of Plaintiff's Amended Complaint as they pertain to the other defendants; therefore, it denies those allegations.

40.     Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 39 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

41.     Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 40 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

42.     Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 41 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

43.     In response to Paragraph 42 of Plaintiff's Amended Complaint, Bradsden specifically denies that it has ever sold turnouts to any individual or entity. Bradsden denies the remaining allegations contained in Paragraph 42 of Plaintiff's Amended Complaint that pertain to it. Bradsden expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Bradsden may be held liable. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 42 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

44.     Bradsden avers that Paragraph 43 of Plaintiff's Amended Complaint seeks expert opinion, thereby requiring no response. To the extent a response is required, Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 43 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

45. Upon information and belief, Bradsden admits the allegations contained in Paragraph 44 of Plaintiff's Amended Complaint.

46. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 45 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

47. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 46 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

48. Bradsden avers that Paragraph 47 of Plaintiff's Amended Complaint seeks expert opinion, thereby requiring no response. To the extent that a response is required, Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 47 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof. Bradsden expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Bradsden may be held liable.

49. Bradsden avers that Paragraph 48 of Plaintiff's Amended Complaint seeks expert opinion, thereby requiring no response. To the extent that a response is required, Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 48 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof. Bradsden expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Bradsden may be held liable.

50. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 49 of Plaintiff's Amended Complaint; therefore, it denies

those allegations and calls for strict proof thereof. Bradsden expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Bradsden may be held liable.

51.    Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 50 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof. Bradsden expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Bradsden may be held liable.

52.    Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 51 of Plaintiff's Amended Complaint; therefore it denies those allegations and calls for strict proof thereof.

53.    Bradsden avers that Paragraph 52 of Plaintiff's Amended Complaint seeks expert opinion, thereby requiring no response. To the extent that a response is required, Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 52 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof. Bradsden expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Bradsden may be held liable.

54.    Bradsden avers that Paragraph 53 of Plaintiff's Amended Complaint seeks expert opinion, thereby requiring no response. To the extent that a response is required, Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 53 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof. Bradsden expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Bradsden may be held liable.

55.    Bradsden avers that Paragraph 54 of Plaintiff's Amended Complaint seeks expert opinion, thereby requiring no response. To the extent that a response is required, Bradsden lacks

11

information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 54 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof. Bradsden expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Bradsden may be held liable.

56.    Bradsden avers that Paragraph 55 of Plaintiff's Amended Complaint seeks expert opinion, thereby requiring no response. To the extent that a response is required, Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 55 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof. Bradsden expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Bradsden may be held liable.

57.    Bradsden avers that Paragraph 56 of Plaintiff's Amended Complaint seeks expert opinion, thereby requiring no response. To the extent that a response is required, Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 56 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof. Bradsden expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Bradsden may be held liable.

58.    Bradsden avers that Paragraph 57 of Plaintiff's Amended Complaint seeks expert opinion, thereby requiring no response. To the extent that a response is required, Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 57 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof. Bradsden expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Bradsden may be held liable.

59.     In response to Paragraph 58 of Plaintiff's Amended Complaint, Bradsden specifically denies that it has sold turnouts to any individual or entity. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 58 that pertain to it; therefore, it denies those allegations. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

60.     Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 59 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

61.     Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 60 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

62.     In response to Paragraph 61 of Plaintiff's Amended Complaint, Bradsden admits, upon information and belief, that Globe manufactures turnouts. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 61 of Plaintiff's Amended Complaint and calls for strict proof thereof.

63.     Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 62 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

64.     In response to Paragraph 63 of Plaintiff's Amended Complaint, Bradsden admits, upon information and belief, that Honeywell manufactures turnouts. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 63 of Plaintiff's Amended Complaint and calls for strict proof thereof.

65. Bradsden denies the allegations contained in Paragraph 64 of Plaintiff's Amended Complaint that pertain to it, including sub-paragraphs (a) through (j). Bradsden lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 64 of Plaintiff's Amended Complaint that pertain to other defendants, including sub-paragraphs (a) through (j); therefore, it denies those allegations and calls for strict proof thereof.

66. Bradsden denies the allegations contained in Paragraph 65 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 65 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

67. Bradsden denies the allegations contained in Paragraph 66 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 66 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

68. Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 67 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

69. As phrased, Bradsden denies the allegations contained in Paragraph 68 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 68 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

70. Bradsden denies the allegations contained in Paragraph 69 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 69 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

71. Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 70 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

72. Bradsden denies the allegations contained in Paragraph 71 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 71 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

73. Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 72 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

74. Bradsden denies the allegations contained in Paragraph 73 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 73 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

75. Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 74 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

15

76.    Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 75 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

77.    Bradsden denies the allegations contained in Paragraph 76 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 76 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

78.    Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 77 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

79.    Bradsden denies the allegations contained in Paragraph 78 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 78 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

80.    Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 79 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

81.    Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 80 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

82.    Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 81 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

83.     Bradsden denies the allegations contained in Paragraph 82 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 82 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

84.     As phrased, Bradsden denies the allegations contained in Paragraph 83 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 83 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

85.     Bradsden denies the allegations contained in Paragraph 84 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 84 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

86.     Bradsden denies the allegations contained in Paragraph 85 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 85 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

87.     In response to the allegations contained in Paragraph 86 of Plaintiff's Amended Complaint, Bradsden avers that the labels on the turnouts worn by Plaintiff, if any, speak for themselves. Bradsden denies any characterization of such labels that are inconsistent with their terms.

17

88.    Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 87 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

89.    Bradsden denies the allegations contained in Paragraph 88 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 88 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

90.    Bradsden denies the allegations contained in Paragraph 89 of Plaintiff's Amended Complaint that pertain to it, including sub-paragraphs (a) through (c). Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 89 of Plaintiff's Amended Complaint that pertain to other defendants including sub-paragraphs (a) through (c); therefore, it denies those allegations and calls for strict proof thereof.

91.    Bradsden denies the allegations contained in Paragraph 90 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 90 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

92.    Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 91 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

93.    Bradsden denies the allegations contained in Paragraph 92 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 92 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

18

94.    Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 93 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

95.    Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 94 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

96.    Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 95 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

97.    Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 96 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

98.    Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 97 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

99.    Bradsden denies the allegations contained in Paragraph 98 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 98 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

100.    Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 99 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

101.    Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 100 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

102.    Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 101 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

103.    Bradsden lacks information sufficient to form a belief as to the truth or the falsity of the allegations contained in Paragraph 102 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

104.    Bradsden denies the allegations contained in Paragraph 103 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 103 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

105.    Bradsden denies the allegations contained in Paragraph 104 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 104 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

106.    In response to Paragraph 105 of Plaintiff's Amended Complaint, Bradsden admits that firefighters provide a valuable and laudable service to the community. Bradsden avers that the remaining statements in Paragraph 105 of Plaintiff's Amended Complaint do not state the proper legal standard applicable to the allegations and claims made and otherwise require no

response. Bradsden expressly denies that the Plaintiff was exposed to harmful levels of PFAS from any product for which Bradsden may be held liable.

107.    Bradsden avers that Paragraph 106 of Plaintiff's Amended Complaint requires no response. To the extent a response is required, Bradsden expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Bradsden may be held liable.

108.    In responses to Paragraph 107 of Plaintiff's Amended Complaint, Bradsden restates and incorporates its responses to all allegations asserted in the Amended Complaint.

109.    In response to paragraph 108 of Plaintiff's Amended Complaint, Bradsden specifically denies that it has sold turnouts to any individual or entity. Bradsden denies the remaining allegations contained in paragraph 108 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 108 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

110.    In response to paragraph 109 of Plaintiff's Amended Complaint, Bradsden specifically denies that it has sold turnouts to any individual or entity. Bradsden denies the remaining allegations contained in paragraph 109 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 109 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

111.    Bradsden denies the allegations contained in Paragraph 110 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 110 of Plaintiff's Amended

Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

112.    Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 111 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

113.    Bradsden denies the allegations contained in Paragraph 112 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 112 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

114.    Bradsden denies the allegations contained in Paragraph 113 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 113 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

115.    Bradsden denies the allegations contained in Paragraph 114 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 114 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

116.    Bradsden denies the allegations contained in Paragraph 115 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 115 of Plaintiff's Amended

Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

117.    Bradsden denies the allegations contained in Paragraph 116 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 116 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

   a. Bradsden denies the allegations contained in sub-paragraph (a) of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in sub-paragraph (a) of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

   b. Bradsden denies the allegations contained in sub-paragraph (b) of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in sub-paragraph (b) of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

   c. Bradsden denies the allegations contained in sub-paragraph (c) of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in sub-paragraph (c) of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

d. Bradsden denies the allegations contained in Paragraph subparagraph (d) of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in sub-paragraph (d) of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

e. Bradsden denies the allegations contained in sub-paragraph (e) of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in sub-paragraph (e) of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

f. Bradsden avers that the allegations contained in sub-paragraph (f) of Plaintiff's Amended Complaint seek expert opinion, thereby requiring no response. To the extent a response is required, Bradsden denies the allegations contained in sub-paragraph (f) of Plaintiff's Amended Complaint and calls for strict proof thereof.

118.    Bradsden denies the allegations contained in Paragraph 117 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 117 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

119.    Bradsden denies the allegations contained in Paragraph 118 of Plaintiff's Amended Complaint.

120.     Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 119 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

121.     Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 120 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

122.     Bradsden denies the allegations contained in Paragraph 121 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 121 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

123.     Bradsden denies the allegations contained in Paragraph 122 of Plaintiff's' Amended Complaint.

124.     Bradsden denies the allegations contained in Paragraph 123 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 123 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

125.     Bradsden denies the allegations contained in Paragraph 124 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 124 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

126.    Bradsden denies the allegations contained in Paragraph 125 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 125 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

127.    Bradsden denies the allegations contained in Paragraph 126 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 126 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

128.    Bradsden denies the allegations contained in Paragraph 127 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 127 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

129.    Bradsden avers that Paragraph 128 of Plaintiff's Amended Complaint requires no response. To the extent a response is required, Bradsden expressly denies that the Plaintiff was exposed to harmful levels of PFAS from any product for which Bradsden may be held liable.

130.    In response to Paragraph 129 of Plaintiff's Amended Complaint, Bradsden restates and incorporates its responses to all allegations asserted in the Amended Complaint.

131.    Bradsden denies the allegations contained in Paragraph 130 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 130 of Plaintiff's Amended

Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

132.    Bradsden denies the allegations contained in Paragraph 131 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 131 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

133.    In response to Paragraph 132 of Plaintiff's Amended Complaint, Bradsden specifically denies that it has sold turnouts to any individual or entity. As phrased, Bradsden denies the allegations contained in Paragraph 132 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 132 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

134.    Bradsden denies the allegations contained in Paragraph 133 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 133 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

135.    Bradsden denies the allegations contained in Paragraph 134 of Plaintiff's Amended Complaint.

136.    Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 135 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

137.     Bradsden denies the allegations contained in Paragraph 136 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 136 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

138.     Bradsden denies the allegations contained in Paragraph 137 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 137 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

139.     Bradsden denies the allegations contained in Paragraph 138 of Plaintiff's Amended Complaint that pertain to it, including sub-paragraphs (a) through (d). Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 138 of Plaintiff's Amended Complaint, including sub-paragraphs (a) through (d) that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

140.     Bradsden denies the allegations contained in Paragraph 139 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 139 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

141.     Bradsden denies the allegations contained in Paragraph 140 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 140 of Plaintiff's Amended

28

Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

142.    Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 141 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

143.    Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 142 of Plaintiff's Amended Complaint; therefore, it denies those allegations and calls for strict proof thereof.

144.    Bradsden denies the allegations contained in Paragraph 143 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 143 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

145.    Bradsden denies the allegations contained in Paragraph 144 of Plaintiff's Amended Complaint.

146.    Bradsden denies the allegations contained in Paragraph 145 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 145 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

147.    Bradsden denies the allegations contained in Paragraph 146 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 146 of Plaintiff's Amended

Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

148. Bradsden denies the allegations contained in Paragraph 147 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 147 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

149. Bradsden denies the allegations contained in Paragraph 148 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 148 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

150. Bradsden denies the allegations contained in Paragraph 149 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 149 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

151. Bradsden denies the allegations contained in Paragraph 150 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 150 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

152.    Bradsden avers that Paragraph 151 of Plaintiff's Amended Complaint requires no response. To the extent a response is required, Bradsden expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Bradsden may be held liable.

153.    In response to Paragraph 152 of Plaintiff's Amended Complaint, Bradsden restates and incorporates its responses to all allegations asserted in the Amended Complaint.

154.    Bradsden avers that Paragraph 153 of Plaintiff's Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Bradsden denies the allegations contained in Paragraph 153 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 153 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

155.    Bradsden avers that Paragraph 154 of Plaintiff's Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Bradsden denies the allegations contained in Paragraph 154 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 154 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

156.    Bradsden avers that Paragraph 155 of Plaintiff's Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Bradsden denies the allegations contained in Paragraph 155 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 155 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

157.    Bradsden avers that Paragraph 156 of Plaintiff's Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Bradsden denies the allegations contained in Paragraph 156 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 156 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

158.    Bradsden denies the allegations contained in Paragraph 157 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 157 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

159.    Bradsden denies the allegations contained in Paragraph 158 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 158 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

160.    Bradsden denies the allegations contained in Paragraph 159 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 159 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

161.    Bradsden denies the allegations contained in Paragraph 160 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as

to the truth or falsity of the allegations contained in Paragraph 160 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

162.    Bradsden denies the allegations contained in Paragraph 161 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 161 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

163.    Bradsden denies the allegations contained in Paragraph 162 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 162 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

164.    Bradsden denies the allegations contained in Paragraph 163 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 163 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

165.    Bradsden denies the allegations contained in Paragraph 164 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 164 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

166.    Bradsden denies the allegations contained in Paragraph 165 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 165 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

167.    Bradsden denies the allegations contained in Paragraph 166 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 166 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

168.    Bradsden denies the allegations contained in Paragraph 167 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 167 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

169.    Bradsden denies the allegations contained in Paragraph 168 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 168 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

170.    Bradsden denies the allegations contained in Paragraph 169 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 169 of Plaintiff's Amended

34

Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

171.    Bradsden avers that Paragraph 170 of Plaintiff's Amended Complaint requires no response. To the extent a response is required, Bradsden expressly denies that Plaintiff was exposed to harmful levels of PFAS from any product for which Bradsden may be held liable.

172.    In response to Paragraph 171 of Plaintiff's Amended Complaint, Bradsden restates and incorporates its responses to all allegations asserted in Plaintiff's Amended Complaint.

173.    Bradsden avers that Paragraph 172 of Plaintiff's Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Bradsden denies the allegations contained in Paragraph 172 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 172 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

174.    Bradsden avers that Paragraph 173 of Plaintiff's Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Bradsden denies the allegations contained in Paragraph 173 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 173 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

175.    Bradsden avers that Paragraph 174 of Plaintiff's Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Bradsden denies the allegations contained in Paragraph 174 of Plaintiff's Amended Complaint

35

that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 174 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

176. Bradsden avers that Paragraph 175 of Plaintiff's Amended Complaint contains legal conclusions to which no response is required. To the extent a response is required, Bradsden denies the allegations contained in Paragraph 175 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 175 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

177. Bradsden denies the allegations contained in Paragraph 176 of Plaintiff's Amended Complaint that pertain to it, including sub-paragraphs (a) through (c). Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 176 of Plaintiff's Amended Complaint that pertain to other defendants, including sub-paragraphs (a) through (c) ; therefore, it denies those allegations and calls for strict proof thereof.

178. Bradsden denies the allegations contained in Paragraph 177 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 177 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

179. Bradsden denies the allegations contained in Paragraph 178 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 178 of Plaintiff's Amended

Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

180.    Bradsden denies the allegations contained in Paragraph 179 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 179 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

181.    Bradsden denies the allegations contained in Paragraph 180 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 180 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

182.    Bradsden avers that Paragraph 181 of Plaintiff's Complain contains legal conclusions to which no response is required. To the extent a response is required, Bradsden denies the allegations contained in Paragraph 181 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 181 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

183.    Bradsden avers that Paragraph 182 of Plaintiff's Complain contains legal conclusions to which no response is required. To the extent a response is required, Bradsden denies the allegations contained in Paragraph 182 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the

allegations contained in Paragraph 182 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

184.    In response to Paragraph 183 of Plaintiff's Amended Complaint, Bradsden restates and incorporates its responses to all allegations asserted in the Amended Complaint.

185.    Bradsden denies the allegations contained in Paragraph 184 of Plaintiff's Amended Complaint that pertain to it. Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 184 of Plaintiff's Amended Complaint that pertain to other defendants; therefore, it denies those allegations and calls for strict proof thereof.

186.    Bradsden denies the allegations contained in Paragraph 185 of Plaintiff's Amended Complaint that pertains to it, including sub-paragraphs (a) through (g). Bradsden lacks information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 185 of Plaintiff's Amended Complaint that pertain to other Defendants, including sub-paragraphs (a) through (g); therefore, it denies those allegations and calls for strict proof thereof.

187.    Bradsden denies the allegations contained in the WHEREFORE Paragraphs of Plaintiff's Amended Complaint.

188.    Bradsden denies that Plaintiff is entitled to the relief sought in the WHEREFORE Paragraphs of Plaintiff's Amended Complaint.

189.    Bradsden denies all allegations not expressly admitted herein.

190.    Bradsden denies that it is indebted to Plaintiff in the amount claimed, or any amount, for the reasons stated or for any other reason.

191.    Bradsden denies that it committed any act of negligence that was a proximate cause of Plaintiff's alleged injuries.

192.    Bradsden avers that the exposures in question, if any, and Plaintiff's damages, if any, were caused by the acts and/or omissions of third parties over whom Bradsden has no control and for whom Bradsden is not responsible at law.

193.    Bradsden avers that Plaintiff's alleged damages were directly and proximately caused by the superseding, intervening acts and conduct of others, thereby precluding Plaintiff from recovery from Bradsden.

194.    Bradsden avers that it is entitled to a set-off from any sums recovered by or on behalf of Plaintiff by way of any settlement, judgment, or otherwise, which were, or are, entered into or received by Plaintiff from any party or non-party to this action.

195.    Bradsden avers that it acted in conformity with the existing state-of-the-art at all times relevant to this litigation.

196.    Bradsden avers that Plaintiff has failed to demonstrate that the alleged exposure to products supplied by Bradsden alone would have been sufficient to cause the injury/death at issue, as required under *Ford Motor Co. v. Boomer*, 285 Va. 141 (2013).

197.    To the extent they are supported by the evidence, Bradsden will rely upon the defenses of contributory negligence, assumption of the risk, the sophisticated user doctrine, lack of privity, limitation or disclaimer of warranties, and/or product misuse or abuse.

198.    Bradsden incorporates the defenses asserted by other defendants as such are applicable to Bradsden.

199.    Bradsden reserves the right to assert additional defenses or to supplement or amend this Answer, and to assert crossclaims, counterclaims, or third-party claims, upon ascertaining more definite facts during and upon completion of discovery and investigation.

200.    Bradsden expressly reserves the right to assert the defense of Statute of Limitations.

WHEREFORE, Defendant Bradsden Solutions, Inc., by counsel, respectfully requests that this Court dismiss this action and award its costs incurred herein.

TRIAL BY JURY IS DEMANDED.

**BRADSDEN SOLUTIONS, INC.**

By Counsel

John R. Owen (VSB No. 39560)
Julie S. Palmer (VSB No. 65800)
John P. Dunnigan (VSB No. 93483)
Imani E. Sowell (VSB No. 95982)
Yevgeniy K. Klinovskiy (VSB No. 98264)
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
jowen@hccw.com
jpalmer@hccw.com
jdunnigan@hccw.com
isowell@hccw.com
yklinovskiy@hccw.com

## **C E R T I F I C A T E**

     I hereby certify that a true copy of the foregoing was sent via U.S. Mail and email this 21st day of April, 2025 to:

> Kevin Biniazan, Esq.(VSB No. 92109)
> Jeffrey A. Breit, Esq. (VSB No. 18876)
> Don Scott, Esq. (VSB No. 88725)
> Scott M. Perry, Esq. (VSB No. 67417)
> Lauren A. Martin, Esq. (VSB No. 93653)
> Alexis Bale Esq. (VSB No. 100318)
> Breit Biniazan, P.C.
> Towne Pavillion Center II
> 600 22nd Street, Suite 402
> Virginia Beach, VA 23451-4088
> 757-622-6000 - Phone
> 757-299-8028 - Fax
> Kevin@bbtrial.com
> Jeffrey@bbtrial.com
> don@bbtrial.com
> scott@bbtrial.com
> lmartin@bbtrial.com
> abale@bbtrial.com

Julie S. Palmer

41

## VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

**JONATHAN CLARKE**

      **Plaintiff,**

                                  **Civil Action No. CL24002853-00**

**v.**

**3M COMPANY (f/k/a Minnesota**
**Mining and Manufacturing Company);**
**AGC CHEMICALS AMERICAS, INC.;**
**ARCHROMA U.S., INC.;**
**ARKEMA, INC.;**
**BLUE RIDGE RESCUE SUPPLIERS, INC.;**
**BRADSDEN SOLUTIONS, INC.;**
**DAIKIN AMERICA, INC.;**
**E.I. DU PONT DE NEMOURS AND**
**COMPANY, a/k/a EDIP, Inc.;**
**GLOBE MANUFACTURING COMPANY LLC;**
**HONEYWELL INTERNATIONAL, INC.;**
**HONEYWELL SAFETY PRODUCTS USA, INC.;**
**LION GROUP, INC.;**
**MALLORY SAFETY AND SUPPLY, LLC;**
**MINE SAFETY APPLIANCES COMPANY, LLC;**
**MSA SAFETY SALES, LLC;**
**MUNICIPAL EMERGENCY SERVICES INC.;**
**PBI PERFORMANCE PRODUCTS, INC.;**
**STEDFAST USA, INC.;**
**TENCATE PROTECTIVE FABRICS USA**
**d/b/a SOUTHERN MILLS INC.;**
**THE CHEMOURS COMPANY LLC;**
**and**
**W.L. GORE & ASSOCIATES, INC.;**

      **Defendants.**

## PLAINTIFF'S MOTION FOR VOLUNTARY NONSUIT

COMES NOW, Plaintiff Jonathan Clarke, by and through counsel, who moves this

Honorable Court for entry of an Order dismissing specifically **Defendant Mine Safety Appliance**

**Company, LLC** ("Defendant MSAC") by voluntary nonsuit in accordance with Virginia Code §

8.01-380. In support, Plaintiff states as follows:

1.     Under Virginia Code § 8.01-380, Plaintiff is permitted to voluntarily nonsuit any
       other party to the proceeding, herein being Defendant MSAC.

2.     This is Plaintiff's first motion for nonsuit as to any and all claims made against
       Defendant MSAC.  Prior to this motion, Plaintiff has not sought nonsuit in this
       action against Defendant MSAC.

3.     At this stage in the proceedings, no motion to strike the evidence has been made
       nor sustained; the case is yet to be called before a jury; and the action is yet to be
       submitted to this Court for decision.

4.     Defendant MSAC has not yet been served with process in this matter, let alone
       filed any counterclaims, cross claims, or third-party claims which arise out of the
       same transaction or occurrence as the Plaintiff's claims.

5.     As the requirements set forth in § 8.01-380(A), (B), & (D) are satisfied, and
       because Plaintiff has not previously sought nonsuit against the same party to the
       proceeding, herein Defendant MSAC, Plaintiff is entitled to nonsuit as a matter of
       right.

       WHEREFORE, Plaintiff Jonathan Clarke, through counsel, respectfully requests that this
Honorable Court enter an Order nonsuiting Defendant MSAC in accordance with Virginia Code §
8.01-380.

Respectfully submitted,

Date: June 25, 2025

Kevin Binjazan, Esq. | VSB No. 92109

Jeffrey A. Breit, Esq. | VSB No. 18876
Don Scott, Esq. | VSB No. 88725
Scott M. Perry, Esq. | VSB No. 67417
Lauren Martin, Esq. | VSB No. 93653
Alexis Bale, Esq. | VSB No. 100318
Breit Biniazan, PC
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, VA 23451
Telephone | 757.622.6000
Facsimile | 757.299.8028
Email | kevin@bbtrial.com
Email | jeffrey@bbtrial.com
Email | don@bbtrial.com
Email | scott@bbtrial.com
Email | lmartin@bbtrial.com
Email | abale@bbtrial.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of June, 2025, a true and correct copy of the foregoing was filed with the clerk of this Court and I emailed a copy to the following:

John R. Owen (VSB No. 39560)
Julie S. Palmer (VSB No. 65800)
John P. Dunnigan (VSB No. 93483)
Imani E. Sowell (VSB No. 95982)
HARMON, CLAYTOR, CORRIGAN, & WELLMAN
P.O. Box 70280
Richmond, Virginia 23255
(804) 747-5200 – Phone
(804) 747-6085 – Fax
jowen@hccw.com
jpalmer@hccw.com
jdunnigan@hccw.com
isowell@hccw.com

*Counsel for Defendants Blue Ridge Rescue*
*Suppliers, Inc. and Bradsden Solutions, Inc.*

Kevin Biniazán

# VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

## JONATHAN CLARKE

Plaintiff,

Civil Action No. CL24002853-00

v.

3M COMPANY (f/k/a Minnesota
Mining and Manufacturing Company);
AGC CHEMICALS AMERICAS, INC.;
ARCHROMA U.S., INC.;
ARKEMA, INC.;
BLUE RIDGE RESCUE SUPPLIERS, INC.;
BRADSDEN SOLUTIONS, INC.;
DAIKIN AMERICA, INC.;
E.I. DU PONT DE NEMOURS AND
COMPANY, a/k/a EDIP, Inc.;
GLOBE MANUFACTURING COMPANY LLC;
HONEYWELL INTERNATIONAL, INC.;
HONEYWELL SAFETY PRODUCTS USA, INC.;
LION GROUP, INC.;
MALLORY SAFETY AND SUPPLY, LLC;
MINE SAFETY APPLIANCES COMPANY, LLC;
MSA SAFETY SALES, LLC;
MUNICIPAL EMERGENCY SERVICES INC.;
PBI PERFORMANCE PRODUCTS, INC.;
STEDFAST USA, INC.;
TENCATE PROTECTIVE FABRICS USA
d/b/a SOUTHERN MILLS INC.;
THE CHEMOURS COMPANY LLC;
and
W.L. GORE & ASSOCIATES, INC.;

Defendants.

## ORDER ON PLAINTIFF'S MOTION FOR VOLUNTARY NONSUIT

CAME THIS DAY, pursuant to Virginia Code § 8.01-380, Plaintiff Jonathan Clarke, by

and through counsel, on Plaintiff's Motion for Voluntary Nonsuit of Defendant Mine Safety

Appliance Company, LLC.

IT APPEARING to the Court that Plaintiff has not previously moved to nonsuit the above-listed Defendant; that no motion to strike has been sustained nor this matter ever submitted to a jury or this Court for decision; and that this specific Defendant has never filed any counterclaims, cross claims, or third-party claims, this Court **FINDS** that Plaintiff has acted in accordance with Virginia Code § 8.01-380.

It is hereby **ORDERED** that Plaintiff's Motion for Nonsuit is **GRANTED** and Defendant Mine Safety Appliance Company, LLC is **DISMISSED** by nonsuit pursuant to Virginia Code § 8.01-380, subject to the rights and provisions set forth in Virginia Code § 8.01-229(E)(3).

Entered this _____ day of _____ 2025.

_____
Judge

WE ASKED FOR THIS:

Kevin Biniazan, Esq. | VSB No. 92109
Jeffrey A. Breit, Esq. | VSB No. 18876
Don Scott, Esq. | VSB No. 88725
Scott M. Perry, Esq. | VSB No. 67417
Lauren Martin, Esq. | VSB No. 93653
Alexis Bale, Esq. | VSB No. 100318
Breit Biniazan, PC
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, VA 23451
Telephone | 757.622.6000
Facsimile | 757.299.8028
Email | kevin@bbtrial.com
Email | jeffrey@bbtrial.com

Email | don@bbtrial.com
Email | scott@bbtrial.com
Email | lmartin@bbtrial.com
Email | abale@bbtrial.com

*Counsel for Plaintiffs*

SEEN AND not objected. to

John R. Owen (VSB No. 39560)
Julie S. Palmer (VSB No. 65800)
John P. Dunnigan (VSB No. 93483)
Imani E. Sowell (VSB No. 95982)
HARMON, CLAYTOR, CORRIGAN, & WELLMAN
P.O. Box 70280
Richmond, Virginia 23255
(804) 747-5200 – Phone
(804) 747-6085 – Fax
jowen@hccw.com
jpalmer@hccw.com
jdunnigan@hccw.com
isowell@hccw.com

*Counsel for Defendants Blue Ridge Rescue
Suppliers. Inc. and Bradsden Solutions, Inc.*

## VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

### JONATHAN CLARKE

Plaintiff,

Civil Action No. **CL24002853-00**  $\Im$S$m$

v.

**3M COMPANY (f/k/a Minnesota
Mining and Manufacturing Company);
AGC CHEMICALS AMERICAS, INC.;
ARCHROMA U.S., INC.;
ARKEMA, INC.;
BLUE RIDGE RESCUE SUPPLIERS, INC.;
BRADSDEN SOLUTIONS, INC.;
DAIKIN AMERICA, INC.;
E.I. DU PONT DE NEMOURS AND
COMPANY, a/k/a EDIP, Inc.;
GLOBE MANUFACTURING COMPANY LLC;
HONEYWELL INTERNATIONAL, INC.;
HONEYWELL SAFETY PRODUCTS USA, INC.;
LION GROUP, INC.;
MALLORY SAFETY AND SUPPLY, LLC;
MINE SAFETY APPLIANCES COMPANY, LLC;
MSA SAFETY SALES, LLC;
MUNICIPAL EMERGENCY SERVICES INC.;
PBI PERFORMANCE PRODUCTS, INC.;
STEDFAST USA, INC.;
TENCATE PROTECTIVE FABRICS USA
d/b/a SOUTHERN MILLS INC.;
THE CHEMOURS COMPANY LLC;
and
W.L. GORE & ASSOCIATES, INC.;**

Defendants.

### ORDER ON PLAINTIFF'S MOTION FOR VOLUNTARY NONSUIT

CAME THIS DAY, pursuant to Virginia Code § 8.01-380, Plaintiff Jonathan Clarke, by

and through counsel, on Plaintiff's Motion for Voluntary Nonsuit of Defendant Mine Safety

Appliance Company, LLC.

IT APPEARING to the Court that Plaintiff has not previously moved to nonsuit the above-listed Defendant; that no motion to strike has been sustained nor this matter ever submitted to a jury or this Court for decision; and that this specific Defendant has never filed any counterclaims, cross claims, or third-party claims, this Court **FINDS** that Plaintiff has acted in accordance with Virginia Code § 8.01-380.

It is hereby **ORDERED** that Plaintiff's Motion for Nonsuit is **GRANTED** and Defendant Mine Safety Appliance Company, LLC is **DISMISSED** by nonsuit pursuant to Virginia Code § 8.01-380, subject to the rights and provisions set forth in Virginia Code § 8.01-229(E)(3).

Entered this 1st day of July 2025.

Judge

WE ASKED FOR THIS:

Kevin Biniazan, Esq. | VSB No. 92109
Jeffrey A. Breit, Esq. | VSB No. 18876
Don Scott, Esq. | VSB No. 88725
Scott M. Perry, Esq. | VSB No. 67417
Lauren Martin, Esq. | VSB No. 93653
Alexis Bale, Esq. | VSB No. 100318
Breit Biniazan, PC
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, VA 23451
Telephone | 757.622.6000
Facsimile | 757.299.8028
Email | kevin@bbtrial.com
Email | jeffrey@bbtrial.com

Email | don@bbtrial.com
Email | scott@bbtrial.com
Email | lmartin@bbtrial.com
Email | abale@bbtrial.com

*Counsel for Plaintiffs*

SEEN AND _not objected._ to

John R. Owen (VSB No. 39560)
June S. Palmer (VSB No. 65800)
John P. Dunnigan (VSB No. 93483)
Imani E. Sowell (VSB No. 95982)
HARMON, CLAYTOR, CORRIGAN, & WELLMAN
P.O. Box 70280
Richmond, Virginia 23255
(804) 747-5200 – Phone
(804) 747-6085 – Fax
jowen@hccw.com
jpalmer@hccw.com
jdunnigan@hccw.com
isowell@hccw.com

*Counsel for Defendants Blue Ridge Rescue
Suppliers, Inc. and Bradsden Solutions, Inc.*



**Baughman**
**Kroup Bosse**

One Liberty Plaza, Floor 46      500 East Main St., Suite 1400
New York, NY 10006               Norfolk, VA 23510
(212) 548-3212                   (757) 904-5373

July 16, 2025

**Via VJEFS Electronic Filing**

Hon. Edward F. Jewett, Clerk of Court
Richmond City Circuit Court
400 North Ninth Street
John Marshall Courts Building
Richmond, VA 23219

      RE:    *Jonathan Clarke v. 3M Company, et al.*
            No. CL24002853-00

Dear Clerk:

      Accompanying this letter please find a proposed Consent Order Extending Certain Defendants' Responsive Pleading Deadline in the above-mentioned matter.

      This order is presented with the consent of the parties in the above-referenced case, as indicated by their signatures. We request that it be delivered to Judge McClenney for entry at your earliest convenience.

      Should you have any questions, please contact me at (757) 916-5771 or abosse@bkbfirm.com.

      Thank you for your prompt attention.

                          Best regards,

                          */s/ Andrew Bosse*
                          Andrew Bosse

cc:    All counsel of record (by email)
       Phyllis Thomas, Judicial Assistant to Judge McClenney (courtesy copy by email)



40

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

| | |
|---|---|
| **JONATHAN CLARKE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **3M COMPANY, et al.,** | ) **Civil Action No. CL24002853-00** |
| | ) |
| **Defendants.** | ) |
| | ) |
| | ) |
| | ) |

## CONSENT ORDER EXTENDING CERTAIN DEFENDANTS' RESPONSIVE PLEADING DEADLINE

THIS MATTER came before the Court upon the motion for an extension of time to answer or otherwise respond to the First Amended Complaint, which motion was made by the following Defendants: 3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA, INC.; DAIKIN AMERICA, INC.; EIDP, INC. f/k/a E.I. DU PONT DE NEMOURS AND COMPANY; GLOBE MANUFACTURING COMPANY LLC; HONEYWELL INTERNATIONAL, INC.; HONEYWELL SAFETY PRODUCTS USA, INC.; LION GROUP, INC.; MSA SAFETY SALES, LLC; MUNICIPAL EMERGENCY SERVICES INC.; PBI PERFORMANCE PRODUCTS, INC.; STEDFAST USA, INC.; TENCATE PROTECTIVE FABRICS USA d/b/a SOUTHERN MILLS INC.; THE CHEMOURS COMPANY; and W.L. GORE & ASSOCIATES, INC. (collectively, the "Moving Defendants").[1]

---

[1] The Moving Defendants are all of the Defendants named in the First Amer        ty
Appliances Co. (nonsuited on July 1, 2025), Mallory Safety and Supply, LI        , and
Blue Ridge Rescue Suppliers, Inc. and Bradsden Solutions, Inc. (which hav        ).

Plaintiff consents to the requested extension, as indicated by the signature of his counsel hereto.

Accordingly, it is hereby ORDERED that the Moving Defendants' motion is granted and the Moving Defendants' deadline to answer or otherwise respond to the First Amended Complaint is extended through and including August 18, 2025.

By making this request, the Moving Defendants expressly reserve, and do not waive, any applicable defenses, including defenses as to jurisdiction and venue.

Entered this _____ day of _____, 2025.

_____
Circuit Court Judge

TOGETHER WE ASK FOR THIS:

By ___ /s/ Andrew Bosse _____
Andrew Bosse (VSB No. 98616)
Allison Melton (VSB No. 75192)
BAUGHMAN KROUP BOSSE PLLC
500 East Main Street, Suite 1400
Norfolk, Virginia 23510
Tel.: (757) 916-5771
Fax: (757) 266-5585
abosse@bkbfirm.com
amelton@bkbfirm.com

*Counsel for Defendants Honeywell International, Inc. and Honeywell Safety Products USA, Inc.*

By ___ /s/ Matthew J. Hundley _____
Matthew J. Hundley (VSB No. 76865)
BUTLER SNOW LLP
919 E. Main St., Suite 600
Richmond, Virginia 23219
Tel.: (804) 762-6041

Fax: (804) 762-6031
Matthew.hundley@butlersnow.com

*Counsel for Defendant 3M Company*

By ___ /s/ Andrew D. Kaplan
Andrew D. Kaplan (VSB No. 45530)
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel.: (202) 624.2500
akaplan@crowell.com

*Counsel for Defendant AGC Chemicals Americas, Inc.*

By ___ /s/ Michael F. Williams
Michael F. Williams, P.C. (VSB No. 96545)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, D.C. 20004
Tel.: (202) 389-5000
Fax: (202) 389-5200
mwilliams@kirkland.com

*Counsel for Defendant Archroma U.S., Inc.*

By ___ /s/ C. Thea Pitzen
C. Thea Pitzen, Esq. (VSB No. 90152)
Goodman Allen Donnelly, PLLC
Town Point Center
150 Boush Street, Suite 900
Norfolk, Virginia 23510
Tel.: (757) 625-1400
Fax: (757) 625-7701
tpitzen@goodmanallen.com

*Counsel for Defendant Arkema, Inc.*

By ___ /s/ William G. Laxton, Jr.
William G. Laxton, Jr. (VSB No. 75110)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: (202) 879-3939

3

Fax: (202) 626-1700
wglaxton@jonesday.com

Theodore M. Grossman (*pro hac vice forthcoming*)
JONES DAY
250 Vesey Street
New York, NY 10281
Tel.: (212) 326-3939
Fax: (212) 755-7306
tgrossman@jonesday.com

Louis A. Chaiten (*pro hac vice forthcoming*)
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44144
Tel.: (216) 586-7244
Fax: (216) 579-0212
lchaiten@jonesday.com

*Counsel for Defendant Daikin America, Inc.*
*(by Special Appearance)*

By _____ /s/ Caitlin R. Convery _____
Caitlin R. Convery (VSB No. 99741)
SHOOK, HARDY & BACON LLP
1800 K Street, N.W., Suite 1000
Washington, D.C. 20006
Tel: (202) 639-5603
Fax: (202) 783-4211
cconvery@shb.com

Amy Crouch (*pro hac vice forthcoming)*
Brent Dwerlkotte (*pro hac vice forthcoming)*
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108
Tel.: (816) 474-6550
Fax: (816) 421-5547
amcrouch@shb.com
dbdwerlkotte@shb.com

*Counsel for Defendants EIDP, Inc., f/k/a E. I. du Pont de Nemours and Company and*
*The Chemours Company*

4

By ___ /s/ Lynn K. Brugh, IV _____
Lynn K. Brugh, IV (VSB No. 36778)
Williams Mullen
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Tel.: (804) 450-6461
Fax: (804) 420-6507
lbrugh@williamsmullen.com

*Counsel for Defendants Globe Manufacturing Company, LLC and MSA Safety Sales, LLC*

By ___ /s/ Paul C. Kuhnel _____

Paul C. Kuhnel (VSB No. 28151)
Lewis Brisbois Bisgaard & Smith LLP
10 S. Jefferson St., Suite 1100
Roanoke, VA 24011
Tel.: (540) 283-0130
Fax: (540) 283-0044
Paul.Kuhnel@lewisbrisbois.com

*Counsel for Defendant Lion Group, Inc.*

By ___ /s/ Jeffrey Golimowski _____
Jeffrey Golimowski (VSB No. 93525)
WOMBLE BOND DICKINSON-US, LLP
8350 Broad Street, Suite 1500
Tysons, VA 22120
Tel.: (703) 394-2275
Jeff.Golimowski@wbd-us.com

*Counsel for Defendant Municipal Emergency Services, Inc.*

By ___ /s/ Michael A. Montgomery _____
Michael A. Montgomery (VSB No. 40297)
Eckert Seamans Cherin & Mellott, LLC
919 East Main Street, Suite 1300
Richmond, Virginia 23219
Tel: (804) 788-7740
Fax: (804) 698-2950
mmontgomery@eckertseamans.com

Edward J. Longosz, II (VSB No. 39411)
Eckert Seamans Cherin & Mellott, LLC
1717 Pennsylvania Avenue, NW Suite 1200
Washington, D.C. 20006
Tel: (202) 659-6619

Fax: (202) 659-6699
elongosz@eckertseamans.com

*Counsel for Defendant PBI Performance Products, Inc.*

By ____ /s/ John A. Nader _____
John A. Nader, Esq. (VSB No. 73259)
Hinshaw & Culbertson LLP
700 12th Street, N.W., Suite 700
Washington, D.C. 20005
Tel: (202) 979-5280
Fax: (212) 935-1166
jnader@hinshawlaw.com

*Counsel for Defendant Stedfast USA, Inc.*

By ____ /s/ John T. Bergin _____
John T. Bergin (VSB No. 37576)
KILPATRICK STOCKTON TOWNSEND LLP
701 Pennsylvania Avenue, NW, Suite 200
Washington, DC USA 20004
Tel. (202) 481-9942
jbergin@ktslaw.com

*Counsel for Defendant Tencate Protective Fabrics USA
d/b/a Southern Mills Inc.*

By ____ /s/ Martin A. Conn _____
Martin A. Conn, Esq. (VSB No. 39133)
Stewart R. Pollock, Esq. (VSB No. 92466)
Ashley A. Davoli, Esq. (VSB No. 93466)
MORAN REEVES & CONN, PC
1211 E. Cary Street
Richmond, Virginia 23219
Tel.: (804) 421-6250
Fax: (804) 421-6251
mconn@moranreevesconn.com
spollock@moranreevesconn.com
adavoli@moranreevesconn.com

*Counsel for Defendant W. L. Gore & Associates, Inc.
(by special appearance)*

SEEN AND AGREED:

By _____
Kevin Biniazan, Esq. (VSB No. 92109)
Lauren A. Martin (VSB No. 93653)
BREIT BINIAZAN, P.C.
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, VA 23451-4088
Tel.: (757) 622-6000
Fax: (757) 299-8028
kevin@bbtrial.com
lmartin@bbtrial.com

*Counsel for Plaintiff Jonathan Clarke*

SEEN AND NO OBJECTION:

By ___ /s/ John R. Owen _____
John R. Owen (VSB No. 39560)
Julie S. Palmer (VSB No. 65800)
John P. Dunnigan (VSB No. 93483)
Imani E. Sowell (VSB No. 95982)
Yevgeniy K. Klinovskiy (VSB No. 98264)
HARMAN, CLAYTOR, CORRIGAN & WELLMAN
P.O. Box 70280
Richmond, Virginia 23255
Tel.: (804) 747-5200
Fax: (804) 747-6085
jowen@hccw.com
jpalmer@hccw.com
jdunnigan@hccw.com
isowell@hccw.com
yklinovskiy@hccw.com

*Counsel for Defendant Blue Ridge Rescue Suppliers, Inc.
improperly named as Bradsden Solutions, Inc.*

8

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

| | |
|---|---|
| **JONATHAN CLARKE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Civil Action No. CL24002853-00** JSM |
| **3M COMPANY, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |
| | ) |
| | ) |

### CONSENT ORDER EXTENDING CERTAIN DEFENDANTS' RESPONSIVE PLEADING DEADLINE

THIS MATTER came before the Court upon the motion for an extension of time to answer or otherwise respond to the First Amended Complaint, which motion was made by the following Defendants: 3M COMPANY; AGC CHEMICALS AMERICAS, INC.; ARCHROMA U.S., INC.; ARKEMA, INC.; DAIKIN AMERICA, INC.; EIDP, INC. f/k/a E.I. DU PONT DE NEMOURS AND COMPANY; GLOBE MANUFACTURING COMPANY LLC; HONEYWELL INTERNATIONAL, INC.; HONEYWELL SAFETY PRODUCTS USA, INC.; LION GROUP, INC.; MSA SAFETY SALES, LLC; MUNICIPAL EMERGENCY SERVICES INC.; PBI PERFORMANCE PRODUCTS, INC.; STEDFAST USA, IN                          E FABRICS USA d/b/a SOUTHERN MILLS INC.; THE CHEM                          ... GORE & ASSOCIATES, INC. (collectively, the "Moving Defer

---

[1] The Moving Defendants are all of the Defendants named in the First Amended Complaint except for Mine Safety Appliances Co. (nonsuited on July 1, 2025), Mallory Safety and Supply, LLC (anticipated nonsuit forthcoming), and Blue Ridge Rescue Suppliers, Inc. and Bradsden Solutions, Inc. (which have already filed a responsive pleading).

Plaintiff consents to the requested extension, as indicated by the signature of his counsel hereto.

Accordingly, it is hereby ORDERED that the Moving Defendants' motion is granted and the Moving Defendants' deadline to answer or otherwise respond to the First Amended Complaint is extended through and including August 18, 2025.

By making this request, the Moving Defendants expressly reserve, and do not waive, any applicable defenses, including defenses as to jurisdiction and venue.

Entered this 18 day of July, 2025.

Circuit Court Judge

TOGETHER WE ASK FOR THIS:

By ___ /s/ Andrew Bosse ___
Andrew Bosse (VSB No. 98616)
Allison Melton (VSB No. 75192)
BAUGHMAN KROUP BOSSE PLLC
500 East Main Street, Suite 1400
Norfolk, Virginia 23510
Tel.: (757) 916-5771
Fax: (757) 266-5585
abosse@bkbfirm.com
amelton@bkbfirm.com

*Counsel for Defendants Honeywell International, Inc. and Honeywell Safety Products USA, Inc.*

By ___ /s/ Matthew J. Hundley ___
Matthew J. Hundley (VSB No. 76865)
BUTLER SNOW LLP
919 E. Main St., Suite 600
Richmond, Virginia 23219
Tel.: (804) 762-6041

2

Fax: (804) 762-6031
Matthew.hundley@butlersnow.com

*Counsel for Defendant 3M Company*

By ___ /s/ Andrew D. Kaplan___
Andrew D. Kaplan (VSB No. 45530)
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel.: (202) 624.2500
akaplan@crowell.com

*Counsel for Defendant AGC Chemicals Americas, Inc.*

By ___ /s/ Michael F. Williams___
Michael F. Williams, P.C. (VSB No. 96545)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, D.C. 20004
Tel.: (202) 389-5000
Fax: (202) 389-5200
mwilliams@kirkland.com

*Counsel for Defendant Archroma U.S., Inc.*

By ___ /s/ C. Thea Pitzen___
C. Thea Pitzen, Esq. (VSB No. 90152)
Goodman Allen Donnelly, PLLC
Town Point Center
150 Boush Street, Suite 900
Norfolk, Virginia 23510
Tel.: (757) 625-1400
Fax: (757) 625-7701
tpitzen@goodmanallen.com

*Counsel for Defendant Arkema, Inc.*

By ___ /s/ William G. Laxton, Jr.___
William G. Laxton, Jr. (VSB No. 75110)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: (202) 879-3939

3

Fax: (202) 626-1700
wglaxton@jonesday.com

Theodore M. Grossman (*pro hac vice forthcoming*)
JONES DAY
250 Vesey Street
New York, NY 10281
Tel.: (212) 326-3939
Fax: (212) 755-7306
tgrossman@jonesday.com

Louis A. Chaiten (*pro hac vice forthcoming*)
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44144
Tel.: (216) 586-7244
Fax: (216) 579-0212
lchaiten@jonesday.com

*Counsel for Defendant Daikin America, Inc.*
(*by Special Appearance*)

By ___ /s/ Caitlin R. Convery
Caitlin R. Convery (VSB No. 99741)
SHOOK, HARDY & BACON LLP
1800 K Street, N.W., Suite 1000
Washington, D.C. 20006
Tel: (202) 639-5603
Fax: (202) 783-4211
cconvery@shb.com

Amy Crouch (*pro hac vice forthcoming)*
Brent Dwerlkotte (*pro hac vice forthcoming)*
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108
Tel.: (816) 474-6550
Fax: (816) 421-5547
amcrouch@shb.com
dbdwerlkotte@shb.com

*Counsel for Defendants EIDP, Inc., f/k/a E. I. du Pont de Nemours and Company and
The Chemours Company*

4

By ___ /s/ Lynn K. Brugh, IV _____
Lynn K. Brugh, IV (VSB No. 36778)
Williams Mullen
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Tel.: (804) 450-6461
Fax: (804) 420-6507
lbrugh@williamsmullen.com

*Counsel for Defendants Globe Manufacturing Company, LLC and MSA Safety Sales, LLC*

By ___ /s/ Paul C. Kuhnel _____

Paul C. Kuhnel (VSB No. 28151)
Lewis Brisbois Bisgaard & Smith LLP
10 S. Jefferson St., Suite 1100
Roanoke, VA 24011
Tel.: (540) 283-0130
Fax: (540) 283-0044
Paul.Kuhnel@lewisbrisbois.com

*Counsel for Defendant Lion Group, Inc.*

By ___ /s/ Jeffrey Golimowski _____
Jeffrey Golimowski (VSB No. 93525)
WOMBLE BOND DICKINSON-US, LLP
8350 Broad Street, Suite 1500
Tysons, VA 22120
Tel.: (703) 394-2275
Jeff.Golimowski@wbd-us.com

*Counsel for Defendant Municipal Emergency Services, Inc.*

By ___ /s/ Michael A. Montgomery _____
Michael A. Montgomery (VSB No. 40297)
Eckert Seamans Cherin & Mellott, LLC
919 East Main Street, Suite 1300
Richmond, Virginia 23219
Tel: (804) 788-7740
Fax: (804) 698-2950
mmontgomery@eckertseamans.com

Edward J. Longosz, II (VSB No. 39411)
Eckert Seamans Cherin & Mellott, LLC
1717 Pennsylvania Avenue, NW Suite 1200
Washington, D.C. 20006
Tel: (202) 659-6619

5

Fax: (202) 659-6699
elongosz@eckertseamans.com

*Counsel for Defendant PBI Performance Products, Inc.*

By ___ /s/ John A. Nader
John A. Nader, Esq. (VSB No. 73259)
Hinshaw & Culbertson LLP
700 12th Street, N.W., Suite 700
Washington, D.C. 20005
Tel: (202) 979-5280
Fax: (212) 935-1166
jnader@hinshawlaw.com

*Counsel for Defendant Stedfast USA, Inc.*

By ___ /s/ John T. Bergin
John T. Bergin (VSB No. 37576)
KILPATRICK STOCKTON TOWNSEND LLP
701 Pennsylvania Avenue, NW, Suite 200
Washington, DC USA 20004
Tel. (202) 481-9942
jbergin@ktslaw.com

*Counsel for Defendant Tencate Protective Fabrics USA
d/b/a Southern Mills Inc.*

By ___ /s/ Martin A. Conn
Martin A. Conn, Esq. (VSB No. 39133)
Stewart R. Pollock, Esq. (VSB No. 92466)
Ashley A. Davoli, Esq. (VSB No. 93466)
MORAN REEVES & CONN, PC
1211 E. Cary Street
Richmond, Virginia 23219
Tel.: (804) 421-6250
Fax: (804) 421-6251
mconn@moranreevesconn.com
spollock@moranreevesconn.com
adavoli@moranreevesconn.com

*Counsel for Defendant W. L. Gore & Associates, Inc.
(by special appearance)*

SEEN AND AGREED:

By _____
Kevin Biniazan, Esq. (VSB No. 92109)
Lauren A. Martin (VSB No. 93653)
BREIT BINIAZAN, P.C.
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, VA 23451-4088
Tel.: (757) 622-6000
Fax: (757) 299-8028
kevin@bbtrial.com
lmartin@bbtrial.com

*Counsel for Plaintiff Jonathan Clarke*

SEEN AND NO OBJECTION:

By ___ /s/ John R. Owen _____
John R. Owen (VSB No. 39560)
Julie S. Palmer (VSB No. 65800)
John P. Dunnigan (VSB No. 93483)
Imani E. Sowell (VSB No. 95982)
Yevgeniy K. Klinovskiy (VSB No. 98264)
HARMAN, CLAYTOR, CORRIGAN & WELLMAN
P.O. Box 70280
Richmond, Virginia 23255
Tel.: (804) 747-5200
Fax: (804) 747-6085
jowen@hccw.com
jpalmer@hccw.com
jdunnigan@hccw.com
isowell@hccw.com
yklinovskiy@hccw.com

*Counsel for Defendant Blue Ridge Rescue Suppliers, Inc.*
*improperly named as Bradsden Solutions, Inc.*

8

**VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND**

**JONATHAN CLARKE**

      **Plaintiff,**

                                **Civil Action No. CL24002853-00**

v.

**3M COMPANY (f/k/a Minnesota
Mining and Manufacturing Company),
et al.,**

      **Defendants.**

### ENTRY OF SPECIAL APPEARANCE

      THE CLERK OF THE COURT will please note the appearance of Gordon S. Woodward,

Esq. of the Firm, Gordon Rees Scully Mansukhani, as Co-Counsel of record for Mallory Safety

and Supply LLC ("Mallory"), for the specific purpose of challenging personal jurisdiction in this

matter. Mr. Woodward shall serve as Counsel along with Michael J. Mehall, Esq., also of Gordon

Rees Scully Mansukhani.

Dated: August 4, 2025           */s/ Gordon S. Woodward*

                                  Gordon S. Woodward (VSB 42449)
                                  GORDON REES SCULLY MANSUKHANI, LLC
                                  277 S. Washington Street, Suite 550
                                  Alexandria, VA 22314
                                  Tel: 301-512-9218
                                  Fax: 202-800-2999
                                  Email: gwoodward@grsm.com



43

## CERTIFICATE OF SERVICE

I HEEREBY CERTIFY that a copy of the foregoing was filed and served upon all counsel of record on this 4th day of August, 2025 via the Virginia Judiciary Electronic Filing System (VJEFS).

*/s/ Gordon S. Woodward*

Gordon S. Woodward (VSB 42449)

Uploaded Case 3:25-cv-00739-RCY Document 1-4 Filed 00/12/25 Released Dt. Er 102 of 346 PageID# 581
eFiled: 2025AUG04 RICHMOND CITY CC JKENNEDY at 2025AUG07 10:53 CL24002853-00    Page 102 of 346 PageID# 581

**VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND**

**JONATHAN CLARKE**

    **Plaintiff,**

                                         **Civil Action No. CL24002853-00**

v.

**3M COMPANY (f/k/a Minnesota**
**Mining and Manufacturing Company),**
**et al.,**
    **Defendants.**

## STIPULATED DISMISSAL ORDER

CAME THIS DAY, Plaintiff Jonathan Clarke, by counsel, and Defendant Mallory Safety and Supply LLC ("Mallory"), by counsel, and, by stipulation, sought dismissal of Mallory as a party Defendant in this litigation, without prejudice. Plaintiff and Mallory have stipulated to the following:

WHEREAS, Plaintiff Jonathan Clarke has asserted, or intends to further assert, claims against Mallory arising from the Plaintiff's alleged exposure to PFAS chemicals in firefighting turnout gear; and

WHEREAS, Mallory denies any responsibility or liability for Plaintiff's claims, injuries, death, and/or damages or other relief, and further denied that they are a proper Defendant in cases arising from alleged exposure to PFAS chemicals in firefighting turnout gear, except for an extremely small number of exposures which occurred after 2004 and in limited markets;

THEREFORE, Plaintiff Clarke and Defendant Mallory hereby stipulate and agree as follows:

    1.    Mallory will be dismissed as a party Defendant from this case, without prejudice;

2.     Plaintiff will refrain from naming Mallory as a party Defendant in any forthcoming Complaints, unless information later arises demonstrating Mallory is a proper Defendant;

3.     Plaintiff's statute of limitations for claims against Mallory and its successors or assignees is hereby tolled and such tolling expires upon the commencement of trial or final dismissal of Plaintiff's lawsuits alleging injury and/or death arising out of PFAS chemical exposures in firefighting turnout gear (whichever occurs first);

4.     In the event that Plaintiff seeks to add Mallory as a Defendant in his lawsuit based upon information or evidence demonstrating Mallory is a proper Defendant, as determined by Plaintiff, Mallory will not contest amendment of Plaintiff Clarke's lawsuit to add Mallory as a Defendant;

5.     Mallory does not waive any defenses it may have to Plaintiff's claims including personal jurisdiction and retains the right to raise such defenses, and the Parties agree that this Stipulation does not constitute conduct related to adjudication of the merits of the case.

6.     The agreement to toll the statute of limitation and consent to any effort to amend Plaintiff Clarke's complaint to add Mallory expires and terminates upon the commencement of trial or final dismissal of Plaintiff Clarke's lawsuits alleging injury and/or death arising out of PFAS chemical exposures in firefighting turnout gear (whichever occurs first);

7.     Mallory agrees to the appointment of the following registered agent in Virginia for the purpose of receiving service of a subpoena duces tecum throughout the duration of Plaintiff's lawsuit(s) alleging injuries and/or death arising out of PFAS chemical exposure in firefighting turnout gear;

Registered Agent:     Northwest Registered Agent LLC
Address:              8401 Mayland Drive, Ste. A, Henrico, VA 23294

8. This Stipulation can be executed in counterparts and photocopies of signature pages and/or facsimile copies of signature pages will be treated as originals; and

9.    In the event that any portion of this Stipulation shall be found void or voidable by a court or other tribunal of competent jurisdiction, such portion shall be stricken and the Stipulation reformed to approximate, as closely as the law permits, the intent of the stricken portion or portions.

## IT IS SO ORDERED.

ENTERED THIS ____ DAY OF _____, 2025

_____

Judge

**WE ASK FOR THIS:**

Kevin Biniazan, Esq. | VSB No. 92109
Jeffrey A. Breit, Esq. | VSB No. 18876
Don Scott, Esq. | VSB No. 88725
Scott M. Perry, Esq. | VSB No. 67417
Lauren Martin, Esq. | VSB No. 93653
Alexis Bale, Esq. | VSB No. 100318
Breit Biniazan, PC
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, VA 23451
Telephone | 757.622.6000
Facsimile | 757.299.8028
Email | kevin@bbtrial.com
Email | jeffrey@bbtrial.com
Email | don@bbtrial.com

Email | scott@bbtrial.com
Email | lmartin@bbtrial.com
Email | abale@bbtrial.com

*Counsel for Plaintiffs*

Gordon S. Woodward (VSB 42449)
GORDON REES SCULLY MANSUKHANI, LLC
277 S. Washington Street, Suite 550
Alexandria, VA 22314
Tel: 301-512-9218
Fax: 202-800-2999
Email: gwoodward@grsm.com

Michael J. Mehall
GORDON REES SCULLY MANSUKHANI, LLC
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596
Tel: 925-465-3353
Email: mmehall@grsm.com

*Attorneys for Mallory Safety and Supply LLC*

**SEEN AND** Agreed.

John R. Owen (VSB No. 39560)
Julie S. Palmer (VSB No. 65800)
John P. Dunnigan (VSB No. 93483)
Imani E. Sowell (VSB No. 95982)
HARMON, CLAYTOR, CORRIGAN, & WELLMAN
P.O. Box 70280
Richmond, Virginia 23255
(804) 747-5200 – Phone

(804) 747-6085 – Fax
jowen@hccw.com
jpalmer@hccw.com
jdunnigan@hccw.com
isowell@hccw.com

*Counsel for Defendants Blue Ridge Rescue*
*Suppliers, Inc. and Bradsden Solutions, Inc.*

**VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND**

**JONATHAN CLARKE**

Plaintiff,

Civil Action No. **CL24002853-00**

v.

**3M COMPANY (f/k/a Minnesota**
**Mining and Manufacturing Company),**
**et al.,**

Defendants.

## STIPULATED DISMISSAL ORDER

CAME THIS DAY, Plaintiff Jonathan Clarke, by counsel, and Defendant PBI Performance Products, Inc. ("PBI"), by special appearance of counsel, and, by stipulation, sought dismissal of PBI as a party defendant in this litigation, without prejudice. Plaintiff and PBI have stipulated to the following:

WHEREAS, Plaintiff Jonathan Clarke has asserted, or intends to further assert, claims against PBI arising from the Plaintiff's alleged exposure to PFAS chemicals in firefighting turnout gear; and

WHEREAS, PBI denies any responsibility or liability for Plaintiff's claims, injuries, death, and/or damages or other relief, and further denied that they are a proper defendant in cases arising from alleged exposure to PFAS chemicals in firefighting turnout gear, at least insofar as specifically Plaintiff's claims have alleged; and

THEREFORE, Plaintiff Clarke and PBI hereby stipulate and agree as follows:

1.    PBI will be dismissed as a party defendant from this case, without prejudice;

2.     Plaintiff will refrain from naming PBI as a party defendant in any forthcoming Complaints, unless information later arises demonstrating PBI is a proper defendant;

3.     Plaintiff's statute of limitations for claims against PBI and its successors or assignees is hereby tolled and such tolling expires upon the commencement of trial or final dismissal of Plaintiff's lawsuits alleging injury and/or death arising out of PFAS chemical exposures in firefighting turnout gear (whichever occurs first);

4.     In the event that Plaintiff seeks to add PBI as a defendant in his lawsuit based upon information or evidence demonstrating PBI is a proper defendant, as determined by Plaintiff, PBI will not contest amendment of that Plaintiff's lawsuit to add PBI as a defendant;

5.     This Stipulation does not waive any defenses on the part of PBI to any Complaint or Amended Complaint, including jurisdiction and venue.

6.     The agreement to toll the statute of limitation and consent to any effort to amend the complaint to add PBI expires and terminates upon the commencement of trial or final dismissal of Plaintiff's lawsuits alleging injury and/or death arising out of PFAS chemical exposures in firefighting turnout gear (whichever occurs first);

7.     PBI agrees to the appointment of the following registered agent in North Carolina for the purpose of receiving service of a subpoena duces tecum throughout the duration of Plaintiff's lawsuit(s) alleging injuries and/or death arising out of PFAS chemical exposure in firefighting turnout gear;

Registered Agent Name: Corporation Service Company

Address: 2626 Glenwood Avenue, Suite 550
Raleigh, NC 27608

8.   This Stipulation is being endorsed by Counsel for each of the parties; and

2

9. In the event that any portion of this Stipulation shall be found void or voidable by a court or other tribunal of competent jurisdiction, such portion shall be stricken and the Stipulation reformed to approximate, as closely as the law permits, the intent of the stricken portion or portions.

**IT IS SO ORDERED.**

ENTERED THIS _____ DAY OF _____, 2025

_____
Judge

**WE ASKED FOR THIS:**

Kevin Biniazan, Esq. | VSB No. 92109
Jeffrey A. Breit, Esq. | VSB No. 18876
Don Scott, Esq. | VSB No. 88725
Scott M. Perry, Esq. | VSB No. 67417
Lauren Martin, Esq. | VSB No. 93653
Alexis Bale, Esq. | VSB No. 100318
Breit Biniazan, PC
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, VA 23451
Telephone | 757.622.6000
Facsimile | 757.299.8028
Email | kevin@bbtrial.com
Email | jeffrey@bbtrial.com
Email | don@bbtrial.com
Email | scott@bbtrial.com
Email | lmartin@bbtrial.com
Email | abale@bbtrial.com

*Counsel for Plaintiffs*

3

**SEEN AND AGREED:**

Signed on behalf of
Edward Longosz
07/31/2025
(VSB NO. 100318)

Edward J. Longosz, II (VSB No. 39411)
Eckert Seamans Cherin & Mellott. LLC
1717 Pennsylvania Avenue, NW., Suite 1200
Washington, DC 20006
ELongosz@eckertseamans.com
Tel:  202-659-6619
Fax:  202-659-6699

Michael A. Montgomery (VSB No.: 40297)
Eckert Seamans Cherin & Mellott, LLC
919 East Main Street, Suite 1300
Richmond, VA 23219
MMontgomery@eckertseamans.com
Tel:  804-788-7740
Fax:  804-698-2950

Peter J. Van Zandt (CSB No.: 152321)
Allen Glaessner Hazelwood & Werth, LLP
180 Montgomery Street, Suite 1200
San Francisco, CA 94104
pvanzandt@aghwlaw.com
Main 415.697.2000
Direct: 415.697.2194

*Counsel for PBI Performance Products, Inc*
*(by Special Appearance)*

4

SEEN AND *Agreed*

John R. Owen (VSB No. 39560)
Julie S. Palmer (VSB No. 65800)
John P. Dunnigan (VSB No. 93483)
Imani E. Sowell (VSB No. 95982)
Yevgeniy K. Klinovskiy (VSB No. 98264)
HARMAN, CLAYTOR, CORRIGAN & WELLMAN
P.O. Box 70280
Richmond, Virginia 23255
Tel.: (804) 747-5200
Fax: (804) 747-6085
jowen@hccw.com
jpalmer@hccw.com
jdunnigan@hccw.com
isowell@hccw.com
yklinovskiy@hccw.com
*Counsel for Defendant Blue Ridge Rescue Suppliers, Inc.*
*improperly named as Bradsden Solutions, Inc.*

5

VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

JONATHAN CLARKE

      Plaintiff,

                                  Civil Action No. CL24002853-00 - JSM

v.

3M COMPANY (f/k/a Minnesota
Mining and Manufacturing Company),
et al.,
      Defendants.

## STIPULATED DISMISSAL ORDER

      CAME THIS DAY, Plaintiff Jonathan Clarke, by counsel, and Defendant Mallory Safety

and Supply LLC ("Mallory"), by counsel, and, by stipulation, sought dismissal of Mallory as a

party Defendant in this litigation, without prejudice. Plaintiff and Mallory have stipulated to the

following:

      WHEREAS, Plaintiff Jonathan Clarke has asserted, or intends to further assert, claims

against Mallory arising from the Plaintiff's alleged exposure to PFAS chemicals in firefighting

turnout gear; and

      WHEREAS, Mallory denies any responsibility or liability for Plaintiff's claims, injuries,

death, and/or damages or other relief, and further denied that they are a proper Defendant in cases

arising from alleged exposure to PFAS chemicals in firefighting turnout gear, except for an

extremely small number of exposures which occurred after 2004 and in limited markets;

      THEREFORE, Plaintiff Clarke and Defendant Mallory hereby stipulate and agree as

follows:

      1.     Mallory will be dismissed as a party Defendant from this case, without prejudice;

2.      Plaintiff will refrain from naming Mallory as a party Defendant in any forthcoming Complaints, unless information later arises demonstrating Mallory is a proper Defendant;

3.      Plaintiff's statute of limitations for claims against Mallory and its successors or assignees is hereby tolled and such tolling expires upon the commencement of trial or final dismissal of Plaintiff's lawsuits alleging injury and/or death arising out of PFAS chemical exposures in firefighting turnout gear (whichever occurs first);

4.      In the event that Plaintiff seeks to add Mallory as a Defendant in his lawsuit based upon information or evidence demonstrating Mallory is a proper Defendant, as determined by Plaintiff, Mallory will not contest amendment of Plaintiff Clarke's lawsuit to add Mallory as a Defendant;

5.      Mallory does not waive any defenses it may have to Plaintiff's claims including personal jurisdiction and retains the right to raise such defenses, and the Parties agree that this Stipulation does not constitute conduct related to adjudication of the merits of the case.

6.      The agreement to toll the statute of limitation and consent to any effort to amend Plaintiff Clarke's complaint to add Mallory expires and terminates upon the commencement of trial or final dismissal of Plaintiff Clarke's lawsuits alleging injury and/or death arising out of PFAS chemical exposures in firefighting turnout gear (whichever occurs first);

7.      Mallory agrees to the appointment of the following registered agent in Virginia for the purpose of receiving service of a subpoena duces tecum throughout the duration of Plaintiff's lawsuit(s) alleging injuries and/or death arising out of PFAS chemical exposure in firefighting turnout gear;

Registered Agent:      Northwest Registered Agent LLC
Address:               8401 Mayland Drive, Ste. A, Henrico, VA 23294

8. This Stipulation can be executed in counterparts and photocopies of signature pages and/or facsimile copies of signature pages will be treated as originals; and

9.    In the event that any portion of this Stipulation shall be found void or voidable by a court or other tribunal of competent jurisdiction, such portion shall be stricken and the Stipulation reformed to approximate, as closely as the law permits, the intent of the stricken portion or portions.

**IT IS SO ORDERED.**

ENTERED THIS 12th DAY OF August , 2025

Judge

**WE ASK FOR THIS:**

Kevin Biniazan. Esq. | VSB No. 92109
Jeffrey A. Breit, Esq. | VSB No. 18876
Don Scott, Esq. | VSB No. 88725
Scott M. Perry, Esq. | VSB No. 67417
Lauren Martin, Esq. | VSB No. 93653
Alexis Bale, Esq. | VSB No. 100318
Breit Biniazan, PC
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, VA 23451
Telephone | 757.622.6000
Facsimile | 757.299.8028
Email | kevin@bbtrial.com
Email | jeffrey@bbtrial.com
Email | don@bbtrial.com

Email | scott@bbtrial.com
Email | lmartin@bbtrial.com
Email | abale@bbtrial.com

*Counsel for Plaintiffs*

Gordon S. Woodward (VSB 42449)
GORDON REES SCULLY MANSUKHANI, LLC
277 S. Washington Street, Suite 550
Alexandria, VA 22314
Tel: 301-512-9218
Fax: 202-800-2999
Email: gwoodward@grsm.com

Michael J. Mehall
GORDON REES SCULLY MANSUKHANI, LLC
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596
Tel: 925-465-3353
Email: mmehall@grsm.com

*Attorneys for Mallory Safety and Supply LLC*

SEEN AND Agreed.

John R. Owen (VSB No. 39560)
Julie S. Palmer (VSB No. 65800)
John P. Dunnigan (VSB No. 93483)
Imani E. Sowell (VSB No. 95982)
HARMON, CLAYTOR, CORRIGAN, & WELLMAN
P.O. Box 70280
Richmond, Virginia 23255
(804) 747-5200 – Phone

(804) 747-6085 – Fax
jowen@hccw.com
jpalmer@hccw.com
jdunnigan@hccw.com
isowell@hccw.com

*Counsel for Defendants Blue Ridge Rescue
Suppliers, Inc. and Bradsden Solutions, Inc.*

**VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND**

**JONATHAN CLARKE**

       **Plaintiff,**

                                  **Civil Action No. CL24002853-00 - ᴊSm**

v.

**3M COMPANY (f/k/a Minnesota
Mining and Manufacturing Company),
et al.,**

       **Defendants.**

## STIPULATED DISMISSAL ORDER

    CAME THIS DAY, Plaintiff Jonathan Clarke, by counsel, and Defendant PBI Performance

Products, Inc. ("PBI"), by special appearance of counsel, and, by stipulation, sought dismissal of

PBI as a party defendant in this litigation, without prejudice. Plaintiff and PBI have stipulated to

the following:

    WHEREAS, Plaintiff Jonathan Clarke has asserted, or intends to further assert, claims

against PBI arising from the Plaintiff's alleged exposure to PFAS chemicals in firefighting turnout

gear; and

    WHEREAS, PBI denies any responsibility or liability for Plaintiff's claims, injuries, death,

and/or damages or other relief, and further denied that they are a proper defendant in cases arising

from alleged exposure to PFAS chemicals in firefighting turnout gear, at least insofar as

specifically Plaintiff's claims have alleged; and

    THEREFORE, Plaintiff Clarke and PBI hereby stipulate and agree as follows:

    1.    PBI will be dismissed as a party defendant from this case, without prejudice;

2.      Plaintiff will refrain from naming PBI as a party defendant in any forthcoming Complaints, unless information later arises demonstrating PBI is a proper defendant;

3.      Plaintiff's statute of limitations for claims against PBI and its successors or assignees is hereby tolled and such tolling expires upon the commencement of trial or final dismissal of Plaintiff's lawsuits alleging injury and/or death arising out of PFAS chemical exposures in firefighting turnout gear (whichever occurs first);

4.      In the event that Plaintiff seeks to add PBI as a defendant in his lawsuit based upon information or evidence demonstrating PBI is a proper defendant, as determined by Plaintiff, PBI will not contest amendment of that Plaintiff's lawsuit to add PBI as a defendant;

5.      This Stipulation does not waive any defenses on the part of PBI to any Complaint or Amended Complaint, including jurisdiction and venue.

6.      The agreement to toll the statute of limitation and consent to any effort to amend the complaint to add PBI expires and terminates upon the commencement of trial or final dismissal of Plaintiff's lawsuits alleging injury and/or death arising out of PFAS chemical exposures in firefighting turnout gear (whichever occurs first);

7.      PBI agrees to the appointment of the following registered agent in North Carolina for the purpose of receiving service of a subpoena duces tecum throughout the duration of Plaintiff's lawsuit(s) alleging injuries and/or death arising out of PFAS chemical exposure in firefighting turnout gear;

Registered Agent Name: Corporation Service Company

Address: 2626 Glenwood Avenue, Suite 550
Raleigh, NC 27608

8. This Stipulation is being endorsed by Counsel for each of the parties; and

2

9.    In the event that any portion of this Stipulation shall be found void or voidable by a court or other tribunal of competent jurisdiction, such portion shall be stricken and the Stipulation reformed to approximate, as closely as the law permits, the intent of the stricken portion or portions.

**IT IS SO ORDERED.**

ENTERED THIS 12 DAY OF August, 2025

Judge

**WE ASKED FOR THIS:**

Kevin Biniazan, Esq. | VSB No. 92109
Jeffrey A. Breit, Esq. | VSB No. 18876
Don Scott, Esq. | VSB No. 88725
Scott M. Perry, Esq. | VSB No. 67417
Lauren Martin, Esq. | VSB No. 93653
Alexis Bale, Esq. | VSB No. 100318
Breit Biniazan, PC
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, VA  23451
Telephone | 757.622.6000
Facsimile | 757.299.8028
Email | kevin@bbtrial.com
Email | jeffrey@bbtrial.com
Email | don@bbtrial.com
Email | scott@bbtrial.com
Email | lmartin@bbtrial.com
Email | abale@bbtrial.com

*Counsel for Plaintiffs*

3

**SEEN AND AGREED:**

Signed on behalf of
Edward Longosz
07/31/2025
(VSB NO. 100318)

Edward J. Longosz, II (VSB No. 39411)
Eckert Seamans Cherin & Mellott, LLC
1717 Pennsylvania Avenue, NW., Suite 1200
Washington, DC 20006
ELongosz@eckertseamans.com
Tel: 202-659-6619
Fax: 202-659-6699

Michael A. Montgomery (VSB No.: 40297)
Eckert Seamans Cherin & Mellott, LLC
919 East Main Street, Suite 1300
Richmond, VA 23219
MMontgomery@eckertseamans.com
Tel: 804-788-7740
Fax: 804-698-2950

Peter J. Van Zandt (CSB No.: 152321)
Allen Glaessner Hazelwood & Werth, LLP
180 Montgomery Street, Suite 1200
San Francisco, CA 94104
pvanzandt@aghwlaw.com
Main 415.697.2000
Direct: 415.697.2194

*Counsel for PBI Performance Products, Inc*
*(by Special Appearance)*

4

SEEN AND Agree

John R. Owen (VSB No. 39560)
Julie S. Palmer (VSB No. 65800)
John P. Dunnigan (VSB No. 93483)
Imani E. Sowell (VSB No. 95982)
Yevgeniy K. Klinovskiy (VSB No. 98264)
HARMAN, CLAYTOR, CORRIGAN & WELLMAN
P.O. Box 70280
Richmond, Virginia 23255
Tel.: (804) 747-5200
Fax: (804) 747-6085
jowen@hccw.com
jpalmer@hccw.com
jdunnigan@hccw.com
isowell@hccw.com
yklinovskiy@hccw.com
*Counsel for Defendant Blue Ridge Rescue Suppliers, Inc.*
*improperly named as Bradsden Solutions, Inc.*

5

**VIRGINIA:**

### IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

**JONATHAN CLARKE,**

    **Plaintiff,**

**v.**

    **Case No. CL24002853-00**

**3M COMPANY, et al.,**

    **Defendants.**

RECEIVED AND FILED
CIRCUIT COURT

AUG 1 8 2025

EDWARD F. JEWETT, CLERK
BY_____ D.C.

### DEFENDANT 3M COMPANY'S DEMURRER TO
### PLAINTIFF'S FIRST AMENDED COMPLAINT

    Defendant 3M Company, pursuant to Virginia Code Ann. § 8.01-273 and Rule 3:8 of the

Rules of the Supreme Court of Virginia, respectfully submits this Demurrer in response to Plaintiff

Jonathan Clarke's First Amended Complaint ("Complaint").[1]

### INTRODUCTION

    Plaintiff alleges that he was exposed to PFAS in firefighting gear that he wore, and that his

exposure to PFAS caused him to suffer a Leukemia diagnosis. But Plaintiff does not allege that

3M had anything to do with his firefighting gear. He does not allege, for example, that 3M

contributed in any way to the gear he used or that 3M ever manufactured any firefighting gear.

3M is one of *21* Defendants named in this action, and the Complaint fails to identify any role that

3M played in this case. In fact, the Complaint never specifies which of the 21 Defendants

manufactured or sold the gear that Plaintiff used, let alone that 3M is somehow linked to that gear.

The Complaint therefore lacks "sufficient definiteness" that exposure to a product that 3M

---

[1] In addition to this Demurrer, 3M contemporaneously filed a Plea in Bar on the ground that
Plaintiff's claims are time-barred.

manufactured—as opposed to a product manufactured by some other company—caused Plaintiff's alleged injuries. *A.H. ex rel. C.H. v. Church of God in Christ, Inc.*, 831 S.E.2d 460, 465 (Va. 2019). The Complaint fails to state a claim against 3M for this fundamental reason and should be dismissed.

Plaintiff's claims against 3M fail for other, independent reasons as well. His implied warranty and negligence claims are legally deficient because the Complaint does not allege that any 3M product was unreasonably dangerous under Virginia law. His express warranty claim fails because the Complaint does not allege that 3M made any express warranty, let alone allege the substance of any such warranty. And Plaintiff's claim under the Virginia Consumer Protection Act ("VCPA") fails because he does not allege a consumer transaction or any connection between himself and a 3M product, much less allege fraud as required by VCPA.

This Court should grant 3M's Demurrer as to all of Plaintiff's claims against 3M.

## BACKGROUND

According to the Complaint, Plaintiff "has worked as a firefighter, serving the City of Richmond since February 9, 2004." First Amended Complaint ("FAC") ¶ 12. The Complaint alleges that Plaintiff wore firefighter gear—known as "turnouts"—"in the usual and normal course of performing his firefighting duties." *Id.* ¶ 8. According to the Complaint, turnout gear includes "a helmet, hood, jacket, pants, boots, and gloves," and is intended to protect firefighters from fires and other hazardous conditions. *Id.* ¶ 44.

Plaintiff brought this action against 21 Defendants, alleging that they all "marketed, developed, distributed, sold, promoted, manufactured, released, or otherwise used PFAS chemicals in turnout gear throughout the United States and in Virgina." *Id.* ¶ 58. PFAS, according to the Complaint, short for "per- and polyfluoroalkyl substances," *id.* ¶ 2, "is a large and ever-growing category of human-made chemicals," "[w]ith over 5,000 individual chemicals," that "are widely

2

used in products to, *inter alia*, resist and repel oil, heat and water," *id.* ¶ 43. The Complaint further alleges that "PFAS chemicals include 'older' long-chain PFAS like PFOA, PFOS, and PFNA that have seven or more carbon atoms, and 'newer' short-chain PFAS, like PFBA, PFBS, PFHxA, and PFHxS." *Id.* ¶ 54.

The Complaint alleges specifically that certain Defendants (Mine Safety Appliance Company, LLC; Lion Group, Inc.; and Honeywell Safety Products USA, Inc.) manufactured turnout gear, using "PFAS-containing" materials supplied by other Defendants (E.I. DuPont de Nemours & Co.; W. L. Gore & Associates, Inc.; TenCate Protective Fabrics USA; PBI Performance Products, Inc.; and StedFast USA, Inc.). *Id.* ¶¶ 61–63. The Complaint does not allege which of those three companies manufactured the turnout gear worn by Plaintiff.

The Complaint also does not allege that 3M ever manufactured or sold any turnout gear. Rather, the Complaint alleges only that 3M began "manufacturing a PFAS material called perfluorooctanoic acid ('PFOA')" in the 1940s, which it allegedly sold to DuPont for a time, and that 3M announced in 2000 that it would cease manufacturing perfluorooctanesulfonic acid, or PFOS. *Id.* ¶¶ 59, 67. The Complaint does not allege that 3M in particular sold PFAS to any of the three turnout-gear manufacturers, let alone that 3M manufactured or sold PFAS found in turnout gear used by Plaintiff.

The Complaint then alleges that "[a]s a result of exposure to PFAS contained in his turnouts while working as a firefighter, Plaintiff Clarke was diagnosed with Leukemia on or around July 2022." *Id.* ¶ 12. Against all 21 Defendants, Mr. Clarke asserts claims for breach of implied warranties (Count I), breach of express warranties (Count II), negligence, gross negligence, recklessness, and willful and wanton misconduct (Count III), and violations of the VCPA (Count IV).

3

## LEGAL STANDARD

"A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Glazebrook v. Bd. of Supervisors of Spotsylvania Cnty.*, 587 S.E.2d 589, 591 (Va. 2003). In this posture, courts "accept as true all factual allegations expressly pleaded in the complaint," *Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 250 (Va. 2019) (quoting *A.H. ex rel. C.H.*, 831 S.E.2d at 465), but they "assume nothing about the correctness" of the plaintiff's "conclusions of law," including those "'camouflaged as factual allegations or inferences,'" *Coward v. Wellmont Health Sys.*, 812 S.E.2d 766, 770 (Va. 2018) (quoting *AGCS Marine Ins. Co. v. Arlington Cnty.*, 800 S.E.2d 159, 161 (Va. 2017)).

A plaintiff's factual allegations "must be made with 'sufficient definiteness to enable the court to find the existence of a legal basis for its judgment.'" *Squire v. Va. Hous. Dev. Auth.*, 758 S.E.2d 55, 59 (Va. 2014) (quoting *Friends of the Rappahannock v. Caroline Cnty. Bd. of Supervisors*, 743 S.E.2d 132, 135 (Va. 2013)). "Allegations asserted in 'mere conclusory language,' devoid of articulated facts and inferences 'not fairly and justly drawn' therefrom are subject to demurrer." *Mireskandari v. Daily Mail & Gen. Tr. PLC*, 2020 WL 8837630, at *3 (Va. Cir. Ct. Fairfax Cnty. July 27, 2020) (quoting *Bowman v. State Bank of Keysville*, 331 S.E.2d 797, 802 (Va. 1985)).

## ARGUMENT

### I.    The Complaint does not allege that 3M has any connection to Plaintiff's injury.

Under Virginia's well-established pleading requirements and the elements of each of his claims, Plaintiff must plead with "sufficient definiteness" that he was exposed to 3M's product. *E.g.*, *A.H. ex rel. C.H*, 831 S.E.2d at 465. For each of his claims, Plaintiff must allege that 3M's conduct was a proximate cause of his injury. For the warranty claims, Plaintiff must allege exposure to 3M's products because a company only makes implied or express warranties as to

4

products that it manufactures and sells. *See* Va. Code Ann. § 8.2-314(1) (a warranty can be "implied in a contract for" the sale of goods under certain circumstances); Va. Code Ann. § 8.2-313(1) (an express warranty must be "part of the basis of the bargain"); *see also Logan v. Montgomery Ward & Co., Inc.*, 219 S.E.2d 685, 687 (Va. 1975) (implied warranty based on condition of goods when they "left the defendant's hands"); *Bayliner Marine Corp. v. Crow*, 509 S.E.2d 499, 502 (Va. 1999) (express warranty is a "particular affirmation of fact made *by the seller*" about the goods (emphasis added)). For his negligence claim, Plaintiff must allege that 3M's conduct was "the proximate cause of injury." *Blue Ridge Serv. Corp. of Va. v. Saxon Shoes, Inc.*, 624 S.E.2d 55, 62 (Va. 2006). Even when there are multiple allegedly negligent parties, a plaintiff still must allege "exposure to the defendant's product" and ultimately prove that exposure to that defendant's product "alone" would have been "sufficient to have caused the harm" alleged. *Ford Motor Co. v. Boomer*, 736 S.E.2d 724, 731 (Va. 2013) (emphasis omitted) (noting "the exposure attributable to *each defendant*" must be "sufficient to have caused the harm" (emphasis added)). Finally, for his VCPA claim, Plaintiff must show that he had "dealings" with 3M. Va. Code Ann. § 59.1-197.

The Complaint fails on this fundamental product-identification point. Plaintiff does not allege that 3M manufactured the turnouts he wore or any of the materials used in those turnouts. Indeed, the Complaint does not even allege who manufactured Plaintiff's turnouts or any of the component parts of his turnouts. And although the Complaint alleges that PFAS were present in Plaintiff's turnouts, it does not identify the specific type of PFAS chemicals to which he was allegedly exposed (even though the Complaint alleges that there are *thousands* of different PFAS chemicals, *see* FAC ¶ 43), let alone that 3M (or any other Defendant) manufactured those

particular PFAS products. The Complaint thus fails to assert any connection between Plaintiff's alleged injuries or exposure and 3M.

In fact, the Complaint alleges next to nothing about 3M. Aside from allegations about 3M's alleged knowledge regarding PFAS, the Complaint alleges only that 3M manufactured PFOA and PFOS for an unidentified time period and, at some point, supplied PFOA to DuPont. FAC ¶¶ 59, 64, 65, 67-68. The Complaint offers a bit more information about some of the other Defendants, alleging generally that a few Defendants manufactured turnout gear, *see id.* ¶¶ 61-63, and that some other Defendants' "PFAS-containing" materials were used generally by the turnout-manufacturer Defendants, *see id.* But all the operative allegations in the Complaint treat "Defendants" as a generalized, undifferentiated collective. *See, e.g., id.* ¶ 58 ("*Defendants* have each marketed, developed, distributed, sold, promoted, manufactured, released, or otherwise used PFAS chemicals in turnout gear throughout the United States and in Virgina." (emphasis added)); *see also id.* ¶¶ 2, 6-7, 9, 11, 42, 44, 56, 58, 71, 73, 76, 82-84, 86, 88, 109-110, 112-117, 119-121, 123-125, 131-133, 136-141, 143-144, 146-148, 150, 153-169, 174-180 (same undifferentiated references to "Defendants"). Because the Complaint does not allege that a 3M product is at issue in this case, Plaintiff cannot show any connection between 3M and his alleged injuries and therefore fails to state a claim as to 3M.

The Complaint's "general, conclusory" allegations as to all "Defendants" do not suffice. *Johnson v. Bella Gravida, LLC*, 2020 WL 8834987, at *2 (Va. Cir. Ct. Fairfax Cnty. July 20, 2020). Those allegations "fail[] to distinguish between the actions of each individual defendant" and therefore do not plead with sufficient definiteness that 3M (or any other Defendant) played any part in causing Plaintiff's injury. *Id.*; *see Greene v. City of Portsmouth*, 2024 WL 1160681, at *22 (Va. Ct. App. Mar. 19, 2024) (affirming demurrer where complaint had not "sufficiently

6

shown a causal link between [a particular defendant's] actions and" the alleged harm); *McDiarmid Assocs. v. Yevdokimov*, 2022 WL 2284337, at *4 (Va. June 23, 2022) (concluding that allegations were "insufficiently definite as to who performed the affirmative acts contributing to" the alleged harm); *see also SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015) (courts regularly dismiss complaints that "rely[] on 'indeterminate assertions' against all 'defendants'" rather than "'specify[ing] how [particular] defendants were involved'" (quoting *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009))); *Ball v. Takeda Pharms. Am., Inc.*, 963 F. Supp. 2d 497, 503 & n.4 (E.D. Va. 2013) (dismissing products liability complaint where "no attempt [was] made to differentiate or clearly identify which of the nine defendants played a particular role in the manufacture or sale of [an alleged injurious product] or in relation to the plaintiff's sustained injuries").[2] As the Sixth Circuit recently put it in a different PFAS-related case, "a plaintiff cannot sue ten defendants—by lumping them all together in his allegations—when the more particular facts would allow him to proceed against only one. (Much less none.)" *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 87 F.4th 315, 320–21 (6th Cir. 2023) ("To allege simply that these defendants manufactured or otherwise distributed 'PFAS,' therefore, is patently insufficient to support a plausible inference that any of them bear responsibility for the particular PFAS in Hardwick's blood.").

---

[2] The Virginia Supreme Court has looked to the federal pleading standard in explaining what inferences can reasonably be drawn from a complaint's allegations. *See A.H. ex rel. C.H.*, 831 S.E.2d at 465 ("Distinguishing between reasonable and unreasonable inferences is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009))); *Historic Green Springs, Inc. v. Va. Dep't of Env't Quality ex rel. Va. State Water Control Bd.*, 2011 WL 3276225, at *4 (Va. Ct. App. Aug. 2, 2011) (noting that certain allegations "succeed in 'nudg[ing] [appellants'] claims [in support of appellants' standing] across the line from conceivable to plausible'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

In short, there are no allegations in the Complaint that 3M manufactured or sold the set of turnouts—or any materials used in making them—that Plaintiff allegedly used. The Complaint therefore fails to state a claim against 3M; this Court should grant the Demurrer and dismiss Plaintiff's Complaint as to 3M in its entirety.

## II.    Plaintiff's claims against 3M fail for additional reasons.

Even setting aside that fundamental defect in the Complaint, each of Plaintiff's claims against 3M fails for an additional, independent reason.

### A. The Complaint fails to plead implied warranty and negligence claims.

To state a claim "under a theory of warranty or negligence" based on an allegedly defective product, a plaintiff must allege that the relevant product was "'unreasonably dangerous.'" *Evans v. Nacco Materials Handling Grp., Inc.*, 810 S.E.2d 462, 469 (Va. 2018) (citation omitted). A product is "unreasonably dangerous" if it is (1) "defective in assembly or manufacture," (2) "unreasonably dangerous in design," or (3) "unaccompanied by adequate warnings concerning its hazardous properties." *Id.* (quoting *Morgen Indus., Inc. v. Vaughan*, 471 S.E.2d 489, 492 (Va. 1996)). The Virginia Supreme Court has held that "a design is not objectively unreasonable unless the plaintiff can show that an alternative design is safer overall than the design used by the manufacturer." *Evans*, 810 S.E.2d at 471; *see Tunnell v. Ford Motor Co.*, 385 F. Supp. 2d 582, 584 (W.D. Va. 2005) ("Virginia . . . does require evidence from a plaintiff that an alternative design truly provides more benefits than risks."). The Complaint does not adequately allege any facts suggesting that any 3M product is "unreasonably dangerous" nor any alternative design.

Instead, the Complaint concludes that "Defendants could have manufactured, marketed, distributed, and sold alternative designs or formulations of turnouts that did not contain PFAS," FAC ¶ 110, and that those purported alternatives "would have reduced or prevented" the risk of harm to Plaintiff, *id.* ¶ 112. But Plaintiff never alleges actual facts, as he must, identifying what

8

those feasible alternatives were—let alone that 3M in particular had safer alternatives to any PFAS products it manufactured or sold over the course of decades. The Complaint's conclusory allegations cannot support Plaintiff's claim. *See Bowman*, 331 S.E.2d at 802.

Nor does the Complaint allege any facts suggesting that any 3M product lacked an adequate warning. "Failure to warn claims are concerned with how a lack of warning about a product, and the user's resultant lack of knowledge about the product's dangers or safe use, may give rise to an unreasonable danger to the consumer." *Evans*, 810 S.E.2d at 472 (citation omitted). Plaintiff's theory is that the turnouts he used should have come with a warning. But Plaintiff does not allege that 3M manufactured turnouts or otherwise identify any 3M product that allegedly contained an insufficient warning. Moreover, Plaintiff does not allege that 3M's failure to provide an unidentified warning on an unidentified product was the proximate cause of his injuries. By contrast, the Complaint includes pictures of alleged warnings from other manufacturers' turnouts that Plaintiff says fall short. FAC ¶ 87.[3]

Plaintiff therefore fails to state a claim as to 3M for breach of implied warranty or any level of negligence.[4]

___

[3] Plaintiff does not appear to allege the turnouts he wore were unreasonably dangerous because of a defect in assembly or manufacture—which would require him to allege that the product did not "'conform to its intended design.'" *Knapp v. Zoetis Inc.*, 2022 WL 989015, at *5 (E.D. Va. Mar. 31, 2022) (citation omitted). And there are no sufficiently definite allegations in the Complaint that would support that argument.

[4] The Complaint asserts that "Defendants' acts and omissions amount to negligence, gross negligence, reckless[ness] . . . , and willful and wanton misconduct." FAC ¶ 167. Under Virginia law, those "allegations do not represent separate claims or theories of liability," but "different degrees of proof that can be applied to the same theory of liability." *Wilby v. Gostel*, 578 S.E.2d 796, 800–01 (Va. 2003); *see Harris v. Harman*, 486 S.E.2d 99, 101 (Va. 1997) (noting negligence, gross negligence, and willful and wanton negligence are just "three levels of negligence"). As explained, Plaintiff's claim fails at the lowest degree of proof. But even if he had alleged a simple negligence claim, the conclusory allegations as to 3M certainly would not sufficiently allege gross negligence or willful or wanton negligence. Gross negligence requires that the Complaint allege "'a degree of negligence that would shock fair-minded persons'" and include more than "bare

9

**B. Plaintiff's express warranty claim is not adequately pleaded.**

To state a claim for breach of express warranty, a plaintiff must plead, among other things, "the pertinent terms of the warranty." *Collier v. Rice*, 356 S.E.2d 845, 847 (Va. 1987). Plaintiff's express warranty claim against 3M fails because he fails to allege that 3M made any express warranty, never mind the terms of any such warranty.

An express warranty is created where the seller provides, as "part of the basis of the bargain," an "affirmation of fact or promise . . . to the buyer," "[a]ny description of the goods," or "[a]ny sample or model." Va. Code Ann. § 8.2-313(1). "A pleading that alleges the existence of express warranties must do so by describing the substance of the warranty, rather than merely alleging its existence in conclusory language." Va. Prac. Prods. Liab. § 6:4 (Aug. 2024 update). In other words, an express warranty claim fails where the plaintiff is "unable to produce any contract or agreement or any express warranty forming the basis of the express warranty claim." *Hubbard v. Dresser, Inc.*, 624 S.E.2d 1, 4 (Va. 2006).

The Complaint fails a straightforward application of this standard. The Complaint does not allege that 3M made any kind of express warranty about *any* product, let alone that 3M made an express warranty as to any product related to the turnouts Plaintiff wore. At most, the Complaint alleges that "Defendants" made "express and implied representations, statements, and descriptions" about their "PFAS-containing products." FAC ¶ 146. That conclusory allegation does not suffice. The Virginia Supreme Court has instructed courts to sustain demurrers in cases

---

assertions." *Virk v. Clemens*, 904 S.E.2d 651, 662–63 (Va. Ct. App. 2024) (citation omitted). To plead willful or wanton negligence, the Complaint must allege "'specific egregious and extraordinary facts,'" *Ewing v. Superior Air Parts, Inc.*, 2016 WL 9631316, at *5 (Va. Cir. Ct. City of Chesapeake Apr. 18, 2016) (citation omitted), that show "'actual or constructive consciousness that injury will result from the act done or omitted,'" *Green v. Ingram*, 608 S.E.2d 917, 924 (Va. 2005) (citation omitted). The Complaint does not meet either of those heightened standards.

10

where a complaint rests on "naked allegation[s]" that the plaintiff relied on "the express oral or written warranties" of a defendant. *Pulte Home Corp. v. Parex, Inc.*, 579 S.E.2d 188, 190 (Va. 2003) (alleging only that express warranty was made "by way of affirmations of fact, promises, descriptions, and/or use of samples and/or models regarding the appearance, durability, and/or water-resistance of [the product]"). The allegation here merely "parrot[s]" the statutory language and is therefore "no more than a legal conclusion." *Id.* at 190.

The Court should therefore sustain 3M's demurrer on the express warranty claim for this additional reason.

### C. The Complaint fails to state a claim under the VCPA.

The VCPA is intended "to promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code Ann. § 59.1-197. To state a claim under the VCPA, Plaintiff must allege: (1) fraud (2) by a supplier (3) in connection with a consumer transaction. *Benkirane v. City Concrete Corp.*, 2025 WL 2109358, at *4 (Va. Ct. App. July 29, 2025). Plaintiff must further allege that he detrimentally relied on a misrepresentation made to him by a supplier of goods. *Owens v. DRS Auto. Fantomworks, Inc.*, 764 S.E.2d 256, 260–61 (Va. 2014); *see also Adams v. Children's Hosp. of the King's Daughters*, 2018 WL 9392997, at *7–8 (Va. Cir. Ct. City of Norfolk Sept. 21, 2018) (granting demurrer because the complaint failed to assert the alleged misrepresentation was directed to plaintiff or that plaintiff relied on the same). "[W]hen fraud or misrepresentation is alleged it must be plead with specificity, clearly provided, and distinctly stated." *See Kerlavage v. America's Home Place, Inc.*, 2019 WL 4040617, at *3–4 (Va. Cir. Ct. Mar. 11, 2019) (dismissing VCPA claim with prejudice where plaintiff did not "specify with any particularity by whom, when, or any other specific circumstances under which the alleged misrepresentations occurred").

Plaintiff's VCPA claim fundamentally fails because the Complaint does not allege that 3M engaged in a consumer transaction. The finished goods at issue—protective equipment for firefighters—were not sold "to be used primarily for personal, family, or household purposes." Va. Code Ann. § 59.1-198. They were sold for use by professional firefighters in the course of their employment. Indeed, 3M allegedly sold chemicals to other manufacturers, not to Plaintiff. *See Benkirane*, 2025 WL 2109358, at *6 ("[T]he relevant question is whether the bargained-for '*goods or services*' are 'to be used' for personal purposes, not whether any eventual end-product to which the goods or services contribute is for personal use." (quoting Va. Code Ann. § 59.1-198)).

Even if Plaintiff could allege a connection between 3M and the turnouts he wore, his claim would still fail because there is no allegation that 3M made any promise or representations to Plaintiff about the turnouts he wore, much less with the specificity required for such allegations under Virginia law. Plaintiff also does not allege that he relied upon any such representation or that it was false or misleading. "Virginia courts have consistently held that reliance is required to establish a VCPA claim." *Adardour v. Am. Settlements Inc.*, 2009 WL 1971458, at *3 (E.D. Va. July 2, 2009) (collecting cases); *see also Cooper v. GGGR Invs., LLC*, 334 B.R. 179, 189 (E.D. Va. 2005) ("[T]he VCPA's plain language as consistently construed by the courts[ ] requires that a[ ] VCPA claimant show that he relied on the alleged misrepresentations . . . . [A plaintiff is thus] required to prove reliance on the alleged misrepresentations to recover under the VCPA.").

Here, Plaintiff's VCPA claim fails because there is no consumer transaction, let alone detrimental reliance with respect to an alleged false or misleading statement made by 3M. Without facts establishing these elements, there can be no violation of the VCPA.

More fundamentally, the Complaint does not tie 3M to any turnouts worn by Plaintiff. It does not allege that 3M designed, made, or sold the turnouts themselves, or even that 3M sold any materials used in the turnouts. Further, the Complaint does not allege that 3M made any promise or representations to Plaintiff about the turnouts he wore, much less that Plaintiff relied upon any such promise or representation or that any such promise or representation was false or misleading. Accordingly, Plaintiff has failed to state a VCPA claim against 3M.

## CONCLUSION

For the foregoing reasons, Defendant 3M Company, respectfully requests that this Court sustain this demurrer and dismiss Plaintiff's Amended Complaint in its entirety with prejudice for failure to state any claim upon which relief can be granted, and any such other and further relief that the Court deems appropriate and just.

Date: August 18, 2025                          Respectfully submitted,

**3M COMPANY**

Matthew J. Hundley (VSB No. 76865)
Diana M. Miller (VSB No. 82430)
BUTLER SNOW LLP
919 E. Main Street, Suite 600
Richmond, Virginia 23219
Tel. 804.762.6030
Fax. 804.762.6031
Matthew.hundley@butlersnow.com
Diana.miller@butlersnow.com

*Counsel for Defendant 3M Company*

13

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of August 2025, a true copy of the foregoing was

served on the following via U.S. Mail and electronic mail:

> Kevin Biniazan, Esq. | VSB No. 92109
> Jeffrey A. Breit, Esq. | VSB No. 18876
> Don Scott, Esq. | VSB No. 88725
> Scott M. Perry, Esq. | VSB No. 67417
> Lauren Martin, Esq. | VSB No. 93653
> Alexis Bale, Esq. | VSB No. 100318
> BREIT BINIAZAN, PC
> Towne Pavilion Center II
> 600 22nd Street, Suite 402
> Virginia Beach, VA 23451
> Telephone | 757.622.6000
> Facsimile | 757.299.8028
> Email | kevin@bbtrial.com
> Email | jeffrey@bbtrial.com
> Email | don@bbtrial.com
> Email | scott@bbtrial.com
> Email | lmartin@bbtrial.com
> Email | abale@bbtrial.com
>
> Defense Counsel of Record

Matthew J. Hundley (VSB No. 76865)
Diana M. Miller (VSB No. 82430)
BUTLER SNOW LLP
919 E. Main Street, Suite 600
Richmond, Virginia 23219
Tel. 804.762.6030
Fax. 804.762.6031
Matthew.hundley@butlersnow.com
Diana.miller@butlersnow.com

*Counsel for Defendant 3M Company*

14

## VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

JONATHAN CLARKE,

     *Plaintiff,*

     v.

3M COMPANY (FKA MINNESOTA MINING AND
MANUFACTURING COMPANY); AGC
CHEMICALS AMERICAS, INC.; ARCHROMA
U.S., INC.; ARKEMA, INC.; BLUE RIDGE
RESCUE SUPPLIERS, INC.; BRADSDEN
SOLUTIONS, INC.; DAIKIN AMERICA, INC.; E.I.
DU PONT DE NEMOURS & CO., A/K/A EIDP,
INC.; GLOBE MANUFACTURING COMPANY
LLC; HONEYWELL INTERNATIONAL, INC.;
HONEYWELL SAFETY PRODUCTS USA, INC.;
LION GROUP, INC.; MALLORY SAFETY AND
SUPPLY LLC; MINE SAFETY APPLIANCE
COMPANY, LLC; MSA SAFETY SALES, LLC;
MUNICIPAL EMERGENCY SERVICES, INC.; PBI
PERFORMANCE PRODUCTS, INC.; STEDFAST
USA, INC.; TEN CATE PROTECTIVE FABRICS
USA D/B/A SOUTHERN MILLS INC.; THE
CHEMOURS COMPANY L.L.C.; AND W.L. GORE
& ASSOCIATES, INC.,

     *Defendants.*

Civil Action No. CL24002853-00



RECEIVED AND FILED
CIRCUIT COURT
AUG 1 8 2025
EDWARD F. JEWETT, CLERK
BY_____ D.C.

## ARCHROMA U.S., INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL
## JURISDICTION VIA SPECIAL APPEARANCE

Defendant Archroma U.S., Inc., appearing specially, by counsel, moves the Court to

dismiss this action against it for lack of personal jurisdiction. In support of its motion, Archroma

U.S., Inc. states as follows:

It is Plaintiff's burden to plead "essential facts" sufficient to show that this Court has

personal jurisdiction over Archroma U.S., Inc. *E.g.*, *Mireskandari v. Daily Mail & Gen. Tr. PLC*,

2020 WL 8837630, at *5 (Va. Cir. Ct. July 27, 2020) (quoting Va. Sup. Ct. R. 1.4). Plaintiff has

not done so.

As to general jurisdiction, Plaintiff offers a one-sentence, boilerplate allegation that all Defendants have had "purposeful, continuous, systematic contacts, and general business purpose in Virginia." Am. Compl. ¶ 36. But Archroma U.S., Inc. is a North Carolina business that is incorporated in Delaware.[1] *Id.* ¶ 15. That being the case, Archroma U.S., Inc. is not subject to general personal jurisdiction in Virginia. *See, e.g.*, *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 403 (2017) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).

As to specific personal jurisdiction, Plaintiff mentions Archroma U.S., Inc. once in the complaint (in a section titled "Parties"), where Plaintiff vaguely alleges that Archroma U.S., Inc. "developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnouts, including in Virginia and in the City of Richmond." Am. Compl. ¶ 15. That conclusory allegation is a legal conclusion; it does not set forth any facts sufficient to show that non-resident Archroma U.S., Inc. falls within the reach of Virginia's long-arm statute. *See* Va. Code Ann. § 8.01-328.1(A); *see also E. Tech. Enters., Inc. v. Wilson & Hayes, Inc.*, 46 Va. Cir. 558, 1997 WL 33575571, at *1 (Va. Cir. Ct. July 10, 1997) ("Because this dispute did not arise out of Defendant's contacts with Virginia, this Court does not have specific jurisdiction under the long arm statute."); *Grizzard v. LG Chem Ltd.*, 641 F. Supp. 3d 282, 290 (E.D. Va. 2022) ("even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales" (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 264 (2017)).

In addition, the reach of Virginia's long-arm statute is limited by the requirements of

---

[1] *See* Delaware Dep't of State: Div. of Corps. Bus. Search, *Archroma U.S., Inc.*, https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx (listing residency as "Domestic"). Virginia courts "shall take judicial notice" of "official publications of other states, of the United States, and agencies of each published within those jurisdictions." Va. Code Ann. § 8.01-388; *see also Scafetta v. Arlington Cnty.*, 414 S.E.2d 438, 439 (1992).

the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See,
e.g., Carter v. Wake Forest Univ. Baptist Med. Ctr.*, 303 Va. 135, 144 (2024) (holding that court
lacked personal jurisdiction over North Carolina health care providers treating Virginia patients
over phone and by text). The Due Process Clause requires that a non-resident "have certain
minimum contacts with [the forum state] such that the maintenance of the suit does not offend
'traditional notions of fair play and substantial justice.'" *Id.* at 144 (quoting *Int'l Shoe Co. v
Washington*, 326 U.S. 310, 316 (1945)). Such jurisdiction requires "that there be some act by
which the defendant purposefully avails itself of the privilege of conducting activities within the
forum State, thus invoking the benefits and protections of its laws." *Id.* at 145 (quoting *Hanson
v. Denckla*, 357 U.S. 235, 253 (1958)). "Moreover, the plaintiff's claims 'must arise out of or
relate to the defendant's contacts' with the forum state." *Id.* (quoting *Ford Motor Co. v. Montana
Eighth Judicial Dist. Court*, 592 U.S. 351, 352 (2021)); *see also Mireskandari*, 2020 WL
8837630, at *5 ("Specific jurisdiction for due process relates to personal jurisdiction where '[the
minimum] contacts form the basis for the suit.'" (citation omitted)); *see also Grizzard*, 641 F.
Supp. 3d at 289 (finding that a defendant did not "purposefully avail[] itself of any market in
Virginia" for the specific product at issue).

　　Here, Plaintiff pleads no facts sufficient to show that Archroma U.S., Inc. has either the
minimum contacts with Virginia required by *International Shoe* or that Plaintiff's claim "arise[s]
out or relate[s] to the defendant's contacts with the forum state," as required by *Ford Motor Co*.
In the absence of such allegations, Plaintiff fails to meet its burden of establishing specific
personal jurisdiction over non-resident Archroma U.S., Inc. If necessary, Archroma U.S., Inc.
reserves the right to present evidence in support of this Motion, and, pursuant to Rule 4:15, to file
a supplemental brief in support of this Motion.

Accordingly, Archroma U.S., Inc., appearing specially, by counsel, moves the Court to

grant its motion to dismiss.[2]

Dated: August 18, 2025                        Respectfully submitted,

Richard J. Cromwell, Esq. (VSB No. 30914)
Frank Talbott V, Esq. (VSB No. 86396)
McGuireWoods LLP
101 West Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Tel:    (757) 640-3775
Fax:    (757) 640-3955
rcromwell@mcguirewoods.com
ftalbott@mcguirewoods.com

Michael F. Williams (VSB No. 96545)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
mwilliams@kirkland.com

*Counsel for Defendant, appearing specially,*
*Archroma U.S., Inc.*

---

[2] If the Court denies this Motion to Dismiss, then Archroma U.S., Inc., appearing specially,
reserves the right to file any applicable pleading responsive to the Amended Complaint, including,
but not limited, pleas in bar, demurrer and/or an answer.

4

## **CERTIFICATE OF SERVICE**

I certify that on the 18th day of August, 2025, a true copy of the foregoing was sent via email and mail to:

Kevin Biniazan, Esq. (VSB No. 92109)
Jeffrey A. Breit, Esq. (VSB No. 18876)
Don Scott, Esq. (VSB No. 88725)
Scott M. Perry, Esq. (VSB No. 67417)
Lauren Martin, Esq. (VSB No. 93653)
Salem B. Amare, Esq. (VSB No. 99238)
BREIT BINIAZAN, PC
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, VA 23451
Telephone:  757.622.6000
Facsimile:  757.299.8028
Email:  kevin@bbtrial.com
Email:  jeffrey@bbtrial.com
Email:  don@bbtrial.com
Email:  scott@bbtrial.com
Email:  lauren@bbtrial.com
Email:  salem@bbtrial.com

*Counsel for Plaintiff*

Frank Talbott V

**VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND**

JONATHAN CLARKE,

    *Plaintiff*,

    v.

3M COMPANY (F/K/A MINNESOTA
MINING AND MANUFACTURING
COMPANY); AGC CHEMICALS
AMERICAS, INC.; ARCHROMA U.S.,
INC.; ARKEMA, INC.; BLUE RIDGE
RESCUE SUPPLIERS, INC.; BRADSDEN
SOLUTIONS, INC.; DAIKIN AMERICA,
INC.; E.I. DU PONT DE NEMOURS AND
COMPANY, A/K/A EDIP, INC.; GLOBE
MANUFACTURING COMPANY LLC;
HONEYWELL INTERNATIONAL, INC.;
HONEYWELL SAFETY PRODUCTS USA,
INC.; LION GROUP, INC.; MALLORY
SAFETY AND SUPPLY, LLC; MINE
SAFETY APPLIANCES COMPANY, LLC;
MSA SAFETY SALES, LLC; MUNICIPAL
EMERGENCY SERVICES INC.; PBI
PERFORMANCE PRODUCTS, INC.;
STEDFAST USA, INC.; TENCATE
PROTECTIVE FABRICS USA D/B/A
SOUTHERN MILLS, INC.; THE
CHEMOURS COMPANY LLC; AND W.L.
GORE & ASSOCIATES, INC.,

    *Defendants*.

Civil Action No. CL24002853-00



### DEFENDANT ARKEMA INC.'S
### MOTION TO DISMISS BY SPECIAL APPEARANCE ONLY

COMES NOW the Defendant, Arkema Inc. ("Arkema"), by counsel and by special

appearance only in order to challenge the existence of personal jurisdiction over it, and for its

Motion to Dismiss the Plaintiff's First Amended Complaint as filed against it, states as follows:[1]

---

[1] Arkema makes this motion solely for the purpose of contesting jurisdiction pursuant to Virginia
Code § 8.01-277(B) and in so doing does not waive any other objections or defenses. Should the

## INTRODUCTION

Plaintiff's four-count Amended Complaint against the twenty-one named Defendants, replete with allegations against all "Defendants" generally, fails to allege any facts upon which this Court appropriately may exercise general or specific personal jurisdiction over Arkema,[2] and as further set forth below, no such facts exist. In particular:

- **General Jurisdiction.** Arkema is neither incorporated in nor has its principal place of business in Virginia and thus is not "at home" in Virginia, as required for this Court to exercise general jurisdiction over Arkema.

- **Specific Jurisdiction.** The Amended Complaint does not allege any connection between the alleged harm and any actions by Arkema in Virginia, nor could it. Arkema does not and has never sold turnout gear, including in Virginia, nor does Arkema have any record of having ever sold any products for use in turnout gear, including in Virginia. Thus, this Court cannot exercise specific personal jurisdiction over Arkema.

Accordingly, Plaintiff's First Amended Complaint should be dismissed with prejudice against Arkema for lack of personal jurisdiction.

## BACKGROUND

### A. Plaintiff's First Amended Complaint

In his First Amended Complaint (alternatively referred to herein as "Plaintiff's Amended Complaint" or the "Amended Complaint"), Plaintiff alleges that he was exposed to per- and polyfluoroalkyl substances, known generally as "PFAS," while serving as a firefighter for the

---

Court deny the present motion for any reason, Arkema expressly reserves its right to file any and all responsive pleadings, including but not limited to any answer and affirmative defenses, demurrers, motions to dismiss, pleas in bar, and special pleas, as appropriate, and/or to join in any such pleadings filed by any Co-Defendant(s) in the interim.

[2] Defendant Arkema Inc. is misnamed in the First Amended Complaint as "Arkema, Inc."

2

City of Richmond for twenty years beginning in 2004. Am. Compl. ¶¶ 12, 39. Specifically, Plaintiff claims that he was exposed to PFAS through his alleged use of "protective clothing specifically designed for firefighters ('turnouts')," *id.* ¶¶ 2, 8, and that as a result of that exposure to PFAS, he developed leukemia, *id.* ¶¶ 8, 10, 39. Plaintiff further claims that all twenty-one named Defendants generally "manufactured, designed, marketed, sold, supplied, or distributed PFAS-containing turnouts," *id.* ¶ 7, and based on that general allegation, asserts four causes of action against all Defendants: (1) breach of implied warranties; (2) breach of express warranties; (3) negligence, gross negligence, recklessness and willful and wanton misconduct; and (4) violations of the Virginia Consumer Protection Act ("VCPA").

Plaintiff's Amended Complaint directs nearly all of its allegations to all twenty-one named "Defendants" generally, while Arkema is mentioned by name in only two of the Amended Complaint's 185 paragraphs. Am. Compl. ¶¶ 16, 75. As more fully set forth below, Plaintiff's allegations related to Arkema are insufficient to meet his burden to establish jurisdiction over Arkema, such that his purported claims against Arkema must fail.

**B. Arkema Inc. ("Arkema")**

Arkema is an advanced materials manufacturer that is incorporated under the laws of Pennsylvania and has its principal place of business located in King of Prussia, Pennsylvania. Affidavit of Eileen P. Smythe, dated August 14, 2025 ("Smyth Affidavit") (attached as **Exhibit A** hereto) ¶ 3. Arkema is not and has never been organized or had its principal place of business in Virginia. Ex. A ¶ 4.

For a limited period of time, until 2002, Arkema imported fluorotelomer products from a foreign affiliate, which Arkema then sold to third parties, who in turn incorporated those

3

fluorotelomers into products such as aqueous film-forming foam ("AFFF").[3] Ex. A ¶ 5.  In

2002, that entire fluorotelomer business was sold to E.I. DuPont de Nemours and Co.

("DuPont").  *Id.* ¶ 6.  This was a complete sale of the business, and Arkema thereby ceased its

sale of fluorotelomers in 2002.  *Id.*

Critically, and contrary to Plaintiff's conclusory allegations in the Amended Complaint,

Arkema never developed, manufactured, marketed, distributed, released, or sold turnout gear,

and based on a reasonable investigation has no record of having manufactured or sold any

fluorotelomers or other products that were used in the manufacture of turnout gear, including in

Virginia.  *Id.* at ¶¶ 7-8.

## LEGAL STANDARD

To survive a Motion to Dismiss based on lack of personal jurisdiction pursuant to

Virginia Code § 8.01-328.1, it is the plaintiff's burden to make a prima facie showing of personal

jurisdiction by a preponderance of the evidence.  *Talenthunter LLC v. S. Co. Servs.*, 87 Va. Cir.

363, 365 (Fairfax Cnty. 2014) (*citing Rannoch, Inc. v. The Rannoch Corp.*, 52 F. Supp. 2d 681,

684 (E.D. Va. 1999)).  Courts will construe the evidence in the light most favorable to the

plaintiff, while also taking into account "motion papers, supporting legal memoranda and the

relevant allegations of a complaint."  *See McNeal v. Raagu Ventures, LLC*, 102 Va. Cir. 310, 311

n.1 (Fairfax Cnty. 2019) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1969)); *see also*

*Frizzell v. Danieli Corp.*, 81 Va. Cir 427, 438 (Norfolk 2010) (dismissing complaint for lack of

personal jurisdiction).  Critically, however, "there must be a factual basis for the showing [of

personal jurisdiction], as 'conclusory pleading does not satisfy the requirements to exercise

---

[3] A prior iteration of Plaintiff's Complaint alleged that he was exposed to PFAS through his use
of AFFF used to fight fires, but he has since amended his complaint to eliminate any such
allegations.

4

personal jurisdiction under the long-arm statute.'" *Nathan v. Takeda Pharms. Am., Inc.*, 83 Va. Cir. 216, 220 (Fairfax Cnty. 2011) *(quoting E. Direct Mktg. v. Coolidge Co.*, 26 Va. Cir. 282, 283 (Arlington 1992)).

Where the defendant provides evidence which denies facts essential for jurisdiction, the plaintiff must, under threat of dismissal, present sufficient evidence to create a factual dispute on each jurisdictional element which has been denied by the defendant and on which the defendant has presented evidence. *Frizzell*, 81 Va. Cir. at 435 ("[Where] the Court has taken evidence on this issue, [] the burden shifts to Plaintiff to prove by a preponderance of the evidence that this Court may exercise jurisdiction"); *see also Talenthunter LLC*, 87 Va. Cir. at 365 ("Once personal jurisdiction has been challenged, the question is one for the judge 'with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by the preponderance of the evidence.'") *(quoting Combs*, 886 F.2d at 676).

Even if the plaintiff is able to prove grounds for jurisdiction, the defendant may nevertheless present a "compelling case" that the exercise of jurisdiction would be unfair and violate the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. *Burger King. Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985).

## ARGUMENT

## I.     THIS COURT LACKS PERSONAL JURISDICTION OVER ARKEMA.

The starting point in any personal jurisdiction analysis is the relevant state's long-arm statute and well-settled U.S. Supreme Court personal jurisdiction jurisprudence. Virginia's long-arm statute, Va. Code Ann. § 8.01-328.1, confers personal jurisdiction over a person who, directly or through an agent, commits one or more of the acts enumerated in the statute. The statute confers jurisdiction to its courts only to the extent permissible under the U.S. Constitution. *Carter v. Wake Forest Univ. Baptist Med. Ctr.*, 303 Va. 135, 144 (2024); *see also*

*Nathan*, 83 Va. Cir. at 221 (explaining that "it is firmly established that Virginia's long-arm statute asserts jurisdiction to the extent permissible under the Due Process clause") (citations omitted).

Because the Fourteenth Amendment to the U.S. Constitution acts as a limitation on a state court's exercise of personal jurisdiction, the critical issue is whether the exercise of personal jurisdiction "comports with the limits imposed by federal due process." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) ("The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a state tribunal's authority to proceed against a defendant."). Two types of personal jurisdiction exist: "general" (or "all-purpose") jurisdiction and "specific" (or "case-linked") jurisdiction. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017); *see also Carter v. Wake Forest Univ. Baptist Med. Ctr.*, 76 Va. App. 756, 766 (Va. Ct. App. 2023) (explaining that "there are two kinds of personal jurisdiction: general and specific").

Based on the allegations in the Complaint, and as further established by the Smythe Affidavit, Plaintiff cannot establish general or specific jurisdiction over Arkema—a Pennsylvania corporation with its principal place of business in Pennsylvania—and Arkema therefore respectfully asserts that the Amended Complaint's claims against Arkema must be dismissed.

## A.    Arkema Is Not Subject To General Personal Jurisdiction In Virginia.

Under U.S. Supreme Court precedent, corporations are "at home" in the state(s) in which they are headquartered and incorporated. *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 924. *See also James v. Subaru of Am., Inc.*, 433 F. Supp. 3d 933, 939 (W.D. Va. 2020) ("When the defendant is a corporation, the paradigm forum for the exercise of general jurisdiction is its place of incorporation or principal place of business.") (internal quotations removed); *New York*

6

*Com. Bank v. Heritage Green Dev.*, LLC, 95 Va. Cir. 278, 280 (Fairfax Cnty. 2017) (finding no general (or other) personal jurisdiction and stating "it would be 'exceptional' that a foreign entity would have substantial contacts of such a nature as to render it at home anywhere but its principal place of business or place of incorporation").

Arkema is a Pennsylvania corporation with its principal place of business in King of Prussia, Pennsylvania. Ex. A ¶ 3. In fact, Plaintiff concedes these facts in his Amended Complaint. Am. Compl. ¶ 16. Accordingly, Arkema is neither "at home" in Virginia nor subject to general jurisdiction here.

**B.    Arkema Is Not Subject To Specific Personal Jurisdiction In Virginia.**

This Court also does not have specific personal jurisdiction over Arkema in this case. In Virginia, specific jurisdiction over a nonresident defendant such as Arkema must comport with both the Virginia long-arm statute and due process. *Carter*, 303 Va. at 144; *Frizzell*, 81 Va. Cir. at 430; Va. Code Ann. § 8.01-328.1.[4] To ensure the nonresident defendant has "sufficient minimum contacts with the forum state," the Court must evaluate "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arose out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric, Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009); *see also, Mireskandari v.*

---

[4] *See also E. Direct Mktg.*, 26 Va. Cir. at 283 ("When jurisdiction is sought under the long arm statute, the Court first examines whether jurisdiction is authorized under state law and then determines if the exercise of personal jurisdiction is consonant with due process.") (citation omitted).

*Daily Mail & Gen. Tr. PLC*, 105 Va. Cir. 376 (Fairfax Cnty. 2020) (citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 397 (4th Cir. 2003)).

Specific jurisdiction exists only where the claim "arise[s] out of or relate[s] to the defendant's contacts." *Carter*, 303 Va. at 145 (*citing Bristol-Myers Squibb*, 582 U.S. at 262); *see also* Va. Code Ann. § 8.01-328.1(A); *Carefirst of Md., Inc.*, 334 F.3d at 397. This is consistent with the well-established precedent of the U.S. Supreme Court, which establishes that specific jurisdiction exists where "the defendant has 'purposefully directed' his activities at residents of the forum . . . *and the litigation results from alleged injuries that 'arise out of or relate to' those activities*." *Burger King Corp.*, 471 U.S. at 472 (citations omitted; emphasis added). Without a sufficient connection between the forum and the underlying claims, there is no specific jurisdiction, "regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co.*, 582 U.S. at 264; Va. Code Ann. § 8.01-328.1(C) ("When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him"); *see also Reynolds & Reynolds Holdings, Inc. v. Data Supplies*, 301 F. Supp. 2d 545, 552–54 (E.D. Va. 2004) (dismissing complaint for lack of specific personal jurisdiction because none of the plaintiffs' claims arose out of the defendant's "forum-related activities").

Here, there is no connection whatsoever between any purported contacts Arkema has with Virginia and Plaintiff's alleged PFAS exposure that forms the basis of his claims. Plaintiff alleges that he was exposed to PFAS through use of turnout gear for twenty years while he was a firefighter for the City of Richmond. Am. Compl. ¶¶ 12, 39. Plaintiff baldly (and wrongly) asserts that Arkema "conduct[ed] business in Virginia" and "developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products

8

containing PFAS in turnouts" in Virginia. Am. Compl. ¶ 16. It is well-established, however, that such conclusory allegations cannot survive a motion to dismiss for lack of personal jurisdiction. *E. Direct Mktg.*, 26 Va. Cir. at 283 (Va. Cir. Ct. 1992) (finding no jurisdiction where the "plaintiff never affirmatively asserts any facts which would support [such] allegations").[5]

Moreover, as demonstrated in the Smythe Affidavit, Arkema does not and has never manufactured, marketed, distributed, released and/or sold turnout gear, including in Virginia. Ex. A. ¶ 7. Nor does Arkema have any record of having ever supplied any products for use in turnout gear, including via any sales into Virginia, or of selling or shipping any of its products to any of the alleged turnout gear manufacturers named in the operative Complaint, including sales in Virginia or elsewhere. *Id.* ¶ 7-8. Notably, Arkema has not sold fluorotelomers for use in *any* products since its entire product line was sold in 2002, *two years before Plaintiff ever worked as a firefighter*. *Id.* ¶ 6; Am. Compl. ¶ 12. And even if a product manufactured or sold by Arkema *had* found its way into any turnout gear product, that alone would be insufficient to establish specific jurisdiction, because the product's presence in Virginia would be the result of "unilateral

---

[5] *See also Wigand v. Costech Techs., Inc.*, Civil Action No. 3:07CV440-HEH, 2008 U.S. Dist. LEXIS 743, at *16 & 19 (E.D. Va. Jan. 4, 2008) (citation omitted) (finding "no factual or legal basis to exercise personal jurisdiction over [Defendants] under the Virginia long-arm statute" given the "conclusory assertion of jurisdiction" without factual support). Plaintiff also alleges that "the cause of action arises from the foreign Defendants' transacting business in Virginia, contracting to supply services or things in Virginia, causing tortious injury by an act or omission in Virginia, and causing tortious injury by an act or omission outside of Virginia when they regularly conduct business in Virginia." Am. Compl. ¶ 34. These conclusory allegations essentially parrot certain *requirements* under the law to assert personal jurisdiction, Va. Code § 8.01-328.1(A), but Plaintiff pleads no affirmative *facts* that would actually establish such jurisdiction over Arkema. *See E. Direct Mktg.*, 26 Va. Cir. at 283 ("The plaintiff simply lifts this language from the Code. The plaintiff never affirmatively asserts any facts which would support these allegations. The plaintiff's conclusory pleading does not satisfy the requirements for the exercise of personal jurisdiction under the long-arm statute.").

9

activity of another party or a third person." *Grizzard v. LG Chem. Ltd.*, 641 F. Supp. 3d 282,

291-29 (E.D. Va. 2022) (finding no personal jurisdiction where a Defendant did not "advertise,

supply, authorize to provide, or provide . . . [the product] to consumers in Virginia") (internal

quotations removed). Thus, Plaintiff's alleged exposure to PFAS has no connection to any

purported contacts between Arkema and Virginia, such that personal jurisdiction cannot be

exercised over Arkema. *Carter*, 303 Va. at 145-46 (emphasizing that the court may find no

jurisdiction where the defendant "did not sell products in Virginia") (*citing Danville Plywood

Corp. v. Plain & Fancy Kitchens, Inc.*, 218 Va. 533, 535 (1977)).[6]

## CONCLUSION

For all of the foregoing reasons, Arkema respectfully asserts that the Amended Complaint

must be dismissed as against it for lack of personal jurisdiction. Arkema further reserves its right

to file a further submission in support of its motion or by way of reply should the Plaintiff file an

opposition to the present motion.

WHEREFORE, for the foregoing reasons, together with any to be stated in any

subsequent briefing on the present motion and/or during oral argument at any hearing on the

---

[6] "[E]ven if the defendant has purposefully engaged in forum activities," the exercise of jurisdiction may be unreasonable in light of "minimum requirements inherent in the concept of 'fair play and substantial justice.'" *Burger King Corp.*, 417 U.S. at 477-78 (citations omitted). Whether the exercise of specific jurisdiction violates traditional notions of fair play and substantial justice turns on: (1) the burden on Arkema of appearing in the forum; (2) Virginia's interest in adjudicating the dispute; (3) Plaintiff's interests in convenient and effective relief in Virginia; (4) judicial economy; and (5) the interest in furthering "fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). These factors weigh against the exercise of specific personal jurisdiction over Arkema in Virginia. It would be fundamentally unfair—even assuming it were constitutionally permissible—to force a foreign company with no Virginia affiliations related to the Amended Complaint's allegations to defend itself in Virginia. Further, the Commonwealth should have no interest in requiring Arkema to defend itself against such tenuous claims and allegations. Due process considerations of fair play and substantial justice should accordingly prevent this matter from proceeding in Virginia against Arkema.

10

present motion, Defendant Arkema Inc. respectfully requests that this Honorable Court enter an

Order granting its Motion to Dismiss by Special Appearance and dismissing the Amended

Complaint at against it with prejudice, together with any and such other and further relief as this

Court may deem appropriate.

ARKEMA INC.
(By Special Appearance)

Brian Vath VSB 89694

By _____    for
                    Counsel

C. Thea Pitzen, Esquire (VSB No. 90152)
Goodman Allen Donnelly PLLC
Town Point Center
150 Boush Street, Suite 900
Norfolk, VA 23510
757-625-1400 office
757-625-7701 fax
*Counsel for Defendant Arkema Inc.*

## CERTIFICTAE OF SERVICE

I hereby certify that on this 18th day of August, 2025 a true copy of the foregoing was emailed to the following:

Kevin Biniazan, Esq.
Jeffrey A. Breit, Esq.
Don Scott, Esq.
Scott M. Perry, Esq.
Lauren Martin, Esq.
Salem B. Amare, Esq.
BREIT BINIAZAN, PC
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, VA 23451
kevin@bbtrial.com
jeffrey@bbtrial.com
don@bbtrial.com
scott@bbtrial.com
lauren@bbtrial.com
salem@bbtrial.com
Counsel for Plaintiffs

Brian Vath
for

11

## VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

JONATHAN CLARKE,

      *Plaintiff,*

v.

3M COMPANY (F/K/A MINNESOTA
MINING AND MANUFACTURING
COMPANY); AGC CHEMICALS
AMERICAS, INC.; ARCHROMA U.S.,
INC.; ARKEMA, INC.; BLUE RIDGE
RESCUE SUPPLIERS, INC.; BRADSDEN
SOLUTIONS, INC.; DAIKIN AMERICA,
INC.; E.I. DU PONT DE NEMOURS AND
COMPANY, A/K/A EDIP, INC.; GLOBE
MANUFACTURING COMPANY LLC;
HONEYWELL INTERNATIONAL, INC.;
HONEYWELL SAFETY PRODUCTS USA,
INC.; LION GROUP, INC.; MALLORY
SAFETY AND SUPPLY, LLC; MINE
SAFETY APPLIANCES COMPANY, LLC;
MSA SAFETY SALES, LLC; MUNICIPAL
EMERGENCY SERVICES INC.; PBI
PERFORMANCE PRODUCTS, INC.;
STEDFAST USA, INC.; TENCATE
PROTECTIVE FABRICS USA D/B/A
SOUTHERN MILLS, INC.; THE
CHEMOURS COMPANY LLC; AND W.L.
GORE & ASSOCIATES, INC.,

      *Defendants.*

Civil Action No. CL24002853-00

## AFFIDAVIT OF EILEEN P. SMYTHE

STATE OF _Pennsylvania_ )

COUNTY OF _Montgomery_ ) ss.:

I, Eileen P. Smythe, being duly sworn, depose and say that:

1.      My name is Eileen P. Smythe. I am over the age of 18 years old and am fully

competent to provide this Affidavit. I have personal knowledge of the following facts, and my

1



statements in this Affidavit are based on a reasonable investigation of the facts set forth herein, including based on business records available to me.

2.     I am employed by Defendant Arkema Inc. ("Arkema"), serving as Vice President, Supply Chain – Americas. I am personally familiar with the organization, existence, and general activities of Arkema.

3.     Arkema is a corporation formed under the laws of Pennsylvania. Arkema's principal place of business is located in King of Prussia, Pennsylvania.

4.     Arkema is not and has never been organized or had its principal place of business in Virginia.

5.     Arkema is an advanced materials manufacturer that formerly sold fluorotelomer products to third parties that these third parties incorporated into products such as aqueous film-forming foam ("AFFF").

6.     In 2002, Arkema's entire fluorotelomer business unit was sold to E.I. DuPont de Nemours and Co. in a complete sale, after which Arkema retained no interest or involvement in the fluorotelomer market.

7.     Arkema does not and has never developed, manufactured, marketed, distributed, released, and/or sold, protective clothing worn by firefighters, called "turnout gear," including sales in Virginia or elsewhere.

8.     Nor does Arkema have any record of having ever supplied any products for use in turnout gear, including via any sales into Virginia or elsewhere, or of selling or shipping any of its products to any of the alleged turnout gear manufacturers named in the operative Amended Complaint, including sales in Virginia or elsewhere.

2

Dated: August 15, 2025

Eileen P. Smythe

Subscribed and sworn to before me this 15 day of August, 2025.

Notary Public

Commonwealth of Pennsylvania - Notary Seal
Lisa Ann Saylea, Notary Public
Montgomery County
My commission expires October 26, 2025
Commission number 1219525
Member, Pennsylvania Association of Notaries

3

**VIRGINIA:**

## IN THE CIRCUIT COURT OF THE CITY OF RICHMOND

JONATHAN CLARKE,                                   )
                                                   )
        *Plaintiff,*                               )
                                                   )
v.                                                 )        **Case No. CL24002853-00**
                                                   )
3M COMPANY, et al.,                                )
                                                   )
        *Defendants.*                              )

RECEIVED AND FILED
CIRCUIT COURT
2:28
AUG 1 8 2025
EDWARD F. JEWETT, CLERK
BY _____ D.C.

### W. L. GORE & ASSOCIATES, INC.'S
### MOTION CRAVING OYER

Defendant, W. L. Gore & Associates, Inc. ("Gore"), by counsel, and pursuant to Virginia

Code § 8.01-273 and Rule 3:8 of the Rules of the Supreme Court of Virginia, states as follows for

its Motion Craving Oyer:[1]

1.      On July 2, 2024, Plaintiff Jonathan Clarke ("Plaintiff"), filed his initial Complaint

in this action.

2.      Plaintiff generally alleges he developed leukemia as a result of his exposure to

chemicals in the turnout gear he used as a firefighter.

3.      On March 24, 2025, Plaintiff moved to amend his Complaint; and, on March 31,

2025, the First Amended Complaint was entered.

4.      Counts I and II of Plaintiff's First Amended Complaint purport to assert claims for

breach of express and implied warranties against Gore.

---

[1] Gore expressly reserves the right to submit and incorporate a Memorandum of Law in support of
this Motion and/or join in any motions craving oyer filed by other Defendants in this action prior
to any hearing on this Motion.

5.      A defendant may crave oyer of documents that form the basis of a plaintiff's claim because "[n]o intelligent construction of any writing or records can be made unless all of the essential parts of such paper or record are produced." *Culpeper Nat'l Bank v. Morris*, 168 Va. 379, 382, 191 S.E. 764, 765 (1937).

6.      Further, making the documents a part of the pleadings is significant because it allows the Court to ignore a plaintiff's factual allegations that are contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings. *Ward's Equip., Inc. v. New Holland N. Am. Inc.*, 254 Va. 379, 382-83, 493 S.E.2d 516, 518 (1997).

7.      "[O]yer may be granted over documents whenever 'a court is asked to make a ruling upon any paper or record.'" *Marios v. Va. Elec. & Power Co.*, 103 Va. Cir. 120, 124 (Fairfax Cir. Ct. 2019) (quoting *Culpeper Nat'l Bank*, 168 Va. at 383).

8.      To the extent Plaintiff asserts a claim for breach of an express warranty, Plaintiff should be required to produce that warranty and have it incorporated into the First Amended Complaint.

9.      While Gore does not concede that it made any express or implied warranties with regard to the product at issue, to the extent it did, that warranty would be contained within the W. L. Gore & Associates Fabrics Terms of Sale, attached as **Exhibit 1** hereto.

10.     Accordingly, it is essential that the W. L. Gore & Associates Fabrics Terms of Sale be made a part of the First Amended Complaint so that the Court, upon both Plaintiff's affirmative claims and Gore's demurrer, may consider the substance of the warranties that form the basis of Plaintiff's claims. *See Dodge v. Trustees of Randolph-Macon Woman's College*, 276 Va. 1, 6, 661 S.E.2d 801, 803 (2008).

WHEREFORE, for the foregoing reasons, Defendant W. L. Gore and Associates, Inc.

respectfully requests this Court grant its Motion and enter an order requiring W. L. Gore &

Associates Fabrics Terms of Sale be attached to and fully incorporated into Plaintiff's First

Amended Complaint, along with any such other and further relief that this Court deems just and

proper.

Dated: August 18, 2025                    **W. L. GORE & ASSOCIATES, INC.**

By: _Ashleyd Davo_

Martin A. Conn, Esq. (VSB No. 39133)
Stewart R. Pollock, Esq. (VSB No. 92466)
Ashley A. Davoli, Esq. (VSB No. 93466)
Moran Reeves & Conn, P.C.
1211 East Cary Street
Richmond, Virginia 23219
Tel: (804) 421-6250
Fax: (804) 421-6251
mconn@moranreevesconn.com
spollock@moranreevesconn.com
adavoli@moranreevesconn.com
*Counsel for W. L. Gore & Associates, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 18th day of August, 2025, a true copy of the foregoing was sent via

electronic mail and first-class mail, postage fully prepaid to:

Kevin Biniazan, Esq.
Jeffrey A. Breit, Esq.
Lauren A. Martin, Esq.
Breit Biniazan, P.C.
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia 23451-4088
kevin@bbtrial.com
jeffrey@bbtrial.com
lmartin@bbtrial.com
*Counsel for Plaintiff*

John R. Owen, Esq.
Julie S. Palmer, Esq.
John P. Dunnigan, Esq.
Imani E. Sowell, Esq.
Yevgeniy K. Klinovskiy, Esq.
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
jowen@hccw.com
jpalmer@hccw.com
jdunnigan@hccw.com
isowell@hccw.com
yklinovskiy@hccw.com
*Counsel for Defendants Blue Ridge Rescue*
*Suppliers, Inc. and Bradsden Solutions, Inc.*

Andrew Bosse, Esq.
Allison Melton, Esq.
Baughman Kroup Bosse PLLC
500 East Main Street, Suite 1400
Norfolk, Virginia 23510
abosse@bkbfirm.com
amelton@bkbfirm.com
*Counsel for Honeywell International and*
*Honeywell Safety Products USA, Inc.*

Matthew J. Hundley, Esq.
Butler Snow LLP
919 E. Main St., Suite 600
Richmond, Virginia 23219
matthew.hundley@butlersnow.com
*Counsel for 3M*

Caitlin R. Convery, Esq.
Shook, Hardy & Bacon LLP
1800 K Street, N.W., Suite 1000
Washington, D.C. 20006
cconvery@shb.com

Amy M. Crouch, Esq.
Brent Dwerlkotte, Esq.
Shook, Hardy & Bacon, L.L.P.
2555 Grand Blvd.
Kansas City, Missouri 64108
amcrouch@shb.com
*Counsel for E.I. Du Pont de Nemours and*
*Company a/k/a EDIP, Inc. and The*
*Chemours Company, LLC*

Lynn K. Brugh, IV, Esq.
Williams Mullen
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
lbrugh@williamsmullen.com
*Counsel for Defendants Globe*
*Manufacturing Company, LLC and MSA*
*Safety Sales, LLC*

John T. Bergin, Esq.
Kilpatrick Stockton Townsend LLP
701 Pennsylvania Avenue, NW, Suite 200
Washington, D.C. USA 20004
jbergin@ktslaw.com
*Counsel for Tencate Protective Fabrics USA*
*d/b/a Southern Mills Inc.*

Andrew D. Kaplan, Esq.
Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
akaplan@crowell.com
*Counsel for AGC Chemicals Americas, Inc.*

Vanessa Pisano, Esq.
Hinshaw & Culbertson LLP
53 State Street, 27th Floor
Boston, Massachusetts 02109
vpisano@hinshawlaw.com
*Counsel for Stedfast USA, Inc.*

Paul C. Kuhnel, Esq.
Lewis Brisbois Bisgaard & Smith, LLP
10 S. Jefferson Street, Suite 1100
Roanoke, Virginia 24011
paul.kuhnel@lewisbrisbois.com
*Counsel for Lion Group, Inc.*

Michael F. Williams, Esq.
Kirkland & Ellis, LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
mwilliams@kirkland.com
*Counsel for Archroma, U.S., Inc.*

Jeffrey Golimowski, Esq.
Womble Bond Dickinson-US, LLP
8350 Broad Street, Suite 1500
Tysons, Virginia 22120
jeff.Golimowski@wbd-us.com
*Counsel for Defendant Municipal
Emergency Services, Inc.*

By: _Ashley A Oar_

<br>EXHIBIT<br>

## W.L. GORE & ASSOCIATES FABRICS TERMS OF SALE

1. IDENTIFICATION OF SELLER; ENTIRE AGREEMENT; ACCEPTANCE: In the absence of an agreement signed by both parties to the contrary, these terms, together with those of Buyer's terms that are not inconsistent with them and do not: (i) require Seller to take any action besides the supply of its product and finished product test date; (ii) impose restrictions on Seller's activities in addition to those imposed directly by government statutes; or (iii) add to Seller's obligations, shall constitute the agreement between Buyer and Seller. Terms imposing any different or additional obligations are expressly rejected. These terms and conditions shall govern any changes made to the requirements of this Agreement.

2. INSPECTION, CLAIMS FOR DEFECTS OR LATE DELIVERY: Buyer shall inspect goods it receives within sixty (60) days after their delivery or within the period required by applicable law, whichever is shorter. Seller must be notified promptly in writing of any non-conformance. With respect to late delivery or defects discoverable upon reasonable inspection, all claims are waived if not made within sixty days from date delivered. Buyer is entitled to inspect goods purchased hereunder at any stage of their manufacture, but Seller reserves the right to restrict access to machinery, processes, and information that are considered proprietary by Seller. In the event of any claim by Buyer regarding the quality of the goods delivered, such goods must be promptly offered to Seller for examination. Seller shall have no obligation to replace or provide credit for goods claimed to be defective unless Seller receives representative samples of the goods and an opportunity to examine the goods at a place convenient to the Seller. Buyer's right to reject goods shall at all times be limited to that portion of the goods actually defective. No goods may be returned without Seller's prior authorization.

3. DELIVERIES: Seller's obligation with respect to each item and delivery date shall be separate and distinct. Delivery dates are to be treated as estimates only. Seller's failure to make delivery of any item or to meet any delivery date shall not affect either party's obligations with respect to any remaining item or deliveries specified in this Agreement. Buyer should confirm the suitability of Seller's attendant manufacturing lead times when placing orders. Delivery required in advance of Seller's standard lead-time may require an expediting fee. With respect to each delivery obligation contained in this Agreement: (i) Tender of a shipment to any licensed carrier shall constitute delivery to Buyer; (ii) Seller shall use its best efforts to deliver in accord with the schedule specified in this Agreement. Any delivery not in dispute shall be paid for in accordance with that order's terms by Buyer, regardless of any dispute as to other delivered or undelivered goods. Seller is not obligated to package goods for outside storage. Delivery shall be made on ten percent (10%) above or below quantities specified in the order shall be accepted by Buyer and the invoice price will be adjusted accordingly. Unless otherwise specified by Seller, delivery terms are to be Ex Works (Incoterms 2000) Seller's manufacturing site

4. TITLE; RISK OF LOSS: Unless otherwise agreed by the parties, risk of loss or damage to the goods shall pass to the carrier. Buyer upon delivery to the carrier. Buyer shall take title to the goods upon Seller's receipt of payment for the goods delivered.

5. PRICING OF BULK PURCHASE ORDERS: Unless otherwise agreed by the parties, installment deliveries extending over six months from the original order date will be invoiced at Seller's then-prevailing unit price.

6. WARRANTY: Seller warrants that at the time of delivery, the products sold hereunder shall be free from defects in materials and workmanship and shall conform to Seller's specifications, and, if applicable, acceptance criteria to which Seller has agreed in writing. Buyer retains sole responsibility for determining whether the products are fit for the intended use and for suitability of qualification and acceptance criteria. Claims for defects must be received by Seller within one (1) year from Seller's delivery of product on which the claim is based or such longer period as required by applicable law. Buyer's remedy will be limited to repair, replacement or refund for products which Seller verifies as defective. Except for this warranty, unless otherwise required by applicable law, SELLER MAKES NO WARRANTY, EXPRESS OR IMPLIED, AND EXPRESSLY EXCLUDES ANY WARRANTY OF MERCHANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE.

7. INDEMNITY AGAINST INFRINGEMENT: Seller will, at its expense, defend Buyer against any claim by a third party that the products delivered by Seller hereunder infringe any intellectual property right and will pay all costs, damages, and attorney's fees that a court finally awards as a result of such claim. To qualify for such defense and payment, Buyer must give Seller prompt written notice of such claim and allow Seller to control and fully cooperate with Seller in the defense and all related settlement negotiations. Seller shall have no obligation with respect to any claim of direct or contributory infringement based upon modification of the products furnished by Seller or their combination, operation, or use. Buyer shall hold Seller harmless against any such claim arising out of compliance with specifications furnished by Buyer. This Article 7 states Seller's entire obligation to Buyer regarding claims of infringement, whether direct or contributory, involving intellectual property rights of third parties. Neither party shall have the obligations set forth in this Article 7 if an infringement claim is brought against a party protected from such a claim pursuant to government regulations.

8. EXCLUSION OF INDEMNITIES: With the sole exception of obligations assumed by the Seller under the clause hereof entitled, "Indemnity Against Infringement", Seller shall not be required to indemnify Buyer or any third party for any reason.

9. LIMITATION OF LIABILITY; INSURANCE: With the sole exception of obligations assumed by Seller under the clause hereof entitled "Indemnity Against Infringement," Seller shall, to the maximum extent permitted by applicable law, not be liable for any incidental, consequential, or other damages, including but not limited to loss of business or profit, based on any alleged design or manufacturing defect, negligence, breach of warranty, strict liability, default, indemnity, or any other reason or legal theory arising out of the use or handling of its product or its performance hereunder, to the extent that such liability extends Seller's obligations beyond the price paid to Seller for the product on which such claim is based. Seller shall not be liable for any direct or consequential damages arising from delivery delay, whether or not arising from Seller's negligence, or

from transit loss or damage. Seller is not obliged to obtain or maintain any insurance not required by applicable law.

10. CHANGES: Any changes to the specification or delivery will require agreement between the parties as to technological and logistical feasibility and price before Seller will be obliged to implement such change. Seller reserves the right to improve and make changes to products sold hereunder without notice or approval, except for changes that would affect the form, fit or function of the delivered product as outlined in applicable specifications. Changes may require additional charges, depending upon the stage of manufacturing completion at the time the change is received.

11. CANCELLATION: Buyer has no right to terminate or cancel without Seller's agreement unless Buyer's order is under a Government contract which is being terminated for convenience. Orders cancelled by Buyer other than for default of Seller will be subject to a cancellation charge based on the percentage of work completed as a percentage of the contract price or such other reasonable charge as Seller may apply. Buyer will be entitled to receive any products for which it pays. Seller has the option not to claim for work in progress that it is willing to absorb or redirect. Buyer's cancellation request(s) must be in writing.

12. TECHNICAL DATA AND PROPRIETARY INFORMATION: Seller has no obligation to provide technical data other than its standard finished product inspection data. Seller has no obligation to perform, and this is not an Agreement for, research, developmental or experimental work. Seller has no obligation to disclose, convey rights or allow access to technical, financial, or other information protected by it as proprietary or to indemnify Buyer for such refusal to disclose.

13. PAYMENT: Payment is due as stated on Seller's invoice or, if not stated thereon, not 32 days from the date that products were delivered. Buyer agrees to pay interest at Seller's prevailing interest rate as of the invoice date or, if lower, the highest rate allowed under applicable law. Buyer agrees to pay court costs, attorneys' fees, and any other reasonable expenses of collection. Seller reserves the right to alter Buyer's credit limit, if any, at any time, or to require payment for any order or prior order before delivery. Failure of Buyer to make any payments requested by Seller shall give the Seller the option to cancel this Agreement or to delay delivery without otherwise affecting Seller's rights hereunder. Payment shall be made in the currency specified by Seller. As partial payment of taxes due hereunder, Seller may accept any check or other tender of payment without entering into an accord and satisfaction and without prejudice to the Seller's right to the remainder due or to recover due hereunder notwithstanding any terms or conditions endorsed on or stated in any communication related to such check or other tender. Seller may apply any payment tendered by Buyer to any amount owed to Seller by Buyer whether under this Agreement or otherwise.

14. TAXES: All prices quoted are exclusive of taxes. VAT, GST or other sales taxes, as applicable, will be charged by Seller as the current rate at the time of delivery and remain the responsibility of the Buyer. Withholding tax, if applicable are deducted by the Buyer from its payment to Seller, will be assessed at the lowest applicable tax treaty rate and must be documented by written government tax receipt forwarded to Seller. Seller will provide a copy of its most-recent certification of its tax residency, upon request.

15. FORCE MAJEURE: Seller shall not be liable for any delay in delivery or for non-delivery, in whole or in part caused by the occurrence of any contingency beyond the control either of Seller or suppliers to Seller, including but not limited to war (declared or not), sabotage, insurrection, rebellion, riot or other act of civil disobedience, act of public enemy, failure or delay in transportation, act of any government or any agency or subdivision thereof, judicial action, labor dispute, fire, accident, explosion, epidemic, quarantine restrictions, storm, flood, earthquake, shortage of labor, fuel, raw material or machinery or technical failure, where Seller has exercised ordinary care in the prevention thereof. If any contingency occurs, Seller may allocate production and deliveries among Seller's customers

16. REPRESENTATIONS AND CERTIFICATIONS: Seller makes no representations or certifications in connection with this Agreement except those which are expressly contained within these Terms of Sale and, if any, those provided separately which are signed and dated by the Seller and made exclusively applicable to this Agreement.

17. APPLICABLE LAW, JURISDICTION: The obligations deriving herefrom shall be interpreted, executed and enforced in accordance with the substantive law of Seller's registered place of business excluding the application of any conflict of law or choice of law provisions. The parties hereby consent to the jurisdiction of the courts of the Seller's registered place of business for any legal proceedings relating hereto. However, Seller shall have the right, at its sole discretion, to bring legal action(s) against Buyer at the Buyer's registered place of business or that of one of its subsidiary(ies) at Seller's sole discretion. The provisions of the UNITED NATIONS CONVENTION ON CONTRACTS FOR THE INTERNATIONAL SALE OF GOODS shall not apply to this Agreement.

18. CONTRACT LAMINATING, GORE-SEAM® TAPE (Applicable to fabric lamination orders.) Seller will not be responsible for inspecting Buyer-supplied fabric and may refuse to laminate fabric discovered to have flaws or contaminants. Buyer shall pay charges applicable to Seller's lamination of fabric containing flaws or contaminants. Buyer will deliver fabric 8-10 weeks before the scheduled shipping date. Seller assumes no responsibility for delays in shipment of laminated fabrics caused by late arrival of Buyer's fabric. Seller shall have a working allowance of 10% of the running length of the agreed volume of Buyer-supplied fabric. Seller will credit or reimburse Buyer for losses of Buyer's fabric in excess of that percentage, except to the extent Seller is excused from responsibility therefore pursuant to Buyer's supply of defective fabric. Seller may retain defectively-laminated fabric by paying Buyer for Buyer-supplied fabric. Seam tape supplied by Seller will provide acceptable sealed seams when: (a) used with Seller-supplied laminate and seam sealing equipment and (b) applied by operators trained in accordance with instructions supplied by Seller. Seller is not responsible for the water-proofness of Buyer's or any manufacturer's seams

**VIRGINIA:**

### IN THE CIRCUIT COURT OF THE CITY OF RICHMOND

| | |
|---|---|
| **JONATHAN CLARKE,**     ) | |
|                   ) | |
|    *Plaintiff,*         ) | |
|                   ) | |
| v.                     ) | **Case No. CL24002853-00** |
|                   ) | |
| **3M COMPANY, et al.,**     ) | |
|                   ) | |
|    *Defendants.*       ) | |

### ORDER GRANTING W. L. GORE & ASSOCIATES'
### MOTION CRAVING OYER

    **CAME THIS DAY** Defendant W. L. Gore & Associates, Inc. ("Gore"), by counsel, pursuant to Virginia Code § 8.01-273 and Rule 3:8 of the Rules of the Supreme Court of Virginia, and upon its Motion Craving Oyer, and the Court being otherwise fully informed in this matter, it is hereby

    **ORDERED** that the W. L. Gore & Associates Fabrics Terms of Sale, attached to Gore's Motion as Exhibit 1, is hereby incorporated into Plaintiff Jonathan Clarke's First Amended Complaint, and may be considered by the Court in ruling as to the Partial Demurrer on Behalf of Certain Moving Defendants to the First Amended Complaint as it applies to Gore.

    **IT IS SO ORDERED.**

Entered this _____ day of _____, 2025.

_____
Circuit Court Judge

1

**WE ASK FOR THIS:**

Martin A. Conn, Esq. (VSB No. 39133)
Stewart R. Pollock, Esq. (VSB No. 92466)
Ashley A. Davoli, Esq. (VSB No. 93466)
Moran Reeves & Conn, P.C.
1211 East Cary Street
Richmond, Virginia 23219
Tel: (804) 421-6250
Fax: (804) 421-6251
mconn@moranreevesconn.com
spollock@moranreevesconn.com
adavoli@moranreevesconn.com
*Counsel for W. L. Gore & Associates, Inc.*

2



**VIRGINIA:**

### IN THE CIRCUIT COURT OF THE CITY OF RICHMOND

**JONATHAN CLARKE,**                )
                                    )
    *Plaintiff,*                    )
                                    )
v.                                  )    **Case No. CL24002853-00**
                                    )
**3M COMPANY, et al.,**             )
                                    )
    *Defendants.*                   )

### ORDER GRANTING W. L. GORE & ASSOCIATES'
### MOTION CRAVING OYER

**CAME THIS DAY** Defendant W. L. Gore & Associates, Inc. ("Gore"), by counsel, pursuant to Virginia Code § 8.01-273 and Rule 3:8 of the Rules of the Supreme Court of Virginia, and upon its Motion Craving Oyer, and the Court being otherwise fully informed in this matter, it is hereby

**ORDERED** that the W. L. Gore & Associates Fabrics Terms of Sale, attached to Gore's Motion as Exhibit 1, is hereby incorporated into Plaintiff Jonathan Clarke's First Amended Complaint, and may be considered by the Court in ruling as to the Partial Demurrer on Behalf of Certain Moving Defendants to the First Amended Complaint as it applies to Gore.

**IT IS SO ORDERED.**

Entered this _____ day of _____, 2025.

_____
Circuit Court Judge

1

**WE ASK FOR THIS:**

Martin A. Conn, Esq. (VSB No. 39133)
Stewart R. Pollock, Esq. (VSB No. 92466)
Ashley A. Davoli, Esq. (VSB No. 93466)
Moran Reeves & Conn, P.C.
1211 East Cary Street
Richmond, Virginia 23219
Tel: (804) 421-6250
Fax: (804) 421-6251
mconn@moranreevesconn.com
spollock@moranreevesconn.com
adavoli@moranreevesconn.com
*Counsel for W. L. Gore & Associates, Inc.*

2

RECEIVED AND FILED
CIRCUIT COURT
2:28
AUG 1 8 2025

EDWARD F. JEWETT, CLERK
BY _____ D.C.

## VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

JONATHAN CLARKE,

Plaintiff,

v.

Civil Action No. CL24002853-00

3M COMPANY, et al.,

Defendants.

## DEFENDANT AGC CHEMICALS AMERICAS, INC.'S MOTION BY SPECIAL APPEARANCE TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant AGC Chemicals Americas, Inc., moves by special appearance to dismiss all the claims against it for lack of personal jurisdiction.

1. The burden of proving personal jurisdiction rests with the plaintiff. *E. Tech. Enters., Inc. v. Wilson & Hayes, Inc.*, 46 Va. Cir. 558 (1997).

2. Virginia's long-arm statute, Va. Code Ann. § 8.01-328.1, has been narrowly construed.

3. General personal jurisdiction over AGCCA is lacking. General jurisdiction requires that a defendant be "essentially at home" in the forum state, usually by having its place of incorporation or principal place of business there. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017); *Daimler AG v. Bauman*, 571 U.S. 117, 138-39, 139 n.19 (2014); *Carter v. Wake Forest Univ. Baptist Med. Ctr.*, 303 Va. 135, 144-46, 145 n.8 ( 2024). AGCCA is incorporated in Delaware and maintains its principal place of business in Pennsylvania. AGCCA does not maintain any offices or facilities in Virginia. It does not own or lease any real property in Virginia. It does not have any employees located in Virginia. It does not maintain any bank accounts in Virginia, it

1

does not pay income or sales tax in Virginia, and it has no registered agent in Virginia. *See* Affidavit of Gary Eckrote, submitted herewith.

4.    Specific personal jurisdiction demands that a plaintiff's claims "arise proximately" from the defendant's contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *see also Talenthunter LLC v. S. Co. Servs.*, 87 Va. Cir. 363 (2014) ("For specific jurisdiction over a nonresident, litigation must result from alleged injuries that 'arise out of or relate to' those contacts with the forum.") (quoting *Rudzewicz,* 471 U.S. at 472).

5.    Plaintiff's claims do not arise from any forum-related activities of AGCCA. The allegations here identify no factual nexus between anything AGCCA did in Virginia and Plaintiff's claim that he developed leukemia from exposure to per- and poly-fluoroalkyl substances ("PFAS") in his firefighting turnout gear. Am. Compl. ¶ 14.

6.    Plaintiff relies on the "stream of commerce" theory, which has been rejected by Virginia's courts. Merely placing an item into the "stream of commerce" outside of Virginia is not sufficient to establish personal jurisdiction, even if the product ultimately causes injury in Virginia. *May v. Osako & Co.*, 83 Va. Cir. 355 (2011); *Bowen v. Mooney Airplane*, 83 Va. Cir. 368 (2011); *Sutherland v. Robby Thruston Carpentry, Inc.*, 68 Va. Cir. 43 (2005). *Accord Andrews v. Shandong Linglong Tyre Co.*, 656 F.Supp.3d 583, 586, 593 (E.D. Va. 2023); *Grizzard v. LG Chem Ltd.*, 641 F.Supp.3d 282, 292 (E.D. Va. 2022); *James v. Subaru of Am., Inc.*, 433 F.Supp.3d 933, 936-38, 941 (W.D. Va. 2020).

7.    Because Plaintiff cannot establish the existence of personal jurisdiction over AGCCA, his claims against AGCCA should be dismissed.

The relevant authorities and reasons for dismissal are more fully set forth in the accompanying brief.

2

Dated: August 18, 2025

Respectfully submitted,

/s/ *Daniel Campbell*

Daniel Campbell, Bar No. 41320
Andrew D. Kaplan, Bar No. 45530
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004-2595
Telephone: 202.624.2500
Facsimile: 202.628.5116
E-mail: DCampbell@crowell.com
E-mail: AKaplan@crowell.com

*Counsel for Defendant AGC Chemicals
Americas, Inc.*

3

**VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND**

JONATHAN CLARKE,

        Plaintiff,

v.

        Civil Action No. CL24002853-00

3M COMPANY, et al.,

        Defendants.

## BRIEF IN SUPPORT OF DEFENDANT AGC CHEMICALS AMERICAS, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Daniel Campbell, Bar No. 43210
Andrew D. Kaplan, Bar No. 45530
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004-2595
Telephone: 202.624.2500
Facsimile: 202.628.5116
E-mail: DCampbell@crowell.com
E-mail: AKaplan@crowell.com

*Counsel for Defendant AGC Chemicals Americas, Inc.*

## TABLE OF CONTENTS

BACKGROUND ...................................................................................................................3

ARGUMENT ......................................................................................................................5

I.   THE COMPLAINT DOES NOT ALLEGE ANY FACTS ESTABLISHING PERSONAL
     JURISDICTION OVER AGCCA IN VIRGINIA............................................................5

     A.   General Jurisdiction Does Not Exist Over AGCCA................................................7

     B.   Specific Jurisdiction Does Not Exist Over AGCCA. ............................................8

CONCLUSION....................................................................................................................12

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Andrews v. Shandong Linglong Tyre Co.*,
  656 F.Supp.3d 583 (E.D. Va. 2023) ...................................................................................11

*Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*,
  480 U.S. 102 (1987) ...........................................................................................................10

*Bergaust v. Flaherty*,
  57 Va. App. 423 (2011) ........................................................................................................5

*BNSF Ry. Co. v. Tyrrell*,
  581 U.S. 402 (2017) .........................................................................................................1, 7

*Bowen v. Mooney Airplane*,
  83 Va. Cir. 368 (2011)......................................................................................................1, 10

*Bowman v. State Bank of Keysville*,
  229 Va. 534 (1985).................................................................................................................6

*Bristol-Myers Squibb Co. v Super. Ct. of Cal., S.F. Cnty.*,
  582 U.S. 255 (2017) ..............................................................................................................8

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) .....................................................................................................1, 2, 8

*Carter v. Wake Forest Univ. Baptist Med. Ctr.*,
  303 Va. 135 (2024)...........................................................................................................1, 7

*Carter v. Wake Forest Univ. Baptist Med. Ctr.*,
  76 Va. App. 756, 883 S.E.2d 693 (2023), *aff'd,* 303 Va. 135, 900 S.E.2d 496
  (2024) .............................................................................................................................8, 11

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) .....................................................................................................1, 7, 8

*E. Direct Mktg. v. Coolidge Co.*,
  26 Va. Cir. 282 (1992)...........................................................................................................6

*E. Tech. Enters., Inc. v. Wilson & Hayes, Inc.*,
  46 Va. Cir. 558 (1997)....................................................................................................5, 6, 9

*Grizzard v. LG Chem Ltd.*,
  641 F.Supp.3d 282 (E.D. Va. 2022) ...................................................................................11

ii

*James v. Subaru of Am., Inc.*,
    433 F.Supp.3d 933 (W.D. Va. 2020)...............................................................................................11

*Lucido v. Maxwell*,
    93 Va. Cir. 415 (2016).......................................................................................................................5

*Massey Energy Co. v. United Mine Workers*,
    69 Va. Cir. 118 (2005).......................................................................................................................6

*May v. Osako & Co.*,
    83 Va. Cir. 355 (2011)........................................................................................................ 1, 10, 11

*Mireskandari v. Daily Mail & Gen. Tr. PLC*,
    105 Va. Cir. 370 (2020)............................................................................................................*passim*

*Sutherland v. Robby Thruston Carpentry, Inc.*,
    68 Va. Cir. 43 (2005)......................................................................................................... 1, 10, 11

*Talenthunter LLC v. S. Co. Servs.*,
    87 Va. Cir. 363 (2014).................................................................................................................1, 5

*Weirton Area Water Bd. v. 3M Co.*,
    No. 20-CV-102, 2020 WL 8184953 (N.D. W. Va. Nov. 20, 2020)......................................12

*Young-Allen v. Bank of Am., N.A.*,
    298 Va. 462 (2020)............................................................................................................................5

**Statutes**

Va. Code Ann. § 8.01-328.1 ............................................................................................................1, 5

**Other Authorities**

U.S. Constitution's Fourteenth Amendment Due Process Clause ...........................................1, 5

Plaintiff Jonathan Clarke's ("Plaintiff") claims against Defendant AGC Chemicals Americas, Inc. ("AGCCA") require dismissal because this Court lacks personal jurisdiction over AGCCA. Because Plaintiff's claims do not arise from any contact AGCCA had with Virginia, there is no circumstance under which the exercise of either general or specific personal jurisdiction over AGCCA could comport with due process or the requirements of Virginia's long-arm statute, Va. Code Ann. § 8.01-328.1, or the U.S. Constitution's Fourteenth Amendment Due Process Clause. Plaintiff's only allegations against AGCCA are that it placed unidentified products and goods in the "stream of commerce" that eventually ended up in Virginia. (Am. Compl. ¶ 14.) That basis for personal jurisdiction has been soundly rejected by Virginia's courts. *May v. Osako & Co.*, 83 Va. Cir. 355 (2011); *Bowen v. Mooney Airplane*, 83 Va. Cir. 368 (2011); *Sutherland v. Robby Thruston Carpentry, Inc.*, 68 Va. Cir. 43 (2005). Accordingly, AGCCA moves, by special appearance, to dismiss all the claims against it.

First, general jurisdiction over AGCCA is lacking. General jurisdiction requires that a defendant be "essentially at home" in the forum state, usually by having its place of incorporation or principal place of business there. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017); *Daimler AG v. Bauman*, 571 U.S. 117, 138-39, 139 n.19 (2014); *Carter v. Wake Forest Univ. Baptist Med. Ctr.*, 303 Va. 135, 144-46, 145 n.8 (2024). But Plaintiff affirmatively pleads that AGCCA is incorporated in Delaware and maintains its principal place of business in Pennsylvania. Am. Compl. ¶ 14. In short, there is no basis for exercising general jurisdiction over AGCCA.

Second, the Amended Complaint does not allege any facts that would allow this Court to exercise specific personal jurisdiction over AGCCA. Specific jurisdiction demands that a plaintiff's claims "arise proximately" from the defendant's contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *see also Talenthunter LLC v. S. Co. Servs.*,

1

87 Va. Cir. 363 (2014) ("For specific jurisdiction over a nonresident, litigation must result from alleged injuries that 'arise out of or relate to' those contacts with the forum.") (quoting *Rudzewicz,* 471 U.S. at 472). The allegations here identify no factual nexus between anything AGCCA did in Virginia and Plaintiff's claim that he developed leukemia from exposure to per- and poly-fluoroalkyl substances ("PFAS") in his firefighting turnout gear. There is good reason for that failure – as explained in the Affidavit of Gary Eckrote ("Eckrote Aff."), AGCCA never manufactured turnout gear, and is merely a seller of raw materials that could *potentially* be used in the manufacture of turnout gear made by others in places other than Virginia. (Eckrote Aff. ¶¶ 8-9).

There are no allegations that any product made by AGCCA was ever incorporated into the turnout gear Mr. Clarke wore. But even if there were, that still would not establish a sufficient nexus between AGCCA and Virginia. AGCCA has no customers in Virginia that manufacture turnout gear and does not have any record of sales of materials containing PFAS to any turnout gear manufacturer in Virginia. (*Id.* ¶¶ 8-12). AGCCA also has no records of any sales in Virginia to any entity named as a Defendant here, or to Plaintiff or the City of Richmond. (*Id.*). Merely selling a product that *might* eventually find its way to Virginia as a component of a product made by someone else is an insufficient basis for personal jurisdiction under Virginia law. As a result, the Amended Complaint lacks any relevant factual matter tying AGCCA to Virginia and provides no basis for assertion of personal jurisdiction.

Because the Court cannot exercise personal jurisdiction over AGCCA, Plaintiff's claims against it should be dismissed.

## **BACKGROUND**

Plaintiff has sued AGCCA and 20 other Defendants, alleging that he contracted leukemia from exposure to PFAS in firefighting turnout gear and asserting that each of the 21 Defendants he names identically "developed, manufactured, marketed, distributed, released, sold and/or used PFAS, PFAS materials, and products containing PFAS in turnouts, including in Virginia and in the City of Richmond." Am. Compl. ¶¶ 13-33; *see also id.* ¶ 2. Yet according to Plaintiff, he wore only "a limited number" of turnouts for years during his duties as a firefighter, but he never alleges which Defendant, if any, made that turnout gear. *Id.* ¶¶ 1, 8, 10, 51. This is despite the fact that, as the Amended Complaint itself demonstrates, turnout gear contains a conspicuous label identifying its manufacturer. *Id.* ¶ 87. Plaintiff claims that repeated exposure to PFAS caused him to develop leukemia, and that he was diagnosed with the disease in July 2022. *Id.* ¶ 12. Plaintiff seeks to recover damages for bodily injuries; past, present and future physical pain and mental anguish; disfigurement and/or deformity coupled with associated humiliation and embarrassment; past, present and future inconvenience; past, present and future lost earnings, and a lessening of earning capacity; personal, social and financial limitations resulting from the injuries sustained by Plaintiff; and other damages. *Id.* ¶ 185.

Notably, the Amended Complaint lacks any facts alleging what AGCCA supposedly did to cause Plaintiff's injury. Plaintiff does not allege that AGCCA manufactured or distributed the PFAS or PFAS-containing turnouts that supposedly injured him. Instead, the Amended Complaint alleges only that all "Defendants" collectively "manufactured, designed, sold, supplied, [or] distributed" the PFAS Plaintiff was exposed to "in protective clothing specifically designed for firefighters." Am. Compl. ¶ 2. This, of course, is impossible and the Amended Complaint never identifies which of the 21 Defendants in fact manufactured the turnouts or components for the

3

turnouts he wore. The Amended Complaint certainly contains no specific factual allegations tying the turnouts Plaintiff wore to anything AGCCA did.

Plaintiff correctly pleads that AGCCA has its principal place of business in Pennsylvania and is incorporated in Delaware. Am. Compl. ¶ 14; Eckrote Aff. ¶ 3. After that, the Amended Complaint never pleads a single fact connecting AGCCA to the turnout gear Plaintiff wore, or anything that AGCCA supposedly did in Virginia more generally to cause Plaintiff's injury.

This is because AGCCA's contacts with Virginia are sparse at best and have nothing to do with turnout gear. As described in the Affidavit of Gary Eckrote, AGCCA's senior director of commercial operations, AGCCA does not maintain any offices or facilities in Virginia. (Eckrote Aff. ¶ 4). It does not own or lease any real property in Virginia. (*Id.*). It does not have any employees located in Virginia. (*Id.* ¶ 5). It does not maintain any bank accounts in Virginia, it does not pay income or sales tax in Virginia, and it has no registered agent in Virginia.[1] (*Id.* ¶¶ 6-8).

Most importantly, AGCCA has never manufactured turnout gear (*id.* ¶ 9), and its sales of raw materials that could *potentially* be used in the manufacture of turnout gear were all made to customers located in states other than Virginia. (*Id.* ¶¶ 9-11). AGCCA has no record of any sales of materials containing PFAS in Virginia to any turnout gear manufacturer named as a Defendant in this action, or to Plaintiff or the City of Richmond. (*Id.* ¶ 12). In sum, the Amended Complaint fails to allege any facts that so much as suggest that the Court has personal jurisdiction, either general or specific, over AGCCA, and the Eckrote Affidavit shows that no such facts exist. The claims against AGCCA should be dismissed.

---

[1] Plaintiff had to serve AGCCA through the Secretary of the Commonwealth because AGCCA has no Virginia presence.

4

## ARGUMENT

### I.    THE COMPLAINT DOES NOT ALLEGE ANY FACTS ESTABLISHING PERSONAL JURISDICTION OVER AGCCA IN VIRGINIA.

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to "establish a prima facie case of personal jurisdiction." *Talenthunter LLC v. S. Co. Servs.*, 87 Va. Cir. 363 (2014). "[O]nce personal jurisdiction has been challenged, the question is one for the judge with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by the preponderance of the evidence." *Id.* (citation modified); *E. Tech. Enters., Inc. v. Wilson & Hayes, Inc.*, 46 Va. Cir. 558 (1997) ("[t]he Plaintiff bears the burden of proving this Court has personal jurisdiction over the Defendant"). Dismissal is warranted "if all of the alleged facts taken together fail to establish the existence of personal jurisdiction." *Talenthunter LLC,* 87 Va. Cir. 363.

A court may only assert personal jurisdiction over a nonresident defendant if (1) the state's long-arm statute authorizes the exercise of personal jurisdiction, and (2) the exercise of personal jurisdiction comports with the due process requirements of the U.S. Constitution's Fourteenth Amendment. *Talenthunter LLC*, 87 Va. Cir. 363; *Bergaust v. Flaherty*, 57 Va. App. 423, 436 (2011). Virginia's long-arm statute, Va. Code Ann. § 8.01-328.1, extends personal jurisdiction to the outer bounds of the Fourteenth Amendment's Due Process Clause, such that "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Lucido v. Maxwell*, 93 Va. Cir. 415 (2016) (quoting *Stover v. O'Connell Assocs., Inc.,* 84 F.3d 132, 135-36 (4th Cir. 1996)). Thus, in Virginia, the personal jurisdiction analysis turns on whether exercising personal jurisdiction comports with constitutional due process. *Id.*

Plaintiffs must allege facts to support each element necessary to their claim. *See, e.g., Young-Allen v. Bank of Am., N.A.*, 298 Va. 462, 469 (2020). This extends to personal jurisdiction. *Mireskandari v. Daily Mail & Gen. Tr. PLC*, 105 Va. Cir. 370 (2020) (unpublished). Allegations

5

asserted in "mere conclusory language," devoid of articulated facts, and inferences "not fairly and justly drawn" are subject to dismissal. *Bowman v. State Bank of Keysville*, 229 Va. 534, 541, (1985). Like other aspects of a complaint, "plaintiffs are not ethically permitted to 'plead by guesswork'" and must put forth jurisdictional allegations with essential facts supporting the court's jurisdiction. *Mireskandari,* 105 Va. Cir. 370 (citations omitted). Thus, "conclusory pleading does not satisfy the requirements for the exercise of personal jurisdiction under the long-arm statute." *E. Direct Mktg. v. Coolidge Co.*, 26 Va. Cir. 282 (1992).

Although the Court "must draw all reasonable inferences from the pleadings and must resolve all factual disputes in favor of the Plaintiff," the Court may consider evidence and affidavits offered by the parties on a motion challenging personal jurisdiction. *E. Tech. Enters., Inc.*, 46 Va. Cir. 558 (evaluating affidavit from plaintiff attempting to establish personal jurisdiction); *see also Massey Energy Co. v. United Mine Workers,* 69 Va. Cir. 118 (2005) (noting that where "[d]efendants submit affidavits denying allegations specifically pertaining to jurisdiction," the court will accept the plaintiff's version of the facts only "where the parties' allegations are contradictory").

Here, Plaintiff's allegations do not provide a basis for the exercise of either specific or general jurisdiction over AGCCA. Those allegations are limited to a single conclusory paragraph stating that AGCCA "does business throughout the United States, including conducting business in Virginia by and through its introduction of its products and goods into the stream of commerce which it knew or had reason to know would enter, be sold, used, and consumed throughout the Commonwealth of Virginia" and "developed, manufactured, marketed, distributed, released, sold and/or used PFAS, PFAS materials, and products containing PFAS in turnouts, including in Virginia and the City of Richmond". Am. Compl. ¶ 14; *id.* ¶¶ 13-32. These amorphous and

6

conclusory allegations Plaintiff makes with respect to each and every Defendant he named do not suffice for general jurisdiction. AGCCA is neither incorporated nor does it maintain its principal place of business in Virginia, and the Amended Complaint does not allege any "exceptional" circumstance that would justify the exercise of general jurisdiction over AGCCA. *See id.* ¶ 14; Eckrote Aff. ¶ 3. Likewise, nothing in the Complaint establishes any relationship between Plaintiff's claims and AGCCA's contacts with Virginia for purposes of specific jurisdiction, nor could it. AGCCA has never manufactured turnout gear, Eckrote Aff. ¶ 9, and all its sales of raw materials that could even *potentially* be used in the manufacture of turnout gear were all made to customers located outside of Virginia. *Id.* ¶¶ 9-11. The claims against AGCCA should be dismissed.

## A.    **General Jurisdiction Does Not Exist Over AGCCA.**

The Amended Complaint makes no effort to state a prima facie case for general jurisdiction over AGCCA. Setting aside "exceptional" cases, general jurisdiction exists in the forum state only if a defendant is incorporated or has its principal place of business there, so that it is "essentially at home" in the forum state. *BNSF*, 581 U.S. at 413; *Daimler*, 571 U.S. at 138-39, 139 n.19; *Carter*, 303 Va. at 145 n.8. Plaintiff affirmatively pleads that AGCCA is incorporated in Delaware and has its principal place of business in Pennsylvania, so it is not "essentially at home" in Virginia.[2] Am. Compl. ¶ 14; Eckrote Aff. ¶ 3. Nor does Plaintiff plead anything the least bit "exceptional" here that would allow for assertion of general jurisdiction over AGCCA in Virginia. *See* Am. Compl. ¶ 14. There can be no question that the Amended Complaint's allegations fall far short of providing

---

[2] Since *Daimler*, 571 U.S. at 138-39, 139 n.19, and *BNSF*, 581 U.S. at 413-14, corporate defendants have been "essentially at home" only in the jurisdiction where they are incorporated or have their principal place of business. *Carter*, 303 Va. at 145 n.8 ("[A] corporation is subject to general jurisdiction in its place of incorporation and principal place of business") (citations omitted).

a basis for general jurisdiction. *Daimler*, 571 U.S. at 122 (general jurisdiction may be exercised only when the defendant's contacts are "so constant and pervasive as to render it essentially at home in the forum State.") (citation modified).

**B.      Specific Jurisdiction Does Not Exist Over AGCCA.**

Nor has Plaintiff pled a prima facie case for specific jurisdiction, because the Amended Complaint provides no concrete facts establishing any nexus between AGCCA, Virginia, and Plaintiff's alleged injury. Furthermore, the Affidavit of Gary Eckrote explicitly refutes the conclusory basis Plaintiff alleges for subjecting AGCCA to specific jurisdiction in Virginia. To determine whether specific jurisdiction comports with due process, the Court should consider three prongs: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Carter v. Wake Forest Univ. Baptist Med. Ctr.*, 76 Va. App. 756, 767, 883 S.E.2d 693, 699 (2023), *aff'd*, 303 Va. 135, 900 S.E.2d 496 (2024) (quoting *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020)). Thus, for specific personal jurisdiction to exist, due process demands that the plaintiff's claims must "arise proximately from [the defendant's] activities" in the state. *Rudzewicz*, 471 U.S. at 474; *see also Bristol-Myers Squibb Co. v Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262-63 (2017) (court lacked specific jurisdiction over defendant that had extensive contacts with the state, because the plaintiff's claims did not directly arise from those contacts); *Mireskandari*, 105 Va. Cir. 370 ("condition precedent" to the exercise of specific jurisdiction is that "the cause of action *arose from*" the defendant's contacts (emphasis in original)).

Although Plaintiff cannot satisfy any part of this three-pronged analysis, the due process question is easily resolved by examining the second prong — Plaintiff's claims do not arise out of

8

AGCCA's activities directed at Virginia. *See, e.g.*, *Mireskandari*, 105 Va. Cir. 370 (no specific personal jurisdiction when the plaintiff's claim did not "arise from" the defendant's "activities directed at the state"); *E. Tech. Enterprises, Inc. v. Wilson & Hayes, Inc.*, 46 Va. Cir. 558 (1997) (no specific personal jurisdiction where "this dispute did not arise out of Defendant's contacts with Virginia"). Plaintiff, in wholly conclusory fashion, alleges that AGCCA "developed, manufactured, marketed, distributed, released, sold and/or used PFAS, PFAS materials, and products containing PFAS in turnouts, including in Virginia and the City of Richmond," Am. Compl. ¶ 14, but he never pleads that AGCCA was involved in the manufacture or sale of *his* turnouts, or any component of them. Nor could he; AGCCA never manufactured any turnout gear and is merely a seller of certain raw materials that could *potentially* be used in the manufacture of turnout gear. (Eckrote Aff. ¶¶ 9-10). None of those sales occurred in Virginia. AGCCA has no customers in Virginia that manufacture turnout gear and does not have records of any sales of materials containing PFAS to any turnout gear manufacturer in Virginia. (*Id.* ¶¶ 8-11). Nor does AGCCA have any records reflecting sales in Virginia to any entity named as a Defendant here, or to Plaintiff or the City of Richmond. (*Id.* ¶ 12). The lack of any linkage between AGCCA, the Commonwealth of Virginia and Plaintiff's claims precludes the exercise of personal jurisdiction here. *Mireskandari*, 105 Va. Cir. 370, n.19 (dismissing complaint where there was no "causal link between the contact and the genesis of the dispute").

Plaintiff's conclusory allegation that AGCCA "conduct[ed] business in Virginia by and through its introduction of its products and goods into the stream of commerce which it knew or had reason to know would enter, be sold, used, and consumed throughout the Commonwealth of Virginia" (Am. Compl. ¶ 14) does not fix the Amended Complaint's jurisdictional shortcomings. The "stream of commerce theory" is not the law in Virginia. When analyzing minimum contacts

9

in the products liability context, the Supreme Court set forth the "stream of commerce plus" test in *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987). Under that standard:

> [t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State…. [A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Id.* at 112.

Adhering to this precedent, Virginia courts consistently hold that merely placing a product – or here, a component potentially used in a product – into the stream of commerce elsewhere is not enough to establish personal jurisdiction, even if the product ultimately causes injury in Virginia. *See, e.g.*, *May*, 83 Va. Cir. 355 (no personal jurisdiction over foreign manufacturer whose product, which ultimately injured plaintiff in Virginia, was sold through out-of-state North American distributor because "[t]he Supreme Court of the United States decided that the mere placing of a product into the stream of commerce is not enough to subject the sender to jurisdiction in any place where the product ends up"); *Bowen*, 83 Va. Cir. 368 ("[A] defendant's knowledge 'that the stream of commerce may or will sweep the product into the forum does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state.'") (quoting *Asahi*, 480 U.S. at 112); *Sutherland*, 68 Va. Cir. 43 (no personal jurisdiction over Canadian manufacturer of product that injured plaintiffs in Virginia because the defendant's "sale of product to a Canadian distributor, in Canada, was not purposefully directed toward Virginia and the mere act of placing its product in the stream of commerce does not qualify as purposeful

availment") (citing *Asahi*, 480 U.S. at 112-13).[3] This is because "mere knowledge of the stream of commerce is insufficient to satisfy due process."*Id.*

Because Plaintiff has failed to plead that his claims against AGCCA arise from its forum contacts, the claims against AGCCA should be dismissed on that basis alone. But Plaintiff cannot meet the first and third prongs of the due process test either. On the first prong, *Carter v. Wake Forest Univ. Baptist Med. Ctr.*, 76 Va. App. 756 (2023), *aff'd,* 303 Va. 135 (2024) is instructive. In that case, the Court of Appeals of Virginia (Salem) concluded that the Defendant lacked sufficient contacts to have purposefully availed itself of the privilege of doing business in Virginia to an extent that would justify personal jurisdiction. *Id.* at 767–68. The Defendant in that case, like AGCCA, had no offices or agents in Virginia, did not own property in Virginia, and had no ongoing business in Virginia. *See* Eckrote Aff. ¶¶ 4-5, 9; *Carter*, 76 Va. App. at 769 ("Wake Forest maintained no presence in the Commonwealth of Virginia, did not solicit business, nor sought protection under its laws. Given that the facts fail to show Wake Forest purposefully availed themselves of the privilege of conducting business in Virginia, we end our inquiry."); *see also*

---

[3] Federal courts applying Virginia law have reached the same result. *Andrews v. Shandong Linglong Tyre Co.*, 656 F.Supp.3d 583, 586, 593 (E.D. Va. 2023) (no personal jurisdiction over foreign manufacturer of tire that entered stream of commerce and allegedly caused an accident in Virginia, even where manufacturer allegedly "knew that the Defendant distributor would import the Subject Tire, and others like it, into the United States via container ship and distribute them somewhere in the United States, to potentially include Virginia"); *Grizzard v. LG Chem Ltd.*, 641 F.Supp.3d 282, 292 (E.D. Va. 2022) ("At most, Plaintiff has demonstrated that Defendant placed its lithium-ion 18650 batteries into the stream of commerce in Virginia, and this court has made clear that a defendant's introduction of its product into the stream of commerce ... is, by itself, an insufficient basis for personal jurisdiction.") (internal quotation marks and citation omitted); *James v. Subaru of Am., Inc.*, 433 F.Supp.3d 933, 936-38, 941 (W.D. Va. 2020) (no personal jurisdiction over manufacturer of component part installed in Subaru vehicle, even "[a]ssuming arguendo that [Defendant] placed the subject parts into the stream of commerce with the expectation that [they] will be purchased by consumers in the forum State") (internal quotation marks and citation omitted). Thus, the fact that AGCCA *may* have sold certain raw materials into the stream of commerce that could *potentially* have been used in the manufacture of turnout gear in other states that ended up in Virginia is not enough to establish personal jurisdiction here.

11

*Weirton Area Water Bd. v. 3M Co.*, No. 20-CV-102, 2020 WL 8184953, at \*7 (N.D. W. Va. Nov. 20, 2020) (no personal jurisdiction over AGCCA in West Virginia because "AGC Chemicals Americas, Inc. does not maintain any offices or facilities in West Virginia; does not own or lease any real property in West Virginia; does not have any employees located in West Virginia; and, does not maintain any bank accounts in West Virginia").

For the third prong, it is not constitutionally reasonable to assert personal jurisdiction over AGCCA based on its attenuated and unrelated contacts with Virginia. *Mireskandari*, 105 Va. Cir. 370 (personal jurisdiction would be constitutionally unreasonable when the defendant's business directed toward Virginia was "completely unrelated to the alleged" tort). There is no basis for specific jurisdiction, and Plaintiff's claims against AGCCA should be dismissed.

## CONCLUSION

For these reasons, the Court should grant Defendant AGCCA's Motion By Special Appearance to Dismiss for Lack of Personal Jurisdiction.

Dated: August 18, 2025                          Respectfully submitted,

/s/ *Daniel Campbell*

Daniel Campbell, Bar No. 41320
Andrew D. Kaplan, Bar No. 45530
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004-2595
Telephone: 202.624.2500
Facsimile: 202.628.5116
E-mail: DCampbell@crowell.com
E-mail: AKaplan@crowell.com

*Counsel for Defendant AGC Chemicals Americas, Inc.*

12

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of August, 2025, a true and correct copy of AGC

Chemicals Americas, Inc.'s Motion by Special Appearance to Dismiss for Lack of Personal

Jurisdiction was filed with the Court and served via electronic mail on all counsel of record.

/s/ *Daniel Campbell*

Daniel Campbell, Bar No. 41320
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004-2595
Telephone: 202.624.2500
Facsimile: 202.628.5116
E-mail: DCampbell@crowell.com

*Counsel for Defendant AGC Chemicals
Americas, Inc.*

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

**JONATHAN CLARKE,**

     **Plaintiff,**

v.

                             **Case No. CL24002853-00**

**3M COMPANY, et al.,**

     **Defendants.**

## DECLARATION OF ROBERT A. APEL

I, Robert A. Apel, declare and state as follows:

     1.     I am Executive Director, Global Fire Service and Digital Experience, at MSA Safety Inc. ("MSA"), which indirectly wholly owns MSA Safety Sales, LLC ("MSA Safety Sales"). I am over 18 years of age and am competent to make this Declaration. I make this Declaration based on my personal knowledge, and information in corporate records maintained by MSA Safety Sales in the ordinary course of business and/or otherwise reported to me by individuals with a business duty to accurately report that information. I respectfully submit this Declaration in support of MSA Safety Sales' motion to dismiss for lack of personal jurisdiction pursuant to Rules 3:8 and 4:15 of the Rules of Supreme Court of Virginia and Va. Code § 8.01-276.

     2.     MSA Safety Sales is a Pennsylvania limited liability company with its principal place of business in Cranberry Township, Pennsylvania.

     3.     MSA Safety Sales has never manufactured, distributed, or sold firefighter turnout gear jackets and pants in any state, including the Commonwealth of Virginia.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 8/18/25                         Signed: _____

**VIRGINIA:**

### IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

**JONATHAN CLARKE,**

     **Plaintiff,**

**v.**

                             **Case No. CL24002853-00**

**3M COMPANY, et al.,**

     **Defendants.**

### PARTIAL DEMURRER ON BEHALF OF CERTAIN MOVING DEFENDANTS

Defendants Globe Manufacturing Company, LLC; Honeywell International Inc.; Honeywell Safety Products USA, Inc.; Lion Group, Inc.; Municipal Emergency Services, Inc.; Stedfast USA, Inc.; Southern Mills, Inc.; and W.L. Gore & Associates, Inc. (collectively, the "Moving Defendants"), by counsel and pursuant to Virginia Code § 8.01-273 and Rule 3:8 of the Rules of Supreme Court of Virginia, submit this Partial Demurrer[1] in response to Plaintiff Jonathan Clarke's First Amended Complaint ("FAC"). In support of this Partial Demurrer, for which the Moving Defendants will file a full memorandum at the appropriate time, the Moving Defendants state as follows:

### INTRODUCTION

1.     Plaintiff filed his initial complaint in this Court on July 2, 2024.

2.     On March 24, 2025, Plaintiff moved for leave to file an amended complaint, which this Court granted on March 31, 2025.

---

[1] Plaintiff's claims are also the subject of a plea in bar and one or more motions craving oyer before this Court.

3.    Plaintiff's claims against the Moving Defendants for willful and wanton negligence, breach of express and implied warranties, and violations of the Virginia Consumer Protection Act ("VCPA") should be dismissed with prejudice because they do not state a cause of action and fail to inform the Moving Defendants of the nature of the claims asserted. Va. Code § 8.01-273(A); Va. Sup. Ct. R. 1:4(d). The Moving Defendants respectfully request that this Court sustain this Partial Demurrer and dismiss these claims with prejudice.

## ARGUMENT

### I.    Plaintiff's Willful and Wanton Negligence Claim Should be Dismissed.

4.    Plaintiff fails to state a claim for willful and wanton negligence as to the Moving Defendants.

5.    Plaintiff must allege specific and extraordinary facts to support a claim for punitive damages. Here, however, Plaintiff merely asserts conclusory allegations and makes no attempt to distinguish among the purported conduct of the eight Moving Defendants, all of which play various roles across a complex, wide-ranging supply chain.

6.    Plaintiff's allegations are insufficient to state a claim for willful and wanton negligence against the Moving Defendants as a matter of law, and that claim should be dismissed with prejudice.

### II.    Plaintiff's Breach of Express and Implied Warranty Claims Should be Dismissed.

7.    Plaintiff fails to state a claim for express and implied warranties as to the Moving Defendants.

8.    Plaintiff's First Amended Complaint does not include the express warranty or warranties that the Moving Defendants purportedly made. Any express warranties on which Plaintiff bases his allegations are essential to his claims for breach of express and implied

-2-

warranties. *See* Va. Code § 8.2-313 (describing requirements for express warranties); Va. Code § 8.2-316 (stating that express warranties may disclaim implied warranties).

9.      Certain defendants have filed one or more motions craving oyer regarding Plaintiff's warranty claims. The outcomes of those motions will inform the Moving Defendants' demurrer(s) as to those claims.

**III.    Plaintiff's VCPA Claim Should be Dismissed.**

10.     Plaintiff fails to state a claim under the VCPA for at least three separate and independent reasons.

11.     First, the sale of goods at issue in this case is not a "consumer transaction" under Virginia Code § 59.1-198. To state a claim under the VCPA, Plaintiff must allege the existence of a "consumer transaction." Va. Code § 59.1-200(A).

12.     The "consumer transaction" Plaintiff purports to allege is the sale of turnout gear, which is specialized protective equipment that firefighters use to fight structural fires. Plaintiff's First Amended Complaint acknowledges that, as a matter of industry practice, turnout gear is sold to firefighting training facilities and fire departments through distributors—not directly to individual users. *See* FAC ¶¶ 7, 114-15.

13.     The sale of turnout gear is not a "consumer transaction" under the statutory definition. The VCPA outlines six different types of consumer transactions, only one of which could conceivably apply to Plaintiff's claims: "[t]he advertisement, sale, lease, license, or offering for sale, lease, or license, of goods or services to be used primarily for personal, family, or household purposes." Va. Code § 59.1-198. Turnout gear is not "used primarily for personal, family, or household purposes"; it is specialized safety equipment used by state and municipal employees to perform a public safety function. This alone warrants dismissal of the VCPA claim in its entirety.

-3-

14.     Second, the VCPA excludes Plaintiff's claim because aspects of the sale of turnout gear are authorized under the laws or regulations of the Commonwealth and/or the United States. Va. Code § 59.1-199(1). This also warrants dismissal of Plaintiff's VCPA claim in its entirety.

15.     Third, even assuming that Plaintiff had properly alleged a consumer transaction that is not excluded from the VCPA (and he has not), Plaintiff still fails to state a claim against the Moving Defendants because he alleges no specific factual allegations relating to any purported misrepresentation, deception, fraud, false pretense, or false promise by the Moving Defendants. Va. Code § 59.1-200(5), (6) & (14).

\*       \*       \*       \*       \*

16.     The Moving Defendants will provide additional points and authorities in support of dismissal in a forthcoming memorandum of law.[2]

WHEREFORE, for the above reasons, the Moving Defendants respectfully request that the Court enter an Order: (1) sustaining this Partial Demurrer; (2) dismissing the willful and wanton negligence claims against the Moving Defendants with prejudice; (3) dismissing the express and implied warranty claims against the Moving Defendants with prejudice; (4) dismissing the VCPA claim with prejudice or, in the alternative, dismissing the VCPA claim against the Moving Defendants with prejudice; and (5) awarding such further relief as the Court deems just and proper.

---

[2] The Moving Defendants reserve the right to file separate memoranda of law as needed.

-4-

Dated: August 18, 2025                    Respectfully submitted,

                                          /s/ Andrew Bosse
                                          Andrew Bosse (VSB No. 98616)
                                          Allison Melton (VSB No. 75192)
                                          **BAUGHMAN KROUP BOSSE PLLC**
                                          500 East Main Street, Suite 1400
                                          Norfolk, VA 23510
                                          Telephone: 757.904.5373
                                          abosse@bkbfirm.com
                                          amelton@bkbfirm.com

                                          Gregory L. Skidmore*
                                          Amanda P. Nitto*
                                          Demi L. Bostian*
                                          **ROBINSON, BRADSHAW & HINSON, P.A.**
                                          600 South Tryon Street, Suite 2300
                                          Charlotte, NC 28202
                                          Telephone: 704.377.2536
                                          Facsimile: 704.378.4000
                                          gskidmore@rbh.com
                                          anitto@rbh.com
                                          dbostian@rbh.com
                                          *Counsel for Defendants Honeywell International*
                                          *Inc. and Honeywell Safety Products USA, Inc.*

                                          *Pro hac vice forthcoming.

                                          /s/ John T. Bergin
                                          John T. Bergin (VSB No. 37576)
                                          **KILPATRICK TOWNSEND & STOCKTON LLP**
                                          701 Pennsylvania Avenue, NW, Suite 200
                                          Washington, DC 20004
                                          JBergin@ktslaw.com
                                          T 202 481 9942
                                          F 202 204 5622
                                          *Counsel for Defendant Southern Mills, Inc.*

*/s/ Paul C. Kuhnel*

Paul C. Kuhnel, Esq. (VSB No. 28151)
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
10 South Jefferson Street, Suite 1100
Roanoke, Virginia 24011
Telephone: 540-266-3200
Facsimile: 540-283-0044
paul.kuhnel@lewisbrisbois.com
*Counsel for Lion Group, Inc.*

*/s/ John A. Nader*

John A. Nader, Esq. (VSB No. 73259)
**HINSHAW & CULBERTSON LLP**
700 12th Street, N.W., Suite 700
Washington, D.C. 20005
Tel: (202) 979-5280
Fax: (212) 935-1166
jnader@hinshawlaw.com
*Counsel for Defendant Stedfast USA, Inc.*

*/s/ Martin A. Conn*

Martin A. Conn, Esq. (VSB No. 39133)
Stewart R. Pollock, Esq. (VSB No. 92466)
Ashley A. Davoli, Esq. (VSB No. 93466)
**MORAN REEVES & CONN, P.C.**
1211 East Cary Street
Richmond, Virginia 23219
Tel:  (804) 421-6250
Fax: (804) 421-6251
mconn@moranreevesconn.com
spollock@moranreevesconn.com
adavoli@moranreevesconn.com
*Counsel for Defendant W. L. Gore & Associates, Inc.*

*/s/ Lynn K. Brugh, IV*
Lynn K. Brugh, IV (VSB No. 36778)
**WILLIAMS MULLEN**
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6461
Facsimile: (804) 420-6507
lbrugh@williamsmullen.com

James L. Stengel*
Paige Pavone*
**ORRICK, HERRINGTON**
**& SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
jstengel@orrick.com
ppavone@orrick.com

Hillary Dang (VSB No. 92188)
**ORRICK, HERRINGTON**
**& SUTCLIFFE LLP**
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
hdang@orrick.com

*Attorneys for Defendant Globe Manufacturing Company, LLC*

*Pro hac vice forthcoming.

*/s/ Jeffrey Golimowski*
Jeffrey Golimowski (VSB No. 93525)
**WOMBLE BOND DICKINSON-US, LLP**
8350 Broad Street, Suite 1500
Tysons, VA 22120
Tel.: (703) 394-2275
Jeff.Golimowski@wbd-us.com
*Counsel for Defendant Municipal Emergency Services, Inc.*

-7-

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of August, 2025, a true and accurate copy of the

foregoing was sent via email to the following recipients:

Matthew J. Hundley (VSB No. 76865)
**BUTLER SNOW LLP**
919 E. Main St., Suite 600
Richmond, Virginia 23219
Tel.: (804) 762-6041
Fax: (804) 762-6031
Matthew.hundley@butlersnow.com
*Counsel for Defendant 3M Company*

Andrew D. Kaplan (VSB No. 45530)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel.: (202) 624.2500
akaplan@crowell.com
*Counsel for Defendant AGC Chemicals Americas, Inc.*

Michael F. Williams, P.C. (VSB No. 96545)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave., NW
Washington, D.C. 20004
Tel.: (202) 389-5000
Fax: (202) 389-5200
mwilliams@kirkland.com
*Counsel for Defendant Archroma U.S., Inc.*

C. Thea Pitzen, Esq. (VSB No. 90152)
**GOODMAN ALLEN DONNELLY, PLLC**
Town Point Center
150 Boush Street, Suite 900
Norfolk, Virginia 23510
Tel.: (757) 625-1400
Fax: (757) 625-7701
tpitzen@goodmanallen.com
*Counsel for Defendant Arkema, Inc.*

John R. Owen (VSB No. 39560)
Julie S. Palmer (VSB No. 65800)
John P. Dunnigan (VSB No. 93483)
Imani E. Sowell (VSB No. 95982)

-8-

Yevgeniy K. Klinovskiy (VSB No. 98264)
**HARMAN, CLAYTOR, CORRIGAN & WELLMAN**
P.O. Box 70280
Richmond, Virginia 23255
Tel.: (804) 747-5200
Fax: (804) 747-6085
jowen@hccw.com
jpalmer@hccw.com
jdunnigan@hccw.com
isowell@hccw.com
yklinovskiy@hccw.com

*Counsel for Defendant Blue Ridge Rescue Suppliers, Inc.
improperly named as Bradsden Solutions, Inc.*

William G. Laxton, Jr. (VSB No. 75110)
**JONES DAY**
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: (202) 879-3939
Fax: (202) 626-1700
wglaxton@jonesday.com

Theodore M. Grossman (*pro hac vice forthcoming*)
**JONES DAY**
250 Vesey Street
New York, NY 10281
Tel.: (212) 326-3939
Fax: (212) 755-7306
tgrossman@jonesday.com

Louis A. Chaiten (*pro hac vice forthcoming*)
**JONES DAY**
901 Lakeside Avenue
Cleveland, OH 44144
Tel.: (216) 586-7244
Fax: (216) 579-0212
lchaiten@jonesday.com

*Counsel for Defendant Daikin America, Inc.
(by Special Appearance)*

Caitlin R. Convery (VSB No. 99741)
**SHOOK, HARDY & BACON LLP**
1800 K Street, N.W., Suite 1000
Washington, D.C. 20006
Tel: (202) 639-5603
Fax: (202) 783-4211
cconvery@shb.com

Amy Crouch (*pro hac vice forthcoming*)
Brent Dwerlkotte (*pro hac vice forthcoming*)
**SHOOK, HARDY & BACON LLP**
2555 Grand Blvd.
Kansas City, MO 64108
Tel.: (816) 474-6550
Fax: (816) 421-5547
amcrouch@shb.com
dbdwerlkotte@shb.com

*Counsel for Defendants EIDP, Inc., f/k/a E. I. du Pont de Nemours and Company and The Chemours Company*

Lynn K. Brugh, IV (VSB No. 36778)
**WILLIAMS MULLEN**
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6461
Facsimile: (804) 420-6507
lbrugh@williamsmullen.com

James L. Stengel*
Paige Pavone*
**ORRICK, HERRINGTON**
**& SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
jstengel@orrick.com
ppavone@orrick.com

Hillary Dang (VSB No. 92188)
**ORRICK, HERRINGTON**
**& SUTCLIFFE LLP**
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
hdang@orrick.com

*Attorneys for Defendant MSA Safety Sales, LLC*

*Pro hac vice forthcoming.

Kevin Biniazan, Esq. (VSB No. 92109)
Lauren A. Martin (VSB No. 93653)
**BREIT BINIAZAN, P.C.**
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, VA 23451-4088
Tel.: (757) 622-6000
Fax: (757) 299-8028
kevin@bbtrial.com
lmartin@bbtrial.com
*Counsel for Plaintiff Jonathan Clarke*

*/s/ Andrew Bosse*
Andrew Bosse (VSB No. 98616)
**BAUGHMAN KROUP BOSSE PLLC**
500 East Main Street, Suite 1400
Norfolk, Virginia 23510
Telephone: 757.904.5373
abosse@bkbfirm.com

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

**JONATHAN CLARKE,**

    **Plaintiff,**

**v.**

                      **Case No. CL24002853-00**

**3M COMPANY, et al.,**

    **Defendants.**

### DEFENDANT 3M COMPANY'S PLEA IN BAR TO
### PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant 3M Company, pursuant to Rule 3:8 of the Rules of the Supreme Court of Virginia, respectfully submits this Plea in Bar as to all Counts in response to Plaintiff Jonathan Clarke's First Amended Complaint ("FAC"). In support of this Plea in Bar, 3M states as follows:

1.    The purpose of a plea in bar is to "shorten[] the litigation by reducing it to a distinct issue of fact which, if proven, creates a bar to the plaintiff's right of recovery." *Tomlin v. McKenzie*, 468 S.E.2d 882, 884 (Va. 1996).

2.    A plea in bar is appropriate here because this litigation can be resolved on a distinct issue: Plaintiff's claims are time barred.

3.    Plaintiff filed his initial complaint in this Court on July 2, 2024.

4.    On March 24, 2025, Plaintiff moved for leave to file an amended complaint, which this Court granted on March 31, 2025.

5.    In his First Amended Complaint, Plaintiff asserts four claims based on alleged occupational exposure to a large category of chemicals known as PFAS allegedly contained in firefighter protective clothing known as "turnouts." Plaintiff asserts claims against 3M and all

Defendants for: (i) breach of implied warranties; (ii) breach of express warranties; (iii) negligence, gross negligence, recklessness and willful and wanton conduct; and (iv) violations of the Virginia Consumer Protection Act ("VCPA").[1] FAC ¶¶ 106-182.

6.      Plaintiff alleges that 3M manufactured PFAS and that other Defendants manufactured turnouts. *Id.* ¶¶ 59-63. There are no allegations in the First Amended Complaint that the turnouts Plaintiff wore contained any 3M PFAS products and therefore Plaintiff's claims fail as a matter of law as set forth in the Demurrer filed by 3M contemporaneously with this Plea in Bar.

7.      Even if Plaintiff had stated a cause of action on which relief could be granted, his claims would still fail as a matter of law because Plaintiff failed to file suit within the applicable two-year statute of limitations. *See* Va. Code Ann. § 8.01-243(A) (providing a two-year statute of limitations for Plaintiff's negligence and warranty claims) and Va. Code Ann. § 59.1-204.1(A) (providing a two-year statute of limitations on Plaintiff's VCPA claim).

8.      Plaintiff alleges that, "[a]s a result of exposure to PFAS contained in his turnouts while working as a firefighter, [he] was diagnosed with Leukemia on or around July 2022." FAC ¶ 12.

9.      Upon information and belief, Plaintiff did not file this action prior to the expiration of the statute of limitations. The claims in Plaintiff's First Amended Complaint are therefore barred in their entirety and must be dismissed with prejudice.

10.     Defendant 3M reserves the right to provide additional points and authorities in support of this Plea in Bar in a future memorandum. Further, 3M reserves the right to present

---

[1] Plaintiff's claims are the subject of a Demurrer filed by 3M contemporaneously with this Plea in Bar.

evidence *ore tenus* at a hearing in support of this Plea in Bar, and 3M hereby provides Plaintiff notice that such hearing will be *ore tenus*.

For the reasons stated above, 3M respectfully requests that the Court sustain this Plea in Bar and dismiss Plaintiff's First Amended Complaint.

Date:  August 18, 2025                              Respectfully submitted,

**3M COMPANY**

Matthew J. Hundley (VSB No. 76865)
Diana M. Miller (VSB No. 82430)
BUTLER SNOW LLP
919 E. Main Street, Suite 600
Richmond, Virginia 23219
Tel. 804.762.6030
Fax. 804.762.6031
Matthew.hundley@butlersnow.com
Diana.miller@butlersnow.com

*Counsel for Defendant 3M Company*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of August 2025, a true copy of the foregoing was

served on the following via U.S. Mail and electronic mail:

> Kevin Biniazan, Esq. | VSB No. 92109
> Jeffrey A. Breit, Esq. | VSB No. 18876
> Don Scott, Esq. | VSB No. 88725
> Scott M. Perry, Esq. | VSB No. 67417
> Lauren Martin, Esq. | VSB No. 93653
> Alexis Bale, Esq. | VSB No. 100318
> BREIT BINIAZAN, PC
> Towne Pavilion Center II
> 600 22nd Street, Suite 402
> Virginia Beach, VA 23451
> Telephone | 757.622.6000
> Facsimile | 757.299.8028
> Email | kevin@bbtrial.com
> Email | jeffrey@bbtrial.com
> Email | don@bbtrial.com
> Email | scott@bbtrial.com
> Email | lmartin@bbtrial.com
> Email | abale@bbtrial.com

> Defense Counsel of Record

Matthew J. Hundley (VSB No. 76865)
Diana M. Miller (VSB No. 82430)
BUTLER SNOW LLP
919 E. Main Street, Suite 600
Richmond, Virginia 23219
Tel. 804.762.6030
Fax. 804.762.6031
Matthew.hundley@butlersnow.com
Diana.miller@butlersnow.com

*Counsel for Defendant 3M Company*

4

**VIRGINIA:**

**IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND**

**JONATHAN CLARKE,**

      **Plaintiff,**

**v.**

      **Case No. CL24002853-00**

**3M COMPANY, et al.,**

      **Defendants.**

**MOTION CRAVING OYER ON BEHALF OF CERTAIN MOVING DEFENDANTS**

      Defendants 3M Company; Globe Manufacturing Company, LLC; Honeywell International Inc.; Honeywell Safety Products USA, Inc.; Lion Group, Inc.; Stedfast USA, Inc.; and Southern Mills, Inc. (collectively, the "Moving Defendants"), by counsel, submit this Motion Craving Oyer in response to Plaintiff Jonathan Clarke's First Amended Complaint ("FAC"). Plaintiff alleges an express warranty claim against all defendants, but fails to identify any express warranty that forms the basis of his claim. Accordingly, this motion seeks the production of documents referenced and relied upon in Plaintiff's breach of express warranty claim and requests that such documents, if any, be incorporated into the pleadings and considered in this Court's ruling on the Moving Defendants' Partial Demurrer, which is being filed contemporaneously herewith.[1] In support of this motion, the Moving Defendants state as follows:

      1.    It is well-settled that plaintiffs should file, together with their initial pleadings, written documents upon which their legal claims are based. *Culpeper Nat'l Bank v. Morris*,

---

[1] Plaintiff's claims are the subject of a partial demurrer and a plea in bar before this Court. The Moving Defendants expressly reserve the right to join in any motions craving oyer filed by other defendants in this action.

168 Va. 379, 383, 191 S.E. 764, 765 (1937) ("When a court is asked to make a ruling upon any paper or record, it is its duty to require the pleader to produce all material parts.").

2.      A motion craving oyer precludes a plaintiff from "attempt[ing] to restrict . . . [the court's] vision to only such parts of the record as the litigant thinks tend to support his view." *Id.* at 382-83, 191 S.E. at 765.

3.      Defendants may crave oyer where documents that are "essential to [a] claim" are missing from the complaint. *Byrne v. City of Alexandria*, 298 Va. 694, 700, 842 S.E.2d 409, 412 (2020); *see also Colonna's Shipyard, Inc. v. Alpha Pipe Co.*, No. CL11-8103, 2012 WL 6755957 (Va. Cir. Ct. Aug. 27, 2012) (granting motion craving oyer for a document that formed the basis of the plaintiff's breach of contract and breach of warranty claims).

4.      When a court grants a motion craving oyer, the documents produced become part of the pleadings. *Byrne*, 298 Va. at 699, 842 S.E.2d at 411 (explaining that a document produced in response to a motion craving oyer becomes "part of the pleadings of the party whose claim was based upon it"); *see also Marios v. Va. Elec. & Power Co.*, 103 Va. Cir. 120, 2019 WL 11815063, at *1 (Va. Cir. Ct. Sept. 16, 2019) (unpublished) (similar).

5.      A motion craving oyer is proper when a plaintiff alleges an express warranty claim but fails to provide the written documents containing the alleged express warranties that form the basis of that claim. *See Pulte Home Corp. v. Parex, Inc.*, 265 Va. 518, 523-24, 579 S.E.2d 188, 190-91 (2003) (affirming dismissal of a breach of express warranty claim after claimant failed to produce or identify in its pleading any express warranty in response to the cross-claimant's motion craving oyer seeking the specific express warranty that was breached); *Marios*, 2019 WL 11815063, at *3-4 (granting a motion craving oyer seeking an agreement that formed the basis of the plaintiff's express warranty claim); *139 Riverview, LLC v. Quaker Window Prods.*, 90 Va. Cir.

74, 2015 WL 10521381, at *2 (2015) (referencing the court's earlier decision granting defendant's motion craving oyer for the express warranty that supported plaintiff's breach of express warranty claim).

6.       Here, Plaintiff brings an express warranty claim against all Defendants. FAC ¶¶ 128-50.

7.       But Plaintiff fails to identify any express warranty that forms the basis of this claim. There is no express warranty information quoted in or attached to Plaintiff's First Amended Complaint.

8.       Plaintiff also does not identify which of the several defendants allegedly made the express warranty upon which his claim is based.

9.       A plaintiff must necessarily rely on the specific express warranty language that defendants allegedly made to form the basis of an express warranty claim. *See Pulte*, 265 Va. at 523-24, 579 S.E.2d at 190-91; *Marios*, 2019 WL 11815063, at *3-4; *139 Riverview*, 90 Va. Cir. 74, 2015 WL 10521381, at *2 (2015).

10.      Virginia law requires Plaintiff "to produce all material parts" of the record on which this Court must rule. *Culpeper*, 168 Va. at 383, 191 S.E. at 765. By omitting the alleged express warranty or warranties, Plaintiff is restricting the Court's "vision . . . of the record." *Id.*

11.      Plaintiff should produce and attach as a part of the pleadings each and every express warranty that forms the basis of his express warranty claim so that this Court can rule on whether Plaintiff has adequately stated warranty claims as to each defendant.

12.      Because the grounds for a demurrer may change depending on the documents Plaintiff produces, if any, the Moving Defendants also request leave to file an amended demurrer

upon Plaintiff producing and attaching any express warranty materials or upon Plaintiff's failure to do so.

13.     Defense counsel contacted Plaintiff's counsel in writing on August 11, 2025, regarding this motion. Plaintiff's counsel indicated that the complaint is sufficient as filed and did not consent to provide additional information.

WHEREFORE, for the above reasons, the Moving Defendants respectfully request that the Court enter an Order: (1) granting this Motion Craving Oyer; (2) requiring Plaintiff to re-file his First Amended Complaint with the Clerk of Court and attach to that pleading all contracts, agreements, and express warranties that form the basis of his express warranty claim, which shall be incorporated into and a part of the First Amended Complaint for all purposes, including demurrer; (3) permitting the Moving Defendants the opportunity to file an amended demurrer if Plaintiff re-files or fails to re-file the First Amended Complaint with all contracts, agreements, and express warranties that form the basis of his express warranty claim; (4) awarding the Moving Defendants attorneys' fees and costs associated with this motion pursuant to Va. Code §§ 8.01-271.1 and 17.1-609; and (5) awarding such further relief as the Court deems just and proper.

Dated: August 18, 2025

Respectfully submitted,

*/s/ Andrew Bosse*
Andrew Bosse (VSB No. 98616)
Allison Melton (VSB No. 75192)
**BAUGHMAN KROUP BOSSE PLLC**
500 East Main Street, Suite 1400
Norfolk, VA 23510
Telephone: 757.904.5373
abosse@bkbfirm.com
amelton@bkbfirm.com

Gregory L. Skidmore*
Amanda P. Nitto*
Demi L. Bostian*
**ROBINSON, BRADSHAW & HINSON, P.A.**
600 South Tryon Street, Suite 2300
Charlotte, NC 28202
Telephone: 704.377.2536
Facsimile: 704.378.4000
gskidmore@rbh.com
anitto@rbh.com
dbostian@rbh.com
*Counsel for Defendants Honeywell International Inc. and Honeywell Safety Products USA, Inc.*

*Pro hac vice forthcoming.

*/s/ John T. Bergin*
John T. Bergin (VSB No. 37576)
**KILPATRICK TOWNSEND & STOCKTON LLP**
701 Pennsylvania Avenue, NW, Suite 200
Washington, DC 20004
JBergin@ktslaw.com
T 202 481 9942
F 202 204 5622
*Counsel for Defendant Southern Mills, Inc.*

*/s/ Paul C. Kuhnel*
Paul C. Kuhnel, Esq. (VSB No. 28151)
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
10 South Jefferson Street, Suite 1100
Roanoke, Virginia 24011
Telephone: 540-266-3200
Facsimile: 540-283-0044
paul.kuhnel@lewisbrisbois.com
*Counsel for Lion Group, Inc.*

-5-

/s/ John A. Nader
John A. Nader, Esq. (VSB No. 73259)
**HINSHAW & CULBERTSON LLP**
700 12th Street, N.W., Suite 700
Washington, D.C. 20005
Tel: (202) 979-5280
Fax: (212) 935-1166
jnader@hinshawlaw.com
*Counsel for Defendant Stedfast USA, Inc.*

/s/ Lynn K. Brugh, IV
Lynn K. Brugh, IV (VSB No. 36778)
**WILLIAMS MULLEN**
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6461
Facsimile: (804) 420-6507
lbrugh@williamsmullen.com

James L. Stengel*
Paige Pavone*
**ORRICK, HERRINGTON
& SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
jstengel@orrick.com
ppavone@orrick.com

Hillary Dang (VSB No. 92188)
**ORRICK, HERRINGTON
& SUTCLIFFE LLP**
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
hdang@orrick.com

*Attorneys for Defendant Globe Manufacturing
Company, LLC*

*Pro hac vice forthcoming.

-6-

/s/ Matthew J. Hundley
Matthew J. Hundley (VSB No. 76865)
**BUTLER SNOW LLP**
919 E. Main St., Suite 600
Richmond, Virginia 23219
Tel.: (804) 762-6041
Fax: (804) 762-6031
Matthew.hundley@butlersnow.com
*Counsel for Defendant 3M Company*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of August, 2025, a true and accurate copy of the

foregoing was sent via email to the following recipients:

Andrew D. Kaplan (VSB No. 45530)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel.: (202) 624.2500
akaplan@crowell.com
*Counsel for Defendant AGC Chemicals Americas, Inc.*

Michael F. Williams, P.C. (VSB No. 96545)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave., NW
Washington, D.C. 20004
Tel.: (202) 389-5000
Fax: (202) 389-5200
mwilliams@kirkland.com
*Counsel for Defendant Archroma U.S., Inc.*

C. Thea Pitzen, Esq. (VSB No. 90152)
**GOODMAN ALLEN DONNELLY, PLLC**
Town Point Center
150 Boush Street, Suite 900
Norfolk, Virginia 23510
Tel.: (757) 625-1400
Fax: (757) 625-7701
tpitzen@goodmanallen.com
*Counsel for Defendant Arkema, Inc.*

John R. Owen (VSB No. 39560)
Julie S. Palmer (VSB No. 65800)
John P. Dunnigan (VSB No. 93483)
Imani E. Sowell (VSB No. 95982)
Yevgeniy K. Klinovskiy (VSB No. 98264)
**HARMAN, CLAYTOR, CORRIGAN & WELLMAN**
P.O. Box 70280
Richmond, Virginia 23255
Tel.: (804) 747-5200
Fax: (804) 747-6085
jowen@hccw.com
jpalmer@hccw.com
jdunnigan@hccw.com

-8-

isowell@hccw.com
yklinovskiy@hccw.com

*Counsel for Defendant Blue Ridge Rescue Suppliers, Inc.
improperly named as Bradsden Solutions, Inc.*

William G. Laxton, Jr. (VSB No. 75110)
**JONES DAY**
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: (202) 879-3939
Fax: (202) 626-1700
wglaxton@jonesday.com

Theodore M. Grossman (*pro hac vice forthcoming*)
**JONES DAY**
250 Vesey Street
New York, NY 10281
Tel.: (212) 326-3939
Fax: (212) 755-7306
tgrossman@jonesday.com

Louis A. Chaiten (*pro hac vice forthcoming*)
**JONES DAY**
901 Lakeside Avenue
Cleveland, OH 44144
Tel.: (216) 586-7244
Fax: (216) 579-0212
lchaiten@jonesday.com

*Counsel for Defendant Daikin America, Inc.
(by Special Appearance)*

Caitlin R. Convery (VSB No. 99741)
**SHOOK, HARDY & BACON LLP**
1800 K Street, N.W., Suite 1000
Washington, D.C. 20006
Tel: (202) 639-5603
Fax: (202) 783-4211
cconvery@shb.com

Amy Crouch (*pro hac vice forthcoming)*
Brent Dwerlkotte (*pro hac vice forthcoming)*
**SHOOK, HARDY & BACON LLP**
2555 Grand Blvd.
Kansas City, MO 64108
Tel.: (816) 474-6550

-9-

Fax: (816) 421-5547
amcrouch@shb.com
dbdwerlkotte@shb.com

*Counsel for Defendants EIDP, Inc., f/k/a E. I. du Pont de Nemours and Company and The Chemours Company*
Lynn K. Brugh, IV (VSB No. 36778)
**WILLIAMS MULLEN**
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6461
Facsimile: (804) 420-6507
lbrugh@williamsmullen.com

James L. Stengel*
Paige Pavone*
**ORRICK, HERRINGTON**
**& SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
jstengel@orrick.com
ppavone@orrick.com

Hillary Dang (VSB No. 92188)
**ORRICK, HERRINGTON**
**& SUTCLIFFE LLP**
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
hdang@orrick.com

*Attorneys for Defendant MSA Safety Sales, LLC*

*Pro hac vice forthcoming.

Jeffrey Golimowski (VSB No. 93525)
**WOMBLE BOND DICKINSON-US, LLP**
8350 Broad Street, Suite 1500
Tysons, VA 22120
Tel.: (703) 394-2275
Jeff.Golimowski@wbd-us.com
*Counsel for Defendant Municipal Emergency Services, Inc.*
Martin A. Conn, Esq. (VSB No. 39133)
Stewart R. Pollock, Esq. (VSB No. 92466)

-10-

Ashley A. Davoli, Esq. (VSB No. 93466)
**MORAN REEVES & CONN, P.C.**
1211 East Cary Street
Richmond, Virginia 23219
Tel: (804) 421-6250
Fax: (804) 421-6251
mconn@moranreevesconn.com
spollock@moranreevesconn.com
adavoli@moranreevesconn.com
*Counsel for Defendant W. L. Gore & Associates, Inc.*

Kevin Biniazan, Esq. (VSB No. 92109)
Lauren A. Martin (VSB No. 93653)
**BREIT BINIAZAN, P.C.**
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, VA 23451-4088
Tel.: (757) 622-6000
Fax: (757) 299-8028
kevin@bbtrial.com
lmartin@bbtrial.com
*Counsel for Plaintiff Jonathan Clarke*

/s/ Andrew Bosse
Andrew Bosse (VSB No. 98616)
**BAUGHMAN KROUP BOSSE PLLC**
500 East Main Street, Suite 1400
Norfolk, Virginia 23510
Telephone: 757.904.5373
abosse@bkbfirm.com

-11-

**VIRGINIA:**

### IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

**JONATHAN CLARKE,**

                    **Plaintiff,**

                    **Civil Action No. CL24002853-00-JSM**

    v.

**3M CO.,** *et al.,*

                    **Defendants.**

### APPEARANCE OF COUNSEL

The Court will please note the appearance of the undersigned as Counsel for the Defendants

EIDP, Inc., f/k/a E.I. du Pont de Nemours and Company and The Chemours Company in the

above-styled matter.

Dated: August 18, 2025                 Respectfully submitted,

                                      Caitlin R. Convery, Bar No. 99741
                                      SHOOK, HARDY & BACON LLP
                                      1800 K Street, N.W., Suite 1000
                                      Washington, D.C. 20006
                                      Tel.: 202.639.5603
                                      Fax: 202.783.4211
                                      cconvery@shb.com

                                      *Attorney for Defendants EIDP, Inc., f/k/a E.I. du*
                                      *Pont de Nemours and Company and The*
                                      *Chemours Company*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was served electronically on August

18, 2025 by operation of the Court's electronic filing system (VJEFS) upon all parties of record.

Caitlin R. Convery

VIRGINIA:

IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

JONATHAN CLARKE,

     Plaintiff,

v.                                                                Case No. CL24002853-00

3M COMPANY, et al.,

     Defendants.

## ORDER

This matter came before the Court upon a Motion Craving Oyer filed by Defendants 3M

Company; Globe Manufacturing Company, LLC; Honeywell International Inc.; Honeywell Safety

Products USA, Inc.; Lion Group, Inc.; Stedfast USA, Inc.; and Southern Mills, Inc. (collectively,

the "Moving Defendants"). Upon consideration of the Motion Craving Oyer, Plaintiff's opposition,

and the oral arguments of counsel, it is hereby ORDERED:

1.     The Motion Craving Oyer is GRANTED;

2.     No later than five (5) days after entry of this Order, Plaintiff shall re-file his First

Amended Complaint with the Clerk of Court and attach to that First Amended Complaint all

contracts, agreements, and express warranties that form the basis of the express warranty claim

alleged in the First Amended Complaint. All documents so attached shall be deemed incorporated

into and a part of the First Amended Complaint for all purposes, including demurrer.

3.     If Plaintiff re-files or fails to re-file the First Amended Complaint with all contracts,

agreements, and express warranties that form the basis of his express warranty claim, the Moving

Defendants may file an amended demurrer if they choose to do so. Any amended demurrer to the

First Amended Complaint shall be filed within thirty (30) days from the date this Order is entered

-1-

or twenty-one (21) days from the date Plaintiff re-files his First Amended Complaint (as provided in Paragraph 2 of this Order), whichever is later.

 4. The Court finds that Plaintiff was requested to produce and attach the documents that form the basis of his express warranty claim before this Motion Craving Oyer was filed and refused to do so. Accordingly, the Moving Defendants' request for attorneys' fees and costs incurred in bringing this Motion Craving Oyer is GRANTED. The Moving Defendants shall submit an affidavit of attorneys' fees and costs and a proposed order granting those fees and costs to the Court within fourteen (14) days from the date this Order is entered.

 IT IS SO ORDERED.

Entered this _____ day of _____, 2025.

_____
Circuit Court Judge

**VIRGINIA:**

**IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND**

**JONATHAN CLARKE,**

    **Plaintiff,**

**v.**

**Case No. CL24002853-00**

**3M COMPANY, et al.,**

    **Defendants.**

## ORDER

This matter came before the Court upon a Motion Craving Oyer filed by Defendants 3M Company; Globe Manufacturing Company, LLC; Honeywell International Inc.; Honeywell Safety Products USA, Inc.; Lion Group, Inc.; Stedfast USA, Inc.; and Southern Mills, Inc. (collectively, the "Moving Defendants"). Upon consideration of the Motion Craving Oyer, Plaintiff's opposition, and the oral arguments of counsel, it is hereby ORDERED:

1.    The Motion Craving Oyer is GRANTED;

2.    No later than five (5) days after entry of this Order, Plaintiff shall re-file his First Amended Complaint with the Clerk of Court and attach to that First Amended Complaint all contracts, agreements, and express warranties that form the basis of the express warranty claim alleged in the First Amended Complaint. All documents so attached shall be deemed incorporated into and a part of the First Amended Complaint for all purposes, including demurrer.

3.    If Plaintiff re-files or fails to re-file the First Amended Complaint with all contracts, agreements, and express warranties that form the basis of his express warranty claim, the Moving Defendants may file an amended demurrer if they choose to do so. Any amended demurrer to the First Amended Complaint shall be filed within thirty (30) days from the date this Order is entered

-1-

or twenty-one (21) days from the date Plaintiff re-files his First Amended Complaint (as provided in Paragraph 2 of this Order), whichever is later.

    4.    The Court finds that Plaintiff was requested to produce and attach the documents that form the basis of his express warranty claim before this Motion Craving Oyer was filed and refused to do so. Accordingly, the Moving Defendants' request for attorneys' fees and costs incurred in bringing this Motion Craving Oyer is GRANTED. The Moving Defendants shall submit an affidavit of attorneys' fees and costs and a proposed order granting those fees and costs to the Court within fourteen (14) days from the date this Order is entered.

    IT IS SO ORDERED.

Entered this _____ day of _____, 2025.

_____
Circuit Court Judge

**VIRGINIA:**

### IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

**JONATHAN CLARKE,**

   **Plaintiff,**

v.

   **Case No. CL24002853-00**

**3M COMPANY, et al.,**

   **Defendants.**

### MSA SAFETY SALES, LLC'S MOTION BY SPECIAL APPEARANCE TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant MSA Safety Sales, LLC ("MSA Safety Sales"), by counsel, respectfully moves by special appearance to dismiss all claims against it for lack of personal jurisdiction pursuant to Rules 3:8 and 4:15 of the Rules of Supreme Court of Virginia and Va. Code § 8.01-276. In support of this Motion to Dismiss, for which MSA will file a full memorandum at the appropriate time, MSA submits the accompanying declaration of Robert A. Apel, Executive Director, Global Fire Service and Digital Experience, at MSA Safety Inc. ("Apel Decl.") and states as follows:

   1.   Plaintiff alleges that the firefighter protective jackets and pants, or "turnout gear," that he wore as a firefighter contained PFAS,[1] exposure to which he alleges resulted in his developing Leukemia. FAC ¶¶ 1-11. According to Plaintiff, turnout gear is "manufactured, designed, sold[,] supplied and/or distributed" by MSA Safety Sales and over a dozen other Defendants. FAC ¶ 2. Plaintiff does not identify the manufacturer of the turnout gear he actually wore and does not attempt to distinguish among the purported conduct of the Defendants. Against

---

[1] PFAS is an acronym for "per- and polyfluoroalkyl substances," which are a group of several thousand chemicals that are used to impart products with water- and oil-resistant properties, among other uses. FAC ¶¶ 2, 43.

each Defendant, Plaintiff asserts claims for: (i) breach of implied warranties; (ii) breach of express warranties; (iii) negligence, gross negligence, recklessness and willful and wanton conduct; and (iv) violations of the Virginia Consumer Protection Act ("VCPA"). FAC ¶¶ 106-82.

2.     However, this Court does not have *in personam* jurisdiction over MSA Safety Sales. On a motion to dismiss for lack of *in personam* jurisdiction, a plaintiff bears the burden of establishing a *prima facie* case of personal jurisdiction. Plaintiff will not be able to ultimately prove the existence of a ground for jurisdiction with *any* evidence because MSA Safety Sales never sold turnout gear jackets and pants anywhere, including in Virginia.

3.     First, this Court cannot exercise general personal jurisdiction over MSA Safety Sales. A court may exercise general jurisdiction over an out-of-state defendant who is "essentially at home in the forum." *Carter v. Wake Forest Univ. Baptist Med. Ctr.*, 76 Va. App. 756, 766, 883 S.E.2d 693, 698 (2023), *appeal granted* (Sept. 15, 2023), *aff'd*, 303 Va. 135, 900 S.E.2d 496 (2024) (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846, 2850-51, 180 L.Ed.2d 796 (2011)). "This broader jurisdiction, in the context of corporate defendants, exists where the defendant is incorporated or has its principal place of business." *Id.*

4.     MSA Safety Sales is a Pennsylvania corporation with its principal place of business in Cranberry Township, Pennsylvania. FAC ¶ 27. Plaintiff does not and cannot allege that MSA Safety Sales otherwise maintains continuous and systematic contacts with Virginia that render it "at home" anywhere in Virginia. At most, the Complaint merely alleges in conclusory fashion that MSA Safety Sales "developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnouts" in Virginia. *Id.*

2

5.     But Plaintiff's allegations are incorrect. Contrary to the assertions in the First Amended Complaint, MSA Safety Sales has never sold turnout gear jackets and pants anywhere, including in Virginia. Apel Decl. ¶ 3.

6.     Second, this Court cannot exercise specific *in personam* jurisdiction over MSA Safety Sales either. The exercise of specific personal jurisdiction over a non-resident defendant must comply with Virginia's long-arm statute and the Due Process Clause of the Fourteenth Amendment, which requires that a non-resident defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Carter*, 303 Va. at 144 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154 (1945)). More specifically, there must be some "act 'by which [the defendant] purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

7.     Plaintiff does not allege that the turnout gear he claims caused his injury was specifically manufactured or sold by MSA Safety Sales. Alleging that MSA Safety Sales "developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnouts" in Virginia not only falls short of establishing personal jurisdiction, it's also wrong. MSA Safety Sales has never sold turnout gear jackets and pants in Virginia or anywhere. Apel Decl. ¶ 3.

8.     Plaintiff's claims against MSA must be dismissed because he has not alleged and cannot allege facts sufficient to establish personal jurisdiction over MSA.

9.     MSA Safety Sales, LLC will provide additional points and authorities in support of this Motion to Dismiss in a forthcoming memorandum of law.

3

10.     Subject to and without waiving its Special Appearance, MSA Safety Sales reserves

the right to file responsive pleadings, including Demurrers, Pleas and other motions similar to

those filed by other Defendants in this case, but only if its Special Appearance is overruled and

this Court finds adequate support for an exercise of personal jurisdiction in the Commonwealth of

Virginia. It is the express intent of MSA Safety Sales that its response hereto not be considered a

general appearance in this action, as it objects to an exercise of personal jurisdiction in this forum.

WHEREFORE, for the reasons stated above, MSA Safety Sales, LLC, by counsel,

respectfully requests that this Court (i) dismiss MSA Safety Sales, LLC from this action with

prejudice and (ii) award costs and all other relief the Court deems appropriate.

Dated: August 18, 2025
Respectfully submitted,
**MSA SAFETY SALES, LLC**

By:  */s/ Lynn K. Brugh, IV*
Lynn K. Brugh, IV (VSB No. 36778)
**WILLIAMS MULLEN**
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6461
Facsimile: (804) 420-6507
lbrugh@williamsmullen.com

James L. Stengel*
Paige Pavone*
**ORRICK, HERRINGTON
& SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
jstengel@orrick.com
ppavone@orrick.com

Hillary Dang (VSB No. 92188)
**ORRICK, HERRINGTON
& SUTCLIFFE LLP**
2100 Pennsylvania Avenue NW

4

Washington, D.C. 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
hdang@orrick.com

*Attorneys for Defendant MSA Safety Sales, LLC by Special Appearance*

*Pro hac vice forthcoming.

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of August, 2025, a true and accurate copy of the foregoing was sent via email to the following recipients:

Kevin Biniazan, Esq.
Lauren A. Martin
BREIT BINIAZAN, P.C.
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, VA 23451-4088
Tel.: (757) 622-6000
Fax: (757) 299-8028
kevin@bbtrial.com
lmartin@bbtrial.com
*Counsel for Plaintiff Jonathan Clarke*

Andrew Bosse
Allison Melton
BAUGHMAN KROUP BOSSE PLLC
500 East Main Street, Suite 1400
Norfolk, Virginia 23510
Tel.: (757) 916-5771
Fax: (757) 266-5585
abosse@bkbfirm.com
amelton@bkbfirm.com

Gregory L. Skidmore
Amanda P. Nitto
Demi L. Bostian
ROBINSON, BRADSHAW & HINSON,
P.A.
600 South Tryon Street, Suite 2300
Charlotte, NC 28202
Telephone: 704.377.2536
Facsimile: 704.378.4000
gskidmore@rbh.com
anitto@rbh.com
dbostian@rbh.com
*Counsel for Defendants Honeywell
International, Inc. and
Honeywell Safety Products USA, Inc.*

Matthew J. Hundley
BUTLER SNOW LLP
919 E. Main St., Suite 600
Richmond, Virginia 23219
Tel.: (804) 762-6041
Fax: (804) 762-6031
Matthew.hundley@butlersnow.com
*Counsel for Defendant 3M Company*

Andrew D. Kaplan
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel.: (202) 624.2500
akaplan@crowell.com
*Counsel for Defendant AGC Chemicals
Americas, Inc.*

Michael F. Williams, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., NW
Washington, D.C. 20004
Tel.: (202) 389-5000
Fax: (202) 389-5200
mwilliams@kirkland.com
*Counsel for Defendant Archroma U.S., Inc.*

C. Thea Pitzen, Esq.
Goodman Allen Donnelly, PLLC
Town Point Center
150 Boush Street, Suite 900
Norfolk, Virginia 23510
Tel.: (757) 625-1400
Fax: (757) 625-7701
tpitzen@goodmanallen.com
*Counsel for Defendant Arkema, Inc.*

John R. Owen
Julie S. Palmer
John P. Dunnigan
Imani E. Sowell
Yevgeniy K. Klinovskiy
HARMAN, CLAYTOR, CORRIGAN &
WELLMAN
P.O. Box 70280
Richmond, Virginia 23255
Tel.: (804) 747-5200
Fax: (804) 747-6085
jowen@hccw.com
jpalmer@hccw.com
jdunnigan@hccw.com
isowell@hccw.com
yklinovskiy@hccw.com
*Counsel for Defendant Blue Ridge Rescue
Suppliers, Inc. improperly named as
Bradsden Solutions, Inc.*

William G. Laxton, Jr.
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: (202) 879-3939
Fax: (202) 626-1700
wglaxton@jonesday.com

Theodore M. Grossman
JONES DAY
250 Vesey Street
New York, NY 10281
Tel.: (212) 326-3939
Fax: (212) 755-7306
tgrossman@jonesday.com

Louis A. Chaiten
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44144
Tel.: (216) 586-7244
Fax: (216) 579-0212
lchaiten@jonesday.com
*Counsel for Defendant Daikin America, Inc.*

Caitlin R. Convery
SHOOK, HARDY & BACON LLP
1800 K Street, N.W., Suite 1000
Washington, D.C. 20006
Tel: (202) 639-5603
Fax: (202) 783-4211
cconvery@shb.com

Amy Crouch
Brent Dwerlkotte
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108
Tel.: (816) 474-6550
Fax: (816) 421-5547
amcrouch@shb.com
dbdwerlkotte@shb.com
*Counsel for Defendants EIDP, Inc., f/k/a E.
I. du Pont de Nemours and Company and
The Chemours Company*

Paul C. Kuhnel
Lewis Brisbois Bisgaard & Smith LLP
10 S. Jefferson St., Suite 1100
Roanoke, VA 24011
Tel.: (540) 283-0130
Fax: (540) 283-0044
Paul.Kuhnel@lewisbrisbois.com
*Counsel for Defendant Lion Group, Inc.*

Jeffrey Golimowski
WOMBLE BOND DICKINSON-US, LLP
8350 Broad Street, Suite 1500
Tysons, VA 22120
Tel.: (703) 394-2275
Jeff.Golimowski@wbd-us.com
*Counsel for Defendant Municipal
Emergency Services, Inc.*

Michael A. Montgomery
Eckert Seamans Cherin & Mellott, LLC
919 East Main Street, Suite 1300
Richmond, Virginia 23219
Tel: (804) 788-7740
Fax: (804) 698-2950
mmontgomery@eckertseamans.com

Edward J. Longosz, II
Eckert Seamans Cherin & Mellott, LLC
1717 Pennsylvania Avenue, NW Suite 1200
Washington, D.C. 20006
Tel: (202) 659-6619
Fax: (202) 659-6699
elongosz@eckertseamans.com
*Counsel for Defendant PBI Performance
Products, Inc.*

John A. Nader, Esq.
Hinshaw & Culbertson LLP
700 12th Street, N.W., Suite 700
Washington, D.C. 20005
Tel: (202) 979-5280
Fax: (212) 935-1166
jnader@hinshawlaw.com
*Counsel for Defendant Stedfast USA, Inc.*

John T. Bergin
KILPATRICK STOCKTON TOWNSEND
LLP
701 Pennsylvania Avenue, NW, Suite 200
Washington, DC USA 20004
Tel. (202) 481-9942
jbergin@ktslaw.com
*Counsel for Southern Mills Inc.*

Martin A. Conn, Esq.
Stewart R. Pollock, Esq.
Ashley A. Davoli, Esq.
MORAN REEVES & CONN, PC
1211 E. Cary Street
Richmond, Virginia 23219
Tel.: (804) 421-6250
Fax: (804) 421-6251
mconn@moranreevesconn.com
spollock@moranreevesconn.com
adavoli@moranreevesconn.com
*Counsel for Defendant W. L. Gore &
Associates, Inc.*

2

*/s/ Lynn K. Brugh, IV*
Lynn K. Brugh, IV (VSB No. 36778)
**WILLIAMS MULLEN**
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6461
Facsimile: (804) 420-6507
lbrugh@williamsmullen.com

**VIRGINIA:**

**IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND**

**JONATHAN CLARKE,**

    **Plaintiff,**

**v.**

    **Case No. CL24002853-00**

**3M COMPANY, et al.,**

    **Defendants.**

## DECLARATION OF ROBERT A. APEL

I, Robert A. Apel, declare and state as follows:

1.    I am Executive Director, Global Fire Service and Digital Experience, at MSA Safety Inc. ("MSA"), which indirectly wholly owns MSA Safety Sales, LLC ("MSA Safety Sales"). I am over 18 years of age and am competent to make this Declaration. I make this Declaration based on my personal knowledge, and information in corporate records maintained by MSA Safety Sales in the ordinary course of business and/or otherwise reported to me by individuals with a business duty to accurately report that information. I respectfully submit this Declaration in support of MSA Safety Sales' motion to dismiss for lack of personal jurisdiction pursuant to Rules 3:8 and 4:15 of the Rules of Supreme Court of Virginia and Va. Code § 8.01-276.

2.    MSA Safety Sales is a Pennsylvania limited liability company with its principal place of business in Cranberry Township, Pennsylvania.

3.    MSA Safety Sales has never manufactured, distributed, or sold firefighter turnout gear jackets and pants in any state, including the Commonwealth of Virginia.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 8/18/25                                    Signed: _____

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

**JONATHAN CLARKE,**

                      **Plaintiff,**           **Civil Action No. CL24002853-00-JSM**

    **v.**

**3M CO.,** *et al.,*

                     **Defendants.**

## APPEARANCE OF COUNSEL

The Court will please note the appearance of the undersigned as Counsel for the Defendants

EIDP, Inc., f/k/a E.I. du Pont de Nemours and Company and The Chemours Company in the

above-styled matter.

Dated: August 18, 2025             Respectfully submitted,

                                             Caitlin R. Convery, Bar No. 99741
                                             SHOOK, HARDY & BACON LLP
                                             1800 K Street, N.W., Suite 1000
                                             Washington, D.C. 20006
                                             Tel.: 202.639.5603
                                             Fax: 202.783.4211
                                             cconvery@shb.com

                                             *Attorney for Defendants EIDP, Inc., f/k/a E.I. du*
                                             *Pont de Nemours and Company and The*
                                             *Chemours Company*



## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served electronically on August

18, 2025 by operation of the Court's electronic filing system (VJEFS) upon all parties of record.

Caitlin R. Convery

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

JONATHAN CLARKE,

      Plaintiff,

v.

    Civil Action No. CL24002853-00

3M COMPANY, et al.,

      Defendants.

## BRIEF IN SUPPORT OF DAIKIN AMERICA, INC.'S MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION BY SPECIAL APPEARANCE

Daikin America, Inc., ("Daikin") submits this brief by special appearance of counsel for the sole purpose of objecting to the personal jurisdiction of this Court, as it has also noted in its Motion to Dismiss. *See* Va. Code §§ 8.01-277, 8.01-277.1.

## INTRODUCTION

Plaintiff claims that this case is about the dangers of firefighter turnout gear in Virginia. But he has sued a company, Daikin America, Inc., that does not even *allegedly* have any connection to firefighter gear in Virginia, let alone to the specific gear worn by Plaintiff here. The Court thus lacks jurisdiction over Clarke's claims against Daikin and should dismiss them.

*First*, there can be no question as to this Court's lack of *general* jurisdiction over Daikin. Daikin is incorporated in Delaware and has its principal place of business in New York; it is far from "at home" in Virginia.

*Second*, as both the complaint and the attached declaration show, the Court also lacks *specific* jurisdiction over Daikin. That exists only when the defendant purposely availed itself of Virginia and when those specific contacts with the Commonwealth gave rise to the plaintiff's claims. But here, Plaintiff fails to allege that Daikin did anything to purposefully avail itself of transacting business in Virginia, and the declaration confirms as much. Moreover, and in any event, Plaintiff's alleged harms are not related to any contacts that Daikin formed with Virginia. This Court's exercise of personal jurisdiction would therefore not comport with fair play and substantial justice; in fact, it would violate the Constitution.

This Court should dismiss.

## BACKGROUND

Plaintiff alleges the following, which Daikin accepts as true for purposes of this Motion.

Plaintiff is Jonathan Clarke—a firefighter for the Richmond Fire Department. First Amended Complaint ("Compl.") ¶¶ 1, 39. In the course of his firefighting duties, Clarke dressed

in "turnout gear," including helmets, hoods, jackets, pants, boots, and gloves, specially designed to protect the wearer from ambient heat and other hazards. *Id.* ¶¶ 43–44, 49.

Turnout gear can provide this necessary protection to firefighters in part because it contains certain chemicals from the family of per- and polyfluoroalkyl substances (PFAS). *Id.* ¶ 42. PFAS chemicals "are widely used in products to, *inter alia*, resist and repel oil, heat and water" due to the unique properties of their fluorocarbon structure. *Id.* ¶ 43. Scientists have identified over 5,000 different types of PFAS, which vary in terms of the number of carbon atoms and presence of additional elements. *See id.* ¶¶ 3, 43.

Clarke alleges that he was diagnosed with cancer following exposure to the PFAS supposedly contained in his turnout gear. *Id.* ¶ 12. He does not identify which of the over 5,000 types of PFAS his turnout gear contained or the company that produced that specific substance. Nor does Clarke identify the specific brand of turnout gear that he wore despite alleging that turnout gear typically comes with labels identifying the manufacturer or distributor, *see id.* ¶ 87, and that Clarke wore a single set of turnouts "for years," *id.* ¶ 51. Clarke instead sued more than two dozen different manufacturers and distributors of chemicals, substances, and turnout gear, arguing that each is liable for breach of implied warranty, breach of express warranty, negligence (as well as gross negligence, recklessness, and willful and wanton conduct), and violations of the Virginia Consumer Protection Act. *See id.* ¶¶ 106–82.

Daikin America, Inc.—a Delaware Corporation with its principal place of business in Orangeburg, New York—is one of those defendants. *Id.* ¶ 19. But one would not know from the Complaint what Daikin did to be sued here. The allegations in Clarke's Complaint provide scant detail to suggest that Daikin played *any* part in *any* type of PFAS in Clarke's turnout gear. All Clarke alleges is that the EPA "invited" Daikin and three other defendants to phase out production

of one of the more than 5,000 types of PFAS by 2015, without noting whether that substance was one to which Clarke was allegedly exposed or even whether that substance was involved in turnout gear at all. *Id.* ¶ 75. Besides that, Clarke shotgun-pleads that each defendant "developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnouts" without naming the specific type of PFAS or nature of this sale. *Id.* ¶¶ 13–33. He also asserts that "Defendants"—again collectively—failed to provide proper safety labels on turnout gear and misrepresented the risks of PFAS exposure, but he does not identify that Daikin ever contributed to this alleged conduct individually even though he does so for several other defendants. *See id.* ¶¶ 86–89.

## STANDARD OF REVIEW

This is not like an ordinary motion to dismiss. Instead, here, Clarke bears the burden of alleging "the essential facts" to establish personal jurisdiction. Va. Sup. Ct. R. 1:4(j). The Court accepts as true those allegations pleaded with "sufficient definiteness," *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 73 n.2, 834 S.E.2d 244, 250 n.2 (2019) (internal quotation marks and citation omitted), but vague or conclusory allegations fail to satisfy Clarke's burden under this pleading standard, *Nathan v. Takeda Pharms. Am., Inc.*, 83 Va. Cir. 216, 220, 226 (Fairfax 2011); *E. Direct Mktg. v. Coolidge Co.*, 26 Va. Cir. 282, 283 (Arlington 1992). This Court may also consider Daikin's declarations in evaluating personal jurisdiction. *See Sutherland v. Robby Thruston Carpentry, Inc.*, 68 Va. Cir. 43, 43 (Richmond City 2005).

## ARGUMENT

## I.    THIS COURT LACKS PERSONAL JURISDICTION OVER DAIKIN.

A court may enter a binding judgment against a defendant like Daikin only when it possesses personal jurisdiction over that defendant. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). For this Court to exercise personal jurisdiction over Daikin as to Clarke's state-

- 3 -

law claims, Clarke must establish that Daikin had either (A) general jurisdiction (by showing that Daikin is "at home" in Virginia) or (B) specific jurisdiction (by showing that his claims against Daikin comport with Virginia's long-arm statute, Va. Code § 8.01-328.1, and the Fourteenth Amendment's Due Process Clause). *Carter v. Wake Forest Univ. Baptist Med. Ctr.*, 303 Va. 135, 144–46 & n.8, 900 S.E.2d 496, 500–02 & n.8 (2024); *see Daimler AG v. Bauman*, 571 U.S. 117, 125–27 (2014).

Clarke can do neither: Clarke does not plausibly allege—and cannot establish as a matter of fact—that Daikin is subject to either general or specific jurisdiction in Virginia. The Complaint lacks any factual allegations that could support an inference that Daikin is at home in Virginia or subject to specific jurisdiction under Virginia's long-arm statute. And what's more, Daikin supports its motion with the attached declaration ("Decl.") showing that neither type of personal jurisdiction exists here. This Court should accordingly dismiss the case against Daikin.

## A. Daikin Is Not Subject to General Jurisdiction in Virginia.

General jurisdiction allows a court to assert jurisdiction over "any and all claims," no matter what they are about, against a defendant. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (internal quotation marks and citation omitted). To satisfy this "all-purpose" jurisdiction, the plaintiff must demonstrate that the defendant is "essentially at home" in a forum. *Id.* at 358–59 (internal quotation marks and citation omitted). For a corporation, absent highly unusual circumstances, general jurisdiction will be proper in only two forums: the place of incorporation and its principal place of business. *Id.* at 359; *see Carter*, 303 Va. at 145 n.8, 900 S.E. at 501 n.8.

Daikin is not at home in Virginia. As the Complaint correctly alleges, Daikin is incorporated in Delaware and has its principal place of business in New York—not Virginia. Compl. ¶ 19; Decl. ¶ 2. And there is nothing to suggest that this is the "exceptional case" where

- 4 -

Daikin's corporate offices temporarily moved to Virginia. *Daimler*, 571 U.S. at 139 n.19; *see* Decl. ¶¶ 2–6. There is thus no general jurisdiction over Daikin.

**B.      Daikin Is Not Subject to Specific Jurisdiction In Virginia for Clarke's Suit.**

Virginia's long-arm statute allows its court to exercise specific jurisdiction against a defendant when the defendant's conduct falls into one of ten enumerated categories and the causes of action "aris[e] from" this conduct. Va. Code § 8.01-328.1(A). The exercise of jurisdiction of course must also "comport[] with the strictures of constitutional due process." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350–51 (4th Cir. 2020). Because Virginia's long-arm statute reflects a "policy of extending the jurisdiction of its courts to the maximum extent permitted' by due process," courts have concluded that the "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Bergaust v. Flaherty*, 57 Va. App. 423, 430, 703 S.E.2d 248, 251 (2011) (quoting *Caldwell v. Seaboard Sys. R.R.*, 238 Va. 148, 153, 380 S.E.2d 910, 912 (1989); *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (internal quotation marks and citation omitted)); *see also Carter*, 303 Va. at 144, 900 S.E.2d at 500–01. That single inquiry "can be distilled to a three-pronged test: '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *Khashoggi v. NSO Grp. Techs. Ltd.*, 138 F.4th 152, 159 (4th Cir. 2025) (quoting *UMG Recordings*, 963 F.3d at 352).

Clarke cannot satisfy any of the three constitutional requirements for personal jurisdiction.

**1.      *Purposeful Availment.*** Clarke fails to allege, and cannot establish anyway, that Daikin purposefully availed itself of doing business in Virginia. Put plainly, Daikin did not do so.

Courts ask whether a defendant has purposefully availed itself of doing business in Virginia by examining such considerations as whether it solicits business in Virginia, has a physical

presence in Virginia, or communicates with Virginia residents. *Carter*, 303 Va. at 146, 900 S.E.2d at 502. "[I]t is the '*quality and nature*' of a defendant's connections with the forum that justify personal jurisdiction, 'not merely the number of contacts between the defendant and the forum state.'" *Khashoggi*, 138 F.4th at 161 (quoting *UMG Recordings*, 963 F.3d at 352).

Clarke's Complaint is devoid of any allegations that support an inference that Daikin has done any of these things in Virginia. Clarke makes no allegations about Daikin's sales into Virginia or whether it maintained any presence there. *See Carter*, 303 Va. at 147, 900 S.E.2d at 502. Nor has Clarke alleged that Daikin did anything to direct its products to Virginia, much less that it did so for the purpose of making turnout gear. *See Sutherland*, 68 Va. Cir. at 47 ("a defendant's awareness that the stream of commerce may or *will* sweep the product into the forum state does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state") (internal quotation marks and citation omitted).

There is a reason, too, why Clarke does not allege purposeful availment—it is because Daikin did not, in fact, direct its contacts toward Virginia. Daikin is not registered to do business in Virginia, it does not maintain an office in Virginia, it does not own real property in Virginia, and it does not manufacture products in Virginia. Decl. ¶¶ 3–6. There is no evidence that Daikin designed its products in anticipation of sales in Virginia or that Daikin created or controlled a distribution system in Virginia. Plaintiff's burden demands more. *See Sutherland*, 68 Va. Cir. at 43, 47 (finding no purposeful availment when defendant had no office, distribution system control, business, or business solicitation in Virginia, even though defendant "manufactured a product similar to the one at issue."); *cf. Weirton Area Water Bd. v. 3M Co.*, No. 20-CV-102, 2020 WL 8184976, at *7 (N.D.W. Va. Nov. 20, 2020) (dismissing defendant in PFAS case for lack of

specific personal jurisdiction after considering similar factors under West Virginia's long-arm statute).

The Alabama Supreme Court reached a similar result in *Ex parte DuPont De Nemours, Inc.*, No. SC-2024-0514, 2025 WL 1009062, at \*19–25 (Ala. 2025). That case involved allegations that the defendant, a manufacturer and supplier of PFAS products, was responsible for contaminating the plaintiff's water supply with PFAS. *DuPont* granted the defendant's motion for mandamus and ordered dismissal for lack of specific personal jurisdiction. *Id.* at \*26. Applying *Ford Motor*, the Alabama Supreme Court explained that the plaintiff had failed to allege that the defendant had discharged or controlled the discharge of any PFAS, and that no evidence showed the defendant was "systematically serving a market . . . in any way, shape, or form." *Id.* at \*25. Even though the *DuPont* plaintiff asserted the defendant "owned and maintained its PFAS-application machinery" and owned equipment at "one or two" mills in the forum state, the plaintiff showed insufficient "presence and connections" with the forum state such that the defendant could reasonably anticipate being haled into court. *Id.* (internal quotation marks and citation omitted). The same goes for the Clarke Complaint. The Complaint does not—and could not—show the required "strong relationship among the defendant, the forum, and the litigation—the essential foundation of specific jurisdiction." *Ford Motor*, 592 U.S. at 353 (internal quotation marks and citation omitted).

All Clarke alleges is the boilerplate, shotgun-pleaded statement that Daikin—and every other defendant—developed, marketed, or sold PFAS or PFAS-containing products for use in turnout gear in Virginia. *See, e.g.*, Compl. ¶ 19. Even if it were true (contrary to the declaration), that does not cut it. Such "conclusory statements" about the marketing or sale of PFAS fail to demonstrate purposeful availment on the part of a specific defendant, especially when the plaintiff

copies and pastes that same allegation against multiple defendants. *See, e.g.*, *Sacramento Suburban Water Dist. v. 3M Co.*, No. 22-cv-01005, 2022 WL 16856177, at \*4 (E.D. Cal. Nov. 10, 2022). Nor can Clarke rely on the allegation that *he* lived and worked in Virginia. *See* Compl. ¶ 12. Personal jurisdiction focuses on the *defendant's* contacts, not the plaintiff's. *See Walden v. Fiore*, 571 U.S. 277, 286 (2014). And so a plaintiff's use of a defendant's product in Virginia is "insufficient basis to establish personal jurisdiction over the non-resident defendant[]." *Carter*, 303 Va. at 147, 900 S.E.2d at 502. Daikin, in short, did not purposefully avail itself of Virginia, and Clarke has failed to meet this prong.

**2.** *Arising Out Of.* Even if Clarke somehow could show that Daikin purposefully availed itself of Virginia, he would lose on the next prong. He cannot show that his lawsuit arose out of or relates to any possible Virginia-related conduct by Daikin. *See Frizzell v. Danieli Corp.*, 81 Va. Cir. 427, 434–35 (Norfolk 2010); *cf. Elite Child, Inc. v. Kadosh, Inc.*, 45 Va. Cir. 57, 58 (Arlington 1997).

A plaintiff asserting jurisdiction in a product-liability action must show defendant's contacts relate to the *particular* product alleged to have resulted in the harm. *See, e.g.*, *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 506–08 (9th Cir. 2023) (finding no relatedness when plaintiff was harmed by different model of battery than one sold into forum); *Grizzard v. LG Chem Ltd.*, 641 F. Supp. 3d 282, 291–92 (E.D. Va. 2022) (same); *see also Gallop Leasing Corp. v. Nationwide Mut. Ins. Co.*, 244 Va. 68, 71, 418 S.E.2d 341, 342–43 (1992) (holding that voiding of insurance policy did not arise from instructions to amend the policy when the insurer moved to void over separate misrepresentations about state of residence); *cf. N.Y. Com. Bank v. Heritage Green Dev., LLC*, 95 Va. Cir. 278, 281 (Fairfax 2017) (reasoning that even if designation of an agent qualified as transacting business, that designation did not give rise to an action for breach of contract).

This means, in the PFAS context, that courts lack specific jurisdiction when a plaintiff fails to show that the defendant marketed the specific PFAS or product alleged to have caused the injuries into that forum. *See, e.g., Weirton*, 2020 WL 8184976 , at \*7 ("[Defendant] has never manufactured or sold PFOS or PFOA, the compounds complained of in plaintiff's Complaint."). In *Sacramento*, for instance, the plaintiff admitted that there were thousands of different types of PFAS, but it failed to allege the specific PFAS chemicals contaminating his groundwater were sold or manufactured by the defendants in the forum. 2022 WL 16856177, at \*4. It did "not identify a particular type of PFAS used or manufactured in California, nor specify how or where it was advertised." *Id.* at \*5. The plaintiff also failed to allege that it was "impracticable" to distinguish each defendant's conduct by the type of PFAS product produced. *Id.* Due to the missing link between the defendant's "forum conduct" and "a particular PFAS chemical that now contaminates the groundwater," the court concluded that the exercise of personal jurisdiction would not satisfy due process. *Id.*

Clarke scarcely mentions Daikin at all in his Complaint. He makes no effort to tie his alleged injuries to any Virginia-related activities undertaken by Daikin. That is not a good start.

But it gets worse. Clarke goes on to acknowledge that there are *over 5,000* types of PFAS. Compl. ¶ 43. Yet despite discussing the alleged health effects of several specific chemicals in his Complaint, he never identifies even the brand of turnout gear that he wore, let alone the type of PFAS it contained. *See id.* ¶¶ 49, 54. Nor, more to the point here, does Clarke allege that Daikin ever produced or marketed a particular type of PFAS generally or for use in turnout gear specifically, despite making allegations about the PFAS contents of other defendants' products. *See, e.g., id.* ¶¶ 89, 99–101. At most, the Complaint offers up a "handful of verbs" about Daikin's general marketing of PFAS into Virginia, but as in other PFAS cases, such conclusory allegations

(repeated as boilerplate against all other defendants) fail to connect Daikin's individual activity with "suit-related conduct." *Golden State Water Co. v. 3M*, No. 20-CV-08897, 2021 WL 221787, at \*3 (C.D. Cal. Jan. 20, 2021) (internal quotation marks and citation omitted).

Clarke lacks the facts to cure his failure to tie his alleged injury to any Virginia-directed conduct by Daikin. Daikin is a chemical supplier. It has never, in fact, made, sold, or distributed turnout gear. Decl. ¶ 7. Daikin has shipped product samples to two co-defendants in Virginia, but those samples were not part of an ongoing sales relationship with either. *See id.* ¶¶ 9–11. Daikin sent two samples of PTFE-D to a DuPont facility in Virginia in 2000. *Id.* ¶ 9. To Daikin's knowledge, DuPont did not obtain the samples for the purpose of making turnouts or turnout gear components. *Id.* Daikin also sent samples from its Unidyne line of products to a Honeywell facility in Virginia for Honeywell to evaluate for potential use in manufacturing ballistics-related equipment such as bullet-proof vests. *Id.* ¶ 10. Daikin did not understand that Honeywell would use its products to make turnout gear or turnout gear components. *Id.* In short, Daikin did not direct any product to any co-defendant in Virginia for the purpose of making turnout gear or the understanding that its product would be used for such purpose. *See id.* ¶¶ 9–11.

Overlooking that Clarke fails to identify what turnout gear he wore, and assuming he wore turnout gear made by every one of Daikin's co-defendants, none of those turnouts would have contained any chemical that that Daikin sold to Virginia. That means that Clarke's lawsuit does not arise from or relate to Daikin's conduct—which in turn means this Court lacks jurisdiction over Daikin.

**3.    *Fair Play and Substantial Justice.*** Finally, and for good measure, Clarke cannot demonstrate that "fair play and substantial justice" support the exercise of personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985) (internal quotation marks and

citation omitted). Courts evaluate the fairness of extending personal jurisdiction by evaluating such factors as "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief" in the forum. *Sutherland*, 68 Va. Cir. at 48 (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987)).

Extending personal jurisdiction over Daikin lacks this constitutional reasonableness. Daikin has never made or sold turnout gear, period. Its only (miniscule) Virginia shipments to co-defendants were isolated shipments of product samples that are completely unrelated to what this lawsuit is about: turnout gear. There is nothing in Daikin's existing relationship with Virginia that would cause it "to reasonably anticipate that [it] would be compelled to adjudicate [this] dispute[] in Virginia." *Analytical & Rsch. Tech., Inc. v. Daninger*, 43 Va. Cir. 85, 87 (Fairfax 1997); *see Weirton*, 2020 WL 8184976, at *8 (holding fair play and substantial justice were not met in the absence of purposeful conduct directing PFAS to the forum state). Any interest that Virginia has in this case is slight "where minimum contacts have not been established." *Sutherland*, 68 Va. Cir. at 48. And Clarke's interest in obtaining relief does not outweigh the burden on Daikin "because it has not been established that the product causing the injury was that of [Daikin]." *Id.*

This lawsuit may have merit against some defendants. It may not. But the point here is that it is unconstitutional for this Court to resolve the merits with Daikin as part of the case. The Court should instead dismiss Daikin for lack of personal jurisdiction.

## CONCLUSION

Because Plaintiff cannot satisfy the Virginia long-arm statute or the requirements of the Fourteenth Amendment's Due Process Clause, this Court should dismiss the claims against Daikin for lack of personal jurisdiction.

- 11 -

Dated: August 18, 2025

By: /s/ William G. Laxton, Jr.

William G. Laxton, Jr. (VSB No. 75110)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: (202) 879-3939
Fax: (202) 626-1700
wglaxton@jonesday.com

Theodore M. Grossman (pro hac vice forthcoming)
JONES DAY
250 Vesey Street
New York, NY 10281
Tel.: (212) 326-3939
Fax: (212) 755-7306
tgrossman@jonesday.com

James R. Saywell (pro hac vice forthcoming)
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44144
Tel.: (216) 586-7108
Fax: (216) 579-0212
jsaywell@jonesday.com

Jennifer L. Weizenecker (pro hac vice forthcoming)
Simon P. Hansen (pro hac vice forthcoming)
JONES DAY
1221 Peachtree Street NE, Suite 400
Atlanta, GA 30361
Tel: (404) 581-8502
jweizenecker@jonesday.com
shansen@jonesday.com

*Counsel for Defendant Daikin America, Inc.*
*(by Special Appearance)*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief in Support of Motion to

Dismiss for Lack of Personal Jurisdiction was delivered by electronic mail to all counsel of record,

on this day of August 18, 2025.

By: /s/ William G. Laxton, Jr.

William G. Laxton, Jr. (VSB No. 75110)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: (202) 879-3939
Fax: (202) 626-1700
wglaxton@jonesday.com

*Counsel for Defendant Daikin America, Inc.*
*(by Special Appearance)*

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

JONATHAN CLARKE,

      Plaintiff,

v.

      Civil Action No. CL24002853-00

3M COMPANY, et al.,

      Defendants.

## DECLARATION OF TREVOR OLESON IN SUPPORT OF DAIKIN AMERICA, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

I, Trevor Oleson, make this Declaration under penalty of perjury pursuant to § 8.01-4.3 of the Code of Virginia and state the following:

1.    My name is Trevor Oleson, and I am an adult resident of Wisconsin Rapids, Wisconsin. I have been employed at Daikin America, Inc. (Daikin) since 2010. I am currently a Senior Business Director at Daikin. This Declaration is based on my personal knowledge and a review of Daikin's business records maintained in the ordinary course of business.

2.    Daikin is incorporated in Delaware and has its principal place of business in New York.

3.    Daikin is not registered to do business in Virginia.

4.    Daikin does not maintain an office in Virginia.

5.    Daikin does not own real property in Virginia.

6.    Daikin does not manufacture products in Virginia.

7.    Daikin never manufactured, sold, or distributed any protective clothing specifically designed for firefighters ("Turnouts").

8.      I have reviewed records of Daikin's sales to the companies named as defendants in this action dating to 1999, the most recent year sales data is available.

9.      In 2000, Daikin shipped two samples of PTFE-D to a DuPont facility in Virginia. These shipments were not part of an ongoing sales relationship with DuPont in Virginia. To Daikin's knowledge, DuPont did not obtain the samples for the purpose of manufacturing Turnouts or components for Turnouts.

10.     Daikin shipped samples from its Unidyne line to a Honeywell facility in Virginia in 2001, 2012, 2013, 2015, and 2020. These samples were not part of an ongoing sales relationship with Honeywell in Virginia. Honeywell was evaluating Daikin's products for potential use in manufacturing ballistics-related equipment such as bullet-proof vests. Daikin did not sell any products to Honeywell in Virginia with the understanding that Honeywell would use them in making Turnouts or components for Turnouts.

11.     Other than the samples listed above, Daikin is not aware of any making any sales or shipping any products to DuPont, Honeywell, or any other defendant in Virginia.

Executed this _14th_ day of August, 2025.

Trevor Oleson

**VIRGINIA:**

### IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

JONATHAN CLARKE,

       Plaintiff,

v.

Civil Action No. CL24002853-00

3M COMPANY, et al.,

       Defendants.

### DAIKIN AMERICA, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION BY SPECIAL APPEARANCE

Defendant Daikin America, Inc., ("Daikin") makes special appearance by counsel, pursuant to § 8.01-277 and § 8.01-277.1 of the Code of Virginia, and objects to the personal jurisdiction of this Court on the following grounds:

1. Daikin America, Inc., is a Delaware Corporation with a principal place of business in Orangeburg, New York.

2. The First Amended Complaint filed by Plaintiff alleges that he suffered injury as a result of contact with firefighter turnout gear containing per- and polyfluoroalkyl substances (PFAS) in the City of Richmond, Virginia.

3. The First Amended Complaint fails to state facts sufficient to establish that this Court possesses personal jurisdiction over Daikin under § 8.01-328.1 of the Code of Virginia.

4. Moreover, the exercise of personal jurisdiction over Daikin in this case would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, the defendant Daikin America, Inc., making special appearance by counsel, moves that the Plaintiff's Complaint be dismissed for lack of personal jurisdiction and that defendant be granted such other relief as is appropriate.

Dated: August 18, 2025

By: /s/ William G. Laxton, Jr.

William G. Laxton, Jr. (VSB No. 75110)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: (202) 879-3939
Fax: (202) 626-1700
wglaxton@jonesday.com

Theodore M. Grossman (pro hac vice forthcoming)
JONES DAY
250 Vesey Street
New York, NY 10281
Tel.: (212) 326-3939
Fax: (212) 755-7306
tgrossman@jonesday.com

James R. Saywell (pro hac vice forthcoming)
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44144
Tel.: (216) 586-7108
Fax: (216) 579-0212
jsaywell@jonesday.com

Jennifer L. Weizenecker (pro hac vice forthcoming)
Simon P. Hansen (pro hac vice forthcoming)
JONES DAY
1221 Peachtree Street NE, Suite 400
Atlanta, GA 30361
Tel: (404) 581-8502
jweizenecker@jonesday.com
shansen@jonesday.com

*Counsel for Defendant Daikin America, Inc.*
*(by Special Appearance)*

- 2 -

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion to Dismiss for Lack

of Personal Jurisdiction was delivered by electronic mail to all counsel of record, on this day of

August 18, 2025.

By: /s/ William G. Laxton, Jr.

William G. Laxton, Jr. (VSB No. 75110)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: (202) 879-3939
Fax: (202) 626-1700
wglaxton@jonesday.com

*Counsel for Defendant Daikin America, Inc.*
*(by Special Appearance)*

Uploaded: 2025AUG18 17:36 Filed By:Bar# 75110 WLAXTON Reference: EF-178722
eFiled: 2025AUG18 RICHMOND CITY CC JKENNEDY at 2025AUG20 08:33 CL24002853-00

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

JONATHAN CLARKE,

      Plaintiff,

v.

      Civil Action No. CL24002853-00

3M COMPANY, et al.,

      Defendants.

## [PROPOSED] ORDER

This matter came before the Court on Defendant Daikin America, Inc.'s ("Daikin") Motion to Dismiss for Lack of Personal Jurisdiction by Special Appearance (the "Motion"). Having considered Daikin's Motion, the response of Plaintiff Jonathan Clarke, and for good cause shown, the Court finds that the Motion should be granted.

**IT IS HEREBY ORDERED** that Daikin's Motion is **GRANTED** and Plaintiff's claims against Daikin are **DISMISSED**.

SO ORDERED.

ENTERED this _____ day of _____, 2025.

_____
Judge, Circuit Court for the City of Richmond



Uploaded: 2025AUG18 17:38 Filed By:Bar# 99741 CCONVERY Reference: EF-178724
eFiled: 2025AUG18 RICHMOND CITY CC JKENNEDY at 2025AUG20 08:35 CL24002853-00

**VIRGINIA:**

### IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

**JONATHAN CLARKE,**

    **Plaintiff,**

**v.**

    **Case No. CL24002853-00-JSM**

**3M COMPANY, et al.,**

    **Defendants.**

### PARTIAL DEMURRER ON BEHALF OF EIDP, INC. AND THE CHEMOURS COMPANY

    Defendants EIDP, Inc. (formerly known as E. I. du Pont de Nemours and Company and hereafter "EIDP") and The Chemours Company[1] ("Chemours") (EIDP and Chemours, collectively, "Defendants"), by counsel and pursuant to Virginia Code § 8.01-273 and Rule 3:8 of the Rules of the Supreme Court of Virginia, submit this Partial Demurrer[2] in response to Plaintiff Jonathan Clarke's First Amended Complaint ("Complaint"). In support of this Partial Demurrer, as to which EIDP and Chemours will file a full memorandum in support at the appropriate time, Defendants state as follows:

### INTRODUCTION

    1.    Plaintiff's claims against Defendants for breach of implied warranties, breach of express warranty, and violations of the Virginia Consumer Protection Act ("VCPA") do not state a cause of action and fail to inform Defendants of the nature of the claims asserted. Va. Code §

---

[1] The Chemours Company is improperly named in the First Amended Complaint as "The Chemours Company LLC."

[2] In addition to this Demurrer, EIDP and Chemours are also filing a motion to dismiss for lack of personal jurisdiction, a motion craving oyer, and joint plea in bar with certain other defendants.

8.01-273(A); Va. Sup. Ct. R. 1:4(d). Plaintiff is not entitled to the relief requested for these claims, and Defendants respectfully request that this Court sustain this Partial Demurrer and dismiss these claims with prejudice.

## ARGUMENT

### I.   Plaintiff's Implied Warranty Claim Should be Dismissed.

2.      Plaintiff fails to state a claim for economic damages based on any breach of implied warranty theory.

3.      Plaintiff is unable to recover economic damages stemming from his claim for breach of the implied warranty of merchantability. "[P]rivity is required to recover economic loss . . . due to the breach of the implied warranty of merchantability." *Pulte Home Corp. v. Parex, Inc.*, 579 S.E.2d 188, 191 (Va. 2003). Plaintiff does not allege that he entered into a contract with EIDP or Chemours, as such, the parties are not in privity and Plaintiff may not recover economic losses, including consequential economic loss based on a breach of any implied warranty. *Id.* (quoting *Beard Plumbing & Hearing, Inc. v. Thompson Plastics, Inc.*, 491 S.E.2d 731, 733-34 (Va. 1997)) ("[T]he statute 'requires a contract between the parties for the recovery of consequential economic loss damages . . .'").

4.      With no privity between EIDP or Chemours, Plaintiff's entire breach of implied warranty claim fails.

5.      Additionally, Plaintiff's breach of the implied warranty of fitness for a particular purpose claim fails because there is no claim where the goods are used for their ordinary purpose. Va. Code Ann. § 8.2-315, cmt. 2 ("A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged

2

in the concept of merchantability . . ."). Plaintiff alleges only that the good at issue—the turnout gear—was used precisely for its ordinary purpose—to protect a firefighter (Plaintiff) from fire and other elements. As such, because the turnout gear was sold and used for its ordinary purpose, no claim for breach of the implied warranty of fitness for a particular purpose is available.

## II.    Plaintiff's Breach of Express Warranty Claim Should be Dismissed.

6.      Plaintiff's Complaint does not include the express warranty or warranties that the Defendants purportedly made to Plaintiff. Under Virginia law, express warranties may be created by "affirmations of fact" or "promises" relating to goods or "description[s] of goods" made part of the basis of the bargain. Va. Code. § 8.2-313(1). To state a claim for breach of an express warranty, a pleading must identify the "affirmations of fact, promises, [or] descriptions [made to the plaintiff]." *Pulte Home Corp. v. Parex, Inc.*, 265 Va. 518, 523–24, 579 S.E.2d 188, 190 (2003). It is not enough to do so in conclusory fashion and failure to identify the express warranty renders the pleading "insufficient." *Id.* As such, because Plaintiff fails to identify any "affirmation of fact, promise[], or description[]" made by EIDP or Chemours to Plaintiff, Plaintiff's complaint fails to state a claim for breach of an express warranty.

7.      Defendants have filed a Motion Craving Oyer seeking the basis for express warranty purportedly made by Defendants. The outcome of that motion will inform Defendants' Demurrer as to those claims.

## III.    Plaintiff's Virginia Consumer Protection Act Claim Should Be Dismissed.

8.      Plaintiff fails to state a claim under the VCPA for at least two separate and independent reasons.

3

9.      First, the sale of goods at issue in this case is not a "consumer transaction" under Virginia Code § 59.1-198. To state a claim under the VCPA, Plaintiff must allege the existence of a "consumer transaction." Va. Code § 59.1-200(A).

10.     The "consumer transaction" Plaintiff purports to allege against EIDP and Chemours is the sale of "PFAS, PFAS materials, and products containing PFAS" used by other companies to allegedly make turnouts. Compl. ¶ 20.

11.     The sale of PFAS, PFAS materials, or products containing PFAS are not a "consumer transaction" under the statutory definition. The VCPA outlines six different types of consumer transactions, only one of which could conceivably apply to Plaintiff's claims: "[t]he advertisement, sale, lease, license, or offering for sale, lease, or license, of goods or services to be used primarily for personal, family, or household purposes." Va. Code § 59.1-198. As an initial matter, the turnout gear at issue was plainly purchased by Plaintiff's employer for use at Plaintiff's job—not for "personal, family, or household purposes." Compl. ¶¶ 7-8. As such, Plaintiff's VCPA claim fails.

12.     But further, under the VCPA, "the relevant question is whether the bargained-for '*goods or services*' are 'to be used' for personal purposes, not whether any eventual end-product to which the goods or services contribute is for personal use." *Benkirane v. City Concrete Corp.*, No. 1100-24-4, -- S.E.2d --, 2025 WL 2109358, at *6 (Va. App. July 29, 2025) (quoting Va. Code § 59.1-198) (emphasis in original). The sale of PFAS, PFAS materials, and products containing PFAS for use in turnout gear is not a sale of goods "used primarily for personal, family, or household purposes"; it is a sale of specialty chemical products between commercial entities. *See, e.g.*, Compl. ¶ 61 (Globe "continues to manufacture, market and sell turnout gear using PFAS-containing fabrics

4

supplied by its partners, DuPont . . ."). As such, the lack of a consumer transaction alone warrants dismissal of the VCPA claim in its entirety.

13.    Second, the VCPA excludes Plaintiff's claim because the sale of PFAS, PFAS materials, and products containing PFAS for use in turnout gear (as well as the sale of turnout gear itself) are authorized under the laws or regulations of the Commonwealth and/or the United States. Va. Code § 59.1-199(1). This also warrants dismissal of Plaintiff's VCPA claim in its entirety.

\*    \*    \*    \*    \*

14.    Defendants will provide additional points and authorities in support of dismissal in their forthcoming memorandum of support.

WHEREFORE, for the above reasons, Defendants respectfully request that the Court enter an Order: (1) sustaining this Partial Demurrer; (2) dismissing the implied warranty of fitness for a particular purpose claim against Defendants with prejudice; (3) dismissing the express warranty claim against Defendants with prejudice; (4) dismissing the VCPA claim in its entirety with prejudice; and (5) awarding such further relief as the Court deems just and proper.

5

Dated: August 18, 2025

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

*/s/ Caitlin R. Convery*
Caitlin R. Convery, Bar No. 99741
1800 K Street, N.W., Suite 1000
Washington, D.C. 20006
Tel.: 202.639.5603
Fax: 202.783.4211
cconvery@shb.com

*Attorney for Defendants EIDP, Inc., f/k/a
E.I. du Pont de Nemours and Company and
The Chemours Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served electronically on August

18, 2025 by operation of the Court's electronic filing system (VJEFS) upon all parties of record.

*/s/ Caitlin R. Convery*
Caitlin R. Convery

*Attorney for Defendant EIDP, Inc., f/k/a
E.I. du Pont de Nemours and Company and
The Chemours Company*

Uploaded: 2025AUG18 17:39 Filed By:Bar# 99741 CCONVERY Reference: EF-178724
eFiled: 2025AUG18 RICHMOND CITY CC JKENNEDY at 2025AUG20 08:35 CL24002853-00

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

**JONATHAN CLARKE,**

    **Plaintiff,**

**v.**

**3M COMPANY, et al.,**

    **Defendants.**

**Case No. CL24002853-00-JSM**

## ORDER

This matter came before the Court upon a Demurrer filed by Defendants EIDP, Inc. and The Chemours Company. Upon consideration of the Demurrer, Plaintiff's opposition, and the oral arguments of counsel, it is hereby ORDERED:

1.    The Demurrer is GRANTED;

2.    Counts I, II, and IV of Plaintiff's First Amended Complaint for breach of implied warranties, breach of express warranty, and violations of the Virginia Consumer Protection Act are dismissed, with prejudice, as to Defendants EIDP, Inc. and The Chemours Company.

IT IS SO ORDERED.

Entered this _____ day of _____, 2025.

_____
Circuit Court Judge

Uploaded: 2025AUG18 17:41 Filed By:Bar# 99741 CCONVERY Reference: EF-178727
eFiled: 2025AUG18 RICHMOND CITY CC JKENNEDY at 2025AUG20 08:36 CL24002853-00

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

**JONATHAN CLARKE,**

    **Plaintiff,**

**v.**

    **Case No. CL24002853-00-JSM**

**3M COMPANY, et al.,**

    **Defendants.**

## EIDP, INC. AND THE CHEMOURS COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendants EIDP, Inc. (formerly known as E. I. du Pont de Nemours and Company and hereafter "EIDP") and The Chemours Company[1] ("Chemours") (EIDP and Chemours, collectively, "Defendants"), move by special appearance, pursuant to Virginia Code § 8.01-277, to dismiss Plaintiff's First Amended Complaint, in its entirety, for lack of personal jurisdiction over EIDP and Chemours. Chemours and EIDP have separately moved for a demurrer on Plaintiff's express and implied warranty, and VCPA claims. For the reasons stated in this Motion and in the accompanying Memorandum in Support, Plaintiff's Complaint should be dismissed for lack of personal jurisdiction.

1.    Under Virginia law, a defendant's conduct is sufficient for the exercise of personal jurisdiction if: (1) the conduct satisfies the requirements of Virginia's long-arm statute, and (2) the conduct satisfies the requirements of the Due Process Clause of the Fourteenth Amendment. *Carter v. Wake Forest Univ. Baptist Med. Ctr.*, 900 S.E.2d 496, 501 (Va. 2024).

---

[1] The Chemours Company is improperly named in the First Amended Complaint as "The Chemours Company LLC."

2.      To satisfy the Due Process Clause, Plaintiff must establish a *prima facie* case that either: (1) EIDP and Chemours' contacts with the State of Virginia are so "continuous and systematic" as to render each essentially "at home" in Virginia subjecting them to general jurisdiction; or (2) Plaintiff's claims arise from some *local* activity or conduct by EIDP and Chemours sufficient to warrant the exercise of specific jurisdiction. *New York Commercial Bank v. Heritage Green Development, LLC*, 95 Va. Cir. 278, 2017 WL 9833490, at *1-2 (Va. Cir. Mar. 7, 2017).

3.      Plaintiff does not allege that EIDP or Chemours are incorporated in Virginia or have their principal place of business within Virginia, as such, the Court lacks general jurisdiction over EIDP and Chemours.

4.      The Court also lacks specific personal jurisdiction over EIDP and Chemours because Plaintiff never connects generic allegations that certain defendants' turnout gear contains compounds originating from EIDP or Chemours to some local activity or conduct by either company.

WHEREFORE, for the reasons stated above, and within the accompanying memorandum of law and its attached exhibit, EIDP and Chemours respectfully request this Court grant their Motion to Dismiss.

Dated: August 18, 2025

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

*/s/ Caitlin R. Convery*
Caitlin R. Convery, Bar No. 99741
1800 K Street, N.W., Suite 1000
Washington, D.C. 20006
Tel.: 202.639.5603
Fax: 202.783.4211
cconvery@shb.com

*Attorney for Defendants EIDP, Inc., f/k/a*
*E.I. du Pont de Nemours and Company and*
*The Chemours Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served electronically on August

18, 2025 by operation of the Court's electronic filing system (VJEFS) upon all parties of record.

*/s/ Caitlin R. Convery*
Caitlin R. Convery

*Attorney for Defendant EIDP, Inc., f/k/a*
*E.I. du Pont de Nemours and Company and*
*The Chemours Company*

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

JONATHAN CLARKE,

        Plaintiff,

    v.

                                    Civil Action No. CL24002853-00

3M COMPANY, et al.,

        Defendants.

## BRIEF IN SUPPORT OF DAIKIN AMERICA, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION BY SPECIAL APPEARANCE



Daikin America, Inc., ("Daikin") submits this brief by special appearance of counsel for the sole purpose of objecting to the personal jurisdiction of this Court, as it has also noted in its Motion to Dismiss. *See* Va. Code §§ 8.01-277, 8.01-277.1.

## INTRODUCTION

Plaintiff claims that this case is about the dangers of firefighter turnout gear in Virginia. But he has sued a company, Daikin America, Inc., that does not even *allegedly* have any connection to firefighter gear in Virginia, let alone to the specific gear worn by Plaintiff here. The Court thus lacks jurisdiction over Clarke's claims against Daikin and should dismiss them.

*First*, there can be no question as to this Court's lack of *general* jurisdiction over Daikin. Daikin is incorporated in Delaware and has its principal place of business in New York; it is far from "at home" in Virginia.

*Second*, as both the complaint and the attached declaration show, the Court also lacks *specific* jurisdiction over Daikin. That exists only when the defendant purposely availed itself of Virginia and when those specific contacts with the Commonwealth gave rise to the plaintiff's claims. But here, Plaintiff fails to allege that Daikin did anything to purposefully avail itself of transacting business in Virginia, and the declaration confirms as much. Moreover, and in any event, Plaintiff's alleged harms are not related to any contacts that Daikin formed with Virginia. This Court's exercise of personal jurisdiction would therefore not comport with fair play and substantial justice; in fact, it would violate the Constitution.

This Court should dismiss.

## BACKGROUND

Plaintiff alleges the following, which Daikin accepts as true for purposes of this Motion.

Plaintiff is Jonathan Clarke—a firefighter for the Richmond Fire Department. First Amended Complaint ("Compl.") ¶¶ 1, 39. In the course of his firefighting duties, Clarke dressed

in "turnout gear," including helmets, hoods, jackets, pants, boots, and gloves, specially designed to protect the wearer from ambient heat and other hazards. *Id.* ¶¶ 43–44, 49.

Turnout gear can provide this necessary protection to firefighters in part because it contains certain chemicals from the family of per- and polyfluoroalkyl substances (PFAS). *Id.* ¶ 42. PFAS chemicals "are widely used in products to, *inter alia*, resist and repel oil, heat and water" due to the unique properties of their fluorocarbon structure. *Id.* ¶ 43. Scientists have identified over 5,000 different types of PFAS, which vary in terms of the number of carbon atoms and presence of additional elements. *See id.* ¶¶ 3, 43.

Clarke alleges that he was diagnosed with cancer following exposure to the PFAS supposedly contained in his turnout gear. *Id.* ¶ 12. He does not identify which of the over 5,000 types of PFAS his turnout gear contained or the company that produced that specific substance. Nor does Clarke identify the specific brand of turnout gear that he wore despite alleging that turnout gear typically comes with labels identifying the manufacturer or distributor, *see id.* ¶ 87, and that Clarke wore a single set of turnouts "for years," *id.* ¶ 51. Clarke instead sued more than two dozen different manufacturers and distributors of chemicals, substances, and turnout gear, arguing that each is liable for breach of implied warranty, breach of express warranty, negligence (as well as gross negligence, recklessness, and willful and wanton conduct), and violations of the Virginia Consumer Protection Act. *See id.* ¶¶ 106–82.

Daikin America, Inc.—a Delaware Corporation with its principal place of business in Orangeburg, New York—is one of those defendants. *Id.* ¶ 19. But one would not know from the Complaint what Daikin did to be sued here. The allegations in Clarke's Complaint provide scant detail to suggest that Daikin played *any* part in *any* type of PFAS in Clarke's turnout gear. All Clarke alleges is that the EPA "invited" Daikin and three other defendants to phase out production

- 2 -

of one of the more than 5,000 types of PFAS by 2015, without noting whether that substance was one to which Clarke was allegedly exposed or even whether that substance was involved in turnout gear at all. *Id.* ¶ 75. Besides that, Clarke shotgun-pleads that each defendant "developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnouts" without naming the specific type of PFAS or nature of this sale. *Id.* ¶¶ 13–33. He also asserts that "Defendants"—again collectively—failed to provide proper safety labels on turnout gear and misrepresented the risks of PFAS exposure, but he does not identify that Daikin ever contributed to this alleged conduct individually even though he does so for several other defendants. *See id.* ¶¶ 86–89.

## STANDARD OF REVIEW

This is not like an ordinary motion to dismiss. Instead, here, Clarke bears the burden of alleging "the essential facts" to establish personal jurisdiction. Va. Sup. Ct. R. 1:4(j). The Court accepts as true those allegations pleaded with "sufficient definiteness," *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 73 n.2, 834 S.E.2d 244, 250 n.2 (2019) (internal quotation marks and citation omitted), but vague or conclusory allegations fail to satisfy Clarke's burden under this pleading standard, *Nathan v. Takeda Pharms. Am., Inc.*, 83 Va. Cir. 216, 220, 226 (Fairfax 2011); *E. Direct Mktg. v. Coolidge Co.*, 26 Va. Cir. 282, 283 (Arlington 1992). This Court may also consider Daikin's declarations in evaluating personal jurisdiction. *See Sutherland v. Robby Thruston Carpentry, Inc.*, 68 Va. Cir. 43, 43 (Richmond City 2005).

## ARGUMENT

### I.    THIS COURT LACKS PERSONAL JURISDICTION OVER DAIKIN.

A court may enter a binding judgment against a defendant like Daikin only when it possesses personal jurisdiction over that defendant. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). For this Court to exercise personal jurisdiction over Daikin as to Clarke's state-

law claims, Clarke must establish that Daikin had either (A) general jurisdiction (by showing that Daikin is "at home" in Virginia) or (B) specific jurisdiction (by showing that his claims against Daikin comport with Virginia's long-arm statute, Va. Code § 8.01-328.1, and the Fourteenth Amendment's Due Process Clause). *Carter v. Wake Forest Univ. Baptist Med. Ctr.*, 303 Va. 135, 144–46 & n.8, 900 S.E.2d 496, 500–02 & n.8 (2024); *see Daimler AG v. Bauman*, 571 U.S. 117, 125–27 (2014).

Clarke can do neither: Clarke does not plausibly allege—and cannot establish as a matter of fact—that Daikin is subject to either general or specific jurisdiction in Virginia. The Complaint lacks any factual allegations that could support an inference that Daikin is at home in Virginia or subject to specific jurisdiction under Virginia's long-arm statute. And what's more, Daikin supports its motion with the attached declaration ("Decl.") showing that neither type of personal jurisdiction exists here. This Court should accordingly dismiss the case against Daikin.

## A.    Daikin Is Not Subject to General Jurisdiction in Virginia.

General jurisdiction allows a court to assert jurisdiction over "any and all claims," no matter what they are about, against a defendant. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (internal quotation marks and citation omitted). To satisfy this "all-purpose" jurisdiction, the plaintiff must demonstrate that the defendant is "essentially at home" in a forum. *Id.* at 358–59 (internal quotation marks and citation omitted). For a corporation, absent highly unusual circumstances, general jurisdiction will be proper in only two forums: the place of incorporation and its principal place of business. *Id.* at 359; *see Carter*, 303 Va. at 145 n.8, 900 S.E. at 501 n.8.

Daikin is not at home in Virginia. As the Complaint correctly alleges, Daikin is incorporated in Delaware and has its principal place of business in New York—not Virginia. Compl. ¶ 19; Decl. ¶ 2. And there is nothing to suggest that this is the "exceptional case" where

Daikin's corporate offices temporarily moved to Virginia. *Daimler*, 571 U.S. at 139 n.19; *see* Decl. ¶¶ 2–6. There is thus no general jurisdiction over Daikin.

**B.     Daikin Is Not Subject to Specific Jurisdiction In Virginia for Clarke's Suit.**

Virginia's long-arm statute allows its court to exercise specific jurisdiction against a defendant when the defendant's conduct falls into one of ten enumerated categories and the causes of action "aris[e] from" this conduct. Va. Code § 8.01-328.1(A). The exercise of jurisdiction of course must also "comport[] with the strictures of constitutional due process." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350–51 (4th Cir. 2020). Because Virginia's long-arm statute reflects a "policy of extending the jurisdiction of its courts to the maximum extent permitted' by due process," courts have concluded that the "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Bergaust v. Flaherty*, 57 Va. App. 423, 430, 703 S.E.2d 248, 251 (2011) (quoting *Caldwell v. Seaboard Sys. R.R.*, 238 Va. 148, 153, 380 S.E.2d 910, 912 (1989); *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (internal quotation marks and citation omitted)); *see also Carter*, 303 Va. at 144, 900 S.E.2d at 500–01. That single inquiry "can be distilled to a three-pronged test: '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *Khashoggi v. NSO Grp. Techs. Ltd.*, 138 F.4th 152, 159 (4th Cir. 2025) (quoting *UMG Recordings*, 963 F.3d at 352).

Clarke cannot satisfy any of the three constitutional requirements for personal jurisdiction.

**1.     *Purposeful Availment.*** Clarke fails to allege, and cannot establish anyway, that Daikin purposefully availed itself of doing business in Virginia. Put plainly, Daikin did not do so.

Courts ask whether a defendant has purposefully availed itself of doing business in Virginia by examining such considerations as whether it solicits business in Virginia, has a physical

presence in Virginia, or communicates with Virginia residents. *Carter*, 303 Va. at 146, 900 S.E.2d at 502. "[I]t is the '*quality and nature*' of a defendant's connections with the forum that justify personal jurisdiction, 'not merely the number of contacts between the defendant and the forum state.'" *Khashoggi*, 138 F.4th at 161 (quoting *UMG Recordings*, 963 F.3d at 352).

Clarke's Complaint is devoid of any allegations that support an inference that Daikin has done any of these things in Virginia. Clarke makes no allegations about Daikin's sales into Virginia or whether it maintained any presence there. *See Carter*, 303 Va. at 147, 900 S.E.2d at 502. Nor has Clarke alleged that Daikin did anything to direct its products to Virginia, much less that it did so for the purpose of making turnout gear. *See Sutherland*, 68 Va. Cir. at 47 ("a defendant's awareness that the stream of commerce may or *will* sweep the product into the forum state does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state") (internal quotation marks and citation omitted).

There is a reason, too, why Clarke does not allege purposeful availment—it is because Daikin did not, in fact, direct its contacts toward Virginia. Daikin is not registered to do business in Virginia, it does not maintain an office in Virginia, it does not own real property in Virginia, and it does not manufacture products in Virginia. Decl. ¶¶ 3–6. There is no evidence that Daikin designed its products in anticipation of sales in Virginia or that Daikin created or controlled a distribution system in Virginia. Plaintiff's burden demands more. *See Sutherland*, 68 Va. Cir. at 43, 47 (finding no purposeful availment when defendant had no office, distribution system control, business, or business solicitation in Virginia, even though defendant "manufactured a product similar to the one at issue."); *cf. Weirton Area Water Bd. v. 3M Co.*, No. 20-CV-102, 2020 WL 8184976, at \*7 (N.D.W. Va. Nov. 20, 2020) (dismissing defendant in PFAS case for lack of

specific personal jurisdiction after considering similar factors under West Virginia's long-arm statute).

The Alabama Supreme Court reached a similar result in *Ex parte DuPont De Nemours, Inc.*, No. SC-2024-0514, 2025 WL 1009062, at \*19–25 (Ala. 2025). That case involved allegations that the defendant, a manufacturer and supplier of PFAS products, was responsible for contaminating the plaintiff's water supply with PFAS. *DuPont* granted the defendant's motion for mandamus and ordered dismissal for lack of specific personal jurisdiction. *Id.* at \*26. Applying *Ford Motor*, the Alabama Supreme Court explained that the plaintiff had failed to allege that the defendant had discharged or controlled the discharge of any PFAS, and that no evidence showed the defendant was "systematically serving a market . . . in any way, shape, or form." *Id.* at \*25. Even though the *DuPont* plaintiff asserted the defendant "owned and maintained its PFAS-application machinery" and owned equipment at "one or two" mills in the forum state, the plaintiff showed insufficient "presence and connections" with the forum state such that the defendant could reasonably anticipate being haled into court. *Id.* (internal quotation marks and citation omitted). The same goes for the Clarke Complaint. The Complaint does not—and could not—show the required "strong relationship among the defendant, the forum, and the litigation—the essential foundation of specific jurisdiction." *Ford Motor*, 592 U.S. at 353 (internal quotation marks and citation omitted).

All Clarke alleges is the boilerplate, shotgun-pleaded statement that Daikin—and every other defendant—developed, marketed, or sold PFAS or PFAS-containing products for use in turnout gear in Virginia. *See, e.g.*, Compl. ¶ 19. Even if it were true (contrary to the declaration), that does not cut it. Such "conclusory statements" about the marketing or sale of PFAS fail to demonstrate purposeful availment on the part of a specific defendant, especially when the plaintiff

copies and pastes that same allegation against multiple defendants. *See, e.g., Sacramento Suburban Water Dist. v. 3M Co.*, No. 22-cv-01005, 2022 WL 16856177, at *4 (E.D. Cal. Nov. 10, 2022). Nor can Clarke rely on the allegation that *he* lived and worked in Virginia. *See* Compl. ¶ 12. Personal jurisdiction focuses on the *defendant's* contacts, not the plaintiff's. *See Walden v. Fiore*, 571 U.S. 277, 286 (2014). And so a plaintiff's use of a defendant's product in Virginia is "insufficient basis to establish personal jurisdiction over the non-resident defendant[]." *Carter*, 303 Va. at 147, 900 S.E.2d at 502. Daikin, in short, did not purposefully avail itself of Virginia, and Clarke has failed to meet this prong.

**2.** *Arising Out Of.* Even if Clarke somehow could show that Daikin purposefully availed itself of Virginia, he would lose on the next prong. He cannot show that his lawsuit arose out of or relates to any possible Virginia-related conduct by Daikin. *See Frizzell v. Danieli Corp.*, 81 Va. Cir. 427, 434–35 (Norfolk 2010); *cf. Elite Child, Inc. v. Kadosh, Inc.*, 45 Va. Cir. 57, 58 (Arlington 1997).

A plaintiff asserting jurisdiction in a product-liability action must show defendant's contacts relate to the *particular* product alleged to have resulted in the harm. *See, e.g., Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 506–08 (9th Cir. 2023) (finding no relatedness when plaintiff was harmed by different model of battery than one sold into forum); *Grizzard v. LG Chem Ltd.*, 641 F. Supp. 3d 282, 291–92 (E.D. Va. 2022) (same); *see also Gallop Leasing Corp. v. Nationwide Mut. Ins. Co.*, 244 Va. 68, 71, 418 S.E.2d 341, 342–43 (1992) (holding that voiding of insurance policy did not arise from instructions to amend the policy when the insurer moved to void over separate misrepresentations about state of residence); *cf. N.Y. Com. Bank v. Heritage Green Dev., LLC*, 95 Va. Cir. 278, 281 (Fairfax 2017) (reasoning that even if designation of an agent qualified as transacting business, that designation did not give rise to an action for breach of contract).

This means, in the PFAS context, that courts lack specific jurisdiction when a plaintiff fails to show that the defendant marketed the specific PFAS or product alleged to have caused the injuries into that forum. *See, e.g., Weirton*, 2020 WL 8184976 , at *7 ("[Defendant] has never manufactured or sold PFOS or PFOA, the compounds complained of in plaintiff's Complaint."). In *Sacramento*, for instance, the plaintiff admitted that there were thousands of different types of PFAS, but it failed to allege the specific PFAS chemicals contaminating his groundwater were sold or manufactured by the defendants in the forum. 2022 WL 16856177, at *4. It did "not identify a particular type of PFAS used or manufactured in California, nor specify how or where it was advertised." *Id.* at *5. The plaintiff also failed to allege that it was "impracticable" to distinguish each defendant's conduct by the type of PFAS product produced. *Id.* Due to the missing link between the defendant's "forum conduct" and "a particular PFAS chemical that now contaminates the groundwater," the court concluded that the exercise of personal jurisdiction would not satisfy due process. *Id.*

Clarke scarcely mentions Daikin at all in his Complaint. He makes no effort to tie his alleged injuries to any Virginia-related activities undertaken by Daikin. That is not a good start.

But it gets worse. Clarke goes on to acknowledge that there are *over 5,000* types of PFAS. Compl. ¶ 43. Yet despite discussing the alleged health effects of several specific chemicals in his Complaint, he never identifies even the brand of turnout gear that he wore, let alone the type of PFAS it contained. *See id.* ¶¶ 49, 54. Nor, more to the point here, does Clarke allege that Daikin ever produced or marketed a particular type of PFAS generally or for use in turnout gear specifically, despite making allegations about the PFAS contents of other defendants' products. *See, e.g., id.* ¶¶ 89, 99–101. At most, the Complaint offers up a "handful of verbs" about Daikin's general marketing of PFAS into Virginia, but as in other PFAS cases, such conclusory allegations

(repeated as boilerplate against all other defendants) fail to connect Daikin's individual activity with "suit-related conduct." *Golden State Water Co. v. 3M*, No. 20-CV-08897, 2021 WL 221787, at \*3 (C.D. Cal. Jan. 20, 2021) (internal quotation marks and citation omitted).

Clarke lacks the facts to cure his failure to tie his alleged injury to any Virginia-directed conduct by Daikin. Daikin is a chemical supplier. It has never, in fact, made, sold, or distributed turnout gear. Decl. ¶ 7. Daikin has shipped product samples to two co-defendants in Virginia, but those samples were not part of an ongoing sales relationship with either. *See id.* ¶¶ 9–11. Daikin sent two samples of PTFE-D to a DuPont facility in Virginia in 2000. *Id.* ¶ 9. To Daikin's knowledge, DuPont did not obtain the samples for the purpose of making turnouts or turnout gear components. *Id.* Daikin also sent samples from its Unidyne line of products to a Honeywell facility in Virginia for Honeywell to evaluate for potential use in manufacturing ballistics-related equipment such as bullet-proof vests. *Id.* ¶ 10. Daikin did not understand that Honeywell would use its products to make turnout gear or turnout gear components. *Id.* In short, Daikin did not direct any product to any co-defendant in Virginia for the purpose of making turnout gear or the understanding that its product would be used for such purpose. *See id.* ¶¶ 9–11.

Overlooking that Clarke fails to identify what turnout gear he wore, and assuming he wore turnout gear made by every one of Daikin's co-defendants, none of those turnouts would have contained any chemical that that Daikin sold to Virginia. That means that Clarke's lawsuit does not arise from or relate to Daikin's conduct—which in turn means this Court lacks jurisdiction over Daikin.

**3.** *Fair Play and Substantial Justice.* Finally, and for good measure, Clarke cannot demonstrate that "fair play and substantial justice" support the exercise of personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985) (internal quotation marks and

- 10 -

citation omitted). Courts evaluate the fairness of extending personal jurisdiction by evaluating such factors as "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief" in the forum. *Sutherland*, 68 Va. Cir. at 48 (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987)).

Extending personal jurisdiction over Daikin lacks this constitutional reasonableness. Daikin has never made or sold turnout gear, period. Its only (miniscule) Virginia shipments to co-defendants were isolated shipments of product samples that are completely unrelated to what this lawsuit is about: turnout gear. There is nothing in Daikin's existing relationship with Virginia that would cause it "to reasonably anticipate that [it] would be compelled to adjudicate [this] dispute[] in Virginia." *Analytical & Rsch. Tech., Inc. v. Daninger*, 43 Va. Cir. 85, 87 (Fairfax 1997); *see Weirton*, 2020 WL 8184976, at *8 (holding fair play and substantial justice were not met in the absence of purposeful conduct directing PFAS to the forum state). Any interest that Virginia has in this case is slight "where minimum contacts have not been established." *Sutherland*, 68 Va. Cir. at 48. And Clarke's interest in obtaining relief does not outweigh the burden on Daikin "because it has not been established that the product causing the injury was that of [Daikin]." *Id.*

This lawsuit may have merit against some defendants. It may not. But the point here is that it is unconstitutional for this Court to resolve the merits with Daikin as part of the case. The Court should instead dismiss Daikin for lack of personal jurisdiction.

## CONCLUSION

Because Plaintiff cannot satisfy the Virginia long-arm statute or the requirements of the Fourteenth Amendment's Due Process Clause, this Court should dismiss the claims against Daikin for lack of personal jurisdiction.

- 11 -

Dated: August 18, 2025

By: /s/ William G. Laxton, Jr.

William G. Laxton, Jr. (VSB No. 75110)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: (202) 879-3939
Fax: (202) 626-1700
wglaxton@jonesday.com

Theodore M. Grossman (pro hac vice forthcoming)
JONES DAY
250 Vesey Street
New York, NY 10281
Tel.: (212) 326-3939
Fax: (212) 755-7306
tgrossman@jonesday.com

James R. Saywell (pro hac vice forthcoming)
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44144
Tel.: (216) 586-7108
Fax: (216) 579-0212
jsaywell@jonesday.com

Jennifer L. Weizenecker (pro hac vice forthcoming)
Simon P. Hansen (pro hac vice forthcoming)
JONES DAY
1221 Peachtree Street NE, Suite 400
Atlanta, GA 30361
Tel: (404) 581-8502
jweizenecker@jonesday.com
shansen@jonesday.com

*Counsel for Defendant Daikin America, Inc.*
*(by Special Appearance)*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief in Support of Motion to

Dismiss for Lack of Personal Jurisdiction was delivered by electronic mail to all counsel of record,

on this day of August 18, 2025.

By: /s/ William G. Laxton, Jr.

William G. Laxton, Jr. (VSB No. 75110)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: (202) 879-3939
Fax: (202) 626-1700
wglaxton@jonesday.com

*Counsel for Defendant Daikin America, Inc.*
*(by Special Appearance)*

Uploaded: 2025AUG18 17:43 Filed By:Bar# 99741 CCONVERY Reference: EF-178727
eFiled: 2025AUG18 RICHMOND CITY CC JKENNEDY at 2025AUG20 08:36 CL24002853-00

# EXHIBIT A

**VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND**

JONATHAN CLARKE,

                                    Plaintiff,

                                                        Civil Action No. CL24002853-00

v.

3M CO., *et al.*,

                                    Defendants.

## DECLARATION OF ERIC VON BROCKDORFF IN SUPPORT OF THE CHEMOURS COMPANY[1] AND EIDP, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

I, Eric von Brockdorff, hereby declare as follows:

1.      I am over the age of 18 years, and I am the Global Business and Product Director-Advanced Performance Materials for The Chemours Company.

2.      I have personal knowledge of the facts set forth in this declaration through direct involvement.

3.      I have searched in a place where sales information is generally kept in the ordinary course of business.

4.      I have personally reviewed Chemours' sales records from 2015 to present.

5.      Based upon available information, I have not identified any direct sales by Chemours to Blue Ridge Rescue Suppliers, Inc., or to Bradsden Solutions, Inc., in the state of Virginia from 2015 to present.

6.      I also have access to legacy sales information for EIDP, Inc., and I personally reviewed those sales records from 2010 to 2015.

---

[1] The Chemours Company and EIDP, Inc. are incorrectly named in the Complaint as "The Chemours Company, LLC" and "E. I. du Pont de Nemours and Company."

7.      Based upon available information, I have also not identified any direct sales by

EIDP, Inc., to Blue Ridge Rescue Suppliers, Inc., or to Bradsden Solutions, Inc., in the state of

Virginia from 2010 to 2015.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 3rd, 2025.

By: _____

Eric von Brockdorff

2

Uploaded: 2025AUG18 17:44 Filed By:Bar# 99741 CCONVERY Reference: EF-178727
eFiled: 2025AUG18 RICHMOND CITY CC JKENNEDY at 2025AUG20 08:36 CL24002853-00

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

**JONATHAN CLARKE,**

    **Plaintiff,**

**v.**

**3M COMPANY, et al.,**

    **Defendants.**

**Case No. CL24002853-00-JSM**

## ORDER

This matter came before the Court upon a Motion to Dismiss filed by Defendants EIDP, Inc. and The Chemours Company. Upon consideration of the Motion, Plaintiff's opposition, and the oral arguments of counsel, it is hereby ORDERED:

1.    The Motion to Dismiss is GRANTED;

2.    As to Defendants EIDP, Inc. and The Chemours Company, Plaintiff's First Amended Complaint is dismissed, without prejudice.

IT IS SO ORDERED.

Entered this _____ day of _____, 2025.



_____
Circuit Court Judge

1-

Uploaded: 2025AUG18 17:46 Filed By:Bar# 99741 CCONVERY Reference: EF-178728
eFiled: 2025AUG18 RICHMOND CITY CC JKENNEDY at 2025AUG20 08:37 CL24002853-00

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

**JONATHAN CLARKE,**

    **Plaintiff,**

**v.**

    **Case No. CL24002853-00-JSM**

**3M COMPANY, et al.,**

    **Defendants.**

## MOTION CRAVING OYER ON BEHALF OF EIDP, INC. AND THE CHEMOURS COMPANY

Defendants EIDP, Inc. (formerly known as E. I. du Pont de Nemours and Company and hereafter "EIDP") and The Chemours Company[1] ("Chemours") (EIDP and Chemours, collectively, "Defendants"), by counsel, submit this Motion Craving Oyer in response to Plaintiff Jonathan Clarke's First Amended Complaint ("FAC"). Plaintiff alleges an express warranty claim against EIDP and Chemours, but fails to identify any express warranty that forms the basis of his claim. Accordingly, this motion seeks the production of documents referenced and relied upon in Plaintiff's breach of express warranty claim and requests that such documents, if any, be incorporated into the pleadings and considered in this Court's ruling on EIDP and Chemours' Partial Demurrer, which is being filed contemporaneously herewith.[2] In support of this motion, EIDP and Chemours state as follows[3]:

---

[1] The Chemours Company is improperly named in the First Amended Complaint as "The Chemours Company LLC."

[2] Plaintiff's claims are the subject of a partial demurrer and a plea in bar before this Court.

[3] On August 15, 2025, Defendants requested Plaintiff's position on this Motion. Plaintiff opposes the filing of this Motion.

1.     It is well-settled that plaintiffs should file, together with their initial pleadings, written documents upon which their legal claims are based. *Culpeper Nat'l Bank v. Morris*, 168 Va. 379, 383, 191 S.E. 764, 765 (1937) ("When a court is asked to make a ruling upon any paper or record, it is its duty to require the pleader to produce all material parts.").

2.     A motion craving oyer precludes a plaintiff from "attempt[ing] to restrict . . . [the court's] vision to only such parts of the record as the litigant thinks tend to support his view." *Id.* at 382-83, 191 S.E. at 765.

3.     Defendants may crave oyer where documents that are "essential to [a] claim" are missing from the complaint. *Byrne v. City of Alexandria*, 298 Va. 694, 700, 842 S.E.2d 409, 412 (2020); *see also Colonna's Shipyard, Inc. v. Alpha Pipe Co.*, No. CL11-8103, 2012 WL 6755957 (Va. Cir. Ct. Aug. 27, 2012) (granting motion craving oyer for a document that formed the basis of the plaintiff's breach of contract and breach of warranty claims).

4.     When a court grants a motion craving oyer, the documents produced become part of the pleadings. *Byrne*, 298 Va. at 699, 842 S.E.2d at 411 (explaining that a document produced in response to a motion craving oyer becomes "part of the pleadings of the party whose claim was based upon it"); *see also Marios v. Va. Elec. & Power Co.*, 103 Va. Cir. 120, 2019 WL 11815063, at *1 (Va. Cir. Ct. Sept. 16, 2019) (unpublished) (similar).

5.     A motion craving oyer is proper when a plaintiff alleges an express warranty claim but fails to provide the written documents containing the alleged express warranties that form the basis of that claim. *See Pulte Home Corp. v. Parex, Inc.*, 265 Va. 518, 523-24, 579 S.E.2d 188, 190-91 (2003) (affirming dismissal of a breach of express warranty claim after claimant failed to produce or identify in its pleading any express warranty in response to the cross-claimant's motion craving oyer seeking the specific express warranty that was breached); *Marios*, 2019 WL

11815063, at *3-4 (granting a motion craving oyer seeking an agreement that formed the basis of the plaintiff's express warranty claim); *139 Riverview, LLC v. Quaker Window Prods.*, 90 Va. Cir. 74, 2015 WL 10521381, at *2 (2015) (referencing the court's earlier decision granting defendant's motion craving oyer for the express warranty that supported plaintiff's breach of express warranty claim).

6.       Here, Plaintiff brings an express warranty claim against all Defendants. FAC ¶¶ 128-50.

7.       But Plaintiff fails to identify any express warranty that forms the basis of this claim. There is no express warranty information quoted in or attached to Plaintiff's First Amended Complaint.

8.       Plaintiff also does not identify which of the several defendants allegedly made the express warranty upon which his claim is based.

9.       A plaintiff must necessarily rely on the specific express warranty language that defendants allegedly made to form the basis of an express warranty claim. *See Pulte*, 265 Va. at 523-24, 579 S.E.2d at 190-91; *Marios*, 2019 WL 11815063, at *3-4; *139 Riverview*, 90 Va. Cir. 74, 2015 WL 10521381, at *2 (2015).

10.     Virginia law requires Plaintiff "to produce all material parts" of the record on which this Court must rule. *Culpeper*, 168 Va. at 383, 191 S.E. at 765. By omitting the alleged express warranty or warranties, Plaintiff is restricting the Court's "vision . . . of the record." *Id.*

11.     Plaintiff should produce and attach as a part of the pleadings each and every express warranty that forms the basis of his express warranty claim so that this Court can rule on whether Plaintiff has adequately stated warranty claims as to EIDP and Chemours.

3

12.    Because the grounds for a demurrer may change depending on the documents Plaintiff produces, if any, EIDP and Chemours also request leave to file an amended demurrer upon Plaintiff producing and attaching any express warranty materials or upon Plaintiff's failure to do so.

13.    Defense counsel contacted Plaintiff's counsel in writing on August 11, 2025, regarding this motion. Plaintiff's counsel indicated that the complaint is sufficient as filed and did not consent to provide additional information.

WHEREFORE, for the above reasons, EIDP and Chemours respectfully request that the Court enter an Order: (1) granting this Motion Craving Oyer; (2) requiring Plaintiff to re-file his First Amended Complaint with the Clerk of Court and attach to that pleading all contracts, agreements, and express warranties that form the basis of his express warranty claim, which shall be incorporated into and a part of the First Amended Complaint for all purposes, including demurrer; (3) permitting EIDP and Chemours the opportunity to file an amended demurrer if Plaintiff re-files or fails to re-file the First Amended Complaint with all contracts, agreements, and express warranties that form the basis of his express warranty claim; (4) awarding EIDP and Chemours attorneys' fees and costs associated with this motion pursuant to Va. Code §§ 8.01-271.1 and 17.1-609; and (5) awarding such further relief as the Court deems just and proper.

4

Dated: August 18, 2025

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

*/s/ Caitlin R. Convery*
Caitlin R. Convery, Bar No. 99741
1800 K Street, N.W., Suite 1000
Washington, D.C. 20006
Tel.: 202.639.5603
Fax: 202.783.4211
cconvery@shb.com

***Attorney for Defendants EIDP, Inc., f/k/a
E.I. du Pont de Nemours and Company and
The Chemours Company***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served electronically on August

18, 2025 by operation of the Court's electronic filing system (VJEFS) upon all parties of record.

*/s/ Caitlin R. Convery*
Caitlin R. Convery

***Attorney for Defendant EIDP, Inc., f/k/a
E.I. du Pont de Nemours and Company and
The Chemours Company***

**VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND**

JONATHAN CLARKE,

          Plaintiff,

v.                                                       Civil Action No. CL24002853-00

3M COMPANY, et al.,

          Defendants.

**BRIEF IN SUPPORT OF DEFENDANT AGC CHEMICALS AMERICAS, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Daniel Campbell, Bar No. 43210
Andrew D. Kaplan, Bar No. 45530
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004-2595
Telephone: 202.624.2500
Facsimile: 202.628.5116
E-mail: DCampbell@crowell.com
E-mail: AKaplan@crowell.com

*Counsel for Defendant AGC Chemicals Americas, Inc.*

1

## TABLE OF CONTENTS

BACKGROUND .................................................................................................................3

ARGUMENT ....................................................................................................................5

   I.  THE COMPLAINT DOES NOT ALLEGE ANY FACTS ESTABLISHING PERSONAL JURISDICTION OVER AGCCA IN VIRGINIA...........................................................5

      A.  General Jurisdiction Does Not Exist Over AGCCA................................................7

      B.  Specific Jurisdiction Does Not Exist Over AGCCA. ..............................................8

CONCLUSION...................................................................................................................12

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrews v. Shandong Linglong Tyre Co.*,
656 F.Supp.3d 583 (E.D. Va. 2023) .................................................................................... 11

*Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*,
480 U.S. 102 (1987) .......................................................................................................... 10

*Bergaust v. Flaherty*,
57 Va. App. 423 (2011) ...................................................................................................... 5

*BNSF Ry. Co. v. Tyrrell*,
581 U.S. 402 (2017) ........................................................................................................ 1, 7

*Bowen v. Mooney Airplane*,
83 Va. Cir. 368 (2011) ................................................................................................. 1, 10

*Bowman v. State Bank of Keysville*,
229 Va. 534 (1985) ............................................................................................................ 6

*Bristol-Myers Squibb Co. v Super. Ct. of Cal., S.F. Cnty.*,
582 U.S. 255 (2017) ........................................................................................................... 8

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .................................................................................................... 1, 2, 8

*Carter v. Wake Forest Univ. Baptist Med. Ctr.*,
303 Va. 135 (2024) ........................................................................................................ 1, 7

*Carter v. Wake Forest Univ. Baptist Med. Ctr.*,
76 Va. App. 756, 883 S.E.2d 693 (2023), *aff'd,* 303 Va. 135, 900 S.E.2d 496
(2024) .......................................................................................................................... 8, 11

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .................................................................................................. 1, 7, 8

*E. Direct Mktg. v. Coolidge Co.*,
26 Va. Cir. 282 (1992) ........................................................................................................ 6

*E. Tech. Enters., Inc. v. Wilson & Hayes, Inc.*,
46 Va. Cir. 558 (1997) ................................................................................................ 5, 6, 9

*Grizzard v. LG Chem Ltd.*,
641 F.Supp.3d 282 (E.D. Va. 2022) ................................................................................. 11

ii

*James v. Subaru of Am., Inc.*,
  433 F.Supp.3d 933 (W.D. Va. 2020)..............................................................................................11

*Lucido v. Maxwell*,
  93 Va. Cir. 415 (2016).......................................................................................................................5

*Massey Energy Co. v. United Mine Workers*,
  69 Va. Cir. 118 (2005).......................................................................................................................6

*May v. Osako & Co.*,
  83 Va. Cir. 355 (2011)........................................................................................................ 1, 10, 11

*Mireskandari v. Daily Mail & Gen. Tr. PLC*,
  105 Va. Cir. 370 (2020)............................................................................................................ *passim*

*Sutherland v. Robby Thruston Carpentry, Inc.*,
  68 Va. Cir. 43 (2005)......................................................................................................... 1, 10, 11

*Talenthunter LLC v. S. Co. Servs.*,
  87 Va. Cir. 363 (2014)..................................................................................................................1, 5

*Weirton Area Water Bd. v. 3M Co.*,
  No. 20-CV-102, 2020 WL 8184953 (N.D. W. Va. Nov. 20, 2020)......................................12

*Young-Allen v. Bank of Am., N.A.*,
  298 Va. 462 (2020).............................................................................................................................5

**Statutes**

Va. Code Ann. § 8.01-328.1 ..................................................................................................... 1, 5

**Other Authorities**

U.S. Constitution's Fourteenth Amendment Due Process Clause ............................................1, 5

iii

Plaintiff Jonathan Clarke's ("Plaintiff") claims against Defendant AGC Chemicals Americas, Inc. ("AGCCA") require dismissal because this Court lacks personal jurisdiction over AGCCA. Because Plaintiff's claims do not arise from any contact AGCCA had with Virginia, there is no circumstance under which the exercise of either general or specific personal jurisdiction over AGCCA could comport with due process or the requirements of Virginia's long-arm statute, Va. Code Ann. § 8.01-328.1, or the U.S. Constitution's Fourteenth Amendment Due Process Clause. Plaintiff's only allegations against AGCCA are that it placed unidentified products and goods in the "stream of commerce" that eventually ended up in Virginia. (Am. Compl. ¶ 14.) That basis for personal jurisdiction has been soundly rejected by Virginia's courts. *May v. Osako & Co.*, 83 Va. Cir. 355 (2011); *Bowen v. Mooney Airplane*, 83 Va. Cir. 368 (2011); *Sutherland v. Robby Thruston Carpentry, Inc.*, 68 Va. Cir. 43 (2005). Accordingly, AGCCA moves, by special appearance, to dismiss all the claims against it.

First, general jurisdiction over AGCCA is lacking. General jurisdiction requires that a defendant be "essentially at home" in the forum state, usually by having its place of incorporation or principal place of business there. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017); *Daimler AG v. Bauman*, 571 U.S. 117, 138-39, 139 n.19 (2014); *Carter v. Wake Forest Univ. Baptist Med. Ctr.*, 303 Va. 135, 144-46, 145 n.8 (2024). But Plaintiff affirmatively pleads that AGCCA is incorporated in Delaware and maintains its principal place of business in Pennsylvania. Am. Compl. ¶ 14. In short, there is no basis for exercising general jurisdiction over AGCCA.

Second, the Amended Complaint does not allege any facts that would allow this Court to exercise specific personal jurisdiction over AGCCA. Specific jurisdiction demands that a plaintiff's claims "arise proximately" from the defendant's contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *see also Talenthunter LLC v. S. Co. Servs.*,

1

87 Va. Cir. 363 (2014) ("For specific jurisdiction over a nonresident, litigation must result from alleged injuries that 'arise out of or relate to' those contacts with the forum.") (quoting *Rudzewicz,* 471 U.S. at 472). The allegations here identify no factual nexus between anything AGCCA did in Virginia and Plaintiff's claim that he developed leukemia from exposure to per- and poly-fluoroalkyl substances ("PFAS") in his firefighting turnout gear. There is good reason for that failure – as explained in the Affidavit of Gary Eckrote ("Eckrote Aff."), AGCCA never manufactured turnout gear, and is merely a seller of raw materials that could *potentially* be used in the manufacture of turnout gear made by others in places other than Virginia. (Eckrote Aff. ¶¶ 8-9).

There are no allegations that any product made by AGCCA was ever incorporated into the turnout gear Mr. Clarke wore. But even if there were, that still would not establish a sufficient nexus between AGCCA and Virginia. AGCCA has no customers in Virginia that manufacture turnout gear and does not have any record of sales of materials containing PFAS to any turnout gear manufacturer in Virginia. (*Id.* ¶¶ 8-12). AGCCA also has no records of any sales in Virginia to any entity named as a Defendant here, or to Plaintiff or the City of Richmond. (*Id.*). Merely selling a product that *might* eventually find its way to Virginia as a component of a product made by someone else is an insufficient basis for personal jurisdiction under Virginia law. As a result, the Amended Complaint lacks any relevant factual matter tying AGCCA to Virginia and provides no basis for assertion of personal jurisdiction.

Because the Court cannot exercise personal jurisdiction over AGCCA, Plaintiff's claims against it should be dismissed.

## BACKGROUND

Plaintiff has sued AGCCA and 20 other Defendants, alleging that he contracted leukemia from exposure to PFAS in firefighting turnout gear and asserting that each of the 21 Defendants he names identically "developed, manufactured, marketed, distributed, released, sold and/or used PFAS, PFAS materials, and products containing PFAS in turnouts, including in Virginia and in the City of Richmond." Am. Compl. ¶¶ 13-33; *see also id.* ¶ 2. Yet according to Plaintiff, he wore only "a limited number" of turnouts for years during his duties as a firefighter, but he never alleges which Defendant, if any, made that turnout gear. *Id.* ¶¶ 1, 8, 10, 51. This is despite the fact that, as the Amended Complaint itself demonstrates, turnout gear contains a conspicuous label identifying its manufacturer. *Id.* ¶ 87. Plaintiff claims that repeated exposure to PFAS caused him to develop leukemia, and that he was diagnosed with the disease in July 2022. *Id.* ¶ 12. Plaintiff seeks to recover damages for bodily injuries; past, present and future physical pain and mental anguish; disfigurement and/or deformity coupled with associated humiliation and embarrassment; past, present and future inconvenience; past, present and future lost earnings, and a lessening of earning capacity; personal, social and financial limitations resulting from the injuries sustained by Plaintiff; and other damages. *Id.* ¶ 185.

Notably, the Amended Complaint lacks any facts alleging what AGCCA supposedly did to cause Plaintiff's injury. Plaintiff does not allege that AGCCA manufactured or distributed the PFAS or PFAS-containing turnouts that supposedly injured him. Instead, the Amended Complaint alleges only that all "Defendants" collectively "manufactured, designed, sold, supplied, [or] distributed" the PFAS Plaintiff was exposed to "in protective clothing specifically designed for firefighters." Am. Compl. ¶ 2. This, of course, is impossible and the Amended Complaint never identifies which of the 21 Defendants in fact manufactured the turnouts or components for the

3

turnouts he wore. The Amended Complaint certainly contains no specific factual allegations tying the turnouts Plaintiff wore to anything AGCCA did.

Plaintiff correctly pleads that AGCCA has its principal place of business in Pennsylvania and is incorporated in Delaware. Am. Compl. ¶ 14; Eckrote Aff. ¶ 3. After that, the Amended Complaint never pleads a single fact connecting AGCCA to the turnout gear Plaintiff wore, or anything that AGCCA supposedly did in Virginia more generally to cause Plaintiff's injury.

This is because AGCCA's contacts with Virginia are sparse at best and have nothing to do with turnout gear. As described in the Affidavit of Gary Eckrote, AGCCA's senior director of commercial operations, AGCCA does not maintain any offices or facilities in Virginia. (Eckrote Aff. ¶ 4). It does not own or lease any real property in Virginia. (*Id.*). It does not have any employees located in Virginia. (*Id.* ¶ 5). It does not maintain any bank accounts in Virginia, it does not pay income or sales tax in Virginia, and it has no registered agent in Virginia.[1] (*Id.* ¶¶ 6-8).

Most importantly, AGCCA has never manufactured turnout gear (*id.* ¶ 9), and its sales of raw materials that could *potentially* be used in the manufacture of turnout gear were all made to customers located in states other than Virginia. (*Id.* ¶¶ 9-11). AGCCA has no record of any sales of materials containing PFAS in Virginia to any turnout gear manufacturer named as a Defendant in this action, or to Plaintiff or the City of Richmond. (*Id.* ¶ 12). In sum, the Amended Complaint fails to allege any facts that so much as suggest that the Court has personal jurisdiction, either general or specific, over AGCCA, and the Eckrote Affidavit shows that no such facts exist. The claims against AGCCA should be dismissed.

---

[1] Plaintiff had to serve AGCCA through the Secretary of the Commonwealth because AGCCA has no Virginia presence.

4

## ARGUMENT

### I.    THE COMPLAINT DOES NOT ALLEGE ANY FACTS ESTABLISHING PERSONAL JURISDICTION OVER AGCCA IN VIRGINIA.

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to "establish a prima facie case of personal jurisdiction." *Talenthunter LLC v. S. Co. Servs.*, 87 Va. Cir. 363 (2014). "[O]nce personal jurisdiction has been challenged, the question is one for the judge with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by the preponderance of the evidence." *Id.* (citation modified); *E. Tech. Enters., Inc. v. Wilson & Hayes, Inc.*, 46 Va. Cir. 558 (1997) ("[t]he Plaintiff bears the burden of proving this Court has personal jurisdiction over the Defendant"). Dismissal is warranted "if all of the alleged facts taken together fail to establish the existence of personal jurisdiction." *Talenthunter LLC,* 87 Va. Cir. 363.

A court may only assert personal jurisdiction over a nonresident defendant if (1) the state's long-arm statute authorizes the exercise of personal jurisdiction, and (2) the exercise of personal jurisdiction comports with the due process requirements of the U.S. Constitution's Fourteenth Amendment. *Talenthunter LLC*, 87 Va. Cir. 363; *Bergaust v. Flaherty*, 57 Va. App. 423, 436 (2011). Virginia's long-arm statute, Va. Code Ann. § 8.01-328.1, extends personal jurisdiction to the outer bounds of the Fourteenth Amendment's Due Process Clause, such that "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Lucido v. Maxwell*, 93 Va. Cir. 415 (2016) (quoting *Stover v. O'Connell Assocs., Inc.,* 84 F.3d 132, 135-36 (4th Cir. 1996)). Thus, in Virginia, the personal jurisdiction analysis turns on whether exercising personal jurisdiction comports with constitutional due process. *Id.*

Plaintiffs must allege facts to support each element necessary to their claim. *See, e.g.*, *Young-Allen v. Bank of Am., N.A.*, 298 Va. 462, 469 (2020). This extends to personal jurisdiction. *Mireskandari v. Daily Mail & Gen. Tr. PLC*, 105 Va. Cir. 370 (2020) (unpublished). Allegations

5

asserted in "mere conclusory language," devoid of articulated facts, and inferences "not fairly and justly drawn" are subject to dismissal. *Bowman v. State Bank of Keysville*, 229 Va. 534, 541, (1985). Like other aspects of a complaint, "plaintiffs are not ethically permitted to 'plead by guesswork'" and must put forth jurisdictional allegations with essential facts supporting the court's jurisdiction. *Mireskandari,* 105 Va. Cir. 370 (citations omitted). Thus, "conclusory pleading does not satisfy the requirements for the exercise of personal jurisdiction under the long-arm statute." *E. Direct Mktg. v. Coolidge Co.*, 26 Va. Cir. 282 (1992).

Although the Court "must draw all reasonable inferences from the pleadings and must resolve all factual disputes in favor of the Plaintiff," the Court may consider evidence and affidavits offered by the parties on a motion challenging personal jurisdiction. *E. Tech. Enters., Inc.*, 46 Va. Cir. 558 (evaluating affidavit from plaintiff attempting to establish personal jurisdiction); *see also Massey Energy Co. v. United Mine Workers,* 69 Va. Cir. 118 (2005) (noting that where "[d]efendants submit affidavits denying allegations specifically pertaining to jurisdiction," the court will accept the plaintiff's version of the facts only "where the parties' allegations are contradictory").

Here, Plaintiff's allegations do not provide a basis for the exercise of either specific or general jurisdiction over AGCCA. Those allegations are limited to a single conclusory paragraph stating that AGCCA "does business throughout the United States, including conducting business in Virginia by and through its introduction of its products and goods into the stream of commerce which it knew or had reason to know would enter, be sold, used, and consumed throughout the Commonwealth of Virginia" and "developed, manufactured, marketed, distributed, released, sold and/or used PFAS, PFAS materials, and products containing PFAS in turnouts, including in Virginia and the City of Richmond". Am. Compl. ¶ 14; *id.* ¶¶ 13-32. These amorphous and

6

conclusory allegations Plaintiff makes with respect to each and every Defendant he named do not suffice for general jurisdiction. AGCCA is neither incorporated nor does it maintain its principal place of business in Virginia, and the Amended Complaint does not allege any "exceptional" circumstance that would justify the exercise of general jurisdiction over AGCCA. *See id.* ¶ 14; Eckrote Aff. ¶ 3. Likewise, nothing in the Complaint establishes any relationship between Plaintiff's claims and AGCCA's contacts with Virginia for purposes of specific jurisdiction, nor could it. AGCCA has never manufactured turnout gear, Eckrote Aff. ¶ 9, and all its sales of raw materials that could even *potentially* be used in the manufacture of turnout gear were all made to customers located outside of Virginia. *Id.* ¶¶ 9-11. The claims against AGCCA should be dismissed.

## A.    General Jurisdiction Does Not Exist Over AGCCA.

The Amended Complaint makes no effort to state a prima facie case for general jurisdiction over AGCCA. Setting aside "exceptional" cases, general jurisdiction exists in the forum state only if a defendant is incorporated or has its principal place of business there, so that it is "essentially at home" in the forum state. *BNSF*, 581 U.S. at 413; *Daimler*, 571 U.S. at 138-39, 139 n.19; *Carter*, 303 Va. at 145 n.8. Plaintiff affirmatively pleads that AGCCA is incorporated in Delaware and has its principal place of business in Pennsylvania, so it is not "essentially at home" in Virginia.[2] Am. Compl. ¶ 14; Eckrote Aff. ¶ 3. Nor does Plaintiff plead anything the least bit "exceptional" here that would allow for assertion of general jurisdiction over AGCCA in Virginia. *See* Am. Compl. ¶ 14. There can be no question that the Amended Complaint's allegations fall far short of providing

---

[2] Since *Daimler*, 571 U.S. at 138-39, 139 n.19, and *BNSF*, 581 U.S. at 413-14, corporate defendants have been "essentially at home" only in the jurisdiction where they are incorporated or have their principal place of business. *Carter*, 303 Va. at 145 n.8 ("[A] corporation is subject to general jurisdiction in its place of incorporation and principal place of business") (citations omitted).

7

a basis for general jurisdiction. *Daimler*, 571 U.S. at 122 (general jurisdiction may be exercised only when the defendant's contacts are "so constant and pervasive as to render it essentially at home in the forum State.") (citation modified).

**B.      Specific Jurisdiction Does Not Exist Over AGCCA.**

Nor has Plaintiff pled a prima facie case for specific jurisdiction, because the Amended Complaint provides no concrete facts establishing any nexus between AGCCA, Virginia, and Plaintiff's alleged injury. Furthermore, the Affidavit of Gary Eckrote explicitly refutes the conclusory basis Plaintiff alleges for subjecting AGCCA to specific jurisdiction in Virginia. To determine whether specific jurisdiction comports with due process, the Court should consider three prongs: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Carter v. Wake Forest Univ. Baptist Med. Ctr.*, 76 Va. App. 756, 767, 883 S.E.2d 693, 699 (2023), *aff'd,* 303 Va. 135, 900 S.E.2d 496 (2024) (quoting *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020)). Thus, for specific personal jurisdiction to exist, due process demands that the plaintiff's claims must "arise proximately from [the defendant's] activities" in the state. *Rudzewicz*, 471 U.S. at 474; *see also Bristol-Myers Squibb Co. v Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262-63 (2017) (court lacked specific jurisdiction over defendant that had extensive contacts with the state, because the plaintiff's claims did not directly arise from those contacts); *Mireskandari*, 105 Va. Cir. 370 ("condition precedent" to the exercise of specific jurisdiction is that "the cause of action *arose from*" the defendant's contacts (emphasis in original)).

Although Plaintiff cannot satisfy any part of this three-pronged analysis, the due process question is easily resolved by examining the second prong — Plaintiff's claims do not arise out of

AGCCA's activities directed at Virginia. *See, e.g., Mireskandari*, 105 Va. Cir. 370 (no specific personal jurisdiction when the plaintiff's claim did not "arise from" the defendant's "activities directed at the state"); *E. Tech. Enterprises, Inc. v. Wilson & Hayes, Inc.*, 46 Va. Cir. 558 (1997) (no specific personal jurisdiction where "this dispute did not arise out of Defendant's contacts with Virginia"). Plaintiff, in wholly conclusory fashion, alleges that AGCCA "developed, manufactured, marketed, distributed, released, sold and/or used PFAS, PFAS materials, and products containing PFAS in turnouts, including in Virginia and the City of Richmond," Am. Compl. ¶ 14, but he never pleads that AGCCA was involved in the manufacture or sale of *his* turnouts, or any component of them. Nor could he; AGCCA never manufactured any turnout gear and is merely a seller of certain raw materials that could *potentially* be used in the manufacture of turnout gear. (Eckrote Aff. ¶¶ 9-10). None of those sales occurred in Virginia. AGCCA has no customers in Virginia that manufacture turnout gear and does not have records of any sales of materials containing PFAS to any turnout gear manufacturer in Virginia. (*Id.* ¶¶ 8-11). Nor does AGCCA have any records reflecting sales in Virginia to any entity named as a Defendant here, or to Plaintiff or the City of Richmond. (*Id.* ¶ 12). The lack of any linkage between AGCCA, the Commonwealth of Virginia and Plaintiff's claims precludes the exercise of personal jurisdiction here. *Mireskandari*, 105 Va. Cir. 370, n.19 (dismissing complaint where there was no "causal link between the contact and the genesis of the dispute").

Plaintiff's conclusory allegation that AGCCA "conduct[ed] business in Virginia by and through its introduction of its products and goods into the stream of commerce which it knew or had reason to know would enter, be sold, used, and consumed throughout the Commonwealth of Virginia" (Am. Compl. ¶ 14) does not fix the Amended Complaint's jurisdictional shortcomings. The "stream of commerce theory" is not the law in Virginia. When analyzing minimum contacts

9

in the products liability context, the Supreme Court set forth the "stream of commerce plus" test in *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987). Under that standard:

> [t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State…. [A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Id.* at 112.

Adhering to this precedent, Virginia courts consistently hold that merely placing a product – or here, a component potentially used in a product – into the stream of commerce elsewhere is not enough to establish personal jurisdiction, even if the product ultimately causes injury in Virginia. *See, e.g., May*, 83 Va. Cir. 355 (no personal jurisdiction over foreign manufacturer whose product, which ultimately injured plaintiff in Virginia, was sold through out-of-state North American distributor because "[t]he Supreme Court of the United States decided that the mere placing of a product into the stream of commerce is not enough to subject the sender to jurisdiction in any place where the product ends up"); *Bowen*, 83 Va. Cir. 368 ("[A] defendant's knowledge 'that the stream of commerce may or will sweep the product into the forum does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum state.'") (quoting *Asahi*, 480 U.S. at 112); *Sutherland*, 68 Va. Cir. 43 (no personal jurisdiction over Canadian manufacturer of product that injured plaintiffs in Virginia because the defendant's "sale of product to a Canadian distributor, in Canada, was not purposefully directed toward Virginia and the mere act of placing its product in the stream of commerce does not qualify as purposeful

10

availment") (citing *Asahi*, 480 U.S. at 112-13).[3] This is because "mere knowledge of the stream of commerce is insufficient to satisfy due process."*Id.*

Because Plaintiff has failed to plead that his claims against AGCCA arise from its forum contacts, the claims against AGCCA should be dismissed on that basis alone. But Plaintiff cannot meet the first and third prongs of the due process test either. On the first prong, *Carter v. Wake Forest Univ. Baptist Med. Ctr.*, 76 Va. App. 756 (2023), *aff'd,* 303 Va. 135 (2024) is instructive. In that case, the Court of Appeals of Virginia (Salem) concluded that the Defendant lacked sufficient contacts to have purposefully availed itself of the privilege of doing business in Virginia to an extent that would justify personal jurisdiction. *Id.* at 767-68. The Defendant in that case, like AGCCA, had no offices or agents in Virginia, did not own property in Virginia, and had no ongoing business in Virginia. *See* Eckrote Aff. ¶¶ 4-5, 9; *Carter*, 76 Va. App. at 769 ("Wake Forest maintained no presence in the Commonwealth of Virginia, did not solicit business, nor sought protection under its laws. Given that the facts fail to show Wake Forest purposefully availed themselves of the privilege of conducting business in Virginia, we end our inquiry."); *see also*

---

[3] Federal courts applying Virginia law have reached the same result. *Andrews v. Shandong Linglong Tyre Co.*, 656 F.Supp.3d 583, 586, 593 (E.D. Va. 2023) (no personal jurisdiction over foreign manufacturer of tire that entered stream of commerce and allegedly caused an accident in Virginia, even where manufacturer allegedly "knew that the Defendant distributor would import the Subject Tire, and others like it, into the United States via container ship and distribute them somewhere in the United States, to potentially include Virginia"); *Grizzard v. LG Chem Ltd.*, 641 F.Supp.3d 282, 292 (E.D. Va. 2022) ("At most, Plaintiff has demonstrated that Defendant placed its lithium-ion 18650 batteries into the stream of commerce in Virginia, and this court has made clear that a defendant's introduction of its product into the stream of commerce ... is, by itself, an insufficient basis for personal jurisdiction.") (internal quotation marks and citation omitted); *James v. Subaru of Am., Inc.*, 433 F.Supp.3d 933, 936-38, 941 (W.D. Va. 2020) (no personal jurisdiction over manufacturer of component part installed in Subaru vehicle, even "[a]ssuming arguendo that [Defendant] placed the subject parts into the stream of commerce with the expectation that [they] will be purchased by consumers in the forum State") (internal quotation marks and citation omitted). Thus, the fact that AGCCA *may* have sold certain raw materials into the stream of commerce that could *potentially* have been used in the manufacture of turnout gear in other states that ended up in Virginia is not enough to establish personal jurisdiction here.

11

*Weirton Area Water Bd. v. 3M Co.*, No. 20-CV-102, 2020 WL 8184953, at *7 (N.D. W. Va. Nov.
20, 2020) (no personal jurisdiction over AGCCA in West Virginia because "AGC Chemicals
Americas, Inc. does not maintain any offices or facilities in West Virginia; does not own or lease
any real property in West Virginia; does not have any employees located in West Virginia; and,
does not maintain any bank accounts in West Virginia").

For the third prong, it is not constitutionally reasonable to assert personal jurisdiction over
AGCCA based on its attenuated and unrelated contacts with Virginia. *Mireskandari*, 105 Va. Cir.
370 (personal jurisdiction would be constitutionally unreasonable when the defendant's business
directed toward Virginia was "completely unrelated to the alleged" tort). There is no basis for
specific jurisdiction, and Plaintiff's claims against AGCCA should be dismissed.

## CONCLUSION

For these reasons, the Court should grant Defendant AGCCA's Motion By Special
Appearance to Dismiss for Lack of Personal Jurisdiction.

Dated: August 18, 2025                                     Respectfully submitted,

                                                          /s/ *Daniel Campbell*

                                                          Daniel Campbell, Bar No. 41320
                                                          Andrew D. Kaplan, Bar No. 45530
                                                          CROWELL & MORING LLP
                                                          1001 Pennsylvania Avenue, NW
                                                          Washington, D.C. 20004-2595
                                                          Telephone: 202.624.2500
                                                          Facsimile: 202.628.5116
                                                          E-mail: DCampbell@crowell.com
                                                          E-mail: AKaplan@crowell.com

                                                          *Counsel for Defendant AGC Chemicals
                                                          Americas, Inc.*

12

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of August, 2025, a true and correct copy of AGC

Chemicals Americas, Inc.'s Motion by Special Appearance to Dismiss for Lack of Personal

Jurisdiction was filed with the Court and served via electronic mail on all counsel of record.

/s/ *Daniel Campbell*

Daniel Campbell, Bar No. 41320
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004-2595
Telephone: 202.624.2500
Facsimile: 202.628.5116
E-mail: DCampbell@crowell.com

*Counsel for Defendant AGC Chemicals
Americas, Inc.*

**VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND**

JONATHAN CLARKE,

          Plaintiff,

v.                                                    Civil Action No. CL24002853-00

3M COMPANY, et al.,

          Defendants.

## DEFENDANT AGC CHEMICALS AMERICAS, INC.'S MOTION BY SPECIAL APPEARANCE TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant AGC Chemicals Americas, Inc., moves by special appearance to dismiss all the claims against it for lack of personal jurisdiction.

1.     The burden of proving personal jurisdiction rests with the plaintiff. *E. Tech. Enters., Inc. v. Wilson & Hayes, Inc.*, 46 Va. Cir. 558 (1997).

2.     Virginia's long-arm statute, Va. Code Ann. § 8.01-328.1, has been narrowly construed.

3.     General personal jurisdiction over AGCCA is lacking. General jurisdiction requires that a defendant be "essentially at home" in the forum state, usually by having its place of incorporation or principal place of business there. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017); *Daimler AG v. Bauman*, 571 U.S. 117, 138-39, 139 n.19 (2014); *Carter v. Wake Forest Univ. Baptist Med. Ctr.*, 303 Va. 135, 144-46, 145 n.8 ( 2024). AGCCA is incorporated in Delaware and maintains its principal place of business in Pennsylvania. AGCCA does not maintain any offices or facilities in Virginia. It does not own or lease any real property in Virginia. It does not have any employees located in Virginia. It does not maintain any bank accounts in Virginia, it

1

does not pay income or sales tax in Virginia, and it has no registered agent in Virginia. *See* Affidavit of Gary Eckrote, submitted herewith.

4.      Specific personal jurisdiction demands that a plaintiff's claims "arise proximately" from the defendant's contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *see also Talenthunter LLC v. S. Co. Servs.*, 87 Va. Cir. 363 (2014) ("For specific jurisdiction over a nonresident, litigation must result from alleged injuries that 'arise out of or relate to' those contacts with the forum.") (quoting *Rudzewicz,* 471 U.S. at 472).

5.      Plaintiff's claims do not arise from any forum-related activities of AGCCA. The allegations here identify no factual nexus between anything AGCCA did in Virginia and Plaintiff's claim that he developed leukemia from exposure to per- and poly-fluoroalkyl substances ("PFAS") in his firefighting turnout gear. Am. Compl. ¶ 14.

6.      Plaintiff relies on the "stream of commerce" theory, which has been rejected by Virginia's courts. Merely placing an item into the "stream of commerce" outside of Virginia is not sufficient to establish personal jurisdiction, even if the product ultimately causes injury in Virginia. *May v. Osako & Co.*, 83 Va. Cir. 355 (2011); *Bowen v. Mooney Airplane*, 83 Va. Cir. 368 (2011); *Sutherland v. Robby Thruston Carpentry, Inc.*, 68 Va. Cir. 43 (2005). *Accord Andrews v. Shandong Linglong Tyre Co.*, 656 F.Supp.3d 583, 586, 593 (E.D. Va. 2023); *Grizzard v. LG Chem Ltd.*, 641 F.Supp.3d 282, 292 (E.D. Va. 2022); *James v. Subaru of Am., Inc.*, 433 F.Supp.3d 933, 936-38, 941 (W.D. Va. 2020).

7.      Because Plaintiff cannot establish the existence of personal jurisdiction over AGCCA, his claims against AGCCA should be dismissed.

The relevant authorities and reasons for dismissal are more fully set forth in the accompanying brief.

2

Dated: August 18, 2025

Respectfully submitted,

/s/ *Daniel Campbell*

Daniel Campbell, Bar No. 41320
Andrew D. Kaplan, Bar No. 45530
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004-2595
Telephone: 202.624.2500
Facsimile: 202.628.5116
E-mail: DCampbell@crowell.com
E-mail: AKaplan@crowell.com

*Counsel for Defendant AGC Chemicals
Americas, Inc.*

3

**VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND**

JONATHAN CLARKE,

      Plaintiff,

v.

      Civil Action No. CL24002853-00

3M COMPANY, et al.,

      Defendants.

## AFFIDAVIT OF GARY ECKROTE

COMMONWEALTH OF PENNSYLVANIA )
                             ) ss.:
COUNTY OF CHESTER           )

      Gary Eckrote, being duly sworn, deposes and says:

      1.     I am the Senior Director of Commercial Operations for defendant AGC Chemicals Americas, Inc. ("AGCCA"). I make this declaration in support of AGCCA's Motion by Special Appearance to Dismiss the Complaint for Lack of Personal Jurisdiction. I am fully familiar with the facts and circumstances recited herein and would testify to them if called upon to do so.

      2.     In my role as the Senior Director of Commercial Operations at AGCCA, I am responsible for managing AGCCA's business matters, including AGCCA's sales into the Commonwealth of Virginia. I have been the Senior Director of Commercial Operations for AGCCA for 6 years. I have been employed by AGCCA for 26 years.

3.      AGCCA is incorporated in Delaware. AGCCA's principal place of business is located in Exton, Pennsylvania. AGCCA has never been incorporated or maintained its principal place of business in the Commonwealth of Virginia.

4.      AGCCA has never maintained any offices or manufacturing facilities in the Commonwealth of Virginia. AGCCA does not own or lease any real property in the Commonwealth of Virginia.

5.      AGCCA does not have any employees located in the Commonwealth of Virginia.

6.      AGCCA does not maintain any bank accounts in the Commonwealth of Virginia.

7.      AGCCA does not have a registered agent in the Commonwealth of Virginia.

8.      AGCCA does not pay income tax or sales tax in the Commonwealth of Virginia.

9.      AGCCA has never manufactured turnout gear.

10.     AGCCA sells certain raw materials that could potentially be used in the manufacture of turnout gear. However, to my knowledge, none of AGCCA's customers located in the Commonwealth of Virginia manufacture or sell turnout gear. Any such customers are located in states other than the Commonwealth of Virginia.

11.     I requested a computer printout of all of AGCCA's sales of products that potentially contained per- or poly-fluoroalkyl substances ("PFAS") to customers in Virginia for all periods for which AGCCA maintains such records. I received a printout of all sales by AGCCA of products that potentially contained PFAS to customers in Virginia from 2000 through the present, the entire period for which AGCCA maintains such records.

12.     Those records do not show any sales of materials containing PFAS to any turnout gear manufacturer located in the Commonwealth of Virginia. There were no sales in Virginia to any entity that is named as a defendant in this action, or to plaintiff or the City of Richmond.

2

Gary Eckrote

Sworn to before me this 13 day of August 2025

Notary Public

Commonwealth of Pennsylvania - Notary Seal
EVELEEN GHAZARIAN - Notary Public
Chester County
My Commission Expires January 31, 2029
Commission Number 1455999

3

Uploaded: 2025AUG18 16:14 Filed By:DBETTERTON on behalf of Bar# 98616 ABOSSE Reference: EF-178703

```
                                                    RECEIVED AND FILED
                                                      CIRCUIT COURT
                                                         2:05
                                                     AUG 26 2025
VIRGINIA:
                                                   EDWARD F. JEWETT, CLERK
                                                 BY                    D.C.
         IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND
```

JONATHAN CLARKE.

    Plaintiff,

v.                                    Case No. CL24002853-00

3M COMPANY, et al.,

    Defendants.

## PARTIAL DEMURRER ON BEHALF OF CERTAIN MOVING DEFENDANTS

Defendants Globe Manufacturing Company. LLC: Honeywell International Inc.: Honeywell Safety Products USA. Inc.: Lion Group. Inc.: Municipal Emergency Services. Inc.: Stedfast USA. Inc.: Southern Mills. Inc.: and W.L. Gore & Associates. Inc. (collectively. the "Moving Defendants"). by counsel and pursuant to Virginia Code § 8.01-273 and Rule 3:8 of the Rules of Supreme Court of Virginia. submit this Partial Demurrer[1] in response to Plaintiff Jonathan Clarke's First Amended Complaint ("FAC"). In support of this Partial Demurrer. for which the Moving Defendants will file a full memorandum at the appropriate time. the Moving Defendants state as follows:

### INTRODUCTION

1.    Plaintiff filed his initial complaint in this Court on July 2. 2024.

2.    On March 24. 2025. Plaintiff moved for leave to file an amended complaint. which this Court granted on March 31. 2025.

---

[1] Plaintiff's claims are also the subject of a plea in bar and one or more motions craving over before this Court.

3.      Plaintiff's claims against the Moving Defendants for willful and wanton negligence, breach of express and implied warranties, and violations of the Virginia Consumer Protection Act ("VCPA") should be dismissed with prejudice because they do not state a cause of action and fail to inform the Moving Defendants of the nature of the claims asserted. Va. Code § 8.01-273(A); Va. Sup. Ct. R. 1:4(d). The Moving Defendants respectfully request that this Court sustain this Partial Demurrer and dismiss these claims with prejudice.

## ARGUMENT

### I.    Plaintiff's Willful and Wanton Negligence Claim Should be Dismissed.

4.      Plaintiff fails to state a claim for willful and wanton negligence as to the Moving Defendants.

5.      Plaintiff must allege specific and extraordinary facts to support a claim for punitive damages. Here, however, Plaintiff merely asserts conclusory allegations and makes no attempt to distinguish among the purported conduct of the eight Moving Defendants, all of which play various roles across a complex, wide-ranging supply chain.

6.      Plaintiff's allegations are insufficient to state a claim for willful and wanton negligence against the Moving Defendants as a matter of law, and that claim should be dismissed with prejudice.

### II.    Plaintiff's Breach of Express and Implied Warranty Claims Should be Dismissed.

7.      Plaintiff fails to state a claim for express and implied warranties as to the Moving Defendants.

8.      Plaintiff's First Amended Complaint does not include the express warranty or warranties that the Moving Defendants purportedly made. Any express warranties on which Plaintiff bases his allegations are essential to his claims for breach of express and implied

-2-

warranties. *See* Va. Code § 8.2-313 (describing requirements for express warranties); Va. Code § 8.2-316 (stating that express warranties may disclaim implied warranties).

9.      Certain defendants have filed one or more motions craving oyer regarding Plaintiff's warranty claims. The outcomes of those motions will inform the Moving Defendants' demurrer(s) as to those claims.

## III.    Plaintiff's VCPA Claim Should be Dismissed.

10.     Plaintiff fails to state a claim under the VCPA for at least three separate and independent reasons.

11.     First, the sale of goods at issue in this case is not a "consumer transaction" under Virginia Code § 59.1-198. To state a claim under the VCPA, Plaintiff must allege the existence of a "consumer transaction." Va. Code § 59.1-200(A).

12.     The "consumer transaction" Plaintiff purports to allege is the sale of turnout gear, which is specialized protective equipment that firefighters use to fight structural fires. Plaintiff's First Amended Complaint acknowledges that, as a matter of industry practice, turnout gear is sold to firefighting training facilities and fire departments through distributors—not directly to individual users. *See* FAC ¶¶ 7, 114-15.

13.     The sale of turnout gear is not a "consumer transaction" under the statutory definition. The VCPA outlines six different types of consumer transactions, only one of which could conceivably apply to Plaintiff's claims: "[t]he advertisement, sale, lease, license, or offering for sale, lease, or license, of goods or services to be used primarily for personal, family, or household purposes." Va. Code § 59.1-198. Turnout gear is not "used primarily for personal, family, or household purposes"; it is specialized safety equipment used by state and municipal employees to perform a public safety function. This alone warrants dismissal of the VCPA claim in its entirety.

-3-

14.    Second, the VCPA excludes Plaintiff's claim because aspects of the sale of turnout gear are authorized under the laws or regulations of the Commonwealth and or the United States. Va. Code § 59.1-199(1). This also warrants dismissal of Plaintiff's VCPA claim in its entirety.

15.    Third, even assuming that Plaintiff had properly alleged a consumer transaction that is not excluded from the VCPA (and he has not), Plaintiff still fails to state a claim against the Moving Defendants because he alleges no specific factual allegations relating to any purported misrepresentation, deception, fraud, false pretense, or false promise by the Moving Defendants. Va. Code § 59.1-200(5), (6) & (14).

\*       \*       \*       \*       \*

16.    The Moving Defendants will provide additional points and authorities in support of dismissal in a forthcoming memorandum of law.[2]

WHEREFORE, for the above reasons, the Moving Defendants respectfully request that the Court enter an Order: (1) sustaining this Partial Demurrer; (2) dismissing the willful and wanton negligence claims against the Moving Defendants with prejudice; (3) dismissing the express and implied warranty claims against the Moving Defendants with prejudice; (4) dismissing the VCPA claim with prejudice or, in the alternative, dismissing the VCPA claim against the Moving Defendants with prejudice; and (5) awarding such further relief as the Court deems just and proper.

---

[2] The Moving Defendants reserve the right to file separate memoranda of law as needed.

-4-

Dated: August 18, 2025            Respectfully submitted.

/s/ Andrew Bosse
Andrew Bosse (VSB No. 98616)
Allison Melton (VSB No. 75192)
BAUGHMAN KROUP BOSSE PLLC
500 East Main Street. Suite 1400
Norfolk. VA 23510
Telephone: 757.904.5373
abosse@bkbfirm.com
amelton@bkbfirm.com

Gregory L. Skidmore*
Amanda P. Nitto*
Demi L. Bostian*
ROBINSON, BRADSHAW & HINSON, P.A.
600 South Tryon Street. Suite 2300
Charlotte. NC 28202
Telephone: 704.377.2536
Facsimile: 704.378.4000
gskidmore@rbh.com
anitto@rbh.com
dbostian@rbh.com
Counsel for Defendants Honeywell International
Inc. and Honeywell Safety Products USA. Inc.

*Pro hac vice forthcoming.

/s/ John T. Bergin
John T. Bergin (VSB No. 37576)
KILPATRICK TOWNSEND & STOCKTON LLP
701 Pennsylvania Avenue. NW. Suite 200
Washington. DC 20004
JBergin@ktslaw.com
T 202 481 9942
F 202 204 5622
Counsel for Defendant Southern Mills, Inc.

/s/ Paul C. Kuhnel
Paul C. Kuhnel, Esq. (VSB No. 28151)
LEWIS BRISBOIS BISGAARD & SMITH, LLP
10 South Jefferson Street, Suite 1100
Roanoke, Virginia 24011
Telephone: 540-266-3200
Facsimile: 540-283-0044
paul.kuhnel@lewisbrisbois.com
Counsel for Lion Group, Inc.

/s/ John A. Nader
John A. Nader, Esq. (VSB No. 73259)
HINSHAW & CULBERTSON LLP
700 12th Street, N.W., Suite 700
Washington, D.C. 20005
Tel: (202) 979-5280
Fax: (212) 935-1166
jnader@hinshawlaw.com
Counsel for Defendant Stedfast USA, Inc.

/s/ Martin A. Conn
Martin A. Conn, Esq. (VSB No. 39133)
Stewart R. Pollock, Esq. (VSB No. 92466)
Ashley A. Davoli, Esq. (VSB No. 93466)
MORAN REEVES & CONN, P.C.
1211 East Cary Street
Richmond, Virginia 23219
Tel: (804) 421-6250
Fax: (804) 421-6251
mconn@moranreevesconn.com
spollock@moranreevesconn.com
adavoli@moranreevesconn.com
Counsel for Defendant W. L. Gore & Associates, Inc.

/s/ Lynn K. Brugh, IV
Lynn K. Brugh, IV (VSB No. 36778)
**WILLIAMS MULLEN**
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6461
Facsimile: (804) 420-6507
lbrugh@williamsmullen.com

James L. Stengel*
Paige Pavone*
**ORRICK, HERRINGTON
& SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
jstengel@orrick.com
ppavone@orrick.com

Hillary Dang (VSB No. 92188)
**ORRICK, HERRINGTON
& SUTCLIFFE LLP**
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
hdang@orrick.com

*Attorneys for Defendant Globe Manufacturing Company, LLC*

\*Pro hac vice forthcoming.

/s/ Jeffrey Golimowski
Jeffrey Golimowski (VSB No. 93525)
**WOMBLE BOND DICKINSON-US, LLP**
8350 Broad Street, Suite 1500
Tysons, VA 22120
Tel.: (703) 394-2275
Jeff.Golimowski@wbd-us.com
*Counsel for Defendant Municipal Emergency Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of August. 2025. a true and accurate copy of the

foregoing was sent via email to the following recipients:

Matthew J. Hundley (VSB No. 76865)
**BUTLER SNOW LLP**
919 E. Main St.. Suite 600
Richmond. Virginia 23219
Tel.: (804) 762-6041
Fax: (804) 762-6031
Matthew.hundley@butlersnow.com
*Counsel for Defendant 3M Company*

Andrew D. Kaplan (VSB No. 45530)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue. NW
Washington. D.C. 20004
Tel.: (202) 624.2500
akaplan@crowell.com
*Counsel for Defendant AGC Chemicals Americas. Inc.*

Michael F. Williams. P.C. (VSB No. 96545)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave.. NW
Washington. D.C. 20004
Tel.: (202) 389-5000
Fax: (202) 389-5200
mwilliams@kirkland.com
*Counsel for Defendant Archroma U.S. Inc.*

C. Thea Pitzen. Esq. (VSB No. 90152)
**GOODMAN ALLEN DONNELLY, PLLC**
Town Point Center
150 Boush Street. Suite 900
Norfolk. Virginia 23510
Tel.: (757) 625-1400
Fax: (757) 625-7701
tpitzen@goodmanallen.com
*Counsel for Defendant Arkema. Inc.*

John R. Owen (VSB No. 39560)
Julie S. Palmer (VSB No. 65800)
John P. Dunnigan (VSB No. 93483)
Imani E. Sowell (VSB No. 95982)

-8-

Yevgeniy K. Klinovskiy (VSB No. 98264)
**HARMAN, CLAYTOR, CORRIGAN & WELLMAN**
P.O. Box 70280
Richmond, Virginia 23255
Tel.: (804) 747-5200
Fax: (804) 747-6085
jowen@hccw.com
jpalmer@hccw.com
jdunnigan@hccw.com
isowell@hccw.com
yklinovskiy@hccw.com

*Counsel for Defendant Blue Ridge Rescue Suppliers, Inc.
improperly named as Bradsden Solutions, Inc.*

William G. Laxton, Jr. (VSB No. 75110)
**JONES DAY**
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: (202) 879-3939
Fax: (202) 626-1700
wglaxton@jonesday.com

Theodore M. Grossman (*pro hac vice forthcoming*)
**JONES DAY**
250 Vesey Street
New York, NY 10281
Tel.: (212) 326-3939
Fax: (212) 755-7306
tgrossman@jonesday.com

Louis A. Chaiten (*pro hac vice forthcoming*)
**JONES DAY**
901 Lakeside Avenue
Cleveland, OH 44114
Tel.: (216) 586-7244
Fax: (216) 579-0212
lchaiten@jonesday.com

*Counsel for Defendant Daikin America, Inc.
(by Special Appearance)*

Caitlin R. Convery (VSB No. 99741)
**SHOOK, HARDY & BACON LLP**
1800 K Street, N.W., Suite 1000
Washington, D.C. 20006
Tel: (202) 639-5603
Fax: (202) 783-4211
cconvery@shb.com

Amy Crouch (*pro hac vice forthcoming*)
Brent Dwerlkotte (*pro hac vice forthcoming*)
**SHOOK, HARDY & BACON LLP**
2555 Grand Blvd.
Kansas City, MO 64108
Tel.: (816) 474-6550
Fax: (816) 421-5547
amcrouch@shb.com
dbdwerlkotte@shb.com

*Counsel for Defendants EIDP, Inc., f k a E. I. du Pont de Nemours and Company and The Chemours Company*

Lynn K. Brugh, IV (VSB No. 36778)
**WILLIAMS MULLEN**
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6461
Facsimile: (804) 420-6507
lbrugh@williamsmullen.com

James L. Stengel*
Paige Pavone*
**ORRICK, HERRINGTON
& SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
jstengel@orrick.com
ppavone@orrick.com

Hillary Dang (VSB No. 92188)
**ORRICK, HERRINGTON
& SUTCLIFFE LLP**
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
hdang@orrick.com

*Attorneys for Defendant MSA Safety Sales, LLC*

*Pro hac vice forthcoming.

Kevin Biniazan, Esq. (VSB No. 92109)
Lauren A. Martin (VSB No. 93653)
**BREIT BINIAZAN, P.C.**
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, VA 23451-4088
Tel.: (757) 622-6000
Fax: (757) 299-8028
kevin@bbtrial.com
lmartin@bbtrial.com
*Counsel for Plaintiff Jonathan Clarke*

-11-

/s/ Andrew Bosse
Andrew Bosse (VSB No. 98616)
**BAUGHMAN KROUP BOSSE PLLC**
500 East Main Street, Suite 1400
Norfolk, Virginia 23510
Telephone: 757.904.5373
abosse@bkbfirm.com



**Baughman**
Kramp Bosse

One Liberty Plaza, Floor 46
New York, NY 10006
(212) 548-3212

500 East Main St., Suite 1400
Norfolk, VA 23510
(757) 904-5373

August 18, 2025

**Via First Class Mail**

Hon. Edward F. Jewett. Clerk
Richmond City Circuit Court
400 North Ninth Street
John Marshall Courts Building
Richmond. VA 23219



RECEIVED AND FILED
CIRCUIT COURT
ᘔ:ᘔ
AUG 2 6 2025
EDWARD F. JEWETT, CLERK
BY_____ D.C.

RE: *Jonathan Clarke v. 3 M Company, et al.*
Case No.: CL24-2853-00

Dear Mr. Jewett:

Enclosed please find stamped copies of the following which were electronically filed:

1. Plea in Bar
2. Demurrer
3. Motion Craving Oyer
4. Proposed Order for Motion Craving Oyer

Copies of the above have been electronically delivered to all parties identified in the certificates of service. Thank you for your assistance.

Sincerely.

s Andrew Bosse

Uploaded: 2025AUG18 16:15 Filed By:DBETTERTON on behalf of Bar# 98616 ABOSSE Reference: EF-178703

RECEIVED AND FILED
CIRCUIT COURT
ᘀ:ᘁ
AUG 2 6 2025
EDWARD F. JEWETT, CLERK
BY_____D.C.

**VIRGINIA:**

**IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND**

**JONATHAN CLARKE,**

    **Plaintiff.**

v.

**Case No. CL24002853-00**

**3M COMPANY, et al.,**

    **Defendants.**

## PLEA IN BAR ON BEHALF OF CERTAIN MOVING DEFENDANTS

Defendants EIDP. Inc. f/k/a E.I. Du Pont de Nemours and Company; Globe Manufacturing Company, LLC; Honeywell International Inc.; Honeywell Safety Products USA, Inc.; Lion Group. Inc.; Municipal Emergency Services. Inc.; Stedfast USA. Inc.; Southern Mills. Inc.; The Chemours Company; and W.L. Gore & Associates. Inc. (collectively, the "Moving Defendants"), by counsel and pursuant to Rule 3:8 of the Rules of Supreme Court of Virginia, respectfully submit this Plea in Bar as to all Counts in response to Plaintiff Jonathan Clarke's First Amended Complaint ("FAC"). In support of this Plea in Bar, for which the Moving Defendants will file a full memorandum at the appropriate time, the Moving Defendants state as follows:

    1.    Plaintiff filed his initial complaint in this Court on July 2, 2024.

    2.    On March 24. 2025. Plaintiff moved for leave to file an amended complaint, which this Court granted on March 31. 2025.

3.    In his First Amended Complaint, Plaintiff asserts four claims based on alleged occupational exposure to PFAS[1] in firefighter protective clothing known as "turnout gear." Plaintiff alleges claims against all Defendants for: (i) breach of implied warranties; (ii) breach of express warranties; (iii) negligence, gross negligence, recklessness and willful and wanton conduct; and (iv) violations of the Virginia Consumer Protection Act ("VCPA").[2] FAC ¶¶ 106-82.

4.    Plaintiff alleges that, "[a]s a result of exposure to PFAS . . . [he] was diagnosed with Leukemia on or around July 2022." FAC ¶ 12.

5.    Plaintiff did not file this action prior to the expiration of the statute of limitations. The claims in Plaintiff's First Amended Complaint are therefore barred in their entirety and must be dismissed with prejudice.

6.    Plaintiff's negligence and breach of warranty claims are barred by the two-year statute of limitations set forth in Va. Code § 8.01-243(A).

7.    Plaintiff's VCPA claim is barred by the two-year statute of limitations set forth in Va. Code § 59.1-204.1(A).

8.    The Moving Defendants will provide additional points and authorities in support of this Plea in Bar in a forthcoming memorandum of law. Further, the Moving Defendants reserve the right to present evidence ore tenus at a hearing in support of this Plea in Bar, and the Moving Defendants are hereby putting Plaintiff on notice that the hearing will be ore tenus.

---

[1] PFAS is an acronym for "per- and polyfluoroalkyl substances," which are a group of several thousand chemicals that are used to impart products with water- and oil-resistant properties, among other uses. FAC ¶¶ 2, 43.

[2] Plaintiff's claims are also the subject of a partial demurrer and one or more motions craving oyer before this Court.

WHEREFORE, for the reasons stated above, the Moving Defendants respectfully request

that the Court sustain their Plea in Bar, dismiss the First Amended Complaint with prejudice, and

award such other relief as it may deem appropriate.

3

Dated: August 18, 2025

Respectfully submitted,

/s Andrew Bosse
Andrew Bosse (VSB No. 98616)
Allison Melton (VSB No. 75192)
**BAUGHMAN KROUP BOSSE PLLC**
500 East Main Street, Suite 1400
Norfolk, VA 23510
Telephone: 757.904.5373
abosse a bkbfirm.com
amelton a bkbfirm.com

Gregory L. Skidmore*
Amanda P. Nitto*
Demi L. Bostian*
**ROBINSON, BRADSHAW & HINSON, P.A.**
600 South Tryon Street, Suite 2300
Charlotte, NC 28202
Telephone: 704.377.2536
Facsimile: 704.378.4000
gskidmore a rbh.com
anitto a rbh.com
dbostian a rbh.com
*Counsel for Defendants Honeywell International Inc. and Honeywell Safety Products USA, Inc.*

*Pro hac vice forthcoming.

/s John T. Bergin
John T. Bergin (VSB No. 37576)
**KILPATRICK TOWNSEND & STOCKTON LLP**
701 Pennsylvania Avenue, NW, Suite 200
Washington, DC 20004
JBergin a ktslaw.com
1 202 481 9942
F 202 204 5622
*Counsel for Defendant Southern Mills, Inc.*

/s Paul C. Kuhnel
Paul C. Kuhnel, Esq. (VSB No. 28151)
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
10 South Jefferson Street, Suite 1100
Roanoke, Virginia 24011
Telephone: 540-266-3200
Facsimile: 540-283-0044
paul.kuhnel a lewisbrisbois.com
*Counsel for Lion Group, Inc.*

4

s/ *John A. Nader*

John A. Nader, Esq. (VSB No. 73259)
**HINSHAW & CULBERTSON LLP**
700 12th Street, N.W., Suite 700
Washington, D.C. 20005
Tel: (202) 979-5280
Fax: (212) 935-1166
jnader@hinshawlaw.com
*Counsel for Defendant Stedfast USA, Inc.*

s/ *Caitlin R. Convery*

Caitlin R. Convery (VSB No. 99741)
**SHOOK, HARDY & BACON LLP**
1800 K Street, N.W., Suite 1000
Washington, D.C. 20006
Tel: (202) 639-5603
Fax: (202) 783-4211
cconvery@shb.com

Amy Crouch (*pro hac vice forthcoming*)
Brent Dwerlkotte (*pro hac vice forthcoming*)
**SHOOK, HARDY & BACON LLP**
2555 Grand Blvd.
Kansas City, MO 64108
Tel.: (816) 474-6550
Fax: (816) 421-5547
amcrouch@shb.com
dbdwerlkotte@shb.com

*Counsel for Defendants EIDP, Inc., f k a E. I. du
Pont de Nemours and Company and
The Chemours Company*

s/ *Martin A. Conn*

Martin A. Conn, Esq. (VSB No. 39133)
Stewart R. Pollock, Esq. (VSB No. 92466)
Ashley A. Davoli, Esq. (VSB No. 93466)
**MORAN REEVES & CONN, P.C.**
1211 East Cary Street
Richmond, Virginia 23219
Tel: (804) 421-6250
Fax: (804) 421-6251
mconn@moranreevesconn.com
spollock@moranreevesconn.com
adavoli@moranreevesconn.com
*Counsel for Defendant W. L. Gore & Associates, Inc.*

5

s/ Lynn K. Brugh, IV
Lynn K. Brugh, IV (VSB No. 36778)
**WILLIAMS MULLEN**
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6461
Facsimile: (804) 420-6507
lbrugh@williamsmullen.com

James L. Stengel*
Paige Pavone*
**ORRICK, HERRINGTON
& SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
jstengel@orrick.com
ppavone@orrick.com

Hillary Dang (VSB No. 92188)
**ORRICK, HERRINGTON
& SUTCLIFFE LLP**
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
hdang@orrick.com

*Attorneys for Defendant Globe Manufacturing Company, LLC*

*Pro hac vice forthcoming.

s/ Jeffrey Golimowski
Jeffrey Golimowski (VSB No. 93525)
**WOMBLE BOND DICKINSON-US, LLP**
8350 Broad Street, Suite 1500
Tysons, VA 22120
Tel.: (703) 394-2275
Jeff.Golimowski@wbd-us.com
*Counsel for Defendant Municipal Emergency Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of August, 2025, a true and accurate copy of the

foregoing was sent via email to the following recipients:

Matthew J. Hundley (VSB No. 76865)
**BUTLER SNOW LLP**
919 E. Main St., Suite 600
Richmond, Virginia 23219
Tel.: (804) 762-6041
Fax: (804) 762-6031
Matthew.hundley@butlersnow.com
*Counsel for Defendant 3M Company*

Andrew D. Kaplan (VSB No. 45530)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel.: (202) 624.2500
akaplan@crowell.com
*Counsel for Defendant AGC Chemicals Americas, Inc.*

Michael F. Williams, P.C. (VSB No. 96545)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave., NW
Washington, D.C. 20004
Tel.: (202) 389-5000
Fax: (202) 389-5200
mwilliams@kirkland.com
*Counsel for Defendant Archroma U.S., Inc.*

C. Thea Pitzen, Esq. (VSB No. 90152)
**GOODMAN ALLEN DONNELLY, PLLC**
Town Point Center
150 Boush Street, Suite 900
Norfolk, Virginia 23510
Tel.: (757) 625-1400
Fax: (757) 625-7701
tpitzen@goodmanallen.com
*Counsel for Defendant Arkema, Inc.*

John R. Owen (VSB No. 39560)
Julie S. Palmer (VSB No. 65800)
John P. Dunnigan (VSB No. 93483)
Imani E. Sowell (VSB No. 95982)

7

Yevgeniy K. Klinovskiy (VSB No. 98264)
**HARMAN, CLAYTOR, CORRIGAN & WELLMAN**
P.O. Box 70280
Richmond, Virginia 23255
Tel.: (804) 747-5200
Fax: (804) 747-6085
jowen *a* hccw.com
jpalmer *a* hccw.com
jdunnigan *a* hccw.com
isowell *a* hccw.com
yklinovskiy *a* hccw.com

*Counsel for Defendant Blue Ridge Rescue Suppliers, Inc.
improperly named as Bradsden Solutions, Inc.*

William G. Laxton, Jr. (VSB No. 75110)
**JONES DAY**
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: (202) 879-3939
Fax: (202) 626-1700
wglaxton *a* jonesday.com

Theodore M. Grossman (*pro hac vice forthcoming*)
**JONES DAY**
250 Vesey Street
New York, NY 10281
Tel.: (212) 326-3939
Fax: (212) 755-7306
tgrossman *a* jonesday.com

Louis A. Chaiten (*pro hac vice forthcoming*)
**JONES DAY**
901 Lakeside Avenue
Cleveland, OH 44144
Tel.: (216) 586-7244
Fax: (216) 579-0212
lchaiten *a* jonesday.com

*Counsel for Defendant Daikin America, Inc.
(by Special Appearance)*

Lynn K. Brugh, IV (VSB No. 36778)
**WILLIAMS MULLEN**
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6461
Facsimile: (804) 420-6507
lbrugh@williamsmullen.com

James L. Stengel*
Paige Pavone*
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
jstengel@orrick.com
ppavone@orrick.com

Hillary Dang (VSB No. 92188)
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
hdang@orrick.com

*Attorneys for Defendant MSA Safety Sales, LLC*

*Pro hac vice forthcoming.

Kevin Biniazan, Esq. (VSB No. 92109)
Lauren A. Martin (VSB No. 93653)
**BREIT BINIAZAN, P.C.**
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, VA 23451-4088
Tel.: (757) 622-6000
Fax: (757) 299-8028
kevin@bbtrial.com
lmartin@bbtrial.com
*Counsel for Plaintiff Jonathan Clarke*

_s/ Andrew Bosse_

Andrew Bosse (VSB No. 98616)
**BAUGHMAN KROUP BOSSE PLLC**
500 East Main Street, Suite 1400
Norfolk, Virginia 23510
Telephone: 757.904.5373
abosse@bkbfirm.com

10

Uploaded: 2025AUG18 16:17 Filed By:DBETTERTON on behalf of Bar# 98616 ABOSSE Reference: EF-178703

RECEIVED AND FILED
CIRCUIT COURT
اس
AUG 2 6 2025
EDWARD F. JEWETT, CLERK
BY_____ D.C.

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

**JONATHAN CLARKE.**

    **Plaintiff.**

**v.**

                              **Case No. CL24002853-00**

**3M COMPANY, et al.,**

    **Defendants.**

---

## MOTION CRAVING OYER ON BEHALF OF CERTAIN MOVING DEFENDANTS

Defendants 3M Company: Globe Manufacturing Company. LLC: Honeywell International Inc.: Honeywell Safety Products USA. Inc.: Lion Group. Inc.: Stedfast USA. Inc.: and Southern Mills. Inc. (collectively. the "Moving Defendants"). by counsel. submit this Motion Craving Oyer in response to Plaintiff Jonathan Clarke's First Amended Complaint ("FAC"). Plaintiff alleges an express warranty claim against all defendants. but fails to identify any express warranty that forms the basis of his claim. Accordingly. this motion seeks the production of documents referenced and relied upon in Plaintiff's breach of express warranty claim and requests that such documents. if any, be incorporated into the pleadings and considered in this Court's ruling on the Moving Defendants' Partial Demurrer. which is being filed contemporaneously herewith.[1] In support of this motion. the Moving Defendants state as follows:

    1.    It is well-settled that plaintiffs should file. together with their initial pleadings. written documents upon which their legal claims are based. *Culpeper Nat'l Bank v. Morris.*

---

[1] Plaintiff's claims are the subject of a partial demurrer and a plea in bar before this Court. The Moving Defendants expressly reserve the right to join in any motions craving oyer filed by other defendants in this action.

168 Va. 379, 383, 191 S.E. 764, 765 (1937) ("When a court is asked to make a ruling upon any paper or record, it is its duty to require the pleader to produce all material parts.").

2.    A motion craving over precludes a plaintiff from "attempt[ing] to restrict . . . [the court's] vision to only such parts of the record as the litigant thinks tend to support his view." *Id.* at 382-83, 191 S.E. at 765.

3.    Defendants may crave over where documents that are "essential to [a] claim" are missing from the complaint. *Byrne v. City of Alexandria*, 298 Va. 694, 700, 842 S.E.2d 409, 412 (2020); *see also Colonna's Shipyard, Inc. v. Alpha Pipe Co.*, No. CL11-8103, 2012 WL 6755957 (Va. Cir. Ct. Aug. 27, 2012) (granting motion craving over for a document that formed the basis of the plaintiff's breach of contract and breach of warranty claims).

4.    When a court grants a motion craving over, the documents produced become part of the pleadings. *Byrne*, 298 Va. at 699, 842 S.E.2d at 411 (explaining that a document produced in response to a motion craving over becomes "part of the pleadings of the party whose claim was based upon it"); *see also Marios v. Va. Elec. & Power Co.*, 103 Va. Cir. 120, 2019 WL 11815063, at *1 (Va. Cir. Ct. Sept. 16, 2019) (unpublished) (similar).

5.    A motion craving over is proper when a plaintiff alleges an express warranty claim but fails to provide the written documents containing the alleged express warranties that form the basis of that claim. *See Pulte Home Corp. v. Parex, Inc.*, 265 Va. 518, 523-24, 579 S.E.2d 188, 190-91 (2003) (affirming dismissal of a breach of express warranty claim after claimant failed to produce or identify in its pleading any express warranty in response to the cross-claimant's motion craving over seeking the specific express warranty that was breached); *Marios*, 2019 WL 11815063, at *3-4 (granting a motion craving over seeking an agreement that formed the basis of the plaintiff's express warranty claim); *139 Riverview, LLC v. Quaker Window Prods.*, 90 Va. Cir.

74, 2015 WL 10521381, at *2 (2015) (referencing the court's earlier decision granting defendant's motion craving oyer for the express warranty that supported plaintiff's breach of express warranty claim).

6.      Here. Plaintiff brings an express warranty claim against all Defendants. FAC ¶¶ 128-50.

7.      But Plaintiff fails to identify any express warranty that forms the basis of this claim. There is no express warranty information quoted in or attached to Plaintiff's First Amended Complaint.

8.      Plaintiff also does not identify which of the several defendants allegedly made the express warranty upon which his claim is based.

9.      A plaintiff must necessarily rely on the specific express warranty language that defendants allegedly made to form the basis of an express warranty claim. *See Pulte.* 265 Va. at 523-24, 579 S.E.2d at 190-91: *Marios.* 2019 WL 11815063, at *3-4: *139 Riverview.* 90 Va. Cir. 74, 2015 WL 10521381, at *2 (2015).

10.     Virginia law requires Plaintiff "to produce all material parts" of the record on which this Court must rule. *Culpeper.* 168 Va. at 383, 191 S.E. at 765. By omitting the alleged express warranty or warranties. Plaintiff is restricting the Court's "vision . . . of the record." *Id.*

11.     Plaintiff should produce and attach as a part of the pleadings each and every express warranty that forms the basis of his express warranty claim so that this Court can rule on whether Plaintiff has adequately stated warranty claims as to each defendant.

12.     Because the grounds for a demurrer may change depending on the documents Plaintiff produces, if any, the Moving Defendants also request leave to file an amended demurrer

upon Plaintiff producing and attaching any express warranty materials or upon Plaintiff's failure to do so.

13.    Defense counsel contacted Plaintiff's counsel in writing on August 11, 2025, regarding this motion. Plaintiff's counsel indicated that the complaint is sufficient as filed and did not consent to provide additional information.

WHEREFORE, for the above reasons, the Moving Defendants respectfully request that the Court enter an Order: (1) granting this Motion Craving Oyer; (2) requiring Plaintiff to re-file his First Amended Complaint with the Clerk of Court and attach to that pleading all contracts, agreements, and express warranties that form the basis of his express warranty claim, which shall be incorporated into and a part of the First Amended Complaint for all purposes, including demurrer; (3) permitting the Moving Defendants the opportunity to file an amended demurrer if Plaintiff re-files or fails to re-file the First Amended Complaint with all contracts, agreements, and express warranties that form the basis of his express warranty claim; (4) awarding the Moving Defendants attorneys' fees and costs associated with this motion pursuant to Va. Code §§ 8.01-271.1 and 17.1-609; and (5) awarding such further relief as the Court deems just and proper.

Dated: August 18, 2025

Respectfully submitted.

/s/ *Andrew Bosse*

Andrew Bosse (VSB No. 98616)
Allison Melton (VSB No. 75192)
**BAUGHMAN KROUP BOSSE PLLC**
500 East Main Street, Suite 1400
Norfolk, VA 23510
Telephone: 757.904.5373
abosse@bkbfirm.com
amelton@bkbfirm.com

Gregory L. Skidmore*
Amanda P. Nitto*
Demi L. Bostian*
**ROBINSON, BRADSHAW & HINSON, P.A.**
600 South Tryon Street, Suite 2300
Charlotte, NC 28202
Telephone: 704.377.2536
Facsimile: 704.378.4000
gskidmore@rbh.com
anitto@rbh.com
dbostian@rbh.com
*Counsel for Defendants Honeywell International Inc. and Honeywell Safety Products USA, Inc.*

*Pro hac vice forthcoming.

/s/ *John T. Bergin*

John T. Bergin (VSB No. 37576)
**KILPATRICK TOWNSEND & STOCKTON LLP**
701 Pennsylvania Avenue, NW, Suite 200
Washington, DC 20004
JBergin@ktslaw.com
T 202 481 9942
F 202 204 5622
*Counsel for Defendant Southern Mills, Inc.*

/s/ *Paul C. Kuhnel*

Paul C. Kuhnel, Esq. (VSB No. 28151)
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
10 South Jefferson Street, Suite 1100
Roanoke, Virginia 24011
Telephone: 540-266-3200
Facsimile: 540-283-0044
paul.kuhnel@lewisbrisbois.com
*Counsel for Lion Group, Inc.*

-5-

*s John A. Nader*
John A. Nader, Esq. (VSB No. 73259)
**HINSHAW & CULBERTSON LLP**
700 12th Street, N.W., Suite 700
Washington, D.C. 20005
Tel: (202) 979-5280
Fax: (212) 935-1166
jnader @ hinshawlaw .com
*Counsel for Defendant Stedfast USA, Inc.*

*s Lynn K. Brugh, IV*
Lynn K. Brugh, IV (VSB No. 36778)
**WILLIAMS MULLEN**
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6461
Facsimile: (804) 420-6507
lbrugh @ williamsmullen.com

James L. Stengel*
Paige Pavone*
**ORRICK, HERRINGTON
& SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
jstengel @ orrick.com
ppavone @ orrick.com

Hillary Dang (VSB No. 92188)
**ORRICK, HERRINGTON
& SUTCLIFFE LLP**
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
hdang @ orrick.com

*Attorneys for Defendant Globe Manufacturing
Company, LLC*

*Pro hac vice forthcoming.

*s/ Matthew J. Hundley*
Matthew J. Hundley (VSB No. 76865)
**BUTLER SNOW LLP**
919 E. Main St., Suite 600
Richmond, Virginia 23219
Tel.: (804) 762-6041
Fax: (804) 762-6031
Matthew.hundley @butlersnow.com
*Counsel for Defendant 3M Company*

Case 3:25-cv-00738-RCY   Document 1-4   Filed 09/12/25   Page 341 of 346 PageID# 820

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of August, 2025, a true and accurate copy of the

foregoing was sent via email to the following recipients:

Andrew D. Kaplan (VSB No. 45530)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel.: (202) 624.2500
akaplan@crowell.com
*Counsel for Defendant AGC Chemicals Americas, Inc.*

Michael F. Williams, P.C. (VSB No. 96545)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Ave., NW
Washington, D.C. 20004
Tel.: (202) 389-5000
Fax: (202) 389-5200
mwilliams@kirkland.com
*Counsel for Defendant Archroma U.S., Inc.*

C. Thea Pitzen, Esq. (VSB No. 90152)
**GOODMAN ALLEN DONNELLY, PLLC**
Town Point Center
150 Boush Street, Suite 900
Norfolk, Virginia 23510
Tel.: (757) 625-1400
Fax: (757) 625-7701
tpitzen@goodmanallen.com
*Counsel for Defendant Arkema, Inc.*

John R. Owen (VSB No. 39560)
Julie S. Palmer (VSB No. 65800)
John P. Dunnigan (VSB No. 93483)
Imani E. Sowell (VSB No. 95982)
Yevgeniy K. Klinovskiy (VSB No. 98264)
**HARMAN, CLAYTOR, CORRIGAN & WELLMAN**
P.O. Box 70280
Richmond, Virginia 23255
Tel.: (804) 747-5200
Fax: (804) 747-6085
jowen@hccw.com
jpalmer@hccw.com
jdunnigan@hccw.com

-8-

isowell @ hccw.com
yklinovskiy @ hccw.com

*Counsel for Defendant Blue Ridge Rescue Suppliers, Inc.
improperly named as Bradsden Solutions, Inc.*

William G. Laxton, Jr. (VSB No. 75110)
**JONES DAY**
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: (202) 879-3939
Fax: (202) 626-1700
wglaxton @ jonesday.com

Theodore M. Grossman (*pro hac vice forthcoming*)
**JONES DAY**
250 Vesey Street
New York, NY 10281
Tel.: (212) 326-3939
Fax: (212) 755-7306
tgrossman @ jonesday.com

Louis A. Chaiten (*pro hac vice forthcoming*)
**JONES DAY**
901 Lakeside Avenue
Cleveland, OH 44144
Tel.: (216) 586-7244
Fax: (216) 579-0212
lchaiten @ jonesday.com

*Counsel for Defendant Daikin America, Inc.
(by Special Appearance)*

Caitlin R. Convery (VSB No. 99741)
**SHOOK, HARDY & BACON LLP**
1800 K Street, N.W., Suite 1000
Washington, D.C. 20006
Tel: (202) 639-5603
Fax: (202) 783-4211
cconvery @ shb.com

Amy Crouch (*pro hac vice forthcoming*)
Brent Dwerlkotte (*pro hac vice forthcoming*)
**SHOOK, HARDY & BACON LLP**
2555 Grand Blvd.
Kansas City, MO 64108
Tel.: (816) 474-6550

-9-

Fax: (816) 421-5547
amcrouch @ shb.com
dbdwerlkotte @ shb.com

*Counsel for Defendants EIDP, Inc., f k a E. I. du Pont de Nemours and Company and The Chemours Company*
Lynn K. Brugh, IV (VSB No. 36778)
**WILLIAMS MULLEN**
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
Telephone: (804) 420-6461
Facsimile: (804) 420-6507
lbrugh @ williamsmullen.com

James L. Stengel*
Paige Pavone*
**ORRICK, HERRINGTON
& SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
jstengel @ orrick.com
ppavone @ orrick.com

Hillary Dang (VSB No. 92188)
**ORRICK, HERRINGTON
& SUTCLIFFE LLP**
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
hdang @ orrick.com

*Attorneys for Defendant MSA Safety Sales, LLC*

*Pro hac vice forthcoming.

Jeffrey Golimowski (VSB No. 93525)
**WOMBLE BOND DICKINSON-US, LLP**
8350 Broad Street, Suite 1500
Tysons, VA 22120
Tel.: (703) 394-2275
Jeff.Golimowski @ wbd-us.com
*Counsel for Defendant Municipal Emergency Services, Inc.*
Martin A. Conn, Esq. (VSB No. 39133)
Stewart R. Pollock, Esq. (VSB No. 92466)

-10-

Ashley A. Davoli, Esq. (VSB No. 93466)
**MORAN REEVES & CONN, P.C.**
1211 East Cary Street
Richmond, Virginia 23219
Tel: (804) 421-6250
Fax: (804) 421-6251
mconn a moranreevesconn.com
spollock a moranreevesconn.com
adavoli a moranreevesconn.com
*Counsel for Defendant W. L. Gore & Associates, Inc.*

Kevin Biniazan, Esq. (VSB No. 92109)
Lauren A. Martin (VSB No. 93653)
**BREIT BINIAZAN, P.C.**
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, VA 23451-4088
Tel.: (757) 622-6000
Fax: (757) 299-8028
kevin a bbtrial.com
lmartin a bbtrial.com
*Counsel for Plaintiff Jonathan Clarke*

*s Andrew Bosse*
Andrew Bosse (VSB No. 98616)
**BAUGHMAN KROUP BOSSE PLLC**
500 East Main Street, Suite 1400
Norfolk, Virginia 23510
Telephone: 757.904.5373
abosse a bkbfirm.com

Uploaded: 2025AUG18 16:17 Filed By:DBETTERTON on behalf of Bar# 98616 ABOSSE Reference: EF-178703

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR THE CITY OF RICHMOND

**JONATHAN CLARKE,**

    **Plaintiff,**

**v.**

    **Case No. CL24002853-00**

**3M COMPANY, et al.,**

    **Defendants.**

## ORDER

This matter came before the Court upon a Motion Craving Oyer filed by Defendants 3M Company; Globe Manufacturing Company, LLC; Honeywell International Inc.; Honeywell Safety Products USA, Inc.; Lion Group, Inc.; Stedfast USA, Inc.; and Southern Mills, Inc. (collectively, the "Moving Defendants"). Upon consideration of the Motion Craving Oyer, Plaintiff's opposition, and the oral arguments of counsel, it is hereby ORDERED:

1.    The Motion Craving Oyer is GRANTED;

2.    No later than five (5) days after entry of this Order, Plaintiff shall re-file his First Amended Complaint with the Clerk of Court and attach to that First Amended Complaint all contracts, agreements, and express warranties that form the basis of the express warranty claim alleged in the First Amended Complaint. All documents so attached shall be deemed incorporated into and a part of the First Amended Complaint for all purposes, including demurrer.

3.    If Plaintiff re-files or fails to re-file the First Amended Complaint with all contracts, agreements, and express warranties that form the basis of his express warranty claim, the Moving Defendants may file an amended demurrer if they choose to do so. Any amended demurrer to the First Amended Complaint shall be filed within thirty (30) days from the date this Order is entered

-1-

or twenty-one (21) days from the date Plaintiff re-files his First Amended Complaint (as provided in Paragraph 2 of this Order), whichever is later.

4.     The Court finds that Plaintiff was requested to produce and attach the documents that form the basis of his express warranty claim before this Motion Craving Oyer was filed and refused to do so. Accordingly, the Moving Defendants' request for attorneys' fees and costs incurred in bringing this Motion Craving Oyer is GRANTED. The Moving Defendants shall submit an affidavit of attorneys' fees and costs and a proposed order granting those fees and costs to the Court within fourteen (14) days from the date this Order is entered.

IT IS SO ORDERED.

Entered this _____ day of _____, 2025.

_____
Circuit Court Judge



RECEIVED AND FILED
CIRCUIT COURT
つ:の
AUG 2 6 2025
EDWARD F. JEWETT, CLERK
BY_____ D.C.

-2-