## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

Jonathan Clarke

      Plaintiff,

v.

3M COMPANY, et al.,

        Defendants.

Case No. 3:25-cv-00738

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT 3M'S MOTION TO STAY PENDING JPML DECISION ON TRANSFER

COME NOW Plaintiff Jonathan Clarke, ("Plaintiff"), who respectfully files this Response in Opposition to Defendant 3M Company's ("Defendant 3M") Motion to Stay.  Defendant 3M has sought to stay all proceedings in this matter until after the Judicial Panel on Multidistrict Litigation ("JPML") has determined whether this case should be transferred to the *In re Aqueous Film-Forming Foams ("AFFF") Products Liability Litigation*, MDL No. 2873 (D.S.C.) ("the MDL"). Plaintiff opposes this stay and requests that, upon the forthcoming filing of Plaintiff's Motion to Remand, this Honorable Court proceed with entry of an Order remanding this matter back to the appropriate state court.  Plaintiff further states as follows:

### PRELIMINARY STATEMENT

Plaintiff Jonathan Clarke is a firefighter who works for the Richmond Fire Department and serves the City of Richmond.  Plaintiff has proudly served his local community as a firefighter for over twenty years.

Plaintiff brought suit alleging claims for breach of express and implied warranties, as well as negligence and gross negligence, following his exposures to per- and polyfluoroalkyl substances ("PFAS"). Plaintiff was exposed to these "forever chemicals" through the protective clothing specifically designed for, and worn by, firefighters (known as "turnouts"). These turnouts were manufactured, designed, sold, supplied, and/or distributed by each of the Defendants, individually or through their predecessors or subsidiaries, resulting in the Plaintiff's subsequent development of leukemia.

Plaintiff's Complaint does not contain any allegations alleging exposure to, or damages from, Aqueous Film-Forming Foams ("AFFF"), the subject chemical involved in cases subject to the AFFF MDL.

## PROCEDURAL BACKGROUND

On July 2, 2024, Plaintiff filed his initial Complaint in this action in the Circuit Court for the City of Richmond. In March 2025, *without objection from Defendants*, Plaintiff voluntarily non-suited specific defendants who Plaintiff had deemed unrelated to Plaintiff's claims. At this same time, Plaintiff sought to leave to amend his Complaint to remove these defendants and the related allegations pertaining to a specific PFAS chemical, known as Class B Foam, as well as to improve precision and clarity. The Richmond Circuit Court granted Plaintiff's Motions on April 3, 2025 and March 31, 2025, respectively.

In June 2025, Plaintiff sought to serve the remaining unserved Defendants, in compliance with Virginia statute. **Defendant 3M was served with process on June 26, 2025**. See Defendant 3M's Affidavit of Service, attached as **Exhibit A**. Under 28 U.S. Code § 1446(b), Defendant 3M

had **thirty days from the date of service to remove** the Clarke case to federal court – that is, Defendant 3M had until **July 28, 2025[1]** to notice this case for removal.

The remaining Defendants, other than Defendant 3M and the two in-state Defendants served at the time of filing, were either served in-person on June 26, 2025 *or* were properly mailed service of process by the Secretary of Commonwealth on June 25, 2025. See generally Va. Code § 13.1-758(F); 8.01-301(2), -310(A), -312(C). All Defendants currently at issue in this litigation, including Defendant 3M, made appearances in the Circuit Court for the City of Richmond on or before July 16, 2025, per filing of a Consent Order extending the responsive pleading deadlines. Defendant 3M subsequently filed responsive dispositive pleadings in the Richmond Circuit Court on August 18, 2025, along with the remaining Defendants.

With *no* change in circumstance, and *no* subsequent progress in the case, Defendant 3M filed a Notice of Removal to this Court on September 12, 2025 – ***forty-six days after the removal deadline and over a year since the commencement of the action***, because, in their own words, "[a]lthough neither Plaintiff's complaint nor any subsequent paper in this case provided the information necessary to inform 3M that all of the elements of federal jurisdiction are present, 3M has determined from its own investigation that this case is removable." ECF No. 1 at ¶ 13. While the untimely nature of this removal is apparent on its face, a discussion is undertaken both *supra* and in Plaintiff's forthcoming Motion to Remand.[2]

In the interim, Defendant 3M has now attempted to insert this litigation into the JPML – *despite the case already having been rejected by the JPML Clerk*. On September 15, 2025, under

---

[1] 30 days from June 26, 2025 falls on a Saturday, extending the deadline to the nearest weekday (Monday, July 28, 2025).

[2] Plaintiff's Motion to Remand is due on or before October 13, 2025. Defendant filed their Motion to Stay early, likely in anticipation of Plaintiff's Motion to Remand, though it is notable that there is not *yet* any pending issues before this Court upon which to grant a stay.

the guise of a non-binding "suggestion" from a South Carolina District Court Judge, Defendant 3M Company sought to transfer this case to the MDL via a Notice of Tag-Along Action.  Just days later, on September 18, 2025, the JPML Clerk rejected Defendants' attempt, indicating that they would not issue a Conditional Transfer Order for the Clarke matter.   More specifically, the Clerk notified counsel for all parties that Clarke was "not appropriate for inclusion in this MDL."  See In re AFFF Prods. Liab. Litig., MDL No. 2873, ECF No. 3780 (J.P.M.L. Sep. 18, 2025).  Despite this, Defendant 3M has again moved to transfer this case into the MDL, filing a Motion for Transfer only hours after the Clerk's decision was issued, attempting to change the inevitable based upon nothing more than their pointless aspiration to rewrite history.  See ECF No. 7 (Defendants' note that the JPML likely will not consider their Motion to Transfer for many more months, likely not until December 2025).

Of additional pertinent note, this same Defendant has **unsuccessfully** sought to transfer *four* other PFAS cases brought by Plaintiff's counsel: Jenkins-Griffin v. 3M Company, et al., No. 2:24-cv-00600 (E.D. Va.); Chiaverotti, et al. v. 3M Company, et al., No. 2:25-cv-00232 (E.D. Va.); Moretz v. 3M Company, et al., No. 2:25-cv-00616 (E.D. Va.); Scott, et al. v. 3M Company, et al, No. 2:25-cv-00617 (E.D. Va.).[3]   While filed separately, the issues presented, claims sought, and damages requested in these four cases are highly similar, if not identical, to the Clarke matter.  All proceed on claims related to PFAS-exposure from turnout gear, and most importantly, none are predicated on claims based upon alleged AFFF-exposure – that is, the subject of the AFFF MDL. Most recently, on September 29, 2025, Defendant 3M sought to jointly transfer Moretz and Scott into the MDL via Notice of Tag-Along Action.   On October 1, 2025, the JPML Clerk **rejected**

---

[3] All of these cases were initially filed in state court and all have been subsequently removed by Defendant 3M or another Defendant to this matter.  Most recently, last week, Defendant 3M removed Moretz and Scott on the same day, having not yet even been served with process.  Plaintiff opposes the removal of *all* of these cases, including Clarke.

Defendant's attempt – again noting that both cases were "not appropriate for inclusion in this MDL." See In re AFFF Prods. Liab. Litig., MDL No. 2873, ECF No. 3822 (J.P.M.L. Oct. 1, 2025). The Clerk similarly **rejected** Defendant 3M's similar attempt to transfer Chiaverotti in August 2025, *again* issuing the same denial notice, indicating that the case was "not appropriate for inclusion." See In re AFFF Prods. Liab. Litig., MDL No. 2873, ECF No. 3708 (J.P.M.L. Aug. 28, 2025).

 Beyond just the Clerk's denials of Defendant 3M's attempts to transfer the above-mentioned cases, the Clerk is not the only one to reject 3M's efforts – *the MDL Panel themselves has.* On October 11, 2024, Defendant 3M Company sought to transfer Jenkins-Griffin to the MDL. Plaintiff Jenkins-Griffin opposed this transfer.  On February 12, 2025, the MDL Panel issued an abundantly clear decision, finding **transfer to be "inappropriate,"** as Plaintiff Jenkins-Griffin's claims were outside the scope of the MDL.  See In re AFFF Prods. Liab. Litig., ECF No. 3260 at 3-4, **attached as Exhibit B** (emphasis added)**.**     Despite this, Defendant 3M has tried *two additional times* to transfer Jenkins-Griffin – relying on the same non-binding judicial "suggestion," Defendant 3M made a second attempt at transfer in August 2025, which was, unsurprisingly, **rejected** by the JPML Clerk on August 28, 2025.  See In re AFFF Prods. Liab. Litig., ECF No. 3708 (J.P.M.L. Aug. 28, 2025).

Defendant 3M, using their vast resources to their advantage, seemingly hopes that if they play the game enough times, the rules will change in their favor.  For Plaintiff Clarke, this game both hinders his rightful efforts to pursue a case and, as an individual with an incurable cancer, continually increases the risk that his life will not outlast this litigation.  Defendant 3M's efforts to remove are untimely; their grounds for removal are unfounded and unsupported; and their

countless attempts at transfer have been rejected.  Plaintiff's life must move on – and so must this litigation.  Thus, Plaintiff respectfully requests that this Court <u>deny</u> Defendant's Motion to Stay.

## LEGAL STANDARD ON MOTIONS TO STAY

Granting a Motion to Stay "is considered 'extraordinary relief' for which the moving party bears a 'heavy burden.'" <u>City of Charleston v. Brabham Oil Co.</u>, No. 2:20-cv-03579, 2023 U.S. Dist. LEXIS 116833, at *6 (S.C.D.C. Jul. 6, 2023) (quoting <u>Larios v. Cox</u>, 305 F. Supp. 2d 1335, 1336 (N.D. Ga. 2004); <u>see also</u> <u>Winston-Salem/Forsyth Cty. Bd. Of Educ. v. Scott</u>, 404 U.S. 1221, 1231 (1971).  A district court possesses the inherent power to stay actions in the considerations of "economy of time and effort for itself, for counsel, and for litigants." <u>Va. ex rel. Integra REC LLC v. Countrywide Sec. Corp.</u>, No. 3:14CV706, 2015 U.S. Dist. LEXIS 4588, at *3 (E.D. Va. Jan. 14, 2015)).    When evaluating a motion to stay the execution of a remand order pending appeal, a situation akin to that presented to this Honorable Court, other courts have considered four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay, (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." <u>Nken v. Holder</u>, 556 U.S. 418, 434 (2009).  However, "[s]ince the traditional stay factors contemplated individualized judgments in each case, the formula cannot be reduced to a set of rigid rules." <u>Hilton v. Braunskill</u>, 481 U.S. 770, 777 (1987).

In <u>City of Charleston v. Brabham Oil Co.</u>, No. 2:20-cv-03579, 2023 U.S. Dist. LEXIS 116833, at *6 (S.C.D.C. Jul. 6, 2023), the Court declined to execute stay, in part, after noting that the "Defendants 'track record across the country fails to prove a likelihood of success on the merits sufficient to warrant a stay.'" (quoting <u>City of Annapolis v. BP P.L.C.</u>, No. 21-cv-00772, 2022 U.S. Dist. LEXIS 178848, at *4 (D. Md. Sept. 29, 2022)).  <u>See also</u> <u>City & Cty. of Honolulu v.</u>

Sunoco LP, No. 20-cv-00163, 2021 U.S. Dist. LEXIS 42190, at * 2 (D. Haw. Mar. 5, 2021) (denying the defendants' motion to stay a remand order and noting that, "of all the cases involving subject matter similar to that here, Defendants have achieved one, fleeting success on the issue of removal. . . . Even that success, though, has now been overturned. . . . A batting average of .000 does not suggest a substantial case exists.").   This reasoning is incredibly pertinent herein.

## ANALYSIS

Defendant 3M comes before this Honorable Court on their Motion to Stay in a feeble attempt to take *yet another* bite at apple.  Defendant's Brief in Support is hinged upon an extra-jurisdictional, non-binding recommendation issued in a Case Management Order by a South Carolina federal district court judge ("CMO 36").  See ECF No. 7.  Despite the hefty weight that the Defendants ask this Court to give CMO 36, it is, *by its own words,* nothing more than a "suggestion and request" to the JPML Panel – giving it no prejudicial weight to either this Court or the Panel themselves.  In the haze of smoke and mirrors that the Defendant hopes will be compelling, they fail to acknowledge the currently active, existing orders and opinions from both the JPML themselves *and* the Fourth Circuit Court of Appeals.

Allowing this case to sit in anticipation of an ultimately unsuccessful transfer attempt will neither promote the interests of judicial economy nor cause some heightened hardship to the Defendants.  See ECF No. 7 (quoting City of Alexandria v. Purdue Pharma L.P., No. 1:18-CV-1536, 2019 WL 8112891, at *2 (E.D. Va. Jan. 30, 2019) (citation omitted)).  Furthermore, a stay will only serve to further prejudice Plaintiff in their attempt to begin litigation, particularly as Plaintiff suffers from severe, incurable cancer.  See Id.  Like in Brahham Oil, the chances of success are next to none – a previous batting average of zero does not suggest that transfer is now suddenly likely.  Finally, of utmost importance, beyond the fact that Defendant's likelihood of

success at transfer is slim, Defendant's removal itself is improper.  This case does not belong in federal court and delaying this inevitable truth serves to help no one.  Given the considerations present in deciding whether to grant such an "extraordinary remedy,"  Plaintiff asks that the Motion to Stay be denied.

### A. The AFFF MDL: Background and a Discussion of Existing JPML Precedent Governing the Transfer of Non-AFFF Cases to the AFFF MDL.

To understand the inapplicability of Plaintiff's case(s) to the subject MDL, one must first become acquainted with the purposes of the consolidated action.  On September 25, 2018, Tyco Fire Products LP and Chemguard, Inc. moved for centralization of 75 pending cases involving allegations that AFFFs containing two specific PFAS—namely, perfluorooctane sulfonate ("PFOS") and/or perfluorooctanoic acid ("PFOA") (hereafter, "AFFF actions") – contaminated groundwater near airports and other industrial locations.  See In re AFFF Prods. Liab. Litig., ECF No. 1.  Shortly thereafter, 3M joined the motion for centralization and separately moved to include nine actions related to 3M's manufacture, disposal, and sale of PFAS that were unrelated to AFFFs (hereafter, "non-AFFF actions").  See In re AFFF Prods. Liab. Litig., ECF No. 4.  On December 7, 2018, the Panel issued an Order determining that the 75 pending AFFF actions "involve[d] common questions of fact," and that centralization "[would] serve the convenience of the parties and witnesses and promote the just and efficient conduct of [the] litigation," thereby creating the AFFF MDL. See In re AFFF Prods. Liab. Litig., ECF No. 239 at 3, **attached as Exhibit C.**

At that same time, in December 2018, the Panel denied 3M's separate motion to include non-AFFF actions, calling that proposal **"unworkable."** Id. at 6.  The Panel distinguished AFFF and non-AFFF actions, declining to centralize the latter out of concerns for manageability of the litigation, explaining:

> While a non-AFFF MDL would allow for common discovery and motion practice with respect to 3M—the main producer of PFOA and PFOS—it would include far more site-specific issues, different modes of PFAS contamination, and different PFAS chemicals (whereas the AFFF actions are limited to PFOA and PFOS contamination). Such an MDL could quickly become unwieldly.

Id. Since then, the Panel has maintained this separation, even in cases involving contaminated waterways, **denying motions to transfer actions that "do[] not on [their] face raise AFFF claims,"** and holding that a party seeking transfer of an action raising non-AFFF claims "bears a significant burden to persuade [the Panel] that transfer is appropriate and will not undermine the efficient progress of the AFFF MDL." In re AFFF Prods. Liab. Litig., ECF No. 620 (Mar. 27, 2020) (emphasis added), **attached as Exhibit D**.

As of January 2024, "every action that [this Panel] [has] transferred to the MDL has named entities involved in the manufacture, marketing, supply, use, or disposal of AFFFs as defendants." In re AFFF Prods. Liab. Litig., ECF No. 2287 at 2 (noting subsequently that the Panel has "endeavored to maintain this distinction."). See also **Exhibit D**, ECF No. 620 ("We have not, though, transferred to the MDL actions that do not contain any allegations or claims relating to AFFF use."); In re AFFF Prods. Liab. Litig., ECF No. 2939 (Oct. 4, 2024) (denying a transfer action for a case that had "no claims directed to AFFF products or manufacturers."); In re AFFF Prods. Liab. Litig., ECF No. (Apr. 4, 2025) (denying a transfer of non-AFFF water contamination claims due to unique nature of Plaintiff's claims). In the year and half since, the Court has still faithfully maintained this distinction.

For a strikingly similar example, in December 2024, the JPML Panel predictably rejected an action brought on behalf of Connecticut firefighters who alleged PFAS exposure contained in their turnout gear. See In re AFFF Prods. Liab. Litig., ECF No. 3167, **attached as Exhibit E**. Just as the Panel has *repeatedly* reiterated, they expanded the scope of the MDL to include "claims by

firefighters alleging direct exposure to AFFF . . . [The Panel] did not, however, expand the scope of this MDL to encompass actions brought by firefighters asserting claims solely for PFAS exposure through the use of [turnout gear]." Id. at 1-2.  The Panel continued on to state that "this remains an *AFFF* MDL, not a PFAS MDL[,]" even going so far as to reject 3M's claims that they would raise AFFFs as an alternative cause of Plaintiff's alleged injuries as insufficient to justify transfer. Id. at 2.

Most recently, in June 2025, the Court considered the transfer of a case involving allegations of PFAS exposure from private drinking water contamination.  In that case, the Varline action, the Plaintiffs "expressly [stated] that [they] do not assert a claim related to AFFF exposure." In re AFFF Prods. Liab. Litig., ECF No. 3535 at 1, **attached as Exhibit F**.   In support of their Motion to Transfer, 3M claimed that "despite Plaintiff's disclaimer, *Varline* inevitably will present claims and defenses related to alleged AFFF contamination[,]" pointing directly to an action already in the MDL involving AFFF-contaminated water wells which, per expert testimony, drew from the same aquifer as the wells at issue in Varline. Id. at 1-2.  Regardless, the JPML found that the "potential for commingling" of AFFF and non-AFFF sources *still was insufficient to justify transfer,* deeming any alleged AFFF contamination to be disputed and "speculative." Id. at 2.

In addition to the *plethora* of JPML decisions rejecting non-AFFF cases, including those with the potential for comingling, the JPML has actually already considered the transfer of a substantially similar, if not identical, case to the MDL: Jenkins-Griffin v. 3M Company, et al.[4]   In Jenkins-Griffin, just as in the case at bar, Plaintiff's original complaint including passing references to Class B Foam or AFFF chemicals.  These references were subsequently sought to be removed via amendment to clarify the record – however, *they were not removed prior to*

---

[4] As noted above, Jenkins-Griffin is another PFAS/turnout-gear case involving the same Plaintiffs' counsel as those involved in Chiaverotti, Moretz, Scott, and Clarke.

*submission to the JPML Panel*.  Regardless, the JPML Panel still found that "the complaint in *Jenkins-Griffin* on its face does not involve AFFFs. . . . Although the complaint **contains a few passing references to "Class B foam" in one count, plaintiff's claims are exclusively directed to [turnout gear]."** <u>In re AFFF Prods. Liab. Litig.</u>, Exhibit B, ECF No. 3260 at 3-4 (emphasis added).  The Panel even went on to note their awareness of Plaintiff's Motion to Amend her Complaint to remove the foam references.  <u>Id</u>.  Thus, even when the Complaint contained AFFF-references, and even when the Panel was aware of attempts to remove such references, *the JPML was not concerned*, **finding the inclusion into the MDL to be improper.**  <u>Id</u>.  Despite this, Defendant seemingly now expects the JPML to overturn their own word.

Thus, time and time again, the Panel has explained that this MDL *exclusively* "involves allegations that aqueous film-forming foams (AFFFs) used at airports, military bases, or other locations to extinguish liquid fuel fires caused the release of perfluorooctane sulfonate (PFOS) and/or perfluorooctanoic acid (PFOA; collectively, these and other per- and polyfluoroalkyl substances are referred to as PFAS) into local groundwater and contaminated drinking water supplies." <u>In re AFFF Prods. Liab. Litig.</u>, ECF No. 2217 at 1.  Similarly, the Panel has repeatedly made clear that it would deny motions "to extend the scope of the MDL to encompass not just cases involving AFFFs, but all cases relating to 3M's manufacture, management, disposal, and sale of PFAS." <u>Id</u>. at 2.  <u>See also</u> <u>In re AFFF Prods. Liab. Litig.</u>, ECF Nos. 541, 585, 1510, and 2129.

Without any doubt, and by the repeated words of the Panel themselves, the Plaintiff's claims are inapplicable to the MDL, both limiting any possibility of successful transfer and rendering the Motion to Stay entirely moot.

**B. Defendant 3M Has Improperly Invoked Federal Subject Matter Jurisdiction: Removal was Untimely and The Fourth Circuit Court of Appeals Decision in**

**<u>Maryland v. 3M Company</u> Instructs on the Non-AFFF versus AFFF Distinction and Further Affirms that <u>Clarke</u> Should Properly be Remanded.**

   a. *Removal is Untimely*

The first factor underlying a Court's decision to grant a stay is whether or not the moving party is likely to succeed on the merits of their underlying action. Acknowledging that this issue will be fully briefed in the forthcoming Motion to Remand, Plaintiff must preemptively note Defendant 3M will not succeed – neither on transfer *nor on removal*. Under 28 U.S.C. § 1446(b)(1), the notice of removal must be filed "within 30 days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading." However, this deadline may shift if, when a "case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant . . . of a **copy of an amended pleading, motion, order, or other paper** which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3) (emphasis added). <u>See generally</u> 14C Charles Alan Wright, et al., Fed. Prac. & Proc. Juris. § 3731 (4th ed. 2018) ("Courts ordinarily hold that oral statements do not trigger removability because those statements do not qualify as an 'other paper.'").

Now, the phrase "motion, order or other paper" has been interpreted "broadly to include any information received by the defendant, whether communicated in a formal or informal manner." <u>Northrop Grumman Tech. Servs. v. DynCorp Int'l LLC</u>, 865 F.3d 181, 186 (4th Cir. Ct. App. 2017). "The purpose of this [other paper] requirement is to ensure that a defendant receives adequate notice that a case is removable before being subject to the 30-day deadline to file its removal notice." <u>Id</u>. at 187. The critical factor for the timeliness of removal is when a defendant ascertains that the case is removable. <u>See, e.g.</u>, <u>Lovern v. Gen. Motors Corp.</u>, 121 F.3d 160, 162 (4th Cir. 1997) (concluding that removal based on diversity was timely 88 days after service of the complaint, because plaintiff's citizenship could not be determined from the complaint, and removal

was accomplished 28 days after receipt of a police report revealing plaintiff's citizenship).  In explaining its interpretation of 28 U.S.C. § 1446(b)(3), the Fourth Circuit has noted that the statute "expressly encompasses the case in which the actual facts supporting federal jurisdiction remain unaltered from the initial pleading, but their existence has been *manifested* only by later papers." Id.

As discussed *supra*, Defendant 3M removed this case to federal court **forty-six days *after the deadline had passed***.  By Defendant's own words, they do not comply with the removal requirements under § 1446: "Although neither Plaintiff's complaint nor any subsequent paper in this case provided the information necessary to inform 3M that all of the elements of federal jurisdiction were present, 3M has determined . . . this case is removable." See ECF No. 1 at ¶ 13.  This is not what § 1446(b)(3) provides for.  Moreover, according to Defendant 3M, it took them *seventy-eight days* from the receipt of service to determine that Plaintiff has potentially been exposed to AFFF chemicals at some point in his life, "through a variety of [] means, including his regular consumption of water." See generally ECF No. 1 ¶¶ 22, 26, 27.  While it may have taken them seventy-eight days to come up with such a creative legal argument, no investigation was needed to reach such a conclusion **nor was such a finding made based upon "a copy of an amended pleading, motion, order, or other paper."** See § 1446(b)(3) (emphasis added).

At most, this attempt at removal appears to be nothing more than a last-ditch effort to get this case into the MDL, despite the clear lack of federal jurisdiction.  Defendant's removal comes in turn with the publication of CMO 36 – an extrajudicial order that neither mandates transfer by this Court or the Panel *nor creates federal subject matter jurisdiction*.  Regardless, even if this Court accepts the argument in CMO 36 – that non-AFFF and AFFF injury claims cannot be isolated from one another, thus justifying the existence of federal office jurisdiction – "[m]any

courts have examined and rejected the defendants' argument that an order entered in another case

may constitute an "order or other paper" pursuant to Section 1446(b)." <u>Morsani v. Major League</u>

<u>Baseball</u>, 79 F. Supp. 1331, 1333 (1999).   In fact, the Court in <u>Morsani</u>, stated:

> The plain language of the statute, referring to the "receipt by the defendant, through service or otherwise," implies the occurrence of an event within the proceeding itself; defendants do not in the ordinary sense "receive" decisions entered in unrelated cases. Accordingly, the courts consistently hold that  publication of an order on a subject that might affect the ability to remove an unrelated state court suit does not qualify as an "order or other paper" for the purposes of Section 1446(b).

<u>Id.</u>  See, e.g.,  <u>Haddad v. Va. Polytechnic Inst. & State Univ.</u>, No. 98-2319, 1999 U.S. App. LEXIS

2209 at *4-5 (4th Cir. Feb. 12, 1999) ("The term 'other paper' in § 1446(b) does not include a

subsequently decided decision issued in an unrelated action.");  <u>Fore Stars v. City of Las Vegas</u>,

488 F. Supp. 3d 982, 989 (D. Nev. 2020) ("[C]ourts nationwide have recognized this ambiguity

and almost uniformly held that a decision in an unrelated action is not an "order or other paper"

that opens § 1446(b)(3)'s second removal window) (citing, <i>inter alia</i>, <u>Allen v. Monsanto Co.</u>, 396

F. Supp. 2d 728, 732 (S.D. W. Va. 2005) (reasoning that a decision in an unrelated case is not an

'order or other paper' providing basis for removal under section 1446(b)(3))); <u>Lozano v. GPE</u>

<u>Controls</u>, 859 F. Supp. 1036, 1038 (S.D. Tex. 1994) (the term "other paper" refers to papers

generated within the specific state proceeding to be removed and not other unrelated judicial

opinions that might suggest removability); <u>Kocaj v. Chrysler Corp.</u>, 794 F. Supp. 234, 236 (E.D.

Mich. 1992) (circuit court of appeals decision was not "other paper" making action

removable); <u>Johansen v. Employee Benefit Claims, Inc.</u>, 668 F. Supp. 1294, 1296 (D. Minn.

1987) (Supreme Court decision is not an "order or other paper" making action removable; "other

paper" refers solely to documents generated within the state court litigation itself); <u>Holiday v.</u>

<u>Travelers Ins. Co.</u>, 666 F. Supp. 1286 (W.D. Ark. 1987) (recent Supreme Court decisions were not

"other papers" within the meaning of Section 1446(b)); <u>Hollenbeck v. Burroughs Corp.</u>, 664 F.

Supp. 280, 281 (E.D. Mich. 1987) (Supreme Court opinion in unrelated case did not constitute "order or other paper"); Gruner v. Blakeman, 517 F. Supp. 357, 360-61 (D. Conn. 1981) (subsequent decision in a related case did not constitute "order or other paper"); Avco Corp. v. Intern. Union, 287 F. Supp. 132, 133 (D. Conn. 1968) ("order or other paper" refers only to papers filed in proceeding itself, not to unrelated Supreme Court opinion).   Thus, Defendant's arguments that Plaintiff's potential general exposure to AFFF chemicals in his daily life, hinged upon the opinion offered in CMO 36, is not valid grounds for removal.

As delaying the inevitable remand will only serve to prejudice the parties, while failing to preserve or advance any material matters, the Motion to Stay must be denied.   Plaintiff reserves further argument on the nature of removal for his Motion to Remand.

### b. *Maryland v. 3M Company*

Defendant 3M has sought removal on the basis that "personal injury plaintiffs 'may have lived in many locales over their lifetimes, consumed water daily, and, in many of the cases before this Court, allege that any type of AFFF has the potential to, and do spread through groundwater, surface water, and other media will beyond the locations where they were initially used.'" ECF No. 1 at ¶ 29 (quoting CMO 36).   To Defendant 3M then, seemingly, any case which may plausibly be related to PFAS-exposure *must* be heard in federal court because anyone could have been contaminated from anywhere, including through factually unrelated sources like groundwater. While federal officer jurisdiction under § 1442(a) is broad, it is not limitless.

Unlike Chiaverotti and Griffin, cases involving potential federal military involvement,[5] Clarke has no relationship to the federal government – so now the Defendant asks this Honorable

---

[5] The Chiaverotti and Griffin Plaintiffs still all contest federal office jurisdiction exists, regardless of Defendant 3M's claims concerning federal funding and military firefighting services, but it proves for useful comparison to Mr. Clarke.

Court to find one. Here, Defendant believes that Plaintiff's claims *could* "plausibly stem" from an "aviation safety product, called MilSpec AFFF, used "on military bases, airfields, and Navy ships." ECF No. 1 at ¶¶ 22, 34. Since Plaintiff is not in the military, does not work on military bases, and has no ties to aviation-related work, then, according to Defendant, Plaintiff may have been exposed to in "certain large civilian airports." ECF No. 1 at ¶ 26. If Plaintiff Clarke was not exposed while visiting an airport, then, "Plaintiff was plausibly exposed to MilSpec AFFF through a variety of other means, *including his regular consumption of water* in many locales over his lifetime." ECF No. 1 at ¶ 27 (emphasis added). Defendant's assertions are correct, insofar as their actions have resulted in "[m]ost people in the U.S. [having] been exposed to PFAS and have it in their blood." Fact Facts: PFAS in the U.S. Population, Center for Disease Control, Nov. 12, 2024, https://www.atsdr.cdc.gov/pfas/data-research/facts-stats/index.html. However, to accept Defendant's reasoning, one must accept that all cases related to chemical exposure, *potentially* including PFAS, must be heard in federal court, as everyone has once traveled through an airport or consumed water.

Defendant 3M also argues that Plaintiff cannot deny, disclaim, or omit allegations related to AFFF to avoid the MDL. ECF No. 1 at ¶¶ 27-28. First, Plaintiff, whose claims have no relationship with the military, groundwater, or aviation, did not deny or omit allegations by not including claims about Plaintiff's water consumption and civilian airport visits. Plaintiff's claims have no relationship to Defendant 3M's federal work, *a required element for § 1442(a)(1) removal*, and such a relationship is not created merely because Defendant can broadly claim PFAS-exposure for the entire American population.

Second, with regard to the issue of disclaimers, in March 2025, the Fourth Circuit Court of Appeals issued a decision concerning the use of federal officer removal in cases involving

environmental contamination of waterways.  Maryland v. 3M Company, 130 F.4th 380 (4th Cir. 2025), attached as **Exhibit G**.  Of note, the Defendants in Maryland initially petitioned for rehearing en banc, however, on May 28, 2025, the petition for rehearing was **denied.**

While much of the Maryland Court's decision is concerned with federal officer subject matter jurisdiction, a discussion herein is warranted, as similar issues of pleading non-AFFF claims are addressed.  In Maryland, the states of Maryland and South Carolina (collectively, "the States") respectively each brought two lawsuits alleging 3M's environmental contamination of waterways. The States' respective lawsuits included one directed specifically towards 3M's PFAS production through its manufacture of aqueous film-forming foam ("AFFF") and a second directed generally towards the production of other PFAS-containing products, therein excluding AFFF.  3M, for over thirty years, has produced PFAS-containing AFFF to the United States Military, *governed by Department of Defense standards and regulated under military specifications*,  thus, making the States' AFFF suits clearly subject to federal officer removal.  However, **with regard to their non-AFFF suits, the States disclaimed any AFFF-related claims,** seeking to distinguish their environmental contamination claims into two categories: environmental contamination from AFFF products produced for the Military and contamination from non-AFFF products produced for consumers.

3M removed the non-AFFF suit under 28 U.S.C. § 1442(a)(1) – the federal officer removal statute – claiming that "PFAS from 3M's non-AFFF products **indistinguishably commingled** with the PFAS from 3M's Military AFFF. . . . [a]nd because the PFAS from both sources were commingled, PFAS from 3M's Military AFFF '**inseparably contributed** to any alleged "non-AFFF" PFAS contamination.'"  Maryland, 130 F.4th at 386 (emphasis added).  In addressing **only**

the third element of § 1442(a)(1) removal, that is, the nexus requirement[6], the Fourth Circuit declined to give *dispositive* effect to the States' disclaimer, while still noting that, regardless of the disclaimer's non-dispositive effect, 3M still carried the burden of proving the requisite nexus so as to maintain federal jurisdiction.

Thus, 3M's specific theory of their case was of utmost importance to the Court in coming to their conclusion in Maryland. The Court noted that, under 3M's theory:

> [T]he nexus requirement would be satisfied because PFAS from **different sources commingle** to the point that it is **impossible to identify the precise source** of a contaminant **once those chemicals seep into the relevant waterways.** Some of the PFAS contamination charged by the States came from Military AFFF, so any remediation would **necessarily implicate** work that 3M did for the federal government.

Maryland, 130 F.4th at 390 (emphasis added). This was dependent on the specific factual circumstances, including the fact that the States had pled *general PFAS contamination near military bases* – thus, making it plausible that the contamination at issue in the non-AFFF case came from military AFFF production.

The Fourth Circuit continued on to note two "pertinent" questions that, in the Fourth Circuit's words, "highlight how the charged conduct relates to [3M's] federal work." Id. at 391. First, a causation issue exists – that is, deciding whether certain environmental contamination came from 3M's Military AFFF or its non-AFFF products. Second, assuming the first question can be answered, the factfinder would then need to apportion out the contamination between AFFF products and non-AFFF products. Thus, **"[t]he need to unravel such challenging questions in this case establishes that 3M's federal work is inextricably related to the charged conduct."** Id. at 391 (emphasis added).

---

[6] The nexus requirement necessitates that "the charged conduct was carried out for or in relation to the asserted official authority," Maryland, 130 F.4th at 388 (quoting Anne Arundel Cnty v. B.P. P.L.C., 94 F.4th 343 at 347-48 (2024) (internal quotations omitted))

Of pertinent note herein, the Fourth Circuit's specifically conceded that, "[i]f, on the other hand, **a plaintiff concedes that those difficult questions are unnecessary for the purposes of establishing liability, it may remain in state court.**" Id. at 392 (emphasis added). Citing to Illinois ex rel. Raoul v. 3M Co., 111 F.4th 846, 849 (7th Cir. 2024), the Fourth Circuit acknowledged that **remand was appropriate where the plaintiff expressly disclaimed contamination** from any facility besides a single specific one enumerated in their complaint, thus agreeing that a factfinder need not apportion out the sources of contamination. In Maryland, the States (Plaintiffs) refused to make these concessions, thus leaving the "important" causation and allocation questions best reserved for federal court.

Taken together, the Fourth Circuit's opinion in Maryland both contradicts the position taken in CMO 36 *and* supports Plaintiff's upcoming Motion to Remand.[7] First, in Maryland, the allegations by the Plaintiffs involved *general environmental contamination with various, inextricably linked sources*, including sources produced for and on behalf of the U.S. Military. Meanwhile, the Plaintiff has alleged one specific source, wholly unrelated to the federal government, groundwater, and the U.S. Military – that is, his firefighting turnouts, worn while providing services to the City of Richmond. Plaintiff's Complaint, and claims therein, are not just a "disclaiming" AFFF claims – they are a completely separate, premised on non-AFFF contaminants, and unrelated to AFFF entirely. Regardless of  Defendant's arguments that

---

[7] Additional notes supporting remand, based upon the Maryland decision, include that (a) the AFFF products in Maryland were regulated specifically by the Department of Defense via direct agreements between 3M and the federal government. In sharp contrast, here,  Defendants never entered into any agreements with the federal government itself nor were their products, insofar as Plaintiff's case herein is concerned, directly regulated by the federal government. As stated by the Fourth Circuit, the nexus requirement is **not** satisfied "by alleging only that the 'plaintiff's entire civil action in a general sense' is related to the defendant's federal work." Maryland, No. 24-1218 at *12 (quoting Anne Arundel Cnty, 94 F.4th at 348); and (b) the two questions upon which the Court appeared to hinge their decision are wholly irrelevant to Plaintiff's case herein. There is no causation nor apportionment question to be answered – *nor has Defendant 3M ever alleged as much*.

Plaintiff's non-AFFF claims invoke common factual issues with AFFF claims, see generally In re AFFF Prods. Liab. Litig., ECF No. 3784-1, as noted by *many* JPML decisions, cited *supra*, non-AFFF claims are factually distinct, and the potential commingling does not therein justify transfer.

Second, and of utmost importance to the pending Motion to Stay, is that the Fourth Circuit Court of Appeals has expressly approved the delineation between non-AFFF cases and AFFF cases – wholly permitting Plaintiff to disclaim AFFF claims, provided that the "plaintiff concedes that [certain] difficult questions are unnecessary for the purposes of establishing liability." Id. at 392. Plaintiff's lawsuit is not premised on AFFF contamination, including groundwater or airport contamination, nor is the source of the contamination so interlinked that it cannot be separated out. If it were true that every source of contamination must be pled, and that every source is so interlinked that it cannot be separated out, then most cases, particularly those involving diseases, would end up in federal court. For Plaintiff, many different things can cause an individual to develop cancer – A causation issue for a jury to resolve. Plaintiff does not become subject to federal jurisdiction just because his cancer may have been caused by any number of factors beyond that alleged, including the potential that he once *maybe* drank contaminated groundwater throughout the course of his *entire life*.

Regardless, Plaintiff has made claims from (1) Defendant's non-AFFF work; and (2) concedes that apportionment is not necessary, as Plaintiff does not claim exposure from any source beyond his turnout gear. Maryland, 130 F.4th at 391-92 (discussing the two "pertinent" questions).

Taken together, removal was untimely; subject matter jurisdiction does not exist in this Court as these claims have no relationship to Defendant's federal work; and, regardless of \Case Management Order No. 36, a non-binding Order, see discussion *infra*, the Fourth Circuit has recognized not only that a distinction exists between AFFF and non-AFFF claims – but that a

Plaintiff *can* successfully plead as much, removing them from both MDL jurisdiction *and* federal court jurisdiction entirely.

**C. Distinguishing CMO 36 and Recognizing CMO 36's Non-Binding Impact on Other Fourth Circuit Jurisdictions.**

On August 22, 2025, the Honorable Judge Gergel issued a Case Management Order (CMO 36) attempting to come to a universal decision concerning the applicability of remand in non-AFFF cases. See ECF No. 7-1 (attaching CMO 36 as an exhibit). Of primary note, while Honorable Judge Gergel serves as the MDL Presiding Judge, *he does not begin to possess authority or jurisdiction over cases until **after** they have been incorporated into the MDL by the JPML Panel*. Pursuant to U.S. Code § 1407, the decision of which cases are to be accepted into the MDL and transferred to the MDL Presiding Judge are governed by the Panel alone. Furthermore, under § 1407(c), proceedings for transfer may be initiated *only* by the JPML upon its own initiative and by motion filed with the Panel by a party to an action. In other words, the MDL Presiding Judge, herein Honorable Judge Gergel, cannot command the transfer of non-MDL cases into the MDL. Taken together, the weight of authority to be afforded to CMO 36 by either the JPML or any other district court is, *at its most*, persuasive.

In issuing CMO 36, Judge Gergel cites to the Fourth Circuit's opinion in Maryland, claiming that the Maryland case stands for the proposition that it is contrary to law to avoid the MDL by "denying, disclaiming, or omitting allegations concerning exposure to AFFF." See CMO 36 at 1. Plaintiff does not disagree with Judge Gergel's interpretation of Maryland, insofar as the Maryland Court did acknowledge that disclaimers are not **dispositive** on the issue of jurisdiction. See *supra*. However, to the extent that CMO 36 implies as much, Plaintiff *does disagree* with the contention that disclaiming or excluding allegations concerning AFFF exposure is blanketly improper.

As discussed *supra*, the Fourth Circuit in <u>Maryland</u> did not find disclaimers, by themselves, to be improper – in fact, the Court discussed and acknowledged the <u>Wood v. Crane Co.</u>, 764 F.3d 316 (4th Cir. 2014) case, wherein a Plaintiff successfully disclaimed claims creating federal officer jurisdiction, noting that "[f]or <u>Wood</u> to control [in <u>Maryland</u>], 3M's allegation that PFAS from its Military AFFF production and its non-AFFF production were inextricably linked would have had to be **untimely**" under § 1446(b). <u>Maryland</u>, 130 F.4th at 390 (emphasis added). This was relevant to the <u>Maryland</u> court, as the Court must,[8] and did, take into direct consideration the argument pled by Defendant 3M – that is, that "PFAS intermingled to the point that it is impossible to identify their source." As discussed *supra*, <u>Maryland</u>'s discussion of unidentifiable intermingling is factually distinct from Defendant's claims in their Notice of Removal – In <u>Maryland</u>, the Court discussed the inability to distinguish between the sources of general environmental contamination, wherein both AFFF and non-AFFF sources were present, versus distinguishing between turnout gear-specific dermal exposure and Plaintiff's *potential* exposure to groundwater at some point in his life. Moreover, to the extent that Defendant is now claiming inextricably linked sources to exist, *such a claim is untimely as it comes after the deadline for removal*, just like in <u>Wood</u>. <u>See Id</u>. at 390 ("We upheld the remand because Crane's federal officer removal claim based on the gaskets was untimely under 28 U.S.C. § 1446(b)."). Regardless, contrary to CMO 36, the Court in <u>Maryland</u> undeniably recognized the applicability of disclaimers, at least in certain circumstances, by upholding <u>Wood</u>.

The <u>Maryland</u> Court continued on, as discussed *supra*, to specifically note situations where the plaintiff could concede causation issues related to apportioning liability between non-AFFF and AFFF sources, so as to permit remand to state court. This is contrary to the assertion in CMO

---

[8] District Courts must "credit a removing defendant's theory of the case as to whether the conduct with which it has been charged is related to its federal work." <u>See Maryland</u>, 130 F.4th at 389.

36, (which, at most, can be considered dicta), that "plaintiffs cannot, at the pleading stage, easily isolate personal injuries allegedly caused by AFFF as opposed to personal injuries allegedly caused by non-AFFF PFAS." See ECF No. 7-2 (CMO 36) at 1. Plaintiff's claims don't require the Court to engage in any apportionment issues – not only has no party ever claimed that apportionment is impossible or even necessary, but Plaintiff is not seeking "relief against 3M for mixed PFAS contamination." See Maryland, 130 F.4th at 392 (quoting Illinois ex rel. Raoul v. 3M Co., 111 F.4th 846, 849 (7th Cir. 2024)). While Plaintiff appreciates the South Carolina District Court's *opinion* that the omission of AFFF-references is "unconvincing," the Maryland ruling, which is *binding* on this Court, suggests the opposite.

Moreover, since the issuance of CMO 36, despite its claim that federal officer jurisdiction is de facto applicable in any cases involving PFAS, at least one district court has already disagreed. See Marathon Petroleum Company LP v. Arkema, Inc., et al, No. C25-1250, 2025 U.S. Dist. LEXIS 171664 (W.D. WA. Sep. 3, 2025) (hereinafter, "Marathon"), **attached as Exhibit H**. In contrast to the assumption "inextricably link[ing]" AFFF and non-AFFF claims, as was reached by the Court in CMO 36, the Court in Marathon found that "Tyco has failed to provide any evidence that would show by a preponderance that the PFAS contamination at the Refinery is causally linked to MilSpec AFFF used at NAS Whidbey or the Airport." No. C25-1250, at *14-15. Thus, in the mere weeks since the release of CMO 36, federal district courts have already found themselves in disagreement – indicating that the issue is not as "open and shut" as the Defendants (and the Court in CMO 36) would like this Court to believe.

Additionally, Plaintiff must note that the MDL Panel was aware, and reviewed themselves, the AFFF references previously included in the Jenkins-Griffin Complaint – and they found them unpersuasive on the issue of MDL inclusion. See Exhibit B at 3-4. The Panel even went as far as

to acknowledge that Plaintiff Jenkins-Griffin had since sought to remove the references, failing to take any issue with the so-called "artful pleading" that Plaintiff had already engaged in. Thus, even when a Complaint contained AFFF references, of which Plaintiff's does not, the Panel still found it unpersuasive. There is no reason to believe that their perspective has since changed.

CMO 36 concludes with a "suggestion and request" to the JPML, asking them to transfer all cases to the presiding court. As noted previously, this Order is no more controlling over the Panel than an Order from this Honorable Court would be – it may be persuasive, but it holds no authority. As discussed previously, the Panel has rejected Clarke's sister cases, Jenkins-Griffin, Chiaverotti, Scott, and Moretz, *and* rejected Clarke itself. Of pertinent note – the rejection of Clarke came *after* the issuance of CMO 36. Like above, there is no reason to believe that the Panel's decision, come December, will be any different.

As CMO 36 is not binding on the JPML, and as previous precedent firmly suggests, there is little-to-no reason to believe that Defendant will be successful on yet another attempt at transferring Plaintiff's case to the MDL. Moreover, federal subject matter jurisdiction is lacking, invalidating concerns over transfer in the first place. As such, and given the nature of Plaintiff's cancer, Plaintiff respectfully request that this Honorable Court deny Defendant's Motion to Stay, in anticipation of a forthcoming Motion to Remand.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests this Honorable Court deny Defendant 3M's Motion to Stay, as well as order the payment of any just costs and expenses incurred by Plaintiff.

**Respectfully yours,
JONATHAN CLARKE,**

**Plaintiff**

s/ Kevin Biniazan
Kevin Biniazan | VSB No. 92109
Jeffrey A. Breit | VSB No. 18876
Don Scott | VSB No. 88725
Lauren Martin | VSB No. 93653
Alexis Bale | VSB No. 100318
BREIT BINIAZAN, PC
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, VA  23451
Telephone | 757.622.6000
Facsimile | 757.299.8028
Email | kevin@bbtrial.com
Email | jeffrey@bbtrial.com
Email | don@bbtrial.com
Email | lmartin@bbtrial.com
Email | abale@bbtrial.com

*Counsel for Plaintiff*

**C E R T I F I C A T E**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send notification of electronic filing (NEF) to counsel of record.

Date: October 3, 2025

s/ Kevin Biniazan
Kevin Biniazan | VSB No. 92109
Jeffrey A. Breit | VSB No. 18876
Lauren Martin | VSB No. 93653
BREIT BINIAZAN, PC
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, VA  23451
Telephone | 757.622.6000

Facsimile | 757.299.8028
Email | kevin@bbtrial.com
Email | jeffrey@bbtrial.com
Email | lmartin@bbtrial.com

*Counsel for Plaintiff*